# EXHIBIT 4

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ADVENTIST HEALTH SYSTEM SUNBELT
HEALTHCARE CORP.,

            Plaintiff,

   v.

MULTIPLAN, INC.,

       Defendant.

Civil Action No.1:23-CV-07031-ER-KHP

**ORAL ARGUMENT REQUESTED**

# MULTIPLAN, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE
## COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

      A.      AHS Does Not Adequately Plead A Per Se Horizontal Conspiracy Theory ..........2

      B.      AHS Fails To Allege Direct Or Circumstantial Evidence From Which The Court Can Infer A Plausible Hub-and-Spoke Conspiracy .......................................8

            1.      AHS Fails To Allege Parallel Conduct .......................................................8

            2.      AHS Fails To Allege Sufficient Evidence Of "Plus Factors" ....................9

      C.      AHS Fails To Plead The Necessary Elements Of A Rule Of Reason Claim ........11

            1.      AHS Fails To Plead A Properly Defined Antitrust Market ......................12

            2.      AHS Fails To Allege That MultiPlan's Conduct Was Anticompetitive ...........................................................................................14

            3.      AHS Fails To Allege That Any Single Agreement Harms Competition .................................................................................................14

      D.      AHS Fails To Prove An Antitrust Injury ..............................................................15

II.      CONCLUSION .......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*2238 Victory Corp. v. Fjallraven USA Retail, LLC*,
2021 WL 76334 (S.D.N.Y. Jan. 8, 2021) ............................................................... 3

*BCBSM., Inc. v. GS Labs*, LLC,
2023 WL 2044329 (D. Minn. Jan. 30, 2023) ......................................................... 14

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
985 F. Supp. 2d 612 (S.D.N.Y. 2013) .................................................................... 15

*Business Electronics Corp. v. Sharp Electronics Corp.*,
485 U.S. 717 (1988) ................................................................................................. 3

*City of New York v. Group Health, Inc.*,
649 F.3d 151 (2d Cir. 2011) .................................................................................. 14

*Conergy AG v. MEMC Electronic Materials, Inc.*,
651 F. Supp. 2d 51 (S.D.N.Y. 2009) ...................................................................... 5

*Daniel v. American Board of Emergency Medicine*,
428 F.3d 408 (2d Cir. 2005) .................................................................................. 15

*Electronics Communications Corp. v. Toshiba Consumer Products, Inc.*,
129 F.3d 240 (2d Cir.1997) ..................................................................................... 6

*Emergency Group of Arizona Professional Corp. v. United Healthcare Inc.*,
No. 19-cv-4687 (D. Ariz. Aug. 9, 2019), ECF No. 18 ........................................... 9

*Engine Specialties, Inc. v. Bombardier Ltd.*,
605 F.2d 1 (1st Cir.1979) ........................................................................................ 5

*Epic Games, Inc. v. Apple Inc.*,
67 F.4th 946 (9th Cir. 2023), *cert denied*, 2014 WL 156473 (U.S. 2024) .............. 12

*First & First, Inc. v. Dunkin' Donuts, Inc.*,
1990 WL 36139 (E.D. Pa. Mar. 27, 1990) .......................................................... 4, 5

*Floyd v. Amazon.com, Inc.*,
2023 WL 3891973 (W.D. Wash. June 8, 2023) ...................................................... 5

*FTC v. Sanford Health*,
2017 WL 10810016 (D.N.D. 2017), *aff'd*, 926 F.3d 959 (8th Cir. 2019) ................. 12

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019) ................................................................ 10, 11

*Gatt Communications, Inc. v. PMC Associates, L.L.C.*,
    2011 WL 1044898 (S.D.N.Y. Mar. 10, 2011) ............................................ 6

*Gibson v. MGM Resorts International*,
    2023 WL 7025996 (D. Nev. Oct. 24, 2023) .................................... 3, 9, 10

*In re Amazon.com, Inc. eBook Antitrust Litigation*,
    2023 WL 6006525 (S.D.N.Y. July 31, 2023) ........................................... 15

*In re American Express Anti-Steering Rules Antitrust Litigation*,
    361 F. Supp. 3d 324 (E.D.N.Y. 2019) .................................................... 13

*In re Blue Cross Blue Shield Antitrust Litigation*,
    2017 WL 2797267 (N.D. Ala. June 28, 2017) ....................................... 12

*In re Delta Dental Antitrust Litigation*,
    484 F. Supp. 3d 627 (N.D. Ill. 2020) ..................................................... 12

*In re Google Digital Advertising Antitrust Litigation*,
    627 F. Supp. 3d 346 (S.D.N.Y. 2022) .................................................. 3, 6

*In re Local TV Advertising Antitrust Litigation*,
    2022 WL 3716202 (N.D. Ill. Aug. 29, 2022) ......................................... 10

*In re Musical Instruments and Equipment Antitrust Litigation*,
    798 F.3d 1186 (9th Cir. 2015) ............................................................ 9, 10

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ................................................... 7

*In re Zinc Antitrust Litigation*,
    155 F. Supp. 3d 337 (S.D.N.Y. 2016) ..................................................... 8

*Integrated Systems & Power, Inc. v. Honeywell International, Inc.*,
    713 F. Supp. 2d 286 (S.D.N.Y. 2010) ..................................................... 3

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ................................................................................ 3

*Little Rock Cardiology Clinic PA v. Baptist Health*,
    591 F.3d 591 (8th Cir. 2009) ................................................................ 14

*Long Island Anesthesiologists PLLC v. United Healthcare Insurance Company of New York, Inc.*,
    2023 WL 8096909 (E.D.N.Y. Nov. 21, 2023) ..................................... 5, 15

*Marion Healthcare LLC v. Southern Illinois Healthcare,*
2013 WL 4510168 (S.D. Ill. Aug. 26, 2013) ............................................................ 14

*Mayor & City Council of Baltimore v. Citigroup, Inc.,*
709 F.3d 129 (2d Cir. 2013) .......................................................................................... 9

*Methodist Health Services Corp. v. OSF Healthcare System,*
2015 WL 1399229 (C.D. Ill. Mar. 25, 2015) ............................................................ 12

*Milligan v. GEICO General Insurance Co.,*
2022 WL 433289 (2d Cir. Feb. 14, 2022) .................................................................... 5

*Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.,*
924 F.2d 1484 (9th Cir. 1991) .................................................................................... 12

*PepsiCo v. Coca-Cola Co.,*
315 F.3d 101 (2d Cir. 2002) .......................................................................................... 8

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.,*
614 F.3d 57 (3d Cir. 2010) .......................................................................................... 14

*Spinelli v. National Football League,*
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ............................................................................ 14

*Stop & Shop v. Blue Cross & Blue Shield of Rhode Island,*
373 F.3d 57 (1st Cir. 2004) ............................................................................................ 3

*Todd v. Exxon Corp.,*
275 F.3d 191 (2d Cir. 2001) ................................................................................. 11, 12

*United States v. Apple, Inc.,*
791 F.3d 290 (2d Cir. 2015) ........................................................................................ 11

*Westchester Radiological Associates P.C. v. Empire Blue Cross & Blue Shield, Inc.,*
707 F. Supp. 708 (1989), *aff'd,* 884 F.2d 707 (2d Cir. 1989) .................................... 15

# INTRODUCTION

Plaintiff AHS's Opposition confirms that its antitrust claims should be dismissed. To prevail on its motion, AHS must point to well-pleaded factual allegations, *in its current Complaint*, establishing a plausible antitrust claim. It cannot and has not. Instead, AHS lards up its Opposition with playground insults and conclusory assertions, arguing that at this stage the Court must blindly accept whatever conclusory assertion AHS makes—and regardless of whether it was ever pled in the Complaint. Perhaps nowhere is this more apparent than in AHS's insistence that MultiPlan is a horizontal competitor with its payor-clients that insure out-of-network ("OON") patients seen at AHS hospitals. At the outset of its Opposition, AHS drops a footnote in which it fabricates a definition for the word "payor" that includes both MultiPlan and its payor-clients. From there, it relies on the fact that MultiPlan and MultiPlan's clients are all "payors" as proof they are horizontal competitors. That is textbook *ipse dixit* which the Court need not credit. And the insistent, strident references to MultiPlan's "admissions" that it competes with its payor-clients as to separate, distinct and irrelevant PPO *in-network* issues is equally unavailing. Playing the same discordant notes, only louder, does not make a good song. The simple truth is that AHS can never allege that MultiPlan is a health insurance plan covering a single out-of-network patient at an AHS hospital. That fundamental marketplace reality dooms AHS's claims.

AHS's theories of liability are without merit, and the Court should decline AHS's invitation to contort antitrust law to interfere with pricing dynamics in the complex healthcare industry.

*First*, AHS does not adequately plead that MultiPlan's service contracts with its 700+ payor-clients constitute a *per se* horizontal conspiracy. MultiPlan's longstanding contracts— which involve the sale of MultiPlan's tools and services to its downstream clients—are strictly vertical arrangements and not *per se* illegal. Try as it might, AHS cannot obscure the fact that MultiPlan's OON cost-management business at issue here is just not the same thing as an insurance

plan's business of accepting premiums, bearing risk, and insuring patients—and pleading that the sun really rises in the west is not something this Court must accept as true under law.

*Second*, AHS fails to plead sufficient direct or circumstantial evidence of an agreement among MultiPlan's payor-clients and, therefore, cannot establish the "rim" of its alleged hub-and-spoke conspiracy. Despite telling this Court just months ago that this case was a "rarity in antitrust litigation" because AHS had "direct evidence" of illegal agreements (stated multiple times in its Complaint), AHS has now awkwardly admitted that no such evidence exists. And AHS does not allege circumstantial evidence of parallel conduct and "plus factors" that suggest MultiPlan's payor-clients were doing anything other than acting in their unilateral self-interest to lower their payments (and their covered patients' payments) to a provider like AHS, which is admittedly charging substantially higher prices than Medicare or in-network for the same medical services.

*Third*, AHS fails to properly plead a rule of reason antitrust claim. AHS cannot plausibly allege that each of MultiPlan's bilateral agreements with its payor-clients harmed competition in any relevant market, because no court has ever recognized a relevant market like the unsupported "OON reimbursements" market AHS proposes. And even if AHS had alleged a proper market, it fails to allege facts showing that each bilateral agreement between MultiPlan and its payor-clients is an unlawful restraint of trade or had an adverse effect on competition in any relevant market. Moreover, AHS fails to establish that its inability to obtain supracompetitive prices for its OON services (admittedly charged to patients at far above the Medicare or contracted in-network rates it receives for the same services), is the type of injury antitrust laws were meant to prevent.

Accordingly, MultiPlan respectfully requests that the Court dismiss AHS's Complaint.

## ARGUMENT

### A. AHS Does Not Adequately Plead A Per Se Horizontal Conspiracy Theory

Whether a plaintiff's allegations "comprise a per se claim is normally a question of legal characterization that can often be resolved by the judge on a motion to dismiss." *Stop & Shop v.*

*Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004) (citation omitted).  Countless courts have dismissed Section 1 claims where plaintiffs' allegations fail to justify *per se* analysis.  *See*, *e.g.*, *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 373–75 (S.D.N.Y. 2022); *2238 Victory Corp. v. Fjallraven USA Retail, LLC*, 2021 WL 76334, at *6 (S.D.N.Y. Jan. 8, 2021); *Gibson v. MGM Resorts Int'l*, 2023 WL 7025996, at *3 (D. Nev. Oct. 24, 2023).

AHS baldly asserts that MultiPlan's service contracts with its payor-clients are *per se* illegal because the companies are horizontal competitors.  However, courts determine whether a restraint is horizontal or vertical not by crediting conclusory assertions, but by analysis and reference to the parties' relationship in the agreement at issue.  *See, e.g., Bus. Elecs. Corp. v. Sharp Elecs. Corp.,* 485 U.S. 717, 730–31 (1988); *2238 Victory Corp.*, 2021 WL 76334, at *3–5; *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 713 F. Supp. 2d 286, 290 (S.D.N.Y. 2010).

Such substantive analysis shows that AHS's assertions of a "horizontal conspiracy" are meritless.  Through its service agreements, MultiPlan sells products and services to its payor-clients which help those clients calculate reasonable OON reimbursements.  Compl. ¶¶ 69–72, 84.  MultiPlan and its payor-clients occupy vastly different roles in this relationship, and AHS does not plausibly allege that MultiPlan competes on a purely horizontal level in any relevant respect with those payor-clients.  For instance, AHS has not alleged that MultiPlan directly reimburses providers for OON services, or buys cost-management tools, or that AHS ever submitted a claim for OON reimbursement directly to MultiPlan.  *See* Mot. at 15, ECF No. 65.  As a result, these are strictly vertical agreements, subject to the rule of reason.  *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87, 899, 907 (2007).  AHS's responses do not counsel otherwise.

*First*, in an attempt to create a horizontal relationship between MultiPlan and its clients, AHS defines them both as "payors" in a footnote attached to its first non-pejorative sentence.  *See* Opp'n at 1 n.1; Compl. ¶ 2 n.1; *cf. First & First, Inc. v. Dunkin' Donuts, Inc.*, 1990 WL 36139, at

*90 (E.D. Pa. Mar. 27, 1990) (courts "reject[] self-serving efforts to define away competition"). This fails. Though MultiPlan's clients are "payors" of OON services to the extent that they owe an obligation to their plan members to pay AHS some portion of the hospital bill for OON services rendered by AHS at its facilities, MultiPlan is not. MultiPlan does not collect premiums or insure a single patient. MultiPlan does not administer health benefit plans. MultiPlan does not ever owe AHS any amount for the services AHS provides. MultiPlan is allegedly a "payor" only because AHS uses that term to broadly refer to all "entities engaged in pricing OON reimbursements to healthcare providers…." Opp'n at 1 n. 1. At most that's a parlor trick, and a bad one at that.

*Second*, AHS repeats that, absent the alleged restraint, MultiPlan would be incentivized to compete with payors to provide greater compensation for OON services. *Id.* at 3–4, 14–15, 30 n.19. But that argument makes no sense because MultiPlan does not owe AHS compensation for anything. Again, there is no allegation that Multiplan itself insures, sponsors, or administers health plans covering any OON patients seen by AHS.

*Third*, AHS tries to manufacture a horizontal competitor relationship using cherry-picked statements from MultiPlan's SEC filings. This "but you said it!" argument essentially maintains that because MultiPlan calls some of its payor-clients "competitors" in a portion of those filings, it is an admission of an overall horizontal competitor relationship (and thus a *per se* antitrust violation) in all potential contexts. That argument obviously does not hold—and it is also unfortunately misleading: MultiPlan distinguishes clearly in those SEC filings between competitors of its "Analytics-Based Services," which pertain to the cost-management services at issue in this case, and competitors of its "Network-Based Services," which pertain to PPO networks. *E.g.*, MultiPlan Annual Report at 19 (Form 10-K) (Mar. 1, 2023), https://shorturl.at/tuE46. AHS focuses only on MultiPlan's discussion of PPO network competitors in those filings, ignoring that MultiPlan does not identify a single alleged co-

conspirator or payor-client as a competitor for its analytics based services. *See id.*; Compl. ¶ 55; *see also Floyd v. Amazon.com, Inc.*, 2023 WL 3891973, at *3 (W.D. Wash. June 8, 2023) ("While the Defendants may be horizontally situated in other circumstances, this does not automatically place all their dealings—particularly, their vertical ones—into a *per se* context.").

In short, AHS cannot create, through self-serving definitions or selective and misleading quotations, a "horizontal competitor" relationship that does not exist in the real world. *See* Opp'n at 3; *cf. First & First*, 1990 WL 36139, at *90. And this Court would not be the first to reject such a spurious claim. Another court in this Circuit recently held that MultiPlan ***does not*** compete with its payor-clients, and any services between it and its payor-clients relating to OON reimbursements do not constitute a horizontal conspiracy. *Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y., Inc.*, 2023 WL 8096909, at *6 (E.D.N.Y. Nov. 21, 2023). AHS's attempts to distinguish this case from that decision, Opp'n at 16-17, are wholly unavailing.[1]

So what then is the Court to make of the fact that AHS includes so many allegations and arguments about MultiPlan and some subset of its payor-clients competing in their PPO network businesses? These only further solidify why AHS has no *per se* horizonal conspiracy claim against MultiPlan—and lend color to the sleights of hand AHS is engaged in. As the Court knows, AHS has expressly disclaimed that this case is about *in-network* pricing. Compl. ¶ 7 n.2; Pl.'s Letter at 2 n.2, ECF No. 35; Opp'n at 19 n.13. It has to—because as MultiPlan has now made clear numerous times, if AHS is bringing any claims regarding in-network issues, those matters must be brought to arbitration. *See* Def.'s Letter at 2 n.1, ECF No. 34; Mot. at 12 n.4. AHS weakly claims

---

[1] AHS also proposes for the first time in its Opposition that MultiPlan's payor-clients were at least *potential* competitors of MultiPlan for the provisioning of claims repricing tools. *See* Opp'n at 15 (citing Compl. ¶¶ 199-207). This unpled conclusory assertion is improper. *See Milligan v. GEICO Gen. Ins. Co.*, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022). Moreover, AHS cannot claim that any payor other than UnitedHealth had the intent or ability to design an in-house repricing solution, which is fatal. *See Engine Specialties, Inc. v. Bombardier Ltd.*, 605 F.2d 1, 9 (1st Cir.1979); *cf. Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 57–58 (S.D.N.Y. 2009).

that because MultiPlan raised this issue in a footnote in its initial letter to the Court and in its motion to dismiss, it is somehow not properly before the Court. Opp'n at 40 n.23. Not so. AHS does not want this Court to know that, despite its over-the-top, ad hominem attacks on MultiPlan, **_AHS actually has over two dozen in-network, PPO contractual agreements with MultiPlan that mandate arbitration of any dispute_**. So if, in fact, it is deemed that MultiPlan's PPO business is relevant to this case in any respect, this matter may well be properly sent to arbitration.[2]

Moreover, under settled law, the fact that MultiPlan has a separate PPO business means that the relationship between MultiPlan and its payor-clients are, at most, hybrid relationships with both horizontal and vertical aspects. *Elecs. Commc'ns Corp. v. Toshiba Consumer Prods., Inc.*, 129 F.3d 240, 243 (2d Cir.1997) (manufacturer's practice of distributing product both independently and through a distributor involved both vertical and horizontal components). Such hybrid relationships "must be evaluated under the rule of reason." *Gatt Commc'ns, Inc. v. PMC Assoc., L.L.C.*, 2011 WL 1044898, at *2 (S.D.N.Y. Mar. 10, 2011), *aff'd on other grounds*, 711 F.3d 68 (2d Cir. 2013); *see also* Mot. at 15–16. AHS cites no legal support for its claim that a hybrid relationship *only* exists where manufacturers and distributors sell a product in the same distribution chain. *See* Opp'n at 16. In fact, a hybrid relationship still exists even where a defendant offers different products at two distinct levels of distribution. *See, e.g.*, *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d at 374–75 (dismissing Section 1 claims where Google "operat[ed] at two different levels of distribution" providing an "in-app mediation tool for developers" at one level and operating an "in-app network" at another).

---

[2] To be clear, MultiPlan believes AHS's claims are entirely about MultiPlan's OON tools and services, which would not implicate MultiPlan's two-dozen+ contractual PPO agreements with AHS. AHS has said the same—Compl. ¶ 7 & n.2; Letter at 2 n.2, ECF No. 35; Opp'n at 19 n.13— and cannot now have its cake and eat it too. But should AHS's allegations regarding MultiPlan's in-network business be considered, MultiPlan expressly reserves the right to move to compel arbitration on that ground, or under any agreements AHS may have with MultiPlan's payor-clients.

The decision in *In re WellPoint, Inc. Out-of-Network "UCR" Rates Litigation* does not mandate a different result. In *WellPoint*, the court considered whether the plaintiffs had adequately alleged the existence of an illegal agreement, and observed that "[m]ere allegations of parallel conduct will not suffice." 865 F. Supp. 2d 1002, 1025 (C.D. Cal. 2011) (citations omitted). The court noted the specific involvement of all parties in the development and oversight of the repricing tool in question, including multiple conspirators sitting on an "Advisory Committee" and a "Liaison Committee" that decided which data the tool would collect and how that data would be used. *Id.* at 1025–26. In those roles, the defendants also came to an agreement to "allow data suppliers to submit flawed and inadequate data." *Id.* at 1027 (citation omitted). The plaintiffs in *WellPoint*, therefore, plausibly alleged more than just a series of individual vertical agreements to use a third-party repricing service—they populated their complaint with well-pled allegations demonstrating that the defendants acted from the outset in a coordinated manner to develop a pricing tool, which they populated with flawed data, and then used to reprice claims. *Id.*

AHS, on the other hand, pleads a restraint that arises only out of MultiPlan's bilateral agreements with its payor-clients to use MultiPlan's repricing products. AHS does not allege that MultiPlan's clients oversaw the development of MultiPlan's repricing products or had any say in how MultiPlan gathered or used data or how its pricing products should function. The decision in *WellPoint* is inapposite, and AHS fails to plausibly allege a purely horizontal agreement.[3]

---

[3] AHS also asserts that by MultiPlan telling the Court that its OON and PPO business are separate, (1) MultiPlan is really asking the Court to believe MultiPlan's own counter-narrative and not the allegations of the Complaint, and (2) "MultiPlan does not have two separate businesses" relevant to the analysis because it has "no separately incorporated business, no separate board of directors, no separate financial statements, and no separate executive team." Opp'n at 18–19. These assertions are meritless. On the latter, antitrust analysis does not turn on the formalities of whether each line of business is "separately incorporated" but on actual realities, and AHS can cite to nothing in support of its absurd principle. On the former, MultiPlan's SEC filings, cited in AHS's Complaint, are judicially noticeable—and reveal how misleading AHS's statements are.

**B.    AHS Fails To Allege Direct Or Circumstantial Evidence From Which The Court Can Infer A Plausible Hub-and-Spoke Conspiracy**

AHS has not plausibly alleged that MultiPlan's 700+ payor-clients conspired with each other to establish a "rim" to the conspiracy. Despite alleging that there is "direct and unambiguous evidence" of an agreement, Compl. ¶ 83, and stating in its pre-motion letter that in a "rarity" for antitrust litigation, AHS "has direct evidence at the pleading stage of illegal agreements between MultiPlan and its competitors to suppress reimbursement payments," ECF No. 35 at 1, AHS now concedes that it has not alleged direct evidence of any agreement among MultiPlan's clients to form the conspiracy, Opp'n at 22-23. AHS also fails to plead sufficient circumstantial evidence of parallel conduct and "plus factors" to support the inference of a conspiracy. AHS's second cause of action should thus be dismissed. *See PepsiCo v. Coca-Cola Co.*, 315 F.3d 101,109-10 (2d Cir. 2002) (per curiam); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 376 (S.D.N.Y. 2016).

**1.    AHS Fails To Allege Parallel Conduct**

Under AHS's theory of conspiracy, AHS cannot plead parallel conduct without alleging near-simultaneous action by the conspirators, which it fails to do. AHS asserts that it would be against each client's self-interest to use MultiPlan's OON products absent coordination, because independent action would risk "serious harm to the value and breadth of [the payor's] insurance offering" and would "expose a health insurance network to significant time and cost expenditures associated with repricing negotiations." Compl. ¶¶ 189–90. But AHS does not allege that some critical mass of payors entered into agreements with MultiPlan at around the same time to avoid those consequences. Instead, AHS alleges the 700+ co-conspirators purchased some form of MultiPlan's services in dribs and drabs over a 17-year period. AHS does not cite a single case where allegations of piecemeal parallel conduct spread over a 17-year period were deemed plausible, let alone in a situation where it was alleged that independent assent by a co-conspirator would have subjected it to "serious harm." *See* Opp'n at 23–24. This is fatal. *See Gibson*, 2023

8

WL 7025996, at *4 (plaintiffs failed to plead allegations that would allow the court to "plausibly infer that all [defendants] began using particular pricing software at or around the same time.").

Moreover, AHS fails to allege any synchroneity between the behavior of MultiPlan's payor-clients: it does not put forth any well-pled allegations that the members of the alleged conspiracy used the same tools or the same formulas when repricing their claims. *See* Compl. ¶¶ 63, 68, 70, 76, 85, 100–108. Despite claiming that MultiPlan's clients arrived at "nearly identical pricing" for reimbursements, *see* Opp'n at 24, the only allegation AHS pleads that even touches on this issue is one instance in which subsidiaries of but one alleged co-conspirator, UnitedHealth, allegedly paid identical reimbursements for a particular procedure across jurisdictions. *See* Compl. ¶¶ 34, 133; First. Am. Compl. at 29–30, *Emergency Grp. of Ariz. Pro. Corp. v. United Healthcare Inc.*, No. 19-cv-4687 (D. Ariz. Aug. 9, 2019), ECF No. 18. That is not enough.

### 2. AHS Fails To Allege Sufficient Evidence Of "Plus Factors"

AHS has not alleged any "plus factors" that suggest the alleged co-conspirators' actions were "largely inconsistent with unilateral conduct." *See In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015). Observed as a whole, AHS's "plus factors" evince nothing more than insurance plans rationally seeking to negotiate the lowest price for OON reimbursements. The Court should not infer a conspiracy based on acts that "made perfect business sense." *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013).

**Opportunities To Conspire.** In its Opposition, AHS mischaracterizes its own allegations in an attempt to bolster its deficient claims. *See* Opp'n at 29. AHS asserts that MultiPlan's co-conspirators "exchange secret white papers." *Id.* But AHS's Complaint only alleges that MultiPlan provides white papers to its payor-clients, not that they share those with each other. *See* Compl. ¶¶ 8, 77, 114. Ultimately, AHS relies on trade association and industry events as

opportunities to conspire, which are not sufficient to establish an unlawful agreement. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 466 (2d Cir. 2019).

**Common Motive To Conspire.** AHS acknowledges that "the less that MultiPlan and its co-conspirators pay on OON claims, the more money" they receive. Opp'n at 29. That only demonstrates that MultiPlan's payor-clients had a common desire to keep their reimbursement payments for OON services low. The common motive to increase profits "always exists" and "does not suggest an agreement." *Musical Instruments*, 798 F.3d at 1194–95 & n.8.

**Actions Against Self-Interest.** AHS offers no meaningful response to the fact that it was in every payor's self-interest to respond to market forces and work with a company that was saving payors—and their clients—billions of dollars each year. Opp'n at 30; Compl. ¶ 13. AHS merely doubles down on its claim that it would be against a payor's unilateral self-interest to cut OON reimbursements because providers could push back on those unilateral cuts. Opp'n at 30. But AHS does not respond to MultiPlan's other arguments or explain why it would make economic sense for a payor to overpay a provider for OON services and thereby reward that provider for its decision not to join the payor's network and set prices artificially high. *See* Mot. at 25–26.

**Information Sharing.** AHS has not plausibly alleged that MultiPlan provides any of its clients with actual confidential information of any other payor-client in any identifiable way, or that a payor-client can use MultiPlan's cost-management products and services to ascertain the confidential claims information of any other payor-client. AHS alleges information sharing via algorithmic technologies, which is insufficient to raise inference of a conspiracy. *See id.* at 26; *Gibson* 2023 WL 7025996, at *6; *In re Loc. TV Advert. Antitrust Litig.*, 2022 WL 3716202, at *2–3, 6–8 (N.D. Ill. Aug. 29, 2022). AHS only cites one case on this point, Opp'n at 30, which actually undermines its argument. The court in *Todd v. Exxon Corp.* distinguished price exchanges that identified "parties, transactions, and prices"—which were "seen as potentially anticompetitive"—

10

from information that is "aggregated" so to avoid "transactional specificity." 275 F.3d 191, 212 (2d Cir. 2001). AHS has not alleged that MultiPlan ever provided its payor-clients information that identified "parties, transactions, and prices" or had any "transactional specificity." *See id.*

**Market Concentration, Barriers To Entry, And Prior Collusion.** Finally, AHS's basic allegations about market structure are not a sufficient basis to infer a conspiracy. *See Sanderson Farms*, 944 F.3d at 466 (allegations as to "the general structure of the poultry market" insufficient).

For these reasons, AHS has not come close to plausibly alleging a conspiracy akin to that in *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015). *See* Opp'n at 27–28. The conspiracy in *Apple* involved "near-simultaneous signing of Apple's Contracts by multiple publishers," whereas AHS alleges that MultiPlan's payor-clients began using its repricing products and services sporadically over a 17-year period. *See Apple*, 791 F.3d at 318. In *Apple*, the publisher defendants were "in constant communication regarding their negotiations with both Apple and Amazon," but AHS does not include any well-pled allegations of communications among MultiPlan's payor-clients. *See id.* The conspirators in *Apple* were offered "identical terms" in their contracts, whereas here AHS does not plausibly allege that each co-conspirator even used the same product or formula to reprice their claims. *See id.* Finally, the United States in *Apple* demonstrated that each publisher "stood to make *less* money per sale" under their agreement with Apple, and therefore it was against their self-interest to enter into those agreements. *See id.* at 316. AHS, on the other hand, does not allege a plausible explanation why it would be against MultiPlan's payor-clients' self-interest to enter into agreements that would lower their costs. Common sense dictates the opposite.

## C. AHS Fails To Plead The Necessary Elements Of A Rule Of Reason Claim

Because AHS fails to plausibly allege (i) a properly defined antitrust market, (ii) anticompetitive conduct, and (iii) adverse effects on competition, its vertical conspiracy claim, under the standard rule of reasons analysis, must also be dismissed.

11

### 1. AHS Fails To Plead A Properly Defined Antitrust Market

AHS's commercial OON reimbursements market is not a proper market. No court has found a standalone market for the sale or purchase of "reimbursements" in any comparable case.[4] Because AHS alleges an implausible, contrived market limited to OON reimbursements without explaining why it omits potential substitutes, the court should dismiss its vertical conspiracy claim outright. *See Todd*, 275 F.3d 191 at 200 (dismissal is warranted if a plaintiff fails to articulate "a plausible explanation as to why a market should be limited in a particular way" or improperly limits the market to a single entity or subset of entities that compete with potential substitutes).

A relevant market must be defined around a product or service that may be bought or sold, not the results of one-on-one negotiations between AHS and a payor that occur *after* the sale of medical services and *after* the provider has set (and billed) the price for those services. *See Morgan, Strand, Wheeler & Biggs v. Radiology, Ltd.*, 924 F.2d 1484, 1489 (9th Cir. 1991) (physician referrals not a relevant market because "nothing in the record suggests that the referrals as such are ever sold"). Here, there is no allegation that any insurer competes with any other insurer, or MultiPlan, for the ability to make or reprice an OON reimbursement.

The Ninth Circuit's decision in *Epic Games, Inc. v. Apple Inc.* does nothing to disturb this analysis. *See* Opp'n at 33. In *Epic*, the issue was not whether the market involved a product that could not be bought or sold, but rather whether a market can be defined around a product that could be but is not sold. 67 F.4th 946, 978–79 (9th Cir. 2023) (plaintiffs plausibly alleged a market for

---

[4] Every one of the cases AHS cites as proof that courts recognize reimbursements markets actually involved markets for products or services. *See* Opp'n at 34–35; *Todd*, 275 F.3d at 199–200 (market for "services of . . . (MPT) employees"); *In re Delta Dental Antitrust Litig.*, 484 F. Supp. 3d 627, 632 (N.D. Ill. 2020) (market for "dental insurance"); *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2797267, at *5 (N.D. Ala. June 28, 2017) (markets for "health insurance," and for "goods and services from healthcare providers"); *FTC v. Sanford Health*, 2017 WL 10810016, at *11 (D.N.D. 2017) (market for physician services), *aff'd*, 926 F.3d 959 (8th Cir. 2019); *Methodist Health Srvs. Corp. v. OSF Healthcare Sys.*, 2015 WL 1399229, at *7 (C.D. Ill. Mar. 25, 2015) (markets for inpatient and outpatient services).

Apple operating systems, even though Apple does not license or sell those operating systems to others), *cert denied*, 2014 WL 156473 (U.S. 2024). Because AHS defines its market around "reimbursements," which cannot be bought or sold, it has not alleged a plausible relevant market.

In a last ditch effort to save its Complaint, AHS now argues that it is locked into an "aftermarket" for OON reimbursements. Opp'n at 36. But AHS does not once refer to its reimbursements market as an aftermarket in its Complaint, let alone allege the necessary elements of such a market. Even so, AHS's argument misunderstands the nature of aftermarkets altogether. Aftermarkets are secondary markets for separate *products or services* that a purchaser is locked into by means of their foremarket purchase. *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 344 (E.D.N.Y. 2019). There is no such thing as an aftermarket for the method of paying for—or in this case being reimbursed for—the foremarket purchase. Indeed, every time any product or service is bought or sold, the parties to that transaction are locked into dealing with one another. That is not grounds for defining a market around the *payment* for the relevant transaction at issue (the provision of medical services), as AHS asks the Court to do here. No court has done that. And it would take the concept of an antitrust aftermarket—which for decades has been construed very narrowly, as a limited exception to the standard rules regarding antitrust markets, and magnify it so that an "aftermarket" could exist with respect to any payments made later in time to an underlying transaction. That AHS asks the Court to do this, with no basis, only further exemplifies that they are seeking to expand antitrust law howsoever they can, simply to get back to a time when they were able to command supracompetitive profits.

Finally, even if AHS were to redefine its alleged market as a market for the purchase of AHS's services by commercially-insured patients reimbursed on an OON basis, it has not pled sufficient non-conclusory allegations to survive dismissal. AHS fails to allege why, for example, its proposed market excludes uninsured patients paying out of pocket, patients insured by HMOs,

and patients insured by in-network plans, all of whom AHS concedes buy its services. *See* Compl. ¶¶ 2-3, 140, 243. Because these patient-buyers are reasonable substitutes for each other from AHS's perspective as a seller, AHS cannot exclude them from its proposed market without plausible explanation for doing so. *See City of N.Y. v. Grp. Health, Inc.*, 649 F.3d 151, 154-56 (2d Cir. 2011); *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596-98 (8th Cir. 2009); *BCBSM., Inc. v. GS Labs*, LLC, 2023 WL 2044329, at *17-18 (D. Minn. Jan. 30, 2023); *Marion Healthcare LLC v. S. Ill. Healthcare*, 2013 WL 4510168, at *10 (S.D. Ill. Aug. 26, 2013).

### 2. AHS Fails To Allege That MultiPlan's Conduct Was Anticompetitive

Insurance plans' choice to move their business away from legacy databases to MultiPlan was a lawful exercise of those clients' "freedom to switch suppliers" that "lies close to the heart of the competitive process that the antitrust laws seek to encourage." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 116 n.16 (S.D.N.Y. 2015) (citation omitted). In its Opposition, AHS does not contest that MultiPlan's payor-clients were free to switch suppliers and to choose whether or not they would rely on MultiPlan's recommendations. AHS only points to its allegation that *healthcare providers* accept 99.4% of OON claims for inpatient treatment that are repriced using Data iSight, which says nothing about the proportion of recommendations accepted and used by MultiPlan's payor-clients. Opp'n at 25; Compl. ¶ 74. Nor does AHS identify what proportion of recommendations are accepted by clients using products other than Data iSight. Each of MultiPlan's payor-clients "remain[ed] free to pick the supplier [or product] that it believes will provide the best deal." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 79 (3d Cir. 2010). That is not anticompetitive conduct.

### 3. AHS Fails To Allege That Any Single Agreement Harms Competition

Because AHS fails to allege that any *single* agreement had anticompetitive effects on the market (however defined), its vertical conspiracy claim should be dismissed. AHS argues that its

14

allegations regarding the aggregate savings MultiPlan offers its payor-clients and the aggregate market share of the alleged co-conspirators are sufficient to plausibly suggest harm to competition. Opp'n at 37–38.  But in the absence of a plausible horizontal conspiracy—which AHS has failed to allege—AHS cannot aggregate the market shares of each payor-client to demonstrate harm to competition.  *See In re Amazon.com, Inc. eBook Antitrust Litig.*, 2023 WL 6006525, at *25 (S.D.N.Y. July 31, 2023); *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 622 (S.D.N.Y. 2013).  Because AHS does not allege that *each* agreement harmed competition in the relevant market, its vertical conspiracy claim should be dismissed.

### D.     AHS Fails To Prove An Antitrust Injury

Finally, as AHS's Complaint makes clear, MultiPlan's products produce recommendations that allow providers to recover their costs and turn a profit for their OON services. Compl. ¶¶ 77– 79.  In this case, AHS is seeking the ability to obtain a price for OON services that exceeds the recovery for the same services when billed on an in-network basis or through government programs.  That is not the type of injury that the antitrust laws are meant to prevent.  *See, e.g., Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 440 (2d Cir. 2005); *Long Island Anesthesiologists* 2023 WL 8096909, at *6; *Westchester Radiological Assocs. P.C. v. Empire Blue Cross & Blue Shield, Inc.*, 707 F. Supp. 708, 717 (S.D.N.Y.), *aff'd*, 884 F.2d 707 (2d Cir. 1989).

Moreover, because MultiPlan's payor-clients have the ultimate option of whether to make OON payments informed by their use of MultiPlan's products, AHS's injury does not result from any competition-reducing effect of MultiPlan's behavior.  *See supra* Section II.C.2.  MultiPlan merely provides its clients the option to make OON payments informed by their use of MultiPlan's cost-management tools.  *Id.*  That is not a sufficient basis for antitrust injury.

## II.     CONCLUSION

For the reasons set forth above, the Court should dismiss the complaint in its entirety.

15

Dated: January 23, 2024

Respectfully submitted,

/s/ Lawrence E. Buterman
Lawrence E. Buterman
Katherine A. Rocco
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1264
Lawrence.Buterman@lw.com
Katherine.Rocco@lw.com

Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
(737) 910-7300
Sadik.Huseny@lw.com

Brendan A. McShane (*pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600
Brendan.McShane@lw.com

Anna M. Rathbun *(pro hac vice)*
Molly Barron (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
Anna.Rathbun@lw.com
Molly.Barron@lw.com

*Counsel for Defendant*