# EXHIBIT 8

300 Colorado Street, Suite 2400
Austin, TX 78701
Tel: +1.737.910.7300 Fax: +1.737.910.7301
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

**LATHAM & WATKINS** LLP

May 15, 2024

**VIA ECF**

The Honorable Judge Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

> Re: *Adventist Health System Sunbelt Healthcare Corp. v. MultiPlan, Inc.* (No. 23-cv-07031)

Dear Judge Ramos:

I write on behalf of Defendant MultiPlan, Inc. regarding the May 13, 2024 letter filed by Plaintiff in response to MultiPlan's Notice of Supplemental Authority. ECF No. 77.

MultiPlan did not offer argument or substantive analysis in its letter. By contrast, Plaintiff AHS's letter is an improper attempt to present additional argument well after the briefing closed on MultiPlan's Motion to Dismiss. AHS also misrepresents the recent order in *Gibson* and its direct parallels with AHS's own allegations, warranting a brief response:[1]

- First, the *Gibson* court engaged in an extremely detailed analysis of the 217-page amended complaint in that case, carefully parsing through the many allegations to hold, contrary to what plaintiffs there argued in briefing, the allegations insufficient to plead a price-fixing conspiracy based on the use of software and pricing recommendations. The parallel with AHS's own allegations and briefing is striking.

- Second, AHS wrongly states, as its primary argument to this Court, that the "Gibson plaintiffs alleged only vertical agreements between a pricing software provider and the users of that software." ECF 77 at 1. This is not true. The *Gibson* plaintiffs alleged the same type of hub-and-spoke conspiracy that AHS pleads in its Complaint. *See* ECF No. 76-1 at 3; ECF No. 1 ¶¶ 220–27, 319–34. Just like the *Gibson* plaintiffs, AHS alleges that a hub-and-spoke conspiracy should be inferred from a series of agreements between a software provider (here, MultiPlan) and the users of that software. *See* ECF No. 65 at 20–21. And similar to the plaintiffs in *Gibson*, AHS fails to allege any actual agreement,

---

[1] Counsel for AHS recently filed a new complaint against MultiPlan, which case has been related to this Court. *See CHS/Community Health Sys., Inc. v. MultiPlan, Inc.*, No. 1:24-cv-03544 (S.D.N.Y. May 8, 2024), ECF No. 1. That complaint raises many of the same allegations and claims as here and adds additional allegations regarding MultiPlan's "algorithmic" software. The *Gibson* decision is directly on point as to that complaint as well, as MultiPlan will set forth in detail in its filings in that case.

LATHAM&WATKINS LLP

explicit or implicit, between MultiPlan's payor-clients (*i.e.,* the "rim") to use MultiPlan's products or accept the prices recommended by MultiPlan.  *Id.* at 19–27.  AHS tells the Court none of this, but instead pivots to a central theme underlying its complaint:  this case is different because MultiPlan is really an *insurance plan* and therefore has engaged in a per se "horizontal competitor" conspiracy, requiring no further analysis.  As MultiPlan addressed in briefing, this is flatly incorrect.[2]

• Third, AHS wrongly states that the *Gibson* plaintiffs alleged that "[t]he pricing software in Gibson . . . issued mere pricing 'recommendations.'"  This is not true either.  In fact, plaintiffs in *Gibson* alleged that users of Cendyn's software accepted the pricing recommendations "90% of the time."   ECF No. 76-1 at 14–15 (addressing plaintiffs' allegations that the software's "user interface is set up to encourage customers to accept" the pricing recommendations, and that some clients "automatically accepted" Cendyn's pricing recommendations).  These are remarkably similar allegations to what AHS pleads repeatedly in its complaint here:  that MultiPlan provides pricing "recommendations" to its payor-clients.  ECF No. 1 ¶¶ 71–73, 113, 124, 234, 305, 325.  And AHS does not dispute that MultiPlan's payor-clients are both free to switch suppliers and to *ultimately choose* whether or not they rely on MultiPlan's pricing recommendations.  *See* ECF No. 75 at 14.

• Fourth, AHS wrongly states that the *Gibson* plaintiffs alleged "[t]he Gibson defendants... provided only *publicly-available* information to a third-party software company."  ECF No. 77 at 1.  This, too, is not true.  The *Gibson* plaintiffs repeatedly alleged that casino hotels provided their confidential information to Cendyn—but *failed* to allege that any individual casino defendant "gets direct access to the confidential information of another" aside from benefitting from a system that "has run on the confidential data of many others."  ECF No. 76 at 10–11.  Like the *Gibson* plaintiffs, AHS does not plausibly allege that MultiPlan provides its clients with actual confidential information of any other payor-client in any identifiable way or that any payor client may use MultiPlan's cost management products and services to ascertain the confidential claims information of any other payor client.  ECF No. 65 at 26; ECF No. 1 ¶ 210.

Respectfully submitted,

*/s/ Sadik Huseny*
LATHAM & WATKINS LLP
 Sadik Huseny (admitted pro hac vice)

cc:      All counsel of record (via ECF)

---

[2] AHS states in a footnote that MultiPlan's conduct is "so obviously illegal and anticompetitive," citing as support New York Times articles and a subsequent letter sent from Senator Klobuchar to the DOJ and FTC.  But even these materials, which are irrelevant to this proceeding and do not address that it is actually providers like AHS who charge patients supra-competitive pricing for out-of-network medical services, do not remotely embrace the falsehood that MultiPlan is really a health insurance plan and thus a "horizontal competitor" with the health insurance plans who insure patients seen at AHS facilities.