IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION**<br><br>This Document Relates to:<br>All Cases | Case No. 1:24-cv-7825<br><br>Master Case File No. 1:24-cv-6795<br><br>MDL No. 3121<br><br>Hon. Matthew F. Kennelly<br><br>**PLAINTIFF PACIFIC INPATIENT MEDICAL GROUP'S APPLICATION FOR APPOINTMENT OF JASON S. HARTLEY OF HARTLEY LLP AS INTERIM LEAD COUNSEL AND KATRINA CARROLL OF LYNCH CARPENTER LLP AS LIAISON COUNSEL** |

Plaintiff Pacific Inpatient Medical Group Inc., ("PIMG" or "Plaintiff"), respectfully requests an Order appointing Jason S. Hartley of Hartley LLP as Interim Lead or Co-Lead Class Counsel. He is supported in his application by Laura C. Fellows of Paul LLP, Christopher K.L. Young of Joseph R. Saveri Law Firm, LLP, and Katrina Carroll of Lynch Carpenter LLP, firms of diverse attorneys with whom he has successfully resolved myriad antitrust class actions in the past. Plaintiff also requests Ms. Katrina Carroll, who has practiced in Chicago for almost 20 years, be appointed as Class Plaintiffs' Liaison Counsel.

**I.  THE RULE 23(G)(1)(A) CRITERIA SUPPORT PIMG'S CHOICE TO SERVE AS INTERIM LEAD COUNSEL IN THIS COMPLEX ANTITRUST MATTER**

As discussed more fully below, Mr. Hartley is best qualified to serve as Interim Lead Counsel in this litigation under the four mandatory criteria prescribed in Rule 23(g)(1)(A)[1]:

**Work Done to Investigate Claims.** Mr. Hartley has accomplished the most for the class by comprehensively investigating the probative facts and placing them into a compelling legal framework. His knowledge of the available facts and sources is demonstrated by the complaint he filed, Case: 1:24-cv-07825, (the "PIMG Complaint"), which is the most fulsome pleading submitted to date. In particular, unlike others, the PIMG Complaint specifically confronts a California state court's dismissal last month of similar claims against MultiPlan. The PIMG Complaint is based on legal theories that address the concerns raised by that court's reasoning. In addition, Mr. Hartley received the benefit of an expert economist with experience in the healthcare and insurance fields in helping to formulate the allegations.

**Class Action Experience.** Mr. Hartley has extensive experience as lead counsel in numerous and varied antitrust class actions, including trial practice and litigation of complex antitrust class cases and cases challenging similar conspiracies.

**Knowledge of Antitrust and Class Action Law.** Mr. Hartley's command of antitrust and class action law as a frequent speaker and author—in particular, the Sherman Act—is widely recognized by his peers and the bench. Mr. Hartley has also received various awards and commendations for his demonstrated proficiency in the substance, procedure, and practice of antitrust class action law.

---

[1] This brief also addresses the criteria set forth in the Court's Case MDL Management Order No. 1 at paragraph 11, ECF No. 4.

1

**Commitment of Resources.** Mr. Hartley has consistently committed, and is ready and able to commit here, whatever resources are necessary to zealously represent the shared interests of Plaintiff and the class.

**Other Considerations.**

Rule 23(g)(1)(B) invites the Court to consider any other matter bearing on Mr. Hartley's "ability to fairly and adequately represent the interests of the class." Foremost among these considerations for Mr. Hartley is his acknowledged skill for working cohesively with other counsel. In fact, as described herein, Mr. Hartley has the support of other similarly experienced counsel in bringing this application. Mr. Hartley welcomes the opportunity to work here with other firms with whom he has litigated other significant antitrust class actions.

Another consideration here is that this is not a "proprietary" case to which any of the attorneys seeking appointment as Interim Class Counsel can lay any special claim. Accordingly, the Court should not give undue importance to early-filed class complaints; a "race to the courthouse" should not be encouraged when the relevant facts lie in the public domain—many explicitly conceded by MultiPlan and its co-conspirators. Hartley LLP did not race to file PIMG's case, but took time to conduct its due diligence to bolster its complaint in ways no other plaintiff has.[2]

Finally, PIMG's leadership proposal here is efficient. While Mr. Hartley is known for his collaborative case management, the fact remains that a smaller leadership structure has the advantage of better avoiding duplicative efforts and presents a single voice answerable to the Court and counsel.

In summary, all of the Rule 23(g) criteria guiding the Court's selection of Interim Lead Counsel support Mr. Hartley's appointment. More detailed attention to these factors follows.

A.  **Hartley LLP's Investigatory Work Supports Its Appointment as Interim Lead Counsel**

The first category listed in Rule 23(g)(1) is "the work counsel has put into identifying and investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). Prior to filing, Hartley LLP

---

[2] The District Court in *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780 (N.D. Ill. 2000) emphasized the insignificance of the filing order of complaints in choosing class counsel. There the court observed: "the winner in a race to the courthouse is not entitled to any special consideration . . . ." *Id*. at 789 n.12.

2

engaged in substantial investigatory efforts that informed particularized and thorough pleading.

For example, this investigation included analyzing SEC filings; press accounts of possible anticompetitive behavior; MultiPlan's website; materials apparently authored by MultiPlan as part of an associated industry group; a business consultancy's analysis of the market for out-of-network healthcare services; the steps taken by the Centers for Medicare and Medicaid Services ("CMS") in assigning Medicare pricing for healthcare procedures; testimony provided in other matters, including during deposition and at trial involving Defendant Payors, Insurer Co-Conspirators, or MultiPlan; MultiPlan investor presentations and transcripts; and proprietary methodology materials authored by MultiPlan.

A key differentiating factor from other complaints filed this MDL is Hartley LLP's analysis of the August 9, 2024 Order Sustaining MultiPlan Defendants' Demurrer to Plaintiff's First Amended Complaint in *VHS Liquidating Trust v. MultiPlan Corp., et al.,* No. CGC-21-594966 (S.F. Super. Ct.) ("Demurrer Order") (attached hereto as Exhibit A). Unlike most, if not all, of the other complaints filed in this now-consolidated matter, PIMG's complaint addresses the apparent deficiencies identified in the Demurrer Order.[3]

As part of the Demurrer Order, the San Francisco Superior Court in *VHS Liquidating Trust* "agree[d]" with the defendants' argument "that price-fixing liability cannot attach here in the absence of 'a discrete product (or service) that can be bought and the price of which can be fixed through an unlawful agreement.'" *Id.* at 10. In acknowledging the Superior Court's determination, PIMG took care to allege that the MultiPlan healthcare services were a discrete product subject to collusive pricing, claiming: (1) that healthcare services can be assigned specific or particular prices; (2) that CMS applies pricing to numerous healthcare services for purposes of compensating healthcare providers who treat Medicare patients; and (3) that MultiPlan and the conspiring insurer payors use such Medicare pricing as a reference to collusively set pricing for out-of-network ("OON") healthcare services.

PIMG also took care to address the concerns in the Demurrer Order that "unlawful exchanges of

---

[3] Critically, as part of its determination that the plaintiff failed to sufficiently support its state-based Cartwright Act claim, the Superior Court turned "to federal authorities for guidance" addressing the Sherman Act, making the Demurrer Order in *VHS Liquidating Trust* even more deserving of consideration than it might otherwise be. *Id.* at 12.

competitively-sensitive business information" were "insufficiently connected to an explicit or tacit agreement to collusively fix prices." Demurrer Order at 17. PIMG alleges specifically that information sharing occurred between and among MultiPlan and the conspiring insurer payors pursuant to explicit or tacit agreements to fix and/or artificially suppress payments for OON healthcare services, as supported by Multiplan's own SEC disclosures and its relationships and contracts with payors. Accordingly, PIMG alleges that the exchange of competitively-sensitive information occurred pursuant to express or tacit agreements to collusively fix or suppress payment amounts issued to healthcare providers for performing OON healthcare services. As such, benefitting from the analysis included within the Demurrer Order, PIMG plausibly alleges how MultiPlan and the conspiring insurer payors could and did fix and collusively suppress prices for OON healthcare services in violation of the Sherman Act. These allegations will be important to withstanding Defendants' expected Rule 12(b)(6) motions.

PIMG's complaint also includes certain allegations that no other filer appears to have included in their respective complaints. For example, PIMG alleges that "clusters" of products or services can make up a relevant market, which is pertinent in this matter involving hundreds if not thousands of Current Procedural Terminology ("CPT") coded, out-of-network healthcare procedures.[4] In addition, Plaintiff specifies and supports at least one of the incentives that insurer payors have for paying out-of-network healthcare providers. This plausibly explains not only that the alleged conspiracy happened, but *why*. In its complaint, PIMG alleges that the insurer payors benefit in multiple ways from their OON payment suppression scheme.

Finally, as part of its investigation and preparation for litigating this healthcare-based antitrust class action, Hartley LLP has consulted an expert economist. This economist has substantial experience in the medical field, with specific expertise as to health insurance, and has already provided counsel valuable insight about the nuances of health care insurance billing and the industry generally. By seeking insight from a healthcare economist as part of their investigation, counsel have even greater

---

[4] Such CPT codes are used in part by CMS to identify or designate healthcare procedures, which then allow it to assign prices to those procedures for purposes of paying healthcare providers serving Medicare patients. As such, CPT codes can also be used in non-Medicare contexts, including to identify – and *price* – OON healthcare procedures.

confidence in the viability of the asserted claims and the certifiability of the proposed class.

The PIMG Complaint reflects counsel's investigatory efforts. Unlike most if not all other filers, PIMG's Complaint contemplates the San Francisco Superior Court's demurrer-related determinations, while including other differentiating allegations. Rule 23(g)(1)(A)(i) accordingly supports appointment of Mr. Hartley to lead this action.

> **B. Counsel's Experience in Handling Antitrust, Complex Litigation, and Class Actions, as Well as His Respective Knowledge of Applicable Law, Support His Appointment as Interim Lead Counsel**
>
> **1. The Experience and Applicable Knowledge of Mr. Hartley and Hartley LLP Support Counsel's Appointment as Interim Lead Counsel**

Mr. Hartley has significant litigation and trial experience with the subject matter of this litigation. Specifically, Mr. Hartley is litigating a case involving a similar scheme among hotel operators to suppress competition and maintain pricing through information sharing and use of a third party's common algorithm among competitors. *Shattuck v. SAS Institute Inc.,* Case No. 4:24-cv-03424 (N.D. Cal.), subsequently consolidated with *Dai, et al., v. SAS Institute Inc., et al.,* Case No. 4:24-cv-02537 (N.D. Cal.) ("*IDeaS/SAS*"). Mr. Hartley's prior experience with the similar subject matter in *IDeaS/SAS* makes it likely that the present case will proceed in an expeditious and comprehensively-understood manner.

Aside from that specific related experience, Mr. Hartley has broad and extensive nationwide experience as lead counsel in antitrust class actions and other complex litigation. He, along with co-counsel Joseph Saveri, was honored last month as a finalist for Attorney of the Year by Public Justice for his trial work in *In re Capacitors Antitrust Litigation*, which settled during closing argument for over $600 million - a multiple of single damages. He currently serves as co-lead counsel in *In re: Diisocyanates Antitrust Litig.,* No. 2:18-mc-01001-DWA (W.D. Pa.) (antitrust class action) and *In re: DPP Beef Litigation*, No. 20-cv-1319-JRT-HB (D. Minn.) (antitrust class action), both of which are in the late stages of discovery, thus ensuring Mr. Hartley's capacity to handle a leadership role in this litigation. He was also previously lead counsel in *In re: Urethane Antitrust Litig.,* No. 04-md-01616 (D. Kan.) (antitrust class action); *Aftermarket Automotive Lighting Prods. Antitrust Litig.,* No. 2:09-ML-2007 (C.D. Cal.) (antitrust class action)*; Fond du Lac Bumper v. Gordon, et al.,* No. 2:09-CV-0852

5

(E.D. Wis.) (antitrust class action); *Alfred T. Giuliano, et al. v. SanDisk Corporation*, No. 4:10-cv-02787 (N.D. Ca.) (antitrust class action); *Spangler, et al., v. National College of Technical Instruction, et al.*, No. 3:14-cv-03005-DMS-RBB (S.D. Cal.) (class action); *Leiszler, et al. v. Align Technologies,* No. 3:10-CV-2010 (N.D. Cal.) (class action); *see also* Hartley LLP Firm Resume, attached as Exhibit B. Mr. Hartley has also served in Executive Committee positions in multiple cases, including one of the largest antitrust cases in United States history, *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 1:05-MD-1720 (E.D.N.Y), in which a settlement of over $5.5 billion in cash finally resolved last year after 19 years of litigation. Mr. Hartley was also appointed by the District Court as part of the plaintiffs' executive committee in *In re: Packaged Seafood Products Antitrust Litig.*, No. 3:15-MD-02670 (S.D. Cal.). Judges have noted that Mr. Hartley, along with others at his firm, "ably represented their clients and vigorously pursued their case" (*Spangler v. Nat'l Coll. of Tech. Instruction*, No. 14-CV-3005 DMS (RBB), 2018 WL 846930, at *4 (S.D. Cal. Jan. 5, 2018)), and that they "are experienced in antitrust and class action litigation and have vigorously litigated this lawsuit including taking overseas depositions, arguing numerous discovery motions, reviewing voluminous discovery documents, and negotiating fair and reasonable settlements with several defendants." *Fond du Lac Bumper v. Gordon, et al.,* No. 2:09-CV-0852, ECF No. 910, at p. 12 (E.D. Wis., June 24, 2016).

      Mr. Hartley has an extensive resume. He has represented plaintiffs in antitrust class actions for 25 years, first as a partner in an 800-attorney firm. He then opened and managed the San Diego office of a sizeable plaintiffs-only firm for nine years before opening his own office. He was chosen by the Judges of the Southern District of California to serve as a lawyer representative from 2017-2023, was part of the planning committee for the ABA's Institute on Class Actions for a decade, and regularly speaks at CLE seminars and publishes articles on class and antitrust issues. He has been recognized by his peers as a SuperLawyer® each year since 2012, by Best Lawyers® in Class Actions since 2021, "Best of the Bar" by the *San Diego Business Journal* in 2017, and a "Man of Influence" by *San Diego Metro* magazine in 2019, and a Top Antitrust Attorney each year since 2021 and 2022 Top Plaintiff Lawyer by California's *Daily Journal*. Hartley LLP was the only San Diego firm awarded a "Top Boutique Law Firm" by the Daily Journal in 2021. He served on the Board of both the American

6

Association for Justice and the Consumer Attorneys of California, and has an AV rating.

Mr. Hartley has obtained notable results for his clients in numerous groundbreaking decisions and on issues of first impression in the antitrust field. For example, he obtained the first ever certification of a class of direct purchasers in a "Walker Process" antitrust claim (*Alfred T. Giuliano, et al. v. SanDisk Corporation*, Case No. 4:10-cv-02787, ECF 302 (N.D. Ca. 2015)); he obtained the first and only court-ordered denial of ACPERA protection claimed by Defendants cooperating with the Department of Justice, thus increasing three-fold the potential damages available to the plaintiff class he represented (*In re: Aftermarket Automotive Lighting Products Antitrust Litigation*, No. 09 MDL 2007–GW (PJWx), 2013 WL 4536569 (C.D. Cal., Aug. 26, 2013)); and he obtained the denial of a motion to dismiss based upon the FTAIA in a case that helped set the standard for FTAIA dismissal motions (*Fond du Lac Bumper Exchange, Inc. v. Jui Li Enterprise Co. Ltd.*, *et al.*; 753 F. Supp.2d 792 (E.D.Wis. 2010)).

For all these reasons, Mr. Hartley has the experience and knowledge of applicable law necessary to serve as interim lead counsel in this litigation.

> 2. **The Experience and Applicable Knowledge of Ms. Carroll and Lynch Carpenter LLP Support Her Appointment As Liaison Counsel**

Katrina Carroll has been managing complex class actions for over twenty years and has litigated hundreds of cases in various roles, including as court-appointed Lead and Co-Lead Counsel. She is the managing partner of the Chicago office of Lynch Carpenter LLP, a national class action firm, and Co-Chair of the firm's Executive Management Committee. In 2023, Ms. Carroll was named by National Law Journal as an Elite Woman of the Plaintiffs Bar and has been recognized by the National Trial Lawyers Association as one of the top 25 class action trial lawyers in the State of Illinois. She has years of experience speaking on various class action topics nationally and currently serves on the Advisory Board of Loyola University School of Law's Institute for Consumer Antitrust Studies.

Recently, Ms. Carroll was appointed Co-Lead Counsel by the Honorable John Z. Lee (currently a judge of the Seventh Circuit) in *In re TikTok Consumer Privacy Litig.*, 1:20-cv-04699 (N.D. Ill.), a major data privacy MDL against the popular social media app, and achieved a $92 million recovery for

7

the class. A representative sampling of Katrina's other significant cases appears in her *curriculum vitae*, attached hereto as Exhibit C.

Apart from her qualifications and wide-ranging experience, Ms. Carroll's appointment will reflect diversity of gender in keeping with recognized guidance in complex litigation. As explained in the Duke Law School Center for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs*:

> Mass-tort MDL cases affect a large and diverse group of people, and ensuring diversity in the leadership of the cases will enhance public trust in the courts and will improve the likelihood of consideration of diverse ideas and perspectives that MDL's require. Litigants and the civil justice system benefit from diversity of leadership. Indeed, the same way that diversity improves companies' bottom lines, litigants and the civil justice system benefit from diversity of leadership. Yet historically, women and minority lawyers have not been appointed to leadership positions at rates proportionate to their representation in the plaintiffs' bar generally. It cannot be said that there are not enough talented individuals with the education, background and experience to effectively lead MDL litigation to permit greater diversity.

Duke Law School Center for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs*, at 58 (1st ed., Dec. 19, 2014), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/10/standards_and_best_practices_for_large_and_mass-tort_mdls-Bolch-Judicial.pdf. (footnotes omitted).

Katrina has served as an advocate for diversity throughout her career. In 2018, she was selected by the judges of the Northern District of Illinois and Chicago Bar Association to serve as a panelist at "May it Please the Court: Symposium on Women Lawyers in the Courtroom," focusing on inclusion and ensuring fair representation of women and minority groups in key roles. As a mentor to many, Katrina advised the next generation of women trial lawyers on effectively pursuing leadership in the courtroom. She now continues to mentor law students through a formal program at Loyola University School of Law.

Ms. Carroll also has a proven track record of working collaboratively with co-counsel. She has established a vast network of co-counsel relationships around the country, including many of the counsel who are participating in this case. She is well-known and highly respected for these relationships and also in her dealings with opponents, as well as the courts. In one complex MDL

8

where Katrina served as Co-Lead Counsel, Judge Amy J. St. Eve—now on the Seventh Circuit—referred to the lead attorneys as a "model I wish all lawyers would follow." *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litig.*, 1:15-cv-1364 (N.D. Ill.) (Fairness Hearing Transcript, ECF 128 at 3). Katrina is well-credentialed and a recognized leader in the class action space and her appointment as Liaison Counsel would significantly benefit this litigation.

In addition, to her own well-recognized efforts in support of various classes and in support of equitably-based leadership within the judicial system more generally, Ms. Carroll's firm has a track record of achievement in class actions. *See* firm resume of Lynch Carpenter LLP, attached as Exhibit C.

### 3. Christopher K.L. Young and The Joseph Saveri Law Firm Support Mr. Hartley's Appointment as Interim Lead Counsel

Christopher K.L. Young is a partner at the Joseph Saveri Law Firm, LLP ("JSLF"). Few firms can match JSLF's record. While many may boast of a higher headcount, JSLF attorneys have recovered over $4.7 billion in settlements and resolutions for the firm's clients. Mr. Young is a key part of JSLF's continued success. Among other accolades, he was selected by the *Daily Journal* for inclusion in its "40-under-40" list in 2023-2024 and has been named by the Legal 500 as a "Next Generation Partner" in 2024. Mr. Young specializes in complex civil and class-action litigation in both federal and state courts, and has worked on cases in various industries. His qualifications are exemplified by his invaluable work on the *Capacitors* trial. From the beginning of his career, Mr. Young played a vital role in coordinating this massive price-fixing antitrust price-fixing cartel case. He had principal responsibility for summary judgment and played a central role in two trials. The case was tried in 2020 for two weeks (before the COVID-19 virus caused a mistrial), and then again in November and December of 2021. Mr. Young was responsible for important aspects such as *in limine* motions, witness preparation and examination, and the charging conference. More recently, he has played a key role in ground-breaking class actions involving generative AI products: the first U.S. cases addressing the use/misuse of the IP of creators under federal and state statutes, including copyright/IP, unfair

competition, and the common law.[5] As reported by the *Washington Post* in January 2024, the outcomes of these cases may have "huge implications" and could "reshape the landscape for tech regulation for years to come." *See* firm resume of the Joseph Saveri Law Firm at Exhibit D.

### 4. Ms. Fellows and Paul LLP Support Mr. Hartley's Appointment as Interim Lead Counsel

Laura C. Fellows and Paul LLP also support Mr. Hartley's appointment as Interim Lead Counsel. Ms. Fellows is a partner with Paul LLP and has been litigating complex cases, including class and mass actions for more than 10 years and litigating antitrust cases for more than five years. Ms. Fellows has assumed leadership responsibilities in complex litigation for several years and is currently Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs in *In re Eyewear Antitrust Litigation*, 1:24-cv-04826-MKV (S.D.N.Y.). Ms. Fellows is also currently representing a putative class of cattle ranchers as indirect sellers of feeder cattle in *In re Cattle and Beef Antitrust Litigation*, MDL No. 3031 (D. Minn.) and has had a prominent role in two antitrust cases, *Robinson v. Jackson Hewitt, Inc.*, 2:19-cv-09066 (D.N.J.) and *Fuentes v. Jiffy Lube International, Inc.*, 2:18-cv-054174-AB (E.D. Penn.).

Paul LLP attorneys have been involved in numerous, large antitrust cases on both the plaintiff and defense side. In addition to the cases listed above, Paul LLP holds leadership roles in *In re Crop Inputs Antitrust Litigation*, MDL 2993 (E.D. Mo.) and was set to serve as trial counsel in *Jones v. Varsity Brands*, 2:20-cv-02892-SHL (W.D. Tenn.), along with Hartley LLP and The Joseph Saveri Law Firm , before the case settled shortly before trial. Moreover, Paul LLP's lawyers have been appointed class counsel by courts across the country in over 100 cases and have successfully tried numerous cases in state and federal courts. Recently, in November 2023, Paul LLP's lawyers separately and successfully tried two cases to verdict/judgment in different courts.

Paul LLP offers diversity in terms of gender, ethnicity, age, and experience. Eight of Paul LLP's twelve attorneys are women. Two of Paul LLP's three partners are women, including managing partner, Ashlea Schwarz. Paul LLP has numerous attorneys who are under age 40, including partner Laura

---

[5] *E.g.*, *Doe 1 v. GitHub, Inc.*, No. 4:22-cv-06823 (N.D. Cal.); *Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201 (N.D. Cal.); *Tremblay v. OpenAI, Inc.*, No. 3:23-cv-03223-AMO (N.D. Cal.); *Kadrey v. Meta Platforms, Inc.*, No. 3:23-cv-03417-SK (N.D. Cal.); *Nazemian v. NVIDIA Corp.*, No. 4:24-cv-01454 (N.D. Cal.); *O'Nan v. Databricks, Inc.*, No. 3:24-cv-01451 (N.D. Cal.); *Zhang v. Google LLC*, No. 5:24-cv-02531 (N.D. Cal.).

Fellows who is 36 years old. Paul LLP also three attorneys who present ethnic diversity, including two attorneys in Puerto Rico. *See* firm resume of Paul LLP, attached as Exhibit E.

### C. Hartley LLP Has the Resources to Represent the Class Through Years of Litigation and Through Trial

Under Fed. R. Civ. P. 23(g)(1)(A)(iv), the Court should consider "the resources that counsel will commit to representing the class." The above experience of Mr. Hartley as co-lead counsel in other large antitrust actions demonstrates his commitment to invest whatever time and resources are necessary to pursue this matter. Further, the firms supporting his appointment are similarly well-capitalized and would have resources to commit to prosecution of this action. Furthermore, the relatively smaller footprint of these firms ensures that Counsel will run the case efficiently, while retaining the latitude and flexibility to be inclusive of other plaintiff firms, as necessary or appropriate.

### D. Other Considerations Support Appointment of Hartley LLP as Interim Lead Counsel.

#### 1. Mr. Hartley is Loathe to Burden Courts with Inter-Firm Disagreements

A Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Notably, Mr. Hartley has worked cooperatively with many of the other firms that have filed class action complaints in this matter, including in lead counsel and executive committee positions in complex class actions, which ensures that they will have an efficient working relationship that vigorously represents the putative class.

Mr. Hartley prizes his working relationships with other co-counsel in the antitrust bar, and takes pride in cooperatively litigating cases, having managed myriad plaintiffs' attorneys across the numerous cases in which he held lead or executive committee positions. In his decades of litigating MDLs and class actions, Mr. Hartley has never had to burden a court with a disagreement among co-counsel. Because the "ability to work cooperatively to create a decision-making framework among plaintiffs' counsel" is "indispensable" for interim lead counsel, this cooperative approach to advocacy will benefit the class and avoid skirmishes that waste the Court's time. *Deangelis v. Corzine*, 286 F.R.D. 220, 225 (S.D.N.Y. 2012).

### 2. Mr. Hartley Has Particular Subject Matter Experience

As touched on previously, Mr. Hartley has particular subject matter experience, which should become especially helpful to PIMG and members of the putative class. Hartley LLP has specific familiarity with third-party algorithm price-fixing matters, as he is litigating the *IDeaS/SAS* case mentioned above.

In addition, Mr. Saveri, who supports Mr. Hartley's appointment, is part of the Plaintiffs' Steering Committee in *In re: RealPage, Inc., Rental Software Antitrust Litigation (No. II)*, Case No. 3:23-md-3071 (M.D. Tenn.) and IDeaS/SAS, which alleges a similar price fixing scheme. This experience should help both with anticipating arguments relating to the viability of the allegations and the certifiability of a class in *In re: MultiPlan Health Insurance Provider Litigation*.

Secondly, Mr. Hartley has extensive experience with antitrust, privacy-related, and personal injury matters impacting the U.S. healthcare industry. For example, Hartley LLP is currently litigating a data breach class action along with Lynch Carpenter LLP involving healthcare patients, which has allowed Counsel to gain an in-depth understanding of certain patient privacy and related HIPAA considerations, which could come into play in the present matter. In addition, Hartley LLP is litigating price fixing claims against generic drug manufacturers, which similarly allows Counsel to anticipate Sherman Act pleading viability issues and class certification considerations in the healthcare context. *See In re: Generic Pharmaceutical Pricing Antitrust Litig.* (E.D. Pa.). Hartley LLP also litigated separate nationwide class actions against the manufacturers of Relafen and Buspirone for artificially raising prices in *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.) and *In re Buspirone Antitrust Litig.* MDL No. 1413 (S.D.N.Y.). Similarly, Hartley LLP also litigated a matter concerning price fixing of the high blood pressure medicine, ExForge, in *In re Novartis and Par Antitrust Litig.*, No. 1:18-cv-04361 (S.D.N.Y.).

Moreover, the counsel supporting Mr. Hartley's appointment here have extensive experience in the healthcare field, and their endorsement of Mr. Hartley should be weighted accordingly. For example, the Joseph Saveri Law Firm is litigating several healthcare related cases such as *Coulson v. Change Healthcare Inc., et al.* (D. Minn.); *In re: Outpatient Medical Center Employee Antitrust Litig.* (N.D. Ill.); *In re: Generic Pharmaceutical Pricing Antitrust Litig.* (E.D. Pa.); *In re: Lidoderm Antitrust*

12

*Litig.* (N.D. Cal); *In re: Opana ER Antitrust Litig.; In re: Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.* (E.D.N.Y); *In re: Xyrem (Sodium Oxybate) Antitrust Litig.* (N.D. Cal.). All of these cases indicate Joseph Saveri Law Firm's specific experience in the healthcare litigation sphere.

Attorney Laura C. Fellows and her Midwest law firm, Paul LLP, also have healthcare-related litigation experience, having litigated numerous cases against pharmaceutical companies. Moreover, Paul LLP has extensive experience litigating class actions, including briefing motions for class certification. In the past few years, Paul LLP has briefed and argued dozens of contested motions for class certification. Indeed, Paul LLP is regularly called upon by other firms to act as class counsel and handle class action litigation, including briefing class certification. These firms' support of Mr. Hartley should be considered in light of their extensive experience and weighted accordingly.

3. **Plaintiff PIMG, A Hospitalist Medical Group, Is Especially Well-Positioned to Supervise This Litigation and Its Choice of Counsel Should Be Given the Lead Role in This Litigation**

PIMG is a group of 100 doctors and other healthcare professionals who provide a wide variety of medical care, including out-of-network healthcare services to patients, and who have submitted numerous claims to commercial insurance company payors for payment for OON healthcare services, which were subsequently repriced by MultiPlan or one or more of its repricing subsidiaries. As an entity that has been significantly and repeatedly impacted by its insurer payors' use of these services, PIMG's choice of counsel should be given deference. Further, with much at stake, PIMG will be an active and involved participant that can provide important insight into the claims in this matter. It will similarly do what it can to assist in seeking relief for members of the putative class.

Moreover, with doctors and other medical staff providing healthcare services within the hospital setting, as well as in community clinics, PIMG has been subject to improper and unfair repricing, resulting in artificially suppressed compensation, in the hospital ("in-patient") and medical office/clinic ("out-patient") settings. It thus holds an especially helpful position within the healthcare system, as it has interests in both of these segments. In this way, its selected counsel are better-positioned in hearing and understanding the needs of all healthcare provider class members, as opposed to those who just represent, for example, a substance abuse clinic, an out-patient medical office, or a hospital. The retention of Hartley LLP, as well as the Joseph Saveri Law Firm, Paul LLP, and Lynch Carpenter LLP,

13

by a client such as PIMG shows the extent of the initial investigation into potential claims, as well as the confidence that a significant plaintiff has in them.

## II.  CONCLUSION

This will be a complicated case that requires steady, experienced leadership with specific subject matter familiarity and expertise (in terms of both managing antitrust class actions and litigating healthcare issues); commitment to the needs of the proposed class; and fair treatment of all class members, whether in-patient or out-patient, as well as all counsel. Plaintiff PIMG submits that Mr. Hartley and his firm, Hartley LLP, meet these qualifications and are well-suited to lead this antitrust-based class action impacting the healthcare industry. Furthermore, the litigation will benefit from the litigation prowess and perspective of having Ms. Carroll and her firm, Lynch Carpenter LLP, serve as Liaison Counsel. Accordingly, Plaintiff PIMG respectfully submits that this Court appoint Mr. Hartley as Interim Lead Counsel and Ms. Carroll as Liaison Counsel.

DATED:  September 9, 2024

Respectfully submitted,

/s/Katrina Carroll
Katrina Carroll
LYNCH CARPENTER LLP
111 West Washington Street, Suite 1240
Chicago, IL 60602
Telephone:   (312) 750-1591
Email:           katrina@lcllp.com

Jason S. Hartley (*pro hac vice submitted*)
HARTLEY LLP
101 W. Broadway, Suite 820
San Diego, CA 92101
Telephone:   (619) 400-5822
Email:           hartley@hartleyllp.com
                     lindner@hartleyllp.com

Joseph R. Saveri
Christopher K.L. Young
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:   (415) 500-6800
Email:           jsaveri@saverilawfirm.com\
                     cyoung@saverilawfirm.com

        Richard M. Paul
        Laura C. Fellows
        PAUL LLP
        601 Walnut Street, Suite 300
        Kansas City, MO 64106
        Telephone:    (816) 984-8100
        Email:        rick@paulllp.com
                        laura@paulllp.com