UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *In re MultiPlan Health Insurance Provider Litigation* | Case No. 1:24-cv-06795<br>MDL No. 3121 |
| This Document Relates to:<br><br>ALL ACTIONS | Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT BURNS CHAREST LLP, LOCKRIDGE GRINDAL NAUEN PLLP, AND SCOTT+SCOTT ATTORNEYS AT LAW LLP INTERIM CO-LEAD CLASS COUNSEL FOR THE PLAINTIFF CLASS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(g)**

This is a complex case of significant importance. The Defendants in this case include the country's largest health insurers whose plans affect thousands of providers, millions of patients, and billions of dollars in annual provider reimbursements. Resolution of this matter will likely have a far-reaching effect on industry practices. Over 13 class complaints have been consolidated before this court, involving plaintiffs' counsel from at least 31 firms. This case demands leadership with demonstrated experience who can build the team necessary to litigate this action.

Strong consensus has already emerged among plaintiffs' counsel as to the firms that have the experience, capacity, and resources to lead this case. Twenty-five law firms (more than 80% of all class action counsel in this MDL), and twelve of the fifteen plaintiffs in ten of the thirteen class actions in this litigation, support the appointment of Burns Charest LLP ("Burns Charest"), Lockridge Grindal Nauen PLLP ("LGN"), and Scott+Scott Attorneys at Law LLP ("Scott+Scott") (collectively, "Chicago Plaintiffs") as Interim Co-Lead Class Counsel. Chicago Plaintiffs further request the appointment of Clifford Law as Liaison Counsel, and a Plaintiffs' Steering Committee ("PSC") comprised of Mindee Reuben (Lite DePalma Greenberg & Afanador, LLC), Evelyn Riley

1

(Cuneo Gilbert LeDuca, LLP), Kate Lv (Korein Tillery, LLC), Amanda Williams (Gustafson Gluek PLLC), Kathleen Chavez (Foote, Mielke, Chavez & O'Neil, LLC), and Deborah Ehlman (Garwin Gerstein & Fisher LLP). *See* Decl. of Brian D. Clark in Support of Motion ("Clark Decl.") Ex. A (chart with proposed leadership structure); *id.* ¶ 13 (listing supporting law firms).[1]

## I. RELEVANT FACTUAL BACKGROUND

Healthcare providers operate on thin margins to provide care to vulnerable patients. From rural hospital systems in Louisiana and Alabama to a Minnesota home health care provider, Chicago Plaintiffs' clients and the class they seek to represent depend on competitive reimbursements for out-of-network services to sustain their operations, ensuring that they can continue to meet the needs of patients and their communities. Defendants, however, allegedly conspired to fix and maintain artificially low reimbursement prices for out-of-network services, agreeing to use MultiPlan, Inc. to share confidential pricing data and abide by MultiPlan's "repricing" decisions. *See, e.g.*, Compl. ¶¶ 132–44, 155–56, 180–84, 194–203, *Live Well Chiropractic PLLC v. MultiPlan, Inc.*, No. 24-cv-3680 (N.D. Ill., filed May 6, 2024). Through this

---

[1] Chicago Plaintiffs' motion is supported by nearly all class plaintiffs who filed cases prior to late August, except: (1) Edelson PC and Susman Godfrey L.L.P., who declined an invitation to join Chicago Plaintiffs' as PSC Co-Chairs and (2) Berger Montague, who filed a complaint in July for plaintiffs Peak Chiropractic Health and Wellness LLC (No. 24-cv-06284) and First Responders Wellness Center, LLC (ECF No. 2) and for whom Berger Montague filed a notice of appearance for on August 28, 2024 (ECF No. 62). Without withdrawing from the firm's representation of Peak Chiropractic and First Responders, who *support* the Chicago Plaintiffs' proposal, Berger Montague then filed notices of appearance two business days ago for two different clients represented by Edelson and Susman Godfrey (ECF Nos. 108–12), and instead joined that group's separate leadership proposal. A final group, led by attorney Jason Hartley, filed a complaint the night before the first status conference on August 29, 2024. When the Chicago Plaintiffs spoke to Mr. Hartley in early August, they extended an offer to join the Chicago Plaintiffs' group and help file his client's complaint. Instead, he filed a complaint separately with a group of 3 other law firms new to this case, who all then supported leadership bid. Clark Decl. ¶¶ 15–17.

illicit agreement, Defendants significantly under-reimbursed members of the proposed class. *Id.* ¶¶ 259–63.

After nearly a year of investigation and research, plaintiffs represented by Burns Charest, LGN, and Scott+Scott filed the first three class actions in this multidistrict litigation—each in this District—on April 22 (*Allegiance*, Burns Charest), May 6 (*Live Well*, LGN) and May 13, 2024 *(Ivy Creek*, Scott+Scott), alleging that Defendants' collusion violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and injured Plaintiffs and members of the proposed class. Chicago Plaintiffs subsequently filed a motion to transfer all further related actions to this District. MDL No. 3121, ECF No. 1. On August 1, 2024, an MDL action was consolidated before this Court.

## II. CHICAGO PLAINTIFFS WILL BEST REPRESENT THE PROPOSED CLASS

In large, complex class actions, a Court should appoint lead counsel who are "best able to represent the class." Fed. R. Civ. P. 23(g).[2] The Court should consider counsel's: (a) willingness and availability to commit to a time-consuming project; (b) ability to work cooperatively with others; (c) professional experience in this type of litigation; (d) access to sufficient resources to advance the litigation in a timely manner; and (e) diversity. Manual for Complex Litigation, Fourth, § 40.22. Courts have found proposed lead counsel's experience and service as lead counsel in prior cases particularly persuasive, and appointment of more than one co-lead counsel and a plaintiff steering committee is typical, especially in inherently complex antitrust class actions.[3]

---

[2] Seventh Circuit courts are guided by Federal Rule of Civil Procedure 23(g)'s standard when appointing interim class counsel before a class is certified. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014). Given how closely the Rule 23(g)(1) factors follow the Manual for Complex Litigation § 40.22 factors the Court has indicated it will rely upon, Chicago Plaintiffs follow those five factors here.

[3] *See Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-1610, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) (approving 3-firm leadership and noting "it is not unusual for multiple firms to serve as interim co-lead counsel"); *Walker v. Discover Fin. Servs.*, No. 10-cv-6994, 2011 WL

3

As this Court has recognized, a leadership team must be tailored to the size and complexity of the litigation. *See* Corrected MDL Case Management Order No. 4 at 1, *In re Testosterone Replacement Therapy Prods. Liability Litig.*, No. 14-cv-1748, ECF No. 244 (N.D. Ill., Aug. 1, 2014) (approving 32-lawyer leadership in light of six defendants). Here, with over $100 billion in potential damages, a decade-long conspiracy, a dozen defendants, and 700 non-party co-conspirators, robust leadership—leadership willing to collaborate with other talented lawyers—is needed to protect the interests of the class. That is why Chicago Plaintiffs' proposed structure enjoys support from nearly all class action counsel in the case and is uniquely organized to address these complex proceedings. Clark Decl. ¶ 14. Chicago Plaintiffs readily meet the standard set forth in the Manual for Complex Litigation. Burns Charest, LGN, and Scott+Scott have demonstrated a willingness and availability to commit to this complex and important case.

### A.   Chicago Plaintiffs Have Demonstrated A Willingness And Availability To Commit To This Complex And Important Case.

One factor a court may consider is counsel's demonstrated commitment to litigating the case, including whether counsel has undertaken "the process of drafting the complaint [which] requires investigatory and analytical effort.'" Moore's Federal Practice § 23.120[3][a] (2007); *see also Moehrl*, 2020 WL 5260511, at *2. Courts weigh this factor "heavily in favor" of appointing counsel who have "taken the lead . . . in moving [the] litigation forward" and who have "superior knowledge" of the claims and theories of liability at issue.[4] Chicago Plaintiffs have done just that,

---

2160889, at *2 (N.D. Ill. May 26, 2011) (noting courts "have frequently appointed more than one firm to act as interim-lead and/or lead counsel" and collecting cases).

[4] *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2021 WL 916056, at **1–2 (N.D. Ill. Mar. 10, 2021); *see also In re Stericycle*, 2013 WL 5609328, at *2 (N.D. Ill. Oct. 11, 2013) (appointing firm which "engaged in more active pursuit of the prosecution of the putative class['s] claims"); *Chester County Emps.' Ret. Fund v. White*, 2012 WL 1245724, at *3–4 (N.D. Ill. Apr. 13, 2012) (efforts in investigation and discovery weighed heavily in favor of appointment).

taking significant steps to identify and investigate Plaintiffs' claims and to advance this litigation. *See* Fed. R. Civ. P. 23(g)(1)(A)(i).

The depth and detail of the allegations in the Complaints showcase Chicago Plaintiffs' efforts. The firms began investigating over a year ago,[5] and pursued numerous fronts—legal, factual, and economic—requiring substantial resources, in both attorney time and monetary expense. Chicago Plaintiffs have held discussions with class members and other industry participants, developed sources, collected relevant information, located internal MultiPlan documents, and conducted considerable industry research. Clark Decl. ¶ 9. Counsel's investigations, done without any known prior or parallel investigation by the U.S Department of Justice or any other government competition authority, led to the first three class action complaints to allege an insurance-industry-wide conspiracy involving the MultiPlan cartel. *Id.*

Since filing their Complaints, Chicago Plaintiffs have continued their legal and factual investigations—including retaining a number of highly respected healthcare economists and other experts to aid in preparing and filing a superior consolidated complaint on behalf of the class. The three firms have also led the coordination of all pretrial matters with all counsel. *Id.* ¶ 10.

### B. Chicago Plaintiffs Will Continue to Work Cooperatively with All Counsel.

A key skill for any lead counsel is the ability to effectively reach consensus and work together with a large group,[6] a skill in which Chicago Plaintiffs have a strong track record in

---

[5] Members of the Chicago Plaintiffs' team began their investigations that led to the filing of their complaints in July 2023. This predates by nine months, and Chicago Plaintiffs' allegations are more extensive than, national media reports that began to shed light on the insurance industry's use of MultiPlan to systematically under-reimburse healthcare providers for out-of-network services in April of this year. Clark Decl. ¶ 9; Burns Decl. ¶ 17; van der Meulen Decl.¶ 15.

[6] *See Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-cv-0220 (LEK/DJS), *et al.*, 2016 WL 4028974, at *4 (N.D.N.Y. July 27, 2016) (counsel's "ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court" are important considerations (internal quotations omitted) (citing Manual for Complex Litigation, § 10.224)).

5

antitrust class actions over the last decade. Burns Charest served as lead counsel for businesses suing the Blue Cross Blue Shield entities throughout the country, working closely with dozens of firms (and some of the defense counsel in this case). *In re: Blue Cross Blue Shield Antitrust Litigation*, 13-cv-20000-RDP (N.D. Ala.). LGN and Scott+Scott currently work together as part of the leadership teams for different classes in *Cattle and Beef* and *Klein*, and together as plaintiffs' counsel in *Othart Dairy Farm LLC v. DFA, Inc.*, No. 2:22-cv-251 (D.N.M). *See* Clark Decl. ¶ 7 (praise from the Court in *Cattle and Beef* for counsels' "remarkable . . . civility toward each other"). LGN's Brian Clark and Burns Charest's Christopher Cormier (then at a prior firm), and Brian Clark and Scott+Scott's Karin Garvey and Brian Hogan (also at a prior firm) worked extensively together in the *Broiler Chicken Antitrust Litigation* and *Surescripts*, respectively. *Id.* ¶ 11.

In this case, the three firms already spent almost five months coordinating with all parties to these proceedings, including with proposed DAP liaison counsel. Clark Decl. ¶¶ 10, 18. Chicago Plaintiffs coordinated with all parties on many pretrial matters, including consolidation of related actions, completion of service, and a preliminary deadline for Defendants to respond to Plaintiffs' complaints. Following consolidation, Chicago Plaintiffs have continued to advance the litigation through consensus. They have negotiated a proposed schedule with Defendants (and Edelson and Susman Godfrey) addressing deadlines for filing (1) leadership applications, (2) a consolidated amended class action complaint, and (3) responses to class and direct-action complaints. Among Plaintiffs, they have reached near-unanimous consensus regarding the organization and proposed leadership structure of the class action Plaintiffs' group. Their efforts thus far demonstrate their ability to lead and work effectively with all parties to efficiently move this case forward.

In no small measure, the result is this consensus leadership application supported by the vast majority of plaintiffs and their counsel in this litigation. All three firms have and will continue

to bring that same approach to this MDL.

### C. Burns Charest, LGN, and Scott+Scott Have the Professional Experience in Class Action and Antitrust Litigation and Know the Applicable Law.

Chicago Plaintiffs have extensive experience prosecuting antitrust class actions and other complex litigation and have demonstrated their deep knowledge of antitrust and other applicable law. *See* Manual for Complex Litigation, Fourth, § 40.22; Fed. R. Civ. P. 23(g)(1)(A)(ii) and (iii). Below is a summary of each firm's overall experience, as well more detailed information for the two attorneys from each firm that will be personally leading this matter if appointed.

#### 1. Burns Charest LLP

After an extensive investigation spanning nearly a year, Burns Charest filed the original nationwide class action complaint in these proceedings on behalf of its client, Allegiance Health Management. Declaration of Warren Tavares Burns ("Burns Decl.") at ¶ 18. In the ten years since its founding, Courts have appointed Burns Charest to lead antitrust and other complex cases involving some of the most significant issues affecting the American public and American markets. Highly relevant here, Burns Charest has developed deep expertise representing providers, businesses, and individuals in healthcare related lawsuits.

In 2022, Burns and Burns Charest received the award for Outstanding Achievement in Antitrust Litigation for Private Law Practice from the American Antitrust Institute. The honor recognized the work of the team of Warren Burns, Amanda Klevorn, Spencer Cox, and others for prevailing in a complex RICO and antitrust action alleging a series of anti-competitive practices by the makers of the EpiPen auto-injector device (*In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 17-md-2785 (D. Kan.)), ultimately reaching a $609 million class-wide settlement. Mr. Burns and Ms. Klevorn will lead Burns Charest's team in this matter, supported by additional key attorneys contained in Exhibit A to Mr. Burns' declaration.

7

      a)      **Warren Tavares Burns**

Mr. Burns is a founder and managing partner of Burns Charest. Before founding the firm, Mr. Burns was a partner at Susman Godfrey LLP. Mr. Burns currently serves as lead counsel for a class of businesses and other entities who engaged various Blue Cross/Blue Shield insurers to administer their self-funded healthcare plans. *In re: Blue Cross Blue Shield Antitrust Litig.*, 13-cv-20000-RDP (N.D. Ala.). Mr. Burns and his firm were instrumental in securing a groundbreaking $2.67 billion settlement to resolve antitrust claims on behalf of consumers and businesses, as well as market-changing reforms. Burns Decl. ¶¶ 10–11. Also, in a first-of-its-kind case, Mr. Burns helped secure over $600 million in settlements against Pfizer, Inc. and Mylan, Inc. to resolve antitrust claims related to a pay-for-delay scheme through which defendants raised the price of the EpiPen by over 600%. Mr. Burns has served as co-lead counsel in numerous other antitrust and class actions, as explained in Exhibit A to Mr. Burns' declaration. More information about Mr. Burns's relevant experience is included in his resume. Burns Decl. Ex. B.

      b)      **Amanda Klevorn**

Amanda Klevorn was selected as a Lawdragon 500 Leading Plaintiff Consumer Lawyer and Leading Plaintiff Financial Lawyer for the last two years. Ms. Klevorn has been named a Louisiana Super Lawyer Rising Star every year since 2019 and a Best Lawyers in America "One to Watch" every year since 2021. Ms. Klevorn has been appointed to a number of leadership positions, including a 2020 appointment to the Plaintiffs' Steering Committee in *In re TikTok, Inc., Consumer Privacy Litigation MDL*, No. 20-cv-4699 (N.D. Ill.). More information about Ms. Klevorn's relevant experience is included in her resume. Burns Decl. Ex. C.

    2.      **Lockridge Grindal Nauen PLLP**

LGN filed the second complaint in this matter, that contained extensive new allegations after an in-depth, and time-consuming investigation led by Mr. Clark and Ms. LaSalle. LGN is a

60-attorney firm with offices in Minneapolis, Chicago, and Boston that has specialized in antitrust litigation for over 40 years. Clark Decl. ¶ 4. In just the last decade, LGN has helped recover billions of dollars for their clients and class members in antitrust class actions. *Id.* ¶ 5.

LGN serves in leadership roles in significant healthcare-related antitrust matters. The firm has been appointed interim co-lead counsel in *In re Surescripts Antitrust Litigation*, No. 19-cv-06627 (N.D. Ill.) ("*Surescripts*"), a case alleging monopolization and unlawful restraint of the market for e-prescribing services. And the firm is on the End-Payer Plaintiffs' Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 16-md-02724-CMR (E.D. Pa.), a case alleging a conspiracy to fix the prices of almost 200 different generic drugs.

Brian Clark and Kristie LaSalle will lead LGN's team in this matter, supported by additional key attorneys contained in Exhibit A to Mr. Clark's declaration.

a) **Brian D. Clark**

Brian D. Clark is a partner at LGN and co-chair of its antitrust practice group. Mr. Clark recently served as lead trial counsel to jury verdict for the class in the *Broiler Chicken* trial before Judge Thomas Durkin, a case that recovered $284 million for the class. Mr. Clark has led the charge in many recent agricultural antitrust cases, including price-fixing cases involving chicken, pork, beef, and turkey. Mr. Clark served personally as co-lead counsel in the *In re Peanut Farmers Antitrust Litigation*, No. 19-cv-00463 (E.D. Va.), which settled within 18 months of filing of the complaint, on the eve of trial, for $102.75 million and received an Outstanding Antitrust Litigation Achievement award from the American Antitrust Institute. Mr. Clark has served in leadership on numerous other antitrust cases both in this District and around the country, and is a recognized e-discovery expert in the plaintiffs' bar. *See* Clark Decl. Ex. B.

### b) Kristie A. LaSalle

Kristie LaSalle has spent a decade prosecuting dozens of complex private antitrust class actions, with a particular focus in the health care industry, and has been recognized as one of Best Lawyers "Ones to Watch" in the fields of antitrust law, antitrust litigation, and class actions. At her previous firm, she was part of the co-lead team for a class of direct purchaser plaintiffs in *In re Ranbaxy Generic Drug Application Antitrust Litigation*, No. 19-md-2878 (D. Mass.), an antitrust case alleging a complex regulatory and scientific fraud in which her team recovered a $485 million global settlement on the eve of trial. She also helped lead *In re Lantus Direct Purchaser Antitrust Litigation*, No. 16-cv-12652 (D. Mass.), advancing a novel theory of antitrust liability that has been followed by several other suits adopting the theory, a new FTC policy and enforcement actions, and a Congressional investigation.

### 3. Scott+Scott Attorneys at Law LLP

Scott+Scott's attorneys have extensive experience in litigation, trial, and settlement of complex class action cases and have served in leadership positions in hundreds of class actions, including in dozens of antitrust matters. Importantly, Scott+Scott is at the forefront of exposing the use of artificial intelligence ("AI") to facilitate price fixing and undermine competition, precisely the type of conduct that is alleged here. Scott+Scott is co-lead counsel acting for renters nationwide harmed by RealPage's algorithms to set multi-family rental prices. *In re RealPage, Inc. Rental Software Antitrust Litig. (No. II)*, 3:23-md-03071 (M.D. Tenn.). Scott+Scott attorneys were also previously appointed co-lead counsel in a case alleging that health insurers manipulated out-of-network payments to health care consumers and providers. *See In re Wellpoint Inc. Out-of-Network "UCR" Rates Litig.*, No. 09-md-02074 (C.D. Cal.), ECF No. 11.

Scott+Scott's team in this litigation will be led by Robin van der Meulen and Brian Hogan, discussed individually below. Further information on the large breadth of Scott+Scott's leadership in the antitrust bar is provided in the attached firm resume. van der Meulen Decl. Ex. A.

      a)      **Robin A. van der Meulen**

Robin van der Meulen, a partner in Scott+Scott's New York office, will lead the case for the firm. She has more than 15 years of antitrust litigation experience on both the plaintiff and defense side. On the plaintiffs' side, Ms. van der Meulen has led numerous antitrust class actions, including *In re Novartis and Par Antitrust Litigation*, No. 18-cv-4361 (S.D.N.Y.), where she successfully negotiated a $30 million settlement for end-payer plaintiffs in a pharmaceutical pay-for-delay case, and *Borozny v. RTX Corporation, Pratt & Whitney Division*, No. 21-cv-1657 (D. Conn.), where she negotiated $26.5 million in partial settlements for a class of aerospace engineers who were harmed by a no-poach scheme. She is also a leader of the Antitrust bar, currently serving as Chair of the New York State Bar Association's Antitrust Law Section and Co-Chair of the ABA Antitrust Section's Insurance and Financial Services Committee, and has been ranked by Chambers, Benchmark, and The Legal 500, with one publication describing her as "persistent, persuasive, and well-respected by peers and opponents alike."

      b)      **Brian M. Hogan**

Brian Hogan is a partner at Scott+Scott, based in Chicago. Mr. Hogan has been part of numerous trial teams before state and federal juries, including in this District, and has handled appeals before the Seventh Circuit. He was recently appointed liaison counsel in *In re Manufactured Home Lot Rents Antitrust Litigation*, No. 23-cv-6715 (N.D. Ill.) (alleging defendants used AI to facilitate price-fixing of manufactured home lot rental prices.). He has had a prominent role on leadership teams in many recent antitrust class actions. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 17-mc-00003 (E.D. Mich.) (unprecedented MDL stemming from the

largest criminal antitrust investigation in U.S. history with settlements totaling over $550 million); *In re Peanut Farmers Antitrust Litig.*, No. 19-cv-463 (E.D. Va.). Mr. Hogan recently tried an antitrust case to verdict in this District, successfully settling with one defendant for $15 million during the trial. *See In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill.).

      **4.    Burns Charest, LGN, And Scott+Scott Believe That Appointment Of Liaison Counsel And A Plaintiffs' Steering Committee Of Highly Qualified Attorneys Is Warranted.**

Consistent with the Manual for Complex Litigation, Chicago Plaintiffs believe that appointment of liaison counsel and a plaintiffs' steering committee would benefit the class in this matter. Shannon McNulty and Robert Clifford of Clifford Law Offices are eminently qualified to serve as Liaison Counsel. Both have served as lead counsel in their own right before and are very familiar with local practice. *See* Clark Decl. Ex. C. Indeed, Ms. McNulty has previously deposed the founder of MultiPlan, Don Rubin, and is familiar with the company and its history. *Id.*

Similarly, each member of the proposed PSC is eminently qualified in her own right to serve in leadership of cases. The proposed PSC is an experienced, dedicated, and diverse group of attorneys who will assist co-lead counsel in litigating this matter. Each proposed member of the PSC is listed below, as well as a citation to a copy of her resume.

- Mindee Reuben of the Lite DePalma Greenberg & Afanador, LLC (Ex. D)
- Evelyn Riley of Cuneo Gilbert LeDuca, LLP (Ex. E)
- Kate Lv of Korein Tillery, LLC (Ex. F)
- Amanda Williams of Gustafson Gluek PLLC (Ex. G)
- Kathleen Chavez of Foote, Mielke, Chavez & O'Neil, LLC (Ex. H)
- Deborah Ehlman of Garwin Gerstein & Fisher LLP (Ex. I)

As noted above in Footnote 1, Chicago Plaintiffs invitation to Edelson and Susman Godfrey to join as PSC Co-Chairs was declined, and the Berger Montague firm's client from their first and

second complaints supports the Chicago Plaintiff proposal, but Berger Montague purports to simultaneously represent Edelson and Susman Godfrey's clients in this litigation now. Further, Chicago Plaintiffs invited the Hartley firm to work with them in this litigation.

> **D. Burns Charest, LGN, and Scott+Scott Have Sufficient Resources To Effectively Prosecute This Litigation In A Timely Manner.**

Chicago Plaintiffs stand ready to dedicate the resources necessary to represent and protect the interests of the class through rigorous motion practice, discovery, class certification, and trial. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). The three firms will self-fund this litigation and bring the same dedication and commitment to this case they did in prior cases. Clark Decl. ¶ 6; Burns Decl. ¶ 22; van der Meulen Decl. ¶¶ 33–34. The firms' extensive in-house litigation capacities—including in-house investigators, data scientists, IT specialists, eDiscovery groups, and document hosting capacity—allow them to efficiently obtain, manage, and analyze the volume of documents and data necessary to advance Plaintiffs' claims without incurring excessive vendor costs. Clark Decl. ¶ 6; Burns Decl. ¶ 22; van der Meulen Decl. ¶¶ 31–33. In sum, Chicago Plaintiffs have the expertise, talent, and resources to successfully prosecute this case.

> **E. Burns Charest, LGN, and Scott+Scott, along with the proposed PSC and Liaison Counsel, are a diverse, majority-female leadership slate.**

The Manual for Complex Litigation and Courts within this district emphasize the importance of a diverse group of attorneys leading an MDL. *See* Manual for Complex Litigation, Fourth § 40.22; *Wilcosky v. Amazon.com, Inc.*, No. 19-cv-5061, 2022 WL 18937690, at * 3 (N.D. Ill. May 16, 2022). Here, Chicago Plaintiffs propose a gender-balanced slate of two attorneys from each proposed Co-Lead and Class Liaison Counsel firm, and an all-female PSC. Two PSC members are Asian-Americans. Chicago Plaintiffs' proposal advances the goals of the Court (and this group of attorneys) to see gender and racial diversity in MDL leadership.

### III. PROPOSED RESPONSIBILITIES FOR INTERIM CO-LEAD CLASS COUNSEL

If appointed, the Chicago Plaintiffs will ensure that this matter is adjudicated in an efficient manner, including implementing a time and expense reporting protocol for class counsel. *See* Clark Ex. J. Each firm's time will be reviewed by a Co-Lead firm monthly, and if the Court wishes, Chicago Plaintiffs are happy to submit *in camera* a quarterly time and expense report to apprise the Court of those details throughout the litigation.

### IV. CONCLUSION

For these reasons, Plaintiffs respectfully request the Court approve the proposed leadership structure as outlined in the Chicago Plaintiffs' proposed order.

Dated: September 9, 2024                     Respectfully submitted,

*/s/ Warren T Burns*                          */s/ Brian D. Clark*
Warren T. Burns                               Brian D. Clark
**BURNS CHAREST LLP**                         **LOCKRIDGE GRINDAL NAUEN PLLP**
900 Jackson Street, Suite 500                 100 Washington Ave. S, Suite 2200
Dallas, Texas 75202                           Minneapolis, MN 55401
Tel: (469) 458-9890                           Tel: (612) 339-6900
wburns@burnscharest.com                       bdclark@locklaw.com

Amanda K. Klevorn                             Kristie A. LaSalle
**BURNS CHAREST LLP**                         **LOCKRIDGE GRINDAL NAUEN PLLP**
365 Canal Street, Suite 1170                  265 Franklin St., Suite 1702
New Orleans, Louisiana 70130                  Boston, MA 02110
Tel: (504) 799-2845                           Tel: (617) 535-3763
aklevorn@burnscharest.com                     kalasalle@locklaw.com

*/s/ Robin A. van der Meulen*
Robin A. van der Meulen
Brian M. Hogan
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Tel: (212) 223-6444
rvandermeulen@scott-scott.com
brian.hogan@scott-scott.com

*Proposed Interim Co-Lead Class Counsel*