**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 |
| | MDL No. 3121 |
| *This Document Relates To:* ALL DIRECT ACTION PLAINTIFF ACTIONS | Hon. Matthew F. Kennelly |

<u>**RESPONSE IN SUPPORT OF DIRECT ACTION PLAINTIFFS'**</u>
<u>**PROPOSED COMMON BENEFIT ORDER**</u>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.      THE PROPOSED CBO PROPERLY APPLIES TO ALL COVERED CLAIMS ............. 2

II.     THE PROPOSED CBO PROPERLY EXTENDS TO NON-MONETARY

        RELIEF ........................................................................................................ 8

III.    THE PROPOSED CBO PROPERLY ALLOWS BELLWETHER WORK TO BE

        COUNTED AS COMMON BENEFIT WORK ................................................ 10

CONCLUSION ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Beesley v. Int'l Paper Co.*,
  2014 WL 375432 (S.D. Ill. 2014) ............................................................... 9

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) ................................................................................... 9

*First Impressions Salon, Inc. v. National Milk Producers Federation*,
  2019 WL 13180924 (S.D. Ill. 2019) ....................................................... 4, 7

*In re Air Crash Disaster at Fla. Everglades on December 29, 1972*,
  549 F.2d 1006 (5th Cir. 1977) ................................................................. 1

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig*
  2011 WL 611883 (N.D. Ind. 2011) .......................................................... 7

*In re Gen. Motors LLC Ignition Switch Litig.*,
  477 F. Supp. 3d 170 (S.D.N.Y. 2020) ............................................... 1, 6, 7

*In re Generic Pharms. Pricing Antitrust Litig.*,
  2019 WL 6044308 (E.D. Pa. 2019) .......................................................... 4

*In re Genetically Modified Rice Litig.*,
  835 F.3d 822 (8th Cir. 2016) ................................................................... 8

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  2024 WL 3904650 (N.D. Ill. 2024) ....................................................... 3, 7

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 644 (E.D. Pa. 2003) ................................................... 1, 8

*In re Packaged Seafood Prods. Antitrust Litig.*,
  2021 WL 5326517 (S.D. Cal. 2021) .......................................................... 4

*In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*,
  2002 WL 31834446 (D. Md. 2002) ........................................................... 4

*In re Turkey Antitrust Litig.*
  2025 WL 1155990 (N.D. Ill. 2025) .......................................................... 4

iii

*In re Vioxx Prods. Liab. Litig.*,
    802 F. Supp. 2d 740 (E.D. La. 2011) ................................................................. 1, 5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ......................................................................................... 6, 8, 9

*Smiley v. Sincoff*,
    958 F.2d 498 (2d Cir. 1992) .................................................................................. 1

*Wright v. Heizer Corp.*,
    503 F. Supp. 802 (N.D. Ill. 1980) ........................................................................ 9

## **Other Authorities**

Manual for Complex Litigation, Fourth (2004) ...................................................... 4, 9

## INTRODUCTION

The propriety of common benefit orders ("CBOs") in MDLs—including holdbacks—is beyond dispute. The rationale for a CBO is two-fold: (1) to ensure compensation of court-appointed leadership for their common benefit work[1] and (2) to avoid free-riding by those who benefit from such work. The source of a district court's authority to enter a CBO is likewise two-fold: (1) a court's "inherent managerial authority" and (2) the equitable "common fund" doctrine.[2]

Here, the scope of the DAPs' proposed CBO is fully supported by these well-established rationales and sources of authority. Indeed, the proposed CBO parallels CBOs entered in other MDLs, including by this Court in *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 1:14-cv-01748 (MDL No. 2545) ("TRT MDL"), ECF 2902 (Amended CMO 16) and *In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 1:22-cv-04148 (MDL 3037) ("Infant Formula MDL"), ECF 55 (CMO 7) and 251 (CMO 19).

While Defendants and Interim Class Counsel pay lip service to the need for a CBO to

---

[1] *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 189, 190 (S.D.N.Y. 2020) ("It is beyond dispute that the Court may 'establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation.'") (citing *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992) and *In re Air Crash Disaster at Fla. Everglades on December 29, 1972*, 549 F.2d 1006, 1016 (5th Cir. 1977)); *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (an MDL court's "power to assure that [Lead Counsel] receive[s] reasonable compensation for their work" is "[a] necessary corollary to appointment of lead and liaison counsel and appropriate management committees.").

[2] *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 190 "[i]t is well-settled that an MDL court's authority to ... order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power."). *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 770 (E.D. La. 2011) ("MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs.") (citing cases); *See also* Case Management Order 19 entered by this Court in *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 22-c-4148 (N. D. Ill.) ECF 251 at 2 ("The entry of common benefit orders by MDL courts long has been approved as a case management exercise, arising not only from the courts' equity jurisdiction under the common benefit doctrine, but from the additional authority of MDL courts to assess common benefit fees and costs that "comes from the inherent 'managerial' power over the consolidated litigation.").

compensate the DAP EC, their arguments would largely gut the CBO and allow massive free-riding opportunities. The Court should reject those arguments and enter the DAPs' proposed CBO (with one suggested clarification outlined below).

**ARGUMENT**

## I.     THE PROPOSED CBO PROPERLY APPLIES TO ALL COVERED CLAIMS

### A.     <u>The Definition of "Covered Claims" is Appropriately Tailored</u>

CBOs often use a broad definition of the covered claims to avoid artful pleading of claims that in fact free-ride on MDL leadership's work, even if technically alleged as a different cause of action. In the TRT MDL, the common benefit and holdback order (Amended CMO 6 (ECF 2902)) simply applied to settlements of "TRT claims," (*id.*, § IV.B.1) a phrase that was otherwise undefined. Likewise, in the Opiate MDL, the common benefit order applied to "Opioid Cases," which the Court broadly defined as "litigation in any court throughout the United States involving the marketing, distribution, sale, or use of Opioid related drugs." *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804-DAP (N.D. Ohio), ECF 4428 (Ongoing Common Benefit Order), at 3, n.1.

Here, the DAP CBO does not apply to all claims against a Defendant that merely happen to "involve[] out-of-network reimbursements," as Defendants argue. ECF 425 at 3. Rather, the DAPs' proposed CBO proposes a well-tailored definition of "Covered Claims" limited to claims concerning the actual "conduct alleged in the DAP Master Complaint" (DAP CBO ¶ 4)—i.e., the use of MultiPlan to coordinate pricing of out-of-network claims. To the extent the proposed language raised any concerns, the DAP EC invited Defendants to propose a different formulation. Defendants never responded. Nonetheless, to put any concerns to rest, the DAP EC is willing to amend the relevant portion of the definition of "Covered Claims" to read "all federal and state claims concerning the use of MultiPlan to coordinate pricing of out-of-network claims among two

or more of the other Co-Conspirators named in the DAP Master Complaint ….".

**B.     The Proposed CBO Properly Applies to Future Claims in the MDL**

Like the CBOs entered in the TRT and Infant Formula MDLs, DAPs' proposed CBO applies to cases currently pending in this MDL, as well as those "later filed in … transferred to, or removed to this Court and treated as part of [this MDL]."[3] It is eminently fair and reasonable to apply the proposed CBO to such future DAPs and their counsel. In an MDL with ongoing, rolling filings, future DAPs and their counsel are just as likely to benefit from—and just as capable of free-riding on—the DAP EC's work as current DAPs. Indeed, the DAP EC is specifically charged with prosecuting the pre-trial phase of this MDL and coordinating trial and post-trial proceedings on behalf of all such DAPs. ECF 156 at § III.D.

The various arguments raised by Interim Class Counsel (and adopted by Defendants) with respect to future opt outs (*see* ECF 426 & ECF 425 at 5) misapprehend the scope of the proposed CBO. The proposed CBO does not apply to "any settlement reached or judgment obtained by Interim Class Counsel on behalf of any class." DAP CBO at ¶ B.5. Thus, to the extent any claimant does not prosecute a claim on its own, it remains free to participate in any class settlement or judgment that Interim Class Counsel may obtain. But, by definition, if a party files its own claim or otherwise gives notice that it is opting out of the putative class, it is not under the purview of Interim Class Counsel. The proposed CBO would apply to such future opt outs only to the same extent as any current opt outs—i.e., only if they either file a claim that becomes part of the MDL or they are represented by counsel who otherwise has claims in the MDL (and therefore benefits

---

[3] *Compare* DAP CBO, ¶ 3 with TRT Am. CMO 16, § I.B and Infant Formula CMO 7, § 1.B. This approach is ubiquitous in MDL CBOs, including in the CBO entered in the *Hair Relaxer* case that Defendants cite extensively. *In re Hair Relaxer Mktg. Sales Prac. & Prods. Liab. Litig.*, 1:23-cv-00818 (N.D. Ill.), ECF 967 (Case Management Order No. 14), § I.A ("Order applies to all cases now pending in this MDL, as well as to any case later filed directly into or transferred to this MDL (if permitted) or removed to this Court and treated as part of the [MDL]").

from the work of the DAP EC). Neither Interim Class Counsel nor Defendants cite any case holding that such future opt outs should not be placed on equal footing with current DAPs.[4]

The assertion that the proposed CBO somehow unfairly "handcuffs" future opt outs (ECF at 4) likewise misses the mark. As set forth above, it is fair, logical, and reasonable for future opt outs to be subjected to the same CBO and on the same terms as existing opt outs. As the Manual for Complex Litigation advises, orders for compensating court-appointed leadership should be entered "early" in a case. *See* Compensation for Designated Counsel, Ann. Manual Complex Lit. § 14.215 (4th ed.). If the position asserted by Interim Class Counsel and Defendants were accepted, a CBO could never bind any plaintiff that is tagged into or files in an MDL after entry of a CBO— which is an invitation for free-riding abuse.

Finally, despite arguing that they represent future opt outs, Interim Class Counsel does not raise any substantive objection to the holdback amount or process. In any event, the proposed CBO does not determine what compensation (if any) counsel may receive for common benefit work, but only creates a process to permit compensation if it is warranted.[5]

---

[4] Interim Class Counsel cites inapposite cases addressing the different situation of class counsel seeking to impose a holdback on opt outs. ECF 426 at 4-6. In *First Impressions Salon, Inc. v. National Milk Producers Federation*, 2019 WL 13180924 (S.D. Ill. 2019), the court found that a holdback in favor of class counsel would improperly tax claimants seeking to exit the class—i.e., those who had made a decision not to be represented by class counsel and, in that regard, whose interests were not aligned with class counsel. Here, by contrast, those who opt out from class are in alignment with the other DAPs—all of which stand to benefit from common benefit work the DAP EC has been appointed by the Court to undertake in this MDL. Indeed, this was the very point made in *In re Turkey Antitrust Litig.*, which rejected class counsel's effort to impose a holdback on independently represented DAPS because the class action before it was "not an MDL in which set-aside orders are more common because of the district court's appointment of lead MDL counsel who will run the litigation for all[.]" 2025 WL 1155990, at *1 (N.D. Ill. 2025) (emphasis added). The two additional antitrust cases cited simply found that the time was not right to consider a holdback on opt outs given the uncertainty in those cases over what class, if any, would even be certified. *In re Generic Pharms. Pricing Antitrust Litig.*, 2019 WL 6044308 at *1 (E.D. Pa. 2019) and *In re Packaged Seafood Prods. Antitrust Litig.*, 2021 WL 5326517 at *3 (S.D. Cal. 2021).

[5] *See In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, 2002 WL 31834446, at *4 (D. Md. 2002) ("Court is not making a determination by this Order that the [PSC] shall receive any specific sum as payment of counsel fees and reimbursement of litigation expenses. Rather, this Order is merely intended to

### C.      The Proposed CBO Properly Applies to Claims Outside the MDL

As in the TRT and Infant Formula MDLs, the DAPs' proposed CBO also applies to state court cases and to unfiled claims, but only to the extent that such plaintiffs and claimants are represented by counsel who also represents a plaintiff in the MDL.[6] Applying the CBO to such claims in this manner is reasonable and fair. As Judge Fallon has observed, in MDLs, the common benefit of the work performed by court-appointed leadership inures principally to the other lawyers representing clients in the MDL, who usually have contingency fee agreements with their clients, but who have little or no work to do on the case given court-appointed leadership. *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 769 (E.D. La. 2011). Lawyers who represent clients in the MDL are in a position to gain important knowledge and insights from the common benefit work done in the MDL, which they may then leverage to resolve their state court and unfiled claims for other clients—a classic "free-rider" problem.

Defendants claim that the Court somehow lacks "jurisdiction" to order holdbacks from settlements of state law cases and unfiled claims because the claimants in those cases "are not actually before the Court." ECF 425 at 3. That is wrong. This Court has jurisdiction over the lawyers that practice before it in this MDL. Moreover, the Supreme Court held more than fifty

---

develop a mechanism for the creation of a fund from which the amount of fees and costs to which the [PSC] are ultimately entitled may be awarded and paid with reliability.")

[6] *Compare* DAP CBO, ¶¶ 3 & 4 with TRT Am. CMO 16, § IV.B.2 (assessment applied "to all cases of the plaintiffs' attorneys who are subject to this Order … including case … pending in state court, unfiled, or tolled.") and Infant Formula CMO 7 §§ I.E (claims covered by CBO include "[a]ll recalled formula claims, regardless of whether those claims are subject to the jurisdiction of the MDL,, whether tolled, unfiled, or filed … in another state or federal court" to the extent any covered counsel has a fee interest in the claim). *See also*, *e.g.*, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 19-md-02885-MCR-HTC (N.D. Fla.) ECF 1695 (Common Benefit Order No. 3), § II (applying order to "all counsel with a fee interest" in any case in the MDL) and § III.B.2.b (applying holdback to "all [3M earplug] cases in which [such counsel] have a fee interest" if they receive or benefit from common benefit work) & ECF 3875 (Common Benefit Order No. 4) (applying uniform holdback to all gross recoveries); *In re GLP-1 RAS Liab. Litig.*, 24-md-3094-KSM (E.D. Pa.), ECF 218 (CBO), §§ I.B.2 & V.B.3 (same).

years ago that, by its equitable nature, the common benefit doctrine empowers courts to order reimbursement to the party that creates the common benefit, even if doing so requires parties that are not "before the court" to "contribute to the costs of the suit." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970).

As another MDL court found:

the relevant question is not one of jurisdiction—or at least subject-matter jurisdiction. The Court is not exercising jurisdiction over cases or parties not before it; it is exercising jurisdiction over the MDL. Pursuant to that jurisdiction, the Court has authority to regulate the conduct of the MDL parties and MDL counsel, even where such regulation affects the interests of others.

*In re Gen. Motors LLC Ignition Switch Litig*., 477 F. Supp. 3d 170, 189 (S.D.N.Y. 2020). The court further observed that "it is commonly accepted that a federal court has the power to regulate the conduct of counsel appearing before it, even where such regulation affects non-parties to the case itself," such as protective orders that prohibit counsel in one case from using materials in another case. *Id.* at 188. Accordingly, the court held that a court has "jurisdiction" to apply holdback provisions to the unfiled claims of claimants represented by counsel with at least one case in the MDL, as well as to state law cases filed by such counsel. *Id.* at 191-92.[7] Indeed, the court found that unfiled cases for clients represented by MDL counsel pose a particular risk of free-riding that compels application of the "common benefit" doctrine to such claims where the counsel on them has otherwise appeared in the MDL. *Id.* at 191 (absent any assessment, counsel "would be incentivized to hold the vast majority of their clients' claims back and benefit from Lead Counsel's work without paying the concomitant costs.").

---

[7] As to state court cases, the court held that the terms of the CBO in that case limited application of the CBO to state court cases in which such counsel actually used MDL work product. *Id.* at 180. The DAPs' proposed CBO has no such limiting language and the Defendants here do not argue that comity or any other state-federal relations issues preclude application of the CBO to state court cases filed MDL counsel.

Defendants cite just two cases for their "no jurisdiction" position. ECF 425 at 3. Neither overcomes the years of precedent from the Supreme Court, this Court, and others supporting the DAPs' proposed CBO.

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, denied entry of the proposed CBO when plaintiffs' leadership inexplicably sought a CBO only after "the merits of the core of [the] litigation ha[d] been decided against the plaintiffs in all but a few cases." 2011 WL 611883, at *5 (N.D. Ind. 2011). The court's discussion of its "jurisdiction" to assess cases not in the MDL was *dicta*. *Id.* at *2-*3. And that *dicta* addressed different CBO language. In *FedEx*, lead plaintiffs sought a CBO that applied to any case that was "derivative" of the MDL or that "rel[ied] on work performed in the MDL," regardless of whether the counsel in those cases were participating in the MDL. *Id.* at *3. Here, DAPs are not seeking such an unbounded CBO. DAPs' CBO is expressly limited to the counsel appearing in this MDL. *See* DAP CBO, ¶¶ 3 & 4.

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 3904650 (N.D. Ill. 2024) is equally unpersuasive. *Hair Relaxers* proceeded from an overly restrictive view that an MDL court's authority is strictly limited to the cases in the MDL. *Id.* at *2. In doing so, it relied on the *dicta* from the order in *FedEx*, *supra*, as well as the inapposite order in the *First Impressions Salon* class case (discussed above) that denied class counsel's effort to impose a holdback on class members seeking to opt out (i.e., parties that did not want to be represented in the class action). By contrast, *Hair Relaxer* did not address CBOs such as those entered by this Court in the TRT or Infant Formula MDLs. Nor did it address the cogent analysis of the same issues in *Gen. Motors Ignition Switch*. *Id.* at *2, n.3. *Hair Relaxer* likewise failed to apprehend that, even when courts in other Circuits take a conservative approach to CBOs, they have found that the MDL court's authority is not as black and white as *Hair Relaxer* assumed—and that MDL holdback orders can

7

be properly applied to settlements of claims outside the MDL.[8]

## II. THE PROPOSED CBO PROPERLY EXTENDS TO NON-MONETARY RELIEF

The proposed CBO also allows the DAP EC to seek valuation of non-monetary portions of any judgment or settlement for purposes of determining the applicable Assessment Amount. DAP CBO, §III.B.3. This provision is being proposed because, unlike most mass torts, the DAPs and Defendants here have ongoing business relationships that lend themselves to settlements based on agreed business terms, in lieu of or in addition to cash payments. For example, a Defendant could settle claims with a DAP (in whole or part) by agreeing to pay all out-of-network claims at a certain percentage of Medicare for a specified term of years, agreeing to "quick pay" some or all claims for some period of time, or some other arrangement. Such agreements may represent considerable value to the DAP—and be attractive to a Defendant because they reduce cash outlay.

Such non-cash transfers of value represent just as much of a threat of free-riding on common benefit work as monetary recoveries/settlement. As such, it is fair and reasonable to account for them in the proposed CBO. As the Supreme Court has explained, the equitable "common fund" doctrine applies equally to monetary and non-monetary recoveries. *Mills*, 396 U.S. at 392 ("Although the earliest cases recognizing a right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power

---

[8] *See, e.g.*, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 664-65 (E.D. Pa. 2003) (court declined to order holdbacks for non-MDL cases "on the present state of the record," but specified that its ruling was "without prejudice to designated counsel's right to seek a sequestration order in untransferred federal cases or state cases if warranted by the facts.") and *In re Genetically Modified Rice Litig.*, 835 F.3d 822, 830 (8th Cir. 2016) (court had jurisdiction "to exercise its equitable and managerial authority to prevent Riceland from freeriding on the work of the leadership group" in state court cases where Riceland "was before the district court as a plaintiff, cross-claimant, or third-party claimant in at least seven federal cases.").

to order reimbursement of expenses.").[9] Courts routinely award fees based on non-monetary recoveries.[10] The same should hold true here.

Because a non-cash recovery might take many forms, the DAP EC proposes a flexible approach to valuation. First, the CBO allows the DAP EC to choose whether to seek any Assessment with respect to non-monetary relief. DAP CBO, ¶ 43. This allows the DAP EC to forego any Assessment when it is not worth the candle. Second, if the DAP EC does choose to seek an Assessment, the CBO provides that the DAP EC will first try to negotiate an agreed value, using outside professionals and relevant information.[11] If the parties cannot agree on a value, the parties will ask the Court to determine a "reasonably estimated value" through a process "to be determined by the Court." *Id.*, ¶ 45.

Defendants' claim that the value of non-monetary relief should be excluded <u>entirely</u> from the CBO because a valuation process allegedly would "chill" settlements (ECF 425 at 4) is wholly conclusory and self-serving. Nothing in the proposed CBO requires prolonged negotiations or extensive "satellite" litigation over estimated values. To the contrary, the Court retains control over the valuation process, including if either party believes the other is not proceeding in good faith as required by the proposed CBO. DAP CBO ¶ 45. That Defendants claim valuation of non-

---

[9] *See also Wright v. Heizer Corp.*, 503 F. Supp. 802, 816 (N.D. Ill. 1980) ("a corporation may be benefited by a nonfund case, and an award of fees is not precluded by the difficulty or even impossibility of assigning a specific monetary value to the benefit received.") (citing *Mills*).

[10] *See, e.g.*, *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1 (S.D. Ill. 2014) )("A court must also consider the substantial affirmative relief when evaluating the overall benefit to the class.") (citing *Blanchard v. Bergeron,* 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief"). *See also* Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004) ("The court's evaluation and review of [non-monetary] benefits as part of the settlement review process is important for its review of fee applications.).

[11] Nothing in the DAPs' proposed CBO purports to override CMO 12 (ECF 242), the Protective Order in this matter. Thus, to the extent otherwise required by the Protective Order, information concerning valuation of non-monetary relief would be shared with outside professionals in accordance with the terms of the Protective Order.

monetary relief may "chill" negotiations, however, does underscore that such relief may be of substantial value and, therefore, appropriate to include in a CBO to avoid free-riding.

## III. THE PROPOSED CBO PROPERLY ALLOWS BELLWETHER WORK TO BE COUNTED AS COMMON BENEFIT WORK

The DAPs' proposed CBO would allow work on bellwether matters to be treated as Common Benefit Work. DAP CBO ¶ 15.e. Defendants complain that this is "premature" because the Court has not determined whether there will be a bellwether process in this MDL. ECF 425 at § IV. But Defendants ignore that the proposed CBO specifically says bellwether work will only be counted "if the Court approves any early preference, case tracks, or bellwether trial process in the MDL." DAP CBO ¶ 15.e. The provision is thus contingent, not premature. It should remain because the DAP EC intends to propose discovery tracks and a bellwether process.

### CONCLUSION

For the foregoing reasons, the DAP EC respectfully requests entry of its proposed CBO, with the clarified definition of "Covered Claims" set forth above.

Dated: May 29, 2025

/s/ Jennifer Scullion
Jennifer Scullion
Jeremy Kasha
**Seeger Weiss LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
jscullion@seegerweiss.com
jkasha@seegerweiss.com

Stephen M. Medlock
Stephen Cohen
Michael McCambridge
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W., Suite 500 W
Washington, D.C. 20037
Tel: (202) 639-6500
smedlock@velaw.com

Mackenzie Newman

1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
mnewman@velaw.com

Michael Scarborough
Dylan Ballard
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com

Matthew M. Lavin
Gabriel H. Scannapieco
**Arnall Golden Gregory LLP**
2100 Pennsylvania Ave., N.W., Suite 350S
Washington, D.C. 20037
Tel: (202) 677-4030
Matt.Lavin@agg.com

Hunter Shkolnik
Paul Napoli
Shayna E. Sacks
**NS PR Law Services, LLC**
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tel: (787) 493-5088
Hunter@NSPRLaw.com

*Direct Action Plaintiffs' Executive Committee*

Christopher Seeger
**Seeger Weiss LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

11

**<u>CERTIFICATE OF SERVICE</u>**

I, Jennifer Scullion, hereby certify that on this 29th day of May, 2025, I caused the foregoing Response in Support of Direct Action Plaintiffs' Proposed Common Benefit Order to be electronically filed with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to all filing users.

*/s/ Jennifer Scullion*
Jennifer Scullion