# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-6795<br>MDL No. 3121 |
| This Document Relates To:<br><br>ALL DIRECT ACTIONS | Hon. Matthew F. Kennelly |

## MOTION TO ENTER DEFENDANTS' PROPOSED FORMATTED DISCOVERY FORM AND MEMORANDUM IN SUPPORT

Pursuant to the parties' agreement in their jointly submitted proposed Discovery and Case Management Scheduling Order on July 8, 2025, Defendants hereby move this Court to adopt the attached Formatted Discovery Form (attached as Exhibit A). The parties met and conferred on the appropriate method to identify and differentiate the individual healthcare providers to determine an approach to evaluate bellwether candidates but were unable to reach a complete agreement.

## MEMORANDUM IN SUPPORT OF MOTION TO ENTER DEFENDANTS' PROPOSED FORMATTED DISCOVERY FORM

Defendants seek limited but important information necessary for the evaluation of DAP bellwether candidates: (1) services provided; (2) financial information; (3) DAPs' OON pricing; (4) balance billing; (5) network participation; and (6) claims data. Defendants' proposed Formatted Discovery Form (the "Discovery Form") is narrowly tailored, focuses on limited time periods, and reflects numerous compromises intended to limit the burden on DAPs while allowing Defendants to identify the right DAP bellwether cases for full discovery.

DAPs' proposed "Fact Sheet," by contrast, seeks to avoid providing most of this information, offering instead facts alleged in the DAPs' Short-Form Complaints (such as nearly half a page on claims/relief). It requires the production of only a handful of documents—largely from the current year, long after the complaints were filed—and is completely silent on key issues like balance billing, which Plaintiffs have repeatedly tried to shield from discovery, lest Defendants test the veracity of assertions made to avoid dismissal. Perhaps most nonsensically, DAPs ask the Court to order *Defendants* to produce *Defendants'* claims data about Plaintiffs—which would be both incomplete (not involving all Payors DAPs interact with), time consuming, and remarkably inefficient, rather than to simply have DAPs produce their own readily available information.

DAPs' proposal does not reflect the "reasonably robust structured discovery" that the Court noted DAP plaintiffs should provide to Defendants, in order to appropriately determine which DAP plaintiffs should proceed to full discovery. June 17, 2025 Hr'g Tr. at 29:6-19.

\* \* \*

For bellwether trials to fulfill their purpose, the selected providers and their claims should consist of a meaningful cross-section of the myriad types of providers and practice sizes that constitute the collective group. *See* Manual for Complex Litigation § 22.315 (Fed. Jud. Ctr. 2004). Choosing appropriate providers for bellwether discovery must therefore reflect "the extent to

1

which the [potential bellwether providers] differ from one another with respect to characteristics relevant to this litigation." *Adams v. Deva Concepts, LLC*, 2023 WL 6518771, at *3 (S.D.N.Y. Oct. 4, 2023). In order to determine whether a provider is an appropriate bellwether candidate, the parties and the Court must have sufficient information to identify the pertinent characteristics.

The DAPs' complaint is based on alleged underpayment of out-of-network claims brought by hundreds of providers of healthcare services against twenty separate defendants. Each provider is different: they operate across different states (or in multiple states), offer different treatments and services, treat vastly different numbers of patients, and likely have substantially different balance billing practices. These differences are manifest, extensive, and necessitate the need for the parties and the Court to gain a better understanding of the universe of providers. Defendants' Discovery Form seeks limited information on matters that correspond with some of the foreseeable issues in the case, such as the type of services at issue, the severity of alleged injury, the relevant product and geographic markets, and the volume of clams at issue. While the parties have reached compromise/agreement on several issues, there remain critical unresolved topics, addressed below.

**Type of Services Provided (Questions G(3) and M)**. The types of providers asserting DAP claims in this case is incredibly broad—ranging from emergency care to dental practitioners to mental health services. Accordingly, the Discovery Form asks each provider to identify its most frequently billed medical procedure codes—this will allow the parties to ensure that there is variability in the DAPs selected for bellwether treatment. For example, the DAPs' complaint alleges differences between how providers treat out-of-network emergency care as compared to non-emergency care. *See* Dkt. 171 at ¶ 101 (noting that in-network and out-of-network pricing varies "based on whether the healthcare services were emergency healthcare services provided in a hospital emergency room or non-emergency services"). The burden associated with collecting this information is minimal, particularly given that it is only requested for the last two years; the

2

types and frequency of services provided should be readily available and Defendants are not seeking the production of documents with respect to this topic.

**Financial Information (Document Request No. 3 and Revenue Collected)**. The Discovery Form requests that each provider produce financial statements and identify revenue collected from out-of-network services over a two-year period. The burden on providers to collect this information is minimal; identifying the amount of revenue collected by each provider for out-of-network services rendered will ensure that providers that generate large profits or suffer larger losses are both selected as bellwethers. Moreover, the revenue collected that is attributable to out-of-network services is directly relevant when the DAPs' theory of injury is based on the alleged underpayment of out-of-network services.

**Charges for Out-of-Network Goods and Services (Interrogatory No. 3)**. The Discovery Form requests each provider identify their chargemasters and the methodology used to set the providers billed charges. A chargemaster is a general document that many healthcare providers use to track the prices of the goods and services that they provide and understanding the methodology is necessary to further differentiate the providers. *See* Dkt. 171 at ¶ 103 (noting the high fixed costs associated with operating a medical practice which will presumably vary depending upon the type of practice). The DAPs' complaint is based on allegations that MultiPlan's pricing methodology results in payment below the charges billed by the individual providers. *See, e.g.*, Dkt. 171 at ¶ 113 (comparing billed charges by DAP Adventist Health System Sunbelt Healthcare Corporation and payments generated using MultiPlan's pricing methodology). Defendants include this topic in the Discovery Form because, in selecting bellwethers, they should be able to understand DAP approaches to setting billed charges in this case where DAPs presumably will attempt to defend the propriety of such charges.

**Balance Bills and Collection Attempts (Interrogatories No. 2 and 3)**. The DAPs' Fact

3

Sheet fails to include requests necessary to address the allegations in the DAPs' complaint related to the treatment of patients that receive out-of-network services that are subsequently underpaid. For example, the DAPs contend that Defendants "took steps to prevent providers from balance billing" and that "in theory, healthcare providers can refuse to provide services to out-of-network patients for non-emergency care." Dkt. 171 at ¶¶ 522, 720. In denying Defendants' motion to dismiss and finding sufficient allegations of direct injury, the Court relied on DAPs' allegation that they could not balance bill, Dkt. 428 at 10-11. As a result, it is critical to understand prior to bellwether selection whether and to what extent the DAPs are engaging in balance billing practices, which bear on key issues such as antitrust standing. *See* Dkt. 428 at 8-11. DAPs' fact sheet attempts to improperly force selection of bellwethers without any visibility into DAPs' policies and activity with respect to balance billing.

**Network Participation (Question No. 4).** Another important issue in determining an appropriate cross-section of providers is whether the provider primarily treats patients on an out-of-network basis or only provides out-of-network treatment on an infrequent basis. Identifying how much a treatment or service is actually worth can be gleaned by what the provider negotiates and accepts for that service at an in-network rate. By way of example, providers that primarily treat patients on an in-network basis may accept different rates than providers that primarily treat patients on an out-of-network basis. The two named plaintiffs in the Class Action Complaint are an example of this dynamic. *Compare* Dkt. 172 at ¶ 20 and ¶ 201 (noting that Advanced Orthopedic "only treats patients on an out-of-network basis" and that "[w]hile Panoramic Medicine participates in several insurance networks, it sometimes treats patients on an out-of-network basis"). Requiring the individual providers to list the networks they participate in will allow Defendants to test that variability and identify DAPs as bellwether from both categories.

**Claims Data (Question N).** Lastly, the Discovery Form seeks confirmation that the

individual DAP maintains the type of data sufficient to ensure that the parties will be able to match relevant claims data in discovery. Defendants believe DAPs are required to provide structured data sample by July 24, per previous Court orders—but DAPs take a different view. At a minimum, if DAPs refuse to produce these samples, they should produce information about their systems.

\* \* \*

In short, the Discovery Form is narrowly tailored, not overly costly or burdensome on the individual DAPs, should not result in a protracted discovery process, and should limit the discovery burden overall moving forward.

The DAPs' proposed Fact Sheet, by contrast, fails to provide information necessary for this process. *First*, it fails to provide key information necessary to assess the various issues relevant for any potential bellwether, simply ignoring critical issues such as balance billing. *Second*, it drastically limits the set of documents DAPs are to produce: DAPs will not even agree to produce their financial statements, which each DAP can produce with no burden, and proposes limiting the production of their chargemasters to only 2025. It makes no sense to limit such productions only to current forms particularly given that any such forms may have only been adopted after the litigation began. *Third*, it seeks to require each of the nearly twenty Defendants to produce claims data responsive to each individual Formatted Discovery Form (which will likely be upwards of three hundred different DAPs). This request seeks to absolve the DAPs of any burden in efficiently producing their own claims data, instead converting it into an inefficient and highly burdensome production demand on *Defendants*. That makes no sense—this is data Plaintiffs already should readily have themselves, their own claims data—and is the opposite of what the Court directed. June 17, 2025 Hr'g Tr. at 29:6-19 (directing the parties to negotiate a "reasonably robust structured discovery" form with respect to "what the direct action people are going to have to provide").

Defendants respectfully request that the Court adopt their Formatted Discovery Form.

5

Dated: July 15, 2025

Respectfully Submitted,

| | |
|---|---|
| /s/ Sadik Huseny | /s/ E. Desmond Hogan (w/ consent) |

Sadik Huseny (*pro hac vice*)
**LATHAM AND WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (737) 910-7300
sadik.huseny@lw.com

Gary Feinerman (IL Bar No. 6206906)
**LATHAM AND WATKINS LLP**
330 N Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
gary.feinerman@lw.com

Lawrence E. Buterman (*pro hac vice*)
Katherine A. Rocco (*pro hac vice*)
**LATHAM AND WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
lawrence.buterman@lw.com
katherine.rocco@lw.com

Anna M. Rathbun (*pro hac vice*)
Graham B. Haviland (*pro hac vice*)
**LATHAM AND WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
anna.rathbun@lw.com
graham.haviland@lw.com

Craig Lewis Caesar (IL Bar. No 3121593)
**PHELPS DUNBAR LLP**
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: (504) 584-9272
craig.caesar@phelps.com

E. Desmond Hogan
Justin W. Bernick
W. David Maxwell (*pro hac vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5600
desmond.hogan@hoanlovells.com
justin.bernick@hoganlovells.com
david.maxwell@hoganlovells.com

Jordan D. Teti
**HOGAN LOVELLS US LLP**
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 785-4600
jordan.teti@hoganlovells.com

*Attorneys for Defendants Elevance Health, Inc.; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Aware Integrated, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; and CareFirst, Inc.*

/s/ Katherine A. Trefz (w/ consent)
Jonathan B. Pitt
Katherine A. Trefz
Feyilana Lawoyin
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
jpitt@wc.com
ktrefz@wc.com
flawoyin@wc.com

*Attorneys for Defendant Aetna Inc.*

6

Errol J. King (*pro hac vice*)
Katherine Mannino (*pro hac vice*)
**PHELPS DUNBAR LLP**
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 376-0279
errol.king@phelps.com
katie.manino@phelps.com

*Attorneys for Defendants MultiPlan, Inc.; Claritev Corporation; National Care Network, LLC; Viant Payment Systems, Inc.; Viant, Inc.; and Medical Audit & Review Solutions, Inc.*

/s/ Scott Jared Fisher (w/ consent)
Scott Jared Fisher
Eric Y. Choi
**NEAL, GERBER & EISENBERG**
Two North LaSalle Street, Suite 1700
Chicago, IL 60602
Telephone: (312) 269-8035
sfisher@nge.com
echoi@nge.com

Rachel S. Brass (*pro hac vice*)
Henry H. Cornillie
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8293
rbrass@gibsondunn.com
hcornillie@gibsondunn.com

Joshua Lipton (*pro hac vice*)
Kristen C. Limarzi (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
jlipton@gibsondunn.com
klimarzi@gibsondunn.com

/s/ Daniel R. Campbell (w/ consent)
Daniel R. Campbell
Emilie E. O'Toole
**MCDERMOTT, WILL & EMERY LLP**
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 984-7782
dcampbell@mwe.com
eotoole@mwe.com

Joshua B. Simon (*pro hac vice*)
Warren Haskel (*pro hac vice*)
Dmitriy G. Tishyevich (*pro hac vice*)
Caroline Incledon (*pro hac vice*)
Chelsea Edith Rae Cosillos (*pro hac vice*)
**MCDERMOTT, WILL & EMERY LLP**
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5444
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
cincledon@mwe.com
ccosillos@mwe.com

*Attorneys for Defendant The Cigna Group*

/s/ Brian P. Kavanaugh (w/ consent)
Brian P. Kavanaugh
Scott D. Stein
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
bkavanaugh@sidley.com
sstein@sidley.com

*Attorneys for Defendant Health Care Service Corporation and the Central States Southeast and Southwest Health and Welfare Fund*

Heather L. Richardson (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
hrichardson@gibsondunn.com

*Attorneys for Defendant UnitedHealth Group, Inc*

/s/ *Christopher S. Moore (w/ consent)*
Christopher S. Moore (IL Bar. No. 6256418)
**CHRIS MOORE LAW LLC**
220 North Green Street
Suite 4031
Chicago, Illinois 60607
Telephone: (312) 704-4444
*chris@chrismoorelaw.com*

Richard G. Douglass (IL Bar. No. 6282777)
**DOUGLASS P.C.**
77 W. Wacker Drive
Suite 4500
Chicago, IL 60601
Telephone: (312) 216-5145
*rich@douglasspc.com*

*Attorneys for Defendant Allied National, LLC*

/s/ *Jason C. Murray (w/ consent)*
Jason C. Murray (*pro hac vice*)
Jordan L. Ludwig (*pro hac vice*)
**CROWELL & MORING LLP**
515 South Flower Street, 40th Floor Los Angeles, CA 90071
Telephone: (213) 662-4750
jmurray@crowell.com
jludwig@crowell.com

Jason P. Stiehl
**CROWELL & MORING LLP**
455 North Cityfront Plaza Drive Suite 3600
Chicago, IL 60611
Telephone: (312) 321-4200
jstiehl@crowell.com

/s/ *James W. Davidson (w/ consent)*
James W. Davidson
Riley B. Olson
**O'HAGAN MEYER LLC**
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 422-6100
jdavidson@ohaganmeyer.com
rolson@ohaganmeyer.com

*Attorneys for Defendant Secure Health Plans of Georgia, L.L.C.*

/s/ *William J. Sheridan (w/ consent))*
William J. Sheridan (*pro hac vice*)
Courtney Bedell Averbach (*pro hac vice*)
Leah E. Hungerman (*pro hac vice*)
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
wsheridan@reedsmith.com
caverbach@reedsmith.com
lhungerman@reedsmith.com

*Counsel for Defendant Highmark, Inc. and Highmark Health*

/s/ *Stephen D. Libowsky (w/ consent)*
Stephen D. Libowsky (IL Bar No. 6187081)
Rebecca A. Finkel (IL Bar No. 6317199)
**MANATT, PHELPS & PHILLIPS, LLP**
151 North Franklin Street
Chicago, Illinois 60606
Telephone: (312) 529-6300
slibowsky@manatt.com
rfinkel@manatt.com

Ileana Hernandez (*pro hac vice*)
**HERNANDEZ LASKA LLP**
3415 South Sepulveda Blvd., Suite 1100
Los Angeles, CA 90034
Telephone: (310) 742-5816
ihernandez@hernandezlaska.com

*Attorneys for Defendant Sanford Health Plan*

8

Ashley L. McMahon (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
amcmahon@crowell.com

*Attorneys for Defendant Kaiser Foundation Health Plan, Inc.*

<u>*/s/ John J. Hamill (w/ consent)*</u>
John J. Hamill
john.hamill@us.dlapiper.com
Michael S. Pullos
michael.pullos@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel: 312.368.3423
Fax: 312.251.5728

*Attorneys for Defendants Benefit Plan Administrators of Eau Claire, LLC and Consociate, Inc. (Consociate Health)*

**CERTIFICATE OF SERVICE**

    I, Sadik Huseny, hereby certify that on this 15th day of July 2025, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to all filing users.

                                                            */s/ Sadik Huseny*
                                                            Sadik Huseny