UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795<br>MDL No. 3121 |
| This Document Relates To:<br><br>ALL DAP CASES | Hon. Matthew F. Kennelly |

## DEFENDANTS' SUBMISSION ON DISCOVERY BELLWETHER DAP PROCESS AND DISPUTED ISSUES

Defendants and the DAP EC have conferred and reached agreement on most of the parameters of a Discovery Bellwether DAP process, as directed by the Court. Only a few areas of disagreement remain, as indicated in the proposed Case Management Order, attached hereto as Exhibit A (and identical to the version attached to the DAPs' brief). Defendants respectfully request that the Court adopt their position as to each.

### A. Number Of Cases

Defendants' proposal of 40 total individual Discovery Bellwether DAPs is appropriate given the size and circumstances of this case.

The parties previously discussed whether to select individual discovery bellwether <u>plaintiffs</u> or individual DAP <u>cases</u>, which in some instances contain numerous separate DAPs (either entirely distinct, or connected via affiliation). After conferring, the DAP EC suggested that the parties agree to select particular DAPs rather than entire cases, in part because there are several cases with over 100 individual DAPs. Defendants agreed. Defendants' proposal follows this agreement. There are over 400 DAPs currently in this MDL, and proceeding into discovery with roughly one-tenth of that number, via 40 total individual Discovery Bellwether DAPs, allows for

an appropriate cross-section of the wide range of different kinds of practices and healthcare services offered by DAPs while still being manageable. Defendants do not understand the DAP EC's complaint about moving forward with 40 DAPs in discovery when members of the DAP EC filed individual complaints with well over 100 individual DAPs.

## B. Third-Party Discovery Of Non-Discovery Bellwether DAPs

DAPs propose prospectively barring non-party discovery from "any DAP that is not selected as a Discovery Bellwether DAP." Defendants propose including no such discovery limitation in the CMO. Instead, Defendants' proposal (1) allows ordinary course non-party discovery under FRCP 45—but not party discovery—on these DAPs, and (2) makes clear that Defendants retain the ability to seek leave of Court to obtain party discovery from affiliated entities of a selected Discovery Bellwether DAP in connection with discovery for that DAP. This latter point is critical because the requisite discovery related to the administration, management and operation of a particular DAP's practice—including as to out of network pricing, balance billing, and so on—may in fact reside in an affiliated entity of that DAP. Defendants' proposal is also symmetrical, making clear that the same rules apply to DAPs that are not selected as discovery bellwethers and Defendants that are not named by any Discovery Bellwether DAPs. DAPs' proposal, by contrast, treats these two groups differently by immunizing non-Discovery Bellwether DAPs but providing no protections to similarly situated Defendants.

There is no reason to prospectively immunize these non-selected DAPs from any discovery whatsoever, as DAPs now seek. Such discovery—involving what are essentially absent class members—is common in antitrust litigation. And there is no reason to provide greater discovery protection to these DAPs than to similarly situated providers who are not at all involved in this litigation. If Defendants seek non-party discovery on these DAPs, DAPs can (and presumably will) make burden and proportionality arguments to limit the scope of their non-party discovery

obligations. But Defendants believe it inappropriate to categorically and prospectively exempt these DAPs from any discovery whatsoever.

### C. Process For Addressing Voluntarily Dismissed Cases

It is well established that plaintiffs in multidistrict litigation sometimes seek to strategically dismiss cases to skew the bellwether process in their favor. *See In re FEMA Trailer Formaldahyde Prods. Liab. Litig.*, 628 F.3d 157, 163-64 (5th Cir. 2010) (discussing a party's "manipulate[ing] the integrity of the court's bellwether process" through voluntary dismissal of selected cases). To promote a fair and efficient bellwether discovery process, it is thus necessary to set down the rules of the road early and create a streamlined approach up front to address voluntary dismissals. And as the Court knows, MDL courts have significant discretion to adopt such processes to promote fairness and efficiency. *See, e.g. Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("District courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency."); *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) ("[M]ultidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line.").

Defendants propose the following process to address voluntary dismissals by DAP Discovery Bellwether Plaintiffs:

- If the claims of a selected Discovery Bellwether DAP are dismissed by that DAP (with or without prejudice) prior to February 1, 2026, Defendants may select another eligible DAP as a replacement Discovery Bellwether DAP.

- If the claims of a selected Discovery Bellwether DAP are dismissed by that DAP on or subsequent to February 1, 2026, Defendants may strike, at their selection, a Discovery Bellwether DAP in the remaining pool (1) from the Discovery Bellwether DAP process, and (2) from being considered as a

>potential trial candidate for any DAP trial that may be ordered by the Court, and any such dismissal by the DAP shall be with prejudice.

When discovery is at or about inception, permitting Defendants to choose a replacement in the event that a Discovery Bellwether DAP dismisses its case is the most fair and least disruptive way to avoid gamesmanship and skewing the pool of originally selected candidates based on voluntary dismissals. Similar approaches have been employed by this Court to maintain fairness and representativeness in the bellwether process. *See In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, Case No. 1:22-cv-04148, ECF No. 174 (Court Order allowing Defendant to pick replacement case in the event that (i) a selected plaintiff amended their initial complaint or (ii) refused to provide a *Lexecon* waiver, to maintain integrity of original selection process).

If discovery is too far along to make replacement feasible, permitting Defendants to strike a separate DAP Discovery Bellwether DAP from the process/being considered as a potential trial candidate will likewise prevent strategic dismissals that would skew the bellwether pool. Defendants' approach provides DAPs with four full months to confirm that the selected Discovery Bellwether DAPs are willing to go through discovery and trial. This is particularly appropriate given that this February 2026 deadline falls *after* the substantial completion deadline for the Parties' third set of requests for production. Moreover, there is no undue prejudice to any Discovery Bellwether DAP that is struck from the discovery bellwether pool by Defendants as part of this process because their claims will simply fall back into the non-discovery bellwether pool of cases. Nothing happens to those claims; they simply do not become part of the early tranche.

The DAP EC's proposal to defer a decision on the handling of voluntary dismissals until the issue arises is not workable. *First*, in the event that a Discovery Bellwether DAP dismisses its case late in the discovery process, the parties will not be able to select a replacement without serious disruptions to the case schedule. In this scenario, the only real alternative to Defendants'

4

striking proposal is to deny Discovery Bellwether DAPs the ability to dismiss their case. Otherwise, the pool of Discovery Bellwether DAPs will be disproportionately skewed in DAPs' favor. *See* Federal Judicial Center and National Center for State Courts, Coordinating Multijurisdiction Litigation: A Pocket Guide for Judges 12 (2013) ("Permitting plaintiffs to dismiss cases on the eve of trial also can distort the information provided by bellwether trials."). *Second*, in the event that a dismissal occurs early and replacement is feasible, the parties would have to brief the appropriate replacement process each and every time a Discovery Bellwether DAP dismisses its case. Defendants' streamlined process to address voluntary dismissals prevents disruption to the case schedule, preserves the resources of the parties and the Court, and disincentives strategic dismissals in the first instance.

Dated: September 30, 2025

*/s/ Sadik Huseny*
Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel.: (737) 910-7300
sadik.huseny@lw.com

*Defendants' Coordinating Counsel*

5

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.9, I hereby certify that on this 30th day of September 2025, the foregoing was electronically filed using the Court's CM/ECF system and was also served via electronic mail on counsel of record.

/s/ Sadik Huseny
Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel.: (737) 910-7300
sadik.huseny@lw.com

*Defendants' Coordinating Counsel*