UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION<br><br>This Document Relates To:<br><br>ALL DIRECT ACTION PLAINTIFF ACTIONS | Case No. 1:24-cv-06795<br>MDL No. 3121<br><br>Hon. Matthew F. Kennelly |

**DAP EXECUTIVE COMMITTEE BRIEF CONCERNING**
**DISCOVERY BELLWETHER SELECTION PROCESS**

In accordance with the Scheduling Order (ECF 450 (CMO 17)), the Direct Action Plaintiffs Executive Committee ("DAP EC") submits this brief to address three areas of dispute that remain between the DAP EC and the Defendants concerning the Discovery Bellwether DAP process. The DAP EC respectfully requests that the Court resolve these disputes at or before the October 14, 2025 status conference so that the DAP EC and Defendants can quickly complete the selection of the Discovery Bellwether pool members and commence document discovery from pool members.

Attached as Appendix A is a proposed Case Management Order showing the competing proposals on these three issues in blue for the DAP EC and red for Defendants. An identical version is attached to the Defendants' brief.

**I.        Introduction**

As the Court observed in June, the sheer volume of DAPs that have filed claims in this MDL (450 as of today) makes simultaneous discovery of all DAPs unrealistic. *See* June 17, 2025 Status Conf. Tr. 26:13-27:17 (observing that it would be "insane" to try to proceed with discovery of hundreds of DAPs at the same time). Accordingly, the Court ordered the DAP EC and

Defendants to work together to propose an initial round of Plaintiff Fact Sheets (and responsive data from Defendants) and a process for then selecting a pool of DAPs (the "Discovery Bellwether DAPs") that would proceed through discovery and summary judgment, leaving the remaining DAPs' claims for a later phase. *Id.* & Tr. 29:6-30:8 (explaining that this case would follow the typical MDL bellwether practice).

The DAP EC and Defendants have exchanged proposals and met and conferred on these matters in July and again in September. The parties have reached agreement on all but three issues, addressed below.

## II.     Size of the Discovery Bellwether DAP Pool

The DAP EC proposes a total pool of 30 Discovery Bellwether DAPs (15 picks per side). Defendants propose 40 (20 picks per side). Proposed CMO at Para. 2.

The DAP EC respectfully submits that 30 is the appropriate size. A pool of 30 is large enough to ensure a robust cross-section of the different types, sizes, and locations of DAPs that have sued. As important, a pool of 30 is at the outer limit of a realistically manageable size given the discovery schedule.

There are approximately 230 calendar days between substantial completion of document production on January 23, 2026 and the close of fact discovery on September 10, 2026. Excluding weekends and holidays, that leaves approximately 160 calendar days for all depositions. The Court has indicated it will allow up to 170 depositions of the Defendants. If one assumes an average of three depositions per Discovery Bellwether DAP under Plaintiffs' Deposition Protocol proposal [ECF 511, Disputed Issues 2 & 3], a pool of 30 Discovery Bellwether DAPs would add 90 depositions to be scheduled, for a total of 260 depositions—a feat that can be done, but with considerable effort from all parties. Under Defendants' Deposition Protocol proposal, a pool of 30

Discovery Bellwether DAPs would lead to a minimum of 180 Discovery Bellwether DAP depositions (six per DAP)—350 in total when added to the 170 depositions of Defendants—and likely more because Defendants seek to take up to ten depositions each of larger DAPs. [ECF 511, Disputed Issues 2 & 3]. If there are 40 Discovery Bellwether DAPs in the pool, these already nearly impossible numbers only get worse.[1]

### III. Third Party Discovery of DAPs Not Selected for Discovery Bellwether DAP Pool

A core premise of the Discovery Bellwether DAP process is that it would be "insane" to engage in discovery of each of the hundreds of DAPs already on file. June 17, 2025 Status Conf. Tr. 26:13-27:17. Other than an initial round of "structured discovery"—i.e., the Plaintiff Fact Sheets to select the pool—fact discovery of DAPs was to be limited to those chosen to be part of the Discovery Bellwether DAP pool, consistent with the typical MDL approach to bellwethers. Tr 27:11-17 & 29:6-30:8.

The DAP EC's proposal adheres to the above approach. Defendants, however, propose that they should be allowed to serve an unlimited amount of "third party discovery" on non-Pool DAPs "in the ordinary course." Proposed CMO at Para. 12. Defendants' proposal is an attempt to end run the Discovery Bellwether DAP process in a manner that would embroil non-Pool DAPs in one-way merits discovery—non-Pool DAPs producing information to the Defendants while the non-Pool DAPs' own claims are stayed. Defendants' proposal also is at odds with the negotiations the DAP EC has been having with certain Defendants—those not named in the Class complaint—

---

[1] In July, before the parties began negotiating deposition numbers, the DAP EC had proposed a Bellwether Discovery DAP pool of 40 DAPs. Defendants responded in September that they wanted a smaller pool of 20. The DAP EC then proposed 30, both in an attempt to meet Defendants halfway and in light of the per-DAP deposition numbers then being considered, which would make a pool of 40 unmanageable—and it was clear that a pool of 30 was enough to generate a robust cross-section of DAPs for discovery.

who seek to limit the claims data they will be producing to include only the data for the specific Discovery Bellwether DAPs that have sued them. The Court should reject Defendants' unfair and lopsided proposal.

Defendants try to justify their proposal based on a facile and illogical "apples to oranges" comparison. Defendants say they must be allowed to take discovery of non-Pool DAPs because the Bellwether Discovery DAPs have reserved the right to take third party discovery of MultiPlan users who are not named as a Defendants by a Bellwether Discovery Pool DAP. But the DAPs are prosecuting a *conspiracy* claim. Of course they have the right to take proportionate, targeted third party discovery of unnamed co-conspirators. By contrast, Defendants have made no plausible showing that, in addition to the discovery they will get from the Bellwether Discovery DAPs (30 or 40, depending on how the Court rules), they have any genuine need for facts, documents, or testimony from other DAPs—including DAPs Defendants themselves did not select as discovery bellwethers.

## IV. Post-Selection Dismissals or Stays of Claims of Discovery Bellwether DAPs

It is possible that, during the discovery period, a Discovery Bellwether DAP may seek to dismiss its claims. They may do so for a variety of reasons, including settlement, change of management, or a good faith determination that the burdens of discovery outweigh any likely recovery. The DAP EC and Defendants propose two contrasting solutions to address this possibility. On one hand, the DAP EC recommends handling dismissals through a flexible meet-and-confer process, with disputes resolved by the Court on a case-specific basis, ensuring that replacements, if necessary, are tailored to the circumstances. Conversely, Defendants propose an unnecessarily rigid and punitive replacement/strike system that encourages gamesmanship and undermines the purpose of the discovery bellwether process. The DAP EC's proposal is superior for several reasons.

*First,* both proposed Discovery Bellwether pools (*i.e.*, 30 or 40) include a sufficient number of DAPs to generate meaningful information without mechanical replacements. Indeed, depending on the number of dismissals (if any), it may be that nothing needs to be done because the remaining pool of Discovery Bellwether DAPs is still large and robust and replacing a pool member would unduly disrupt or delay discovery. That is an advantage of the discovery bellwether approach—the parties select a substantial pool that allows for "breathing room" if a small number of Discover Bellwether DAPs drop out of the pool for whatever reason.[2]

*Second*, the DAP EC's proposal offers a commonsense approach to assessing whether a replacement is necessary and, if so, what form it should take. Circumstances matter. If a Discovery Bellwether DAP seeks to dismiss its claims, the DAP EC and Defendants should meet and confer and then advise the Court whether either side believes replacement is warranted. Proposed CMO at Para. 14. Each situation would be addressed on its own facts if and when it occurs. Defendants' proposal, by contrast, paints with too broad a brush. It requires a potentially disruptive one-for-one replacement if even a single Discovery Bellwether DAP dismisses before February 1, 2026 (just after the substantial completion deadline). Worse still, after that date, Defendants' proposal would automatically <u>shrink</u> the Discovery Bellwether DAP pool by striking from the remaining pool on a one-for-one basis—and further require that any dismissal for any reason at that time be with prejudice, regardless of the individual circumstances. Proposed CMO at Para. 14.

*Third,* Defendants' proposal to use strikes following any post-February 1, 2026 dismissal also is improperly punitive. It ignores the reality that a DAP may leave the pool for reasons entirely outside the control of the other DAPs in the pool. Allowing Defendants to use a dismissal by one

---

[2] The dispute here solely concerns the potential for a Discovery Bellwether DAP to drop out of the discovery pool. The parties have not yet discussed any bellwether trial selection or process.

Discovery Bellwether DAP as a basis to strike *another* Discovery Bellwether DAP from the pool would unfairly penalize those pool DAPs that have proceeded diligently in discovery based on the decisions of a *different* DAP (possibly represented by *different* counsel) for reasons having nothing to do with the merits any other DAP's case. Where Bellwether DAPs share common counsel, Defendants' proposal risks serious conflicts of interest, as it could discourage settlement of one client's claims for fear of harming another client's position.

The DAP EC proposal avoids this risk of gamesmanship. The purpose of the discovery bellwether process is to generate information sufficient to identify cases that should advance to trial and educate the court and parties about the strengths and weaknesses of the remaining cases within the MDL, not to create tactical advantages. The fact-specific approach proposed by the DAP EC ensures that dismissals are addressed equitably. If a dismissal occurs, Defendants will be free to advocate for appropriate relief, but whether it is warranted should be decided by this Court at that time, after the parties meet and confer and in light of the circumstances presented. This approach preserves judicial oversight, maintains fairness to both sides, and avoids the risk of asymmetry and gamesmanship inherent in Defendants' proposal.

Dated: September 30, 2025                Respectfully submitted,

                                            */s/ Jennifer Scullion*
                                            Jennifer Scullion
                                            **SEEGER WEISS LLP**
                                            55 Challenger Road 6th Fl.
                                            Ridgefield Park, NJ 07660
                                            Tel: (973) 639-9100
                                            jscullion@seegerweiss.com

Stephen M. Medlock
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W., Suite 500 W
Washington, D.C. 20037
Tel: (202) 639-6500
smedlock@velaw.com

Matthew M. Lavin
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Ave., N.W., Suite 350S
Washington, D.C. 20037
Tel: (202) 677-4030
Matt.Lavin@agg.com

Hunter Shkolnik
**NS PR Law Services, LLC**
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tel: (787) 493-5088
Hunter@NSPRLaw.com

*Direct Action Plaintiffs' Executive Committee*

Christopher Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

7

## **CERTIFICATE OF SERVICE**

I, Jennifer R. Scullion, hereby certify that on this 30th day of September 2025, I caused the foregoing to be electronically filed with the Clerk of the Court of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to all filing users.

*/s/ Jennifer R. Scullion*
Jennifer R. Scullion