# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 1:24-cv-06795<br>MDL No. 3121<br><br>Hon. Matthew F. Kennelly |

**PLAINTIFFS' CORRECTED\* MOTION TO COMPEL DEFENDANT MULTIPLAN TO PRODUCE DOCUMENTS USING PLAINTIFFS' PROPOSED TIME PERIODS AND FROM ADDITIONAL CUSTODIANS AND FOR ENTRY OF A BRIEFING SCHEDULE**

\*The correction is noted in redline on page 2.

**I.     INTRODUCTION**

Pursuant to Local Rule 37.2, Plaintiffs held numerous meet-and-confers with each Defendant regarding (a) the relevant time period for discovery, and (b) the appropriate custodians to include in the document search process. Plaintiffs reached agreement with all Non-MultiPlan Defendants on these topics, but were unable to resolve three discrete disputes with MultiPlan: (1) the time period applicable to discovery (the "General Relevant Time Period"); (2) the custodians whose documents must be searched during the General Relevant Time Period; and (3) the custodians whose documents must be searched over a slightly more expansive time period than the General Relevant Time Period to address certain "Earlier-Period RFPs."

Plaintiffs seek an order compelling MultiPlan to:

 (1) expand the General Relevant Time Period for document searches by one year, so that it covers the period January 1, 2012 to the present (MultiPlan would only agree to a start date of January 1, 2013);

 (2) search the files of the 16 additional custodians listed below for the General Relevant Time Period, which would result in 30 MultiPlan custodians total (MultiPlan would only agree to 14 custodians total); and

 (3) search the files of the 7 additional custodians listed below for the years 2010 and 2011 to locate documents responsive to certain "Earlier-Dated RFPs" (listed in Exhibit A), which would result in 9 custodians total for this earlier time period (MultiPlan would only agree to 2 custodians for the Earlier-Dated RFPs).

Plaintiffs respectfully request that the Court set a briefing schedule on this Motion which would allow it to be fully briefed prior to the November 14, 2025 status conference. To that end, Plaintiffs propose that MultiPlan submit its response by November 10, 2025, and that Plaintiffs be permitted to submit any reply by no later than November 12, 2025. Plaintiffs proposed this schedule to MultiPlan and understand that MultiPlan does not oppose this schedule.

1

## II. BACKGROUND

Around 2009, the New York Attorney General halted the predecessor out-of-network ("OON") price-fixing cartel operated by Ingenix (a United subsidiary). *See In re MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614, 624 (N.D. Ill. 2025). In the wake of Ingenix's demise, MultiPlan embarked on a series of acquisitions to build its OON repricing business and fill the void left by Ingenix.[1] Specifically, in 2010, MultiPlan acquired Viant, an early form of technology used to reprice OON claims.[2] The following year, MultiPlan acquired National Care Network along with its pricing algorithm, Data iSight, a primary re-pricing algorithm that MultiPlan continues to use today.[3] Evidence indicates that the Payor Defendants began accepting MultiPlan's invitations to collude on OON prices starting as early as 2010.[4]

Given this evidence, Plaintiffs initially sought <span style="color:red">significant discovery</span><span style="color:red; text-decoration:line-through">a General Relevant Time Period</span> beginning in 2010 from all Defendants. However, in the interest of compromise, Plaintiffs offered all Non-MultiPlan Defendants a General Relevant Time Period start date of January 1, 2013 (or later, depending on when each Payor signed up for MultiPlan's OON repricing services). All Non-MultiPlan Defendants accepted this offer. Each of the larger Non-MultiPlan Defendants (e.g., Cigna, Aetna, Elevance, and United) agreed to search the files of anywhere between 15 and 21 document custodians. No disputes remain between Plaintiffs and any Non-MultiPlan Defendant on the applicable relevant time period or custodians.

---

[1] *See* ECF No. 172 (Class Compl.) at ¶¶ 99-108, 132-141; ECF No. 182 (Master DAP Compl.) at ¶¶ 131-137.
[2] ECF No. 182 ¶¶ 51, 133; ECF No. 172 ¶¶ 133-134.
[3] ECF No. 182 ¶¶ 52, 134; ECF No. 172 ¶ 135.
[4] *See* CIGNA_IRM00000722 (SOW for out-of-network cost containment and negotiation services dated to 2010); United's R&Os to Pls.' 1st Set of Interrogs., Rog. 7 (noting relationship with MultiPlan's Viant began in 2010).

MultiPlan is differently situated from the other participants, because MultiPlan began planning for and taking steps to set up the OON scheme at least as far back as 2010. *See* Class Compl. at ¶ 23 (regarding Viant acquisition). Still, Plaintiffs offered to compromise on time period. After many rounds of discussions and negotiations, Plaintiffs proposed a General Relevant Time Period for MultiPlan of January 1, 2012 to the present for the majority of document requests, as well as 30 current and former MultiPlan employees whose custodial files would be searched.[5] Plaintiffs also proposed that MultiPlan run certain additional targeted searches for documents concerning the origins of the conspiracy going back to January 1, 2010. These targeted searches are designed to locate documents responsive to three document requests (the "Earlier Period-RFPs," RFP Nos. 23, 24, and 41, are attached hereto at Exhibit A) concerning MultiPlan's acquisition, development, and deployment of OON repricing services following Ingenix's 2009 demise, as well as the development of Multiplan's methodology for repricing OON claims. To further limit the scope, Plaintiffs proposed that MultiPlan limit these searches for Earlier-Dated RFPs to a subset of the 30 custodians—each of whom served in a key role related to OON repricing going back to at least 2010.

MultiPlan rejected Plaintiffs' offer and instead proposed a General Relevant Time Period of January 1, 2013 to the present. For searches performed within this time period, MultiPlan offered to search the files of just 14 document custodians—fewer than many of the other Defendants had agreed to—leaving 16 custodians in dispute. And while MultiPlan agreed to perform searches going back to January 1, 2010 to locate documents responsive to the Earlier-Dated RFPs, it offered to do so for only for two document custodians—Dale White (MultiPlan's

---

[5] Plaintiffs' final proposal of 30 custodians represented a significant compromise from Plaintiffs' opening proposal to MultiPlan, which included many more individuals.

3

Chief Revenue Officer in 2010) and Sean Crandell (MultiPlan's Assistant Vice President of Healthcare Economics in 2010)—leaving seven custodians in dispute for the Earlier-Dated RFPs. The Parties were thus at impasse as of October 28, 2025.

The Parties' remaining disputes are depicted below.

| Summary of Disputes | | |
|---|---|---|
| *Nature of Dispute* | *Plaintiffs' Position* | *MultiPlan's Position* |
| Start Date of General Relevant Time Period | January 1, 2012 | January 1, 2013 |
| No. of Custodians for Searches Within the General Relevant Time Period | 30 | 14 |
| No. of Custodians for Searches Going Back to 2010 | 9 | 2 |

### III. PLAINTIFFS' PROPOSED GENERAL RELEVANT TIME PERIOD FOR MULTIPLAN'S DISCOVERY IS CONSISTENT WITH CASE LAW AND PROPORTIONAL TO THE NEEDS OF THE CASE

In antitrust conspiracy cases, where Defendants hold almost all the relevant information, courts take an "expansive" view of relevance and "permit broad discovery." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012). In cartel cases like this one, pre-conspiracy discovery is critical to show "when, how and why the conspiracy was formed." *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *4-5 (N.D. Ill. June 26, 2023).[6] Pre-conspiracy discovery is also important to

---

[6] *See also Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 709-10 (1962) ("overt acts in furtherance" of conspiracy from before the damages period began were "clearly material" to plaintiff's case); *Rumble, Inc. v. Google LLC*, No. 21-cv-00229, 2023 WL 3751797, at *5, *10 (N.D. Cal. May 31, 2023) (allowing plaintiffs to "seek discovery of the origin, background, and purpose of [defendant's] alleged anticompetitive conduct").

4

demonstrate the "competitive conditions" that would have prevailed absent the alleged cartel, which bears on the questions of anticompetitive impact and damages. *See Outpatient*, 2023 WL 4181198, at *5.

Here, Plaintiffs propose that for most document requests, MultiPlan perform searches dating back to 2012 (the General Relevant Time Period), and that for a few requests targeting information about the origins of the cartel and the evolution of MultiPlan pricing methodologies, it search for documents dating back to 2010. This proposed temporal scope of discovery for MultiPlan is consistent with the case law and proportional to the needs of this litigation. And carving out certain limited discovery for a longer period of time regarding elements most central to the allegations is appropriate. *See Cyntegra, Inc. v. IDEXX Lab'ys, Inc.*, 322 Fed. Appx. 569, 571 (9th Cir. 2009) (affirming district court's decision to permit discovery without temporal limitation for conduct regarding certain agreements central to the case).

MultiPlan has already agreed to search the files of two of its custodians back to 2010 for the Earlier-Dated RFPs. Thus, MultiPlan admits that information stretching back to 2010 bears on questions regarding the "when," "how," and "why" of the conspiracy, as well as its subsequent implementation. And an earlier General Relevant Time Period start date of 2012—one year before the Non-MultiPlan Defendant start date of January 1, 2013—for all other searches is likewise appropriate,[7] as it ensures that Plaintiffs will be able to obtain adequate discovery into MultiPlan's

---

[7] *See, e.g.,* Order, *Jien v. Perdue Farms, Inc.,* No. 19-cv-02521, ECF No. 783 (D. Md., Dec. 8, 2022) (ordering certain defendants to produce documents from 2001-2022); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15–cv–3183, 2016 WL 7042117, at *6-7 (D. Minn. July 25, 2016) (ordering discovery covering 14 years and citing other cases with similarly long discovery periods); *Henry v. Brown Univ.*, No. 22-cv-125, Hrg. Tr. 34:5-8; 42:13-15 (N.D. Ill. Feb. 2, 2023) (permitting 25 years of document discovery); *In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, ECF 930 (E.D. Pa. Apr. 5, 2019) (ordering certain defendants to produce documents covering a 12+ year period).

ongoing efforts to market its OON repricing services and to sign up payor customers. *See Rumble, Inc. v. Google LLC*, 2023 WL 3751797, at *10 ("Evidence of the possible creation and implementation of an anticompetitive business strategy [prior to the limitations period] would clearly be relevant under Rule 26(b)."). And it is quite logical that general discovery from MultiPlan should begin earlier than the other Defendants.

Each of the additional Rule 26(b) factors also support Plaintiffs' requested General Relevant Time Period for MultiPlan: This is a highly consequential action, involving a nationwide price-fixing conspiracy affecting billions of dollars of critical healthcare services. MultiPlan is a sophisticated, well-resourced commercial entity. And there is no question that MultiPlan has better access to the "relevant information" here.[8]

As the party resisting Plaintiffs' discovery requests, it is MultiPlan's obligation to justify its shorter time period proposal. *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 166 (N.D. Ill. 2017) (A party resisting relevant discovery must "specifically demonstrate the burden that the discovery would impose."). But MultiPlan has identified no special burden for adding the additional year of General Relevant Time Period discovery that Plaintiffs seek. Courts routinely reject such unsupported objections, even when the requested discovery period predates the alleged damages window by over a decade. *See Inline Packaging*, 2016 WL 7042117, at *9 (rejecting purported burden arguments for an additional six years of discovery based on mere representations of counsel and absence of evidence or "specific showing that the discovery sought [was] out of proportion to the needs of the case."). And the benefit of including one additional year of discovery

---

[8] Under Fed. R. Civ. P. 26(b)(1), the proportionality of a discovery request is evaluated based on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

6

for the central defendant in this action—when MultiPlan's wrongful conduct was already under way—far outweighs any additional cost to MultiPlan, particularly since it is using TAR to reduce the burden of document review. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 127 (S.D.N.Y. 2015) (noting the use of TAR allows for "discovery of ESI without an undue burden").

IV. **EACH OF PLAINTIFFS' PROPOSED ADDITIONAL MULTIPLAN CUSTODIANS IS LIKELY TO POSSESS UNIQUE, RELEVANT INFORMATION, AND PLAINTIFFS' OVERALL CUSTODIAN PROPOSAL IS PROPORTIONAL TO THE NEEDS OF THIS CASE**

Plaintiffs propose that MultiPlan search for documents from the custodial files of 30 of its current and former employees, each of whom is likely to possess relevant material. MultiPlan has agreed to include just 14 custodians in its search,[9] a list which excludes key architects of the alleged price-fixing scheme and is a lower total custodian number than many of the Non-MultiPlan Defendants. As set forth below, Plaintiffs' request for 16 additional custodians is reasonable, proportionate, and appropriately tailored to the needs of the case. Meanwhile, MultiPlan has failed to substantiate any claims of burden, or otherwise show that including these 16 custodians is not proportionate to the needs of the case. Accordingly, the Court should compel MultiPlan to include the 16 requested custodians in its search.

Courts assess custodian disputes based on the Rule 26(b)(1) relevance and proportionality factors. *Kleen Prods.*, 2012 WL 4498465, at *14–15. Custodian selection is "more than a mathematical count"; it should target the production of responsive, nonduplicative documents from key sources during the relevant period. *Id.* at *15. Once the relevance of a custodian is established, the party resisting discovery must substantiate any claim that a requested custodian is unreasonably cumulative or unduly burdensome. *Outpatient*, 2023 WL 4181198, at *10 (rejecting

---

[9] These individuals are: Monica Armstrong; Andrew Cone; Sean Crandell; Mark Edwards; Kurt Fullmer; Jacqueline Kienzle; Melbalyn Madarang; Susan Mohler; Kathleen Praxmarer; Dale White; Melissa Dotson; Michael Kim; Derek Reis-Larson; and Michael Schill.

7

defendant's objection where it "has not provided any analysis of the ESI in question or other support for its contention"). MultiPlan has not done so here.

### A. The Court Should Compel MultiPlan to Add 16 Custodians for Searches Performed During the General Relevant Time Period.

The additional 16 proposed custodians Plaintiffs seek include executives with central roles and responsibilities concerning the formation, operation, and maintenance of the conspiracy. These include MultiPlan's CEO for 20 years, Mark Tabak—one of the people most likely to have relevant knowledge and information about the allegations here, including MultiPlan's overall business, strategy, and operations. Accordingly, adding these custodians is necessary to ensure production of relevant materials in MultiPlan's possession. And collecting documents from 30 custodians is eminently reasonable for a central defendant in a Section 1 conspiracy case, as demonstrated by many cases with similar (or higher) numbers.[10] MultiPlan should be required to do so here.

Each of the 16 custodians in dispute is likely to possess relevant, nonduplicative documents concerning the formation, operation, and maintenance of the conspiracy, as explained below:

|   | **Custodian** | **Title** | **Relevance** |
|---|---|---|---|
|   | **Senior Leadership** | | |
| 1 | Mark Tabak | Former CEO/Chair, 2002 to 2022. | As CEO of MultiPlan for over 20 years, he is likely a unique source of information concerning strategic decision-making behind the formation and maintenance of the MultiPlan cartel (including the acquisition of Viant and Data iSight and efforts to pitch payors to join the cartel). |

---

[10] *See, e.g.*, *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21-cv-305, ECF No. 299 at 1–2 (N.D. Ill. July 12, 2023) (ordering USPI to add 21 more custodians after agreeing to only 9); *Outpatient*, 2023 WL 4181198, at 10 (ordering SCA to add 11 custodians after agreeing to 9); *Kleen Prods.*, 2012 WL 4498465, at 13 (N.D. Ill. Sept. 28, 2012) (ordering 8 additional custodians each from 2 defendants who had already agreed to 75 and 28, respectively); *see also Seaman v. Duke Univ.*, No. 1:15-cv-00462, ECF No. 203, at 1, n.1 (M.D.N.C. Mar. 1, 2018) (noting that Duke searched "more than 85 custodians").

|   | **Custodian** | **Title** | **Relevance** |
|---|---|---|---|
| 2 | Travis Dalton | President & CEO, Mar. 2024 to present. | He was appointed CEO shortly prior to this litigation. He is likely a unique source of discovery regarding strategic decision-making around MultiPlan's response to the litigation and any changes to MultiPlan's practices that were considered or made. |
|   | **Sales and Client Management** | | |
| 3 | Michael Battistoni | VP, Sales & Account Management (TPA business), Aug. 2022 to present. Previously at Cigna and Aetna. | He was named in several MultiPlan contracts involving Cigna and attended multiple Client Advisory Board meetings as a Cigna employee and later a MultiPlan employee. He is likely to have information concerning the relationship between MultiPlan and large payors. |
| 4 | Kevin Williams | Sr. Manager of National Accounts, 1997 to Sept. 2024; Vice President of Sales and Account Management, Sept. 2024 to present. | As a long-term manager for large payor clients, he was named in several MultiPlan contracts involving Cigna and attended multiple Client Advisory Board meetings. He is likely an important source of information concerning negotiations (i.e., invitations to join the conspiracy) with major payors. |
| 5 | Emma Johnson | Director, Sales & Account Management, National Accounts, Sept. 1999 to Oct. 2018. | As a long-term manager for large payor clients, she attended numerous Client Advisory Board meetings and is likely to have key information concerning negotiations (i.e., invitations to join the conspiracy) with major payors. |
| 6 | Paul Nappi | Director, Sales & Account Management, 2015 to 2019. Currently at Zelis | He is likely to have information concerning negotiations (i.e., invitations to join the conspiracy) with payors not covered by the "National Accounts" team. |
|   | **Network Management** | | |
| 7 | Bruce Singleton | GM, Network Services / SVP, Network Strategy, Mar. 2015 to | He presented at several Client Advisory Board meetings and is a former Aetna employee. He is likely to have key information concerning negotiations (i.e., |

9

|    | **Custodian** | **Title** | **Relevance** |
|----|---------------|-----------|---------------|
|    |               | present. Prior at Aetna. | invitations to join the conspiracy) with major payors. |
| 8  | Michael Ferrante | SVP, Network Development; EVP of Operations, 1995 to Dec. 2017. | He presented at multiple Client Advisory Board meetings and held key roles in Network Development and Operations. He is likely to have unique information concerning efforts to expand the cartel (i.e., "Network Development"). |
|    | **Project Management, Product Development, and Operations** | | |
| 9  | Michael McEttrick | Vice President of Healthcare Economics, Nov. 2010 to Oct. 2020. | He participated in pricing methodologies for OON services for a decade. He is likely a unique source of discovery regarding out-of-network pricing methodologies employed by MultiPlan's repricing services. |
| 10 | Liz Lord | Director, Product Planning, Feb. 2003 to present. | She facilitated project management meetings during which payor-specific projects concerning MultiPlan's services were discussed for over a decade. As facilitator of these meetings, she is likely a unique source of communications regarding agendas, issues, and attendance at these meetings. |
| 11 | Mike Bandomer | Director, OON Solutions, 2015 to present. | He was a regular attendee of project management meetings and is likely a key source of payor-specific projects discussed at these meetings. Plaintiffs also understand that he helped create and oversee the training and procedure manuals used by MultiPlan's price negotiation team. |
| 12 | Christopher Dorn | SVP, Payment Integrity, July 2016 to October 2024. Previously VP at Ingenix. | As a previous employee of Ingenix (the prior cartel involving OON pricing), he is a unique source of discovery into MultiPlan's efforts to build an "alternative" to the Ingenix cartel. |
| 13 | Linda Gordon-Cohen | Director, Technical Product Planning, Jan. 2009 to present. | She participated in software engineering and had oversight of technical development teams working on the |

10

| | Custodian | Title | Relevance |
|---|---|---|---|
| | | | relevant services for over a decade. She is a source of discovery regarding the functioning and development of MultiPlan's repricing services. |
| | **Negotiation Services** | | |
| 14 | JR Moss | Manager of Negotiations Services and Director of Operations, 1997 to June 2023. | He oversaw the Viant product line for multiple decades and he oversaw Negotiation Services team. He is likely a unique source of discovery for documents and communications involving Viant. |
| 15 | At least one negotiator on MultiPlan's fee negotiation team | Plaintiffs request that MultiPlan nominate at least one "negotiator" on its fee negotiation and Viant negotiation teams. These individuals would provide unique information concerning the inner workings of these negotiation services—including methods for pricing; the risk of provider abrasion (or lack thereof) and MultiPlan's response; and the relationship between these negotiation services and other out-of-network repricing services at issue. | |
| 16 | At least one Viant negotiator | | |

MultiPlan's Negotiation Services team (Nos. 14 to 16 above), which MultiPlan has attempted to shield from its list of custodians, is particularly relevant here. Plaintiffs allege that these negotiation services were part of the anticompetitive scheme. *See* ECF No. 172 (Class Compl.) at ¶¶ 169-174; ECF No. 182 (Master DAP Compl.) at ¶ 12.

MultiPlan's proposal to search just 14 custodians is less than United (21), Cigna (19), Aetna (17), and Elevance (15). Although custodian selection is not a mere numbers game, it is surprising that MultiPlan, the alleged ringleader of a conspiracy it started setting up at least 16 years ago, asserts that just 14 individuals are sufficient to respond to Plaintiffs' document requests—excluding many obvious custodians like CEOs Mark Tabak and Travis Dalton. Ordering MultiPlan to search the files of the 30 custodians carefully selected by Plaintiffs is proportional to the needs

11

of this case and appropriate given the number of custodians that the Payor Defendants agreed to without the need for Court involvement.

### B. The Court Should Compel MultiPlan to Add 7 Additional Custodians for Limited Pre-2012 Searches.

For a handful of RFPs (No. 23, 24, and 41) targeting information about the origins of the alleged conspiracy (the "Earlier Dated RFPs"), Plaintiffs requested that MultiPlan search the custodial files of nine custodians. MultiPlan refused and only agreed to include only two custodians in this search—Dale White (MultiPlan's Chief Revenue Officer during that period) and Sean Crandell (MultiPlan's Assistant Vice President of Healthcare Economics). MultiPlan's proposal is insufficient.

Plaintiffs' seven proposed additional custodians held a broad variety of roles related to these targeted RFPs during the pre-2012 period. MultiPlan has provided no basis for its objection to these additional seven custodians—and no explanation as to why these individuals are *unlikely* to possess nonduplicative, relevant documents. Accordingly, Plaintiffs request that the Court compel MultiPlan to search the custodial files of the seven individuals listed below for documents responsive to these RFPs, for the period of January 1, 2010 through December 31, 2012:

|   | Custodian | Title During Pre-2012 Period | Relevance |
|---|---|---|---|
| 1 | Derek Reis-Larson* | VP of Operations | As VP of Operations whose responsibilities included product design and system integrations, he likely has nonduplicative information concerning the integration and deployment of newly acquired services during the pre-2012 period. |

---

* MultiPlan agrees to include these custodians in its search for documents subject to the General Discovery Time Period only (i.e., not for the pre-2012 period).

| | **Custodian** | **Title During Pre-2012 Period** | **Relevance** |
|---|---|---|---|
| 2 | Monica Armstrong* | Manager, National Accounts | During the pre-2012 period, she was a manager for National Accounts, and she has since transitioned into high level strategic sales and account management roles. She is likely to have nonduplicative information concerning strategic decision-making around selling newly acquired services to large payors. |
| 3 | Kathleen Praxmarer* | VP of National Operations (Viant); VP of Out-of-Network Solutions | She was a VP of National Operations at Viant when it was acquired by MultiPlan. As the only former Viant employee on this list, her documents likely provide nonduplicative insight of how Viant's operations were integrated into MultiPlan post-acquisition. |
| 4 | Susan Mohler | VP of Marketing and Product Management | She has been a marketing executive at MultiPlan since 2004. She likely has noncumulative information concerning the marketing and positioning of newly acquired services during the 2010 to 2012 period. |
| 5 | Mark Tabak | CEO | As the CEO of MultiPlan for around 20 years (including the pre-2012 period), he is likely a source of information concerning strategic decision-making behind major acquisitions of relevant repricing services that took place before 2012 (e.g., Viant, acquired in 2010; National Care Network acquired in 2011). |
| 6 | Liz Lord | Director of Product Planning | As a longtime Director of Product Planning, she is likely a source of unique documents regarding implementation and development of MultiPlan services and defendant-specific projects during the 2010-2012 time period. |
| 7 | Michael McEttrick | VP of Healthcare Economics | In his role, he participated in pricing methodologies for OON services. Accordingly, he is likely to have unique |

| Custodian | Title During Pre-2012 Period | Relevance |
|---|---|---|
| | | information responsive to RFP No. 24 concerning various pricing methodologies for OON services in discussion during the pre-2012 period. |

### C. MultiPlan has Not Substantiated Its Claims of Burden, as It Must, Despite Plaintiffs' Requests.

MultiPlan has refused to provide support for its proportionality objections, instead shifting the burden to Plaintiffs to explain why each custodian is nonduplicative in the first instance. This is not the way discovery works. And for good reason: Plaintiffs face a significant information asymmetry regarding the roles and responsibilities of MultiPlan's own employees. That is why, once Plaintiffs established the relevance of a custodian, MultiPlan bears the burden to substantiate any claims of burden or duplication. *See Kleen Prods*, 2012 WL 4498465, at *15 (ordering defendants to add custodians because their "conclusory statements" were not sufficient "evidence in support of" their asserted burden); *Outpatient*, 2023 WL 4181198, at *10 (ordering defendant to add custodians where it "failed to provide any factual detail about [] burden"). MultiPlan has not done so here. Nor could it: if a proposed additional custodian is truly duplicative, then adding that custodian should add few new documents to review and thus little additional burden.

### V. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant this motion to compel MultiPlan to:

(1) expand the General Relevant Time Period by one year so that it covers January 1, 2012 to the present;

(2) search the files of the 16 additional custodians listed above for the General Relevant Time Period; and

(3) search the files of the 7 custodians listed above for the period 2010 to 2012 as to the Earlier-Dated RFPs.

14

Dated: October 31, 2025

Respectfully submitted,

/s/ Stephen M. Medlock
Stephen M. Medlock
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W., Suite 500W
Washington, D.C. 20037
Tel: (202) 639-6500
smedlock@velaw.com

Jennifer Scullion
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
jscullion@seegerweiss.com

Matthew M. Lavin
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Ave., N.W., Suite 350S
Washington, D.C. 20037
Tel: (202) 677-4030
Matt.Lavin@agg.com

Hunter Shkolnik
**NS PR LAW SERVICES, LLC**
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tel: (787) 493-5088
Hunter@NSPRLaw.com

*Direct Action Plaintiffs' Executive Committee*

Christopher Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

/s/ Zachary D. Caplan
**BERGER MONTAGUE PC**
Eric L. Cramer (*pro hac vice*)
David F. Sorensen (*pro hac vice*)
Zachary D. Caplan (*pro hac vice*)
Patrick F. Madden (*pro hac vice*)
Jordan T. Hollinger (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
dsorensen@bergermontague.com
zcaplan@bergermontague.com
pmadden@bergermontague.com
thollinger@bergermontague.com

Hope Brinn (*pro hac vice*)
505 Montgomery Street, Suite 325
San Francisco, CA 94111
Tel: (302) 530-6250
hbrinn@bergermontague.com

**EDELSON PC**
Natasha J. Fernández-Silber*
nfernandezsilber@edelson.com
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
*Admitted in New York and Michigan only

Sarah R. LaFreniere (*pro hac vice*)
Brandon Baum-Zepeda (*pro hac vice*)*
1255 Union Street NE, Suite 850
Washington, DC 20002
Tel: (202) 270-4777
slafreniere@edelson.com
bbaum-zepeda@edelson.com
*not admitted to practice in DC; practice authorized by D.C. Rule 49(c)(3).

**SUSMAN GODFREY LLP**
William Christopher Carmody (*pro hac vice*)
Shawn J. Rabin (*pro hac vice*)
Stephanie N. Spies (*pro hac vice*)
Thomas K. Boardman (*pro hac vice*)
Amanda E. Fischer (*pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sspies@susmangodfrey.com
tboardman@susmangodfrey.com
afischer@susmangodfrey.com

Halley W. Josephs (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
hjosephs@susmangodfrey.com

*Interim Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2025, a copy of the foregoing document was electronically filed through the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Zachary D. Caplan*
Zachary D. Caplan