# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795<br>MDL No. 3121 |
| This Document Relates To:<br><br>ALL ACTIONS | Hon. Matthew F. Kennelly |

**[PROPOSED] CASE MANAGEMENT ORDER NO. [XX]**
**(REGARDING THE SAMPLING OF IN-NETWORK CLAIMS STRUCTURED DATA)**

Class Plaintiffs, Direct Action Plaintiffs, and Defendants (each a "Party" and together, the "Parties"), through their respective counsel of record, stipulate to the following regarding the sampling of in-network claims structured data, subject to approval by the Court:

1. In lieu of producing all in-network claims structured data, a Party may choose to produce a sample of in-network claims structured data in accordance with the terms below.

2. Nothing in this proposed case management order shall be deemed (1) an admission or determination that particular products, services or healthcare claims are a subject of or relevant to the alleged conspiracy or claims in this proceeding, or (2) an admission or determination regarding which entity ultimately sets or pays the final price on any healthcare claims, nor may this proposed case management order be used by any party to argue the foregoing.

3. A Party relying on sampling (the "Sampling Party") shall produce twelve (12) weeks total of in-network claims structured data for each year during the period January 1, 2010 to August 31, 2025 ("the Structured Data Period"), subject to any specific objections that the Sampling Party asserts regarding the time period, certain data fields, burden, or other Party-specific accessibility issues (e.g., a source is not reasonably accessible). If a Sampling Party intends to

assert such objections, it must promptly disclose them, and the Parties shall meet and confer in good faith to address them. Similarly, pursuant to Case Management Order No. 18 (ECF No. 530), the Parties shall continue to meet and confer in good faith to resolve individualized issues, including regarding data accessibility, and if unable to reach resolution, may seek appropriate relief from the Court.

4. The Parties will work cooperatively to randomly select two (2) contiguous weeks per quarter, and each Sampling Party will produce in-network claims structured data for these same two (2) weeks for each year in the Structured Data Period.

5. The Parties will also work cooperatively to randomly select four (4) contiguous additional "floating" weeks from each year in the Structured Data Period and produce in-network claims structured data for those four (4) weeks. These "floating" weeks will vary each year, and will be selected from the weeks not already included as part of the two weeks per quarter (under Paragraph 4).

6. A Sampling Party must produce information sufficient to show the final amount paid for each claim for services rendered during the sampled weeks identified in Paragraphs 4 and 5 of this Order, including any subsequent adjustments, corrections, revisions, or recalculations, regardless of when those adjustments were made. The Sampling Party will pull claims (including all claim lines on the claim) where the earliest date of service on the claim falls within the sampled weeks identified in paragraphs 4 and 5 of this Order, regardless of when any claim was adjudicated or adjusted.

7. The following may not be sampled pursuant to this Stipulation: structured claims data for (1) all out-of-network claims, and (2) all other claims priced or re-priced by a Defendant using a MultiPlan product or service. The Sampling Party shall also identify which claims were

priced or repriced by a Defendant using a MultiPlan "wrap" network rate to the extent that such information is accessible in the Sampling Party's structured claims data.

8. If any Party believes that any in-network claims structured data produced pursuant to this sampling methodology is inadequate or otherwise problematic, the Parties shall promptly meet and confer in good faith to address such issues. If those efforts are unsuccessful, the issue may be presented to the Court.

9. No Party or its experts shall proffer, argue, or insinuate in any respect—whether in motions (non-dispositive or dispositive, including but not limited to *Daubert* or summary judgment), at trial, hearings, on appeal, in expert reports, or otherwise—that any analysis is defective, inadmissible, or unreliable, or that it is biased or not representative, because it was performed on sampled in-network structured data rather than the Sampling Party's entire population of in-network structured data.

10. A Sampling Party and its experts may not rely on the Sampling Party's in-network claims structured data for any purpose in this litigation that was not produced in this action.

11. Nothing in this Stipulation (i) precludes any Party from arguing that an opposing Party's expert incorrectly analyzed the structured data sample or misapplied statistical methods, or (ii) precludes any Party from otherwise challenging the opinions or qualifications of an opposing Party's expert.

Dated: November 7, 2025

/s/ Christopher A. Seeger
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
Fax: (973) 679-8656
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

/s/ Sadik Huseny
Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel.: (737) 910-7300
sadik.huseny@lw.com

*Defendants' Coordinating Counsel*

/s/ Shawn J. Rabin
Shawn J. Rabin (*pro hac vice*)
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel.: (212) 336-8330
srabin@susmangodfrey.com

*Interim Class Liaison Counsel*

SO ORDERED

Dated: November __, 2025

_____
Hon. Matthew F. Kennelly

4