# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

In re MULTIPLAN HEALTH INSURANCE
PROVIDER LITIGATION

Case No. 1:24-cv-06795

MDL No. 3121

*This Document Relates To:*
ALL ACTIONS

Hon. Matthew F. Kennelly

**PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION**
**TO ALL DEFENDANTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules

of the United States District Court for the Northern District of Illinois (the "Local Rules"), Direct

Action Plaintiffs and Class Plaintiffs (collectively, "Plaintiffs") request that Defendants produce

the documents, electronically stored information, and things requested herein.

**DEFINITIONS**

1.      The Definitions set forth in DAP and Class Plaintiffs' First Set of Requests for

Production to All Defendants are hereby incorporated and shall apply to Plaintiffs' Third Set of

Requests for Production to All Defendants.

2.      "Abrasion" means any actual, threatened, anticipated, expected, perceived,

potential, or forecasted friction, frustration, dissatisfaction, objections, complaints, resistance,

disruption, or deterioration in relationships involving Providers, Patients, Subscribers, Members,

or Sponsors arising from, relating to, or in response to a Payor's practices, policies, algorithms, or

methodologies for adjudicating, repricing, or paying claims for Healthcare Goods and Services.

This term includes, without limitation: (a) objections, complaints, or pushback by Providers

concerning payment amounts or the use of MultiPlan OON Repricing Services (e.g., Data iSight,

Viant, Pro Pricer, MARS, HST), including associated features such as overrides, caps, benchmarks, elected percentiles, or target pricing; (b) any Provider's refusal to render, or threat to cease rendering, Out-of-Network Services, or to Balance Bill patients for such services; (c) any adverse reaction or concern expressed by Patients, Subscribers, or Sponsors regarding pricing, Balance Billing, diminished provider access, or reductions in provider-coverage; (d) any instance or threat of Subscriber, Sponsor, or Patient withdrawal, attrition, non-renewal, or other adverse market impact attributed to the use of MultiPlan or other OON Repricing Services; and (e) any internal or external acknowledgment, assessment, or strategy concerning the reputational, contractual, clinical, or economic effects of such resistance or dissatisfaction, including the actual or anticipated loss of Subscribers due to a loss in provider-coverage.

3.      "Affiliates" means, with respect to any person, entity, or enterprise, any other person, entity, or enterprise that, directly or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with such person, entity, or enterprise. By way of example, Affiliates of Defendant United HealthGroup, Inc. include United Healthcare Insurance Company and its Affiliates; United Healthcare Services, Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

4.      "Balance Bill" or "Balance Billing" means any process by which a Provider seeks additional compensation from a Patient for any portion of its total billed charges above the allowed amount paid by Payors.

5.      "Client Advisory Board" means Meetings or gatherings involving MultiPlan (or its Representatives, Employees, or Affiliates) and two or more Payors (or their Representatives,

Employees, or Affiliates) that use MultiPlan's OON Repricing Services or are considering using MultiPlan's OON Repricing Services.

6.    "Communication" means the oral or written transmittal of any kind of information (in the form of facts, ideas, opinions, inquiries or otherwise) by any means, including but not limited to face-to-face, email, facsimiles, telephonic, video or other virtual meeting, correspondence, message, or other written, electronic, or oral transmission, or exchange of information in any form.

7.    "Competitive Conditions" means the factors and parameters that influence economic competition in a market, including, but not limited to, pricing, market structure, market share, market concentration, barriers to entry, barriers to expansion, entry of new participants, exit of existing participants, consolidation, mergers and acquisitions, cost of goods or services, patterns of utilization, the composition of services or products offered, and regulatory or compliance requirements impacting market dynamics.

8.    "Complaints" means all complaints filed in the instant multidistrict litigation stylized *In re MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION*, including the Consolidated Class Action Complaint filed November 18, 2024, the Consolidated Master Direct Action Plaintiff Complaint filed December 2, 2024, and any Short-Form Complaints.

9.    "Control" (including the correlative terms "Controls", "Controlled by", and "under common Control with") shall mean, with respect to any person, entity, or enterprise, the power, directly or indirectly, either to (a) vote a majority of the voting shares or other voting interests in such person, entity, or enterprise for the election of directors or other governing body of such person, entity, or enterprise or (b) direct or cause the direction of the management and policies of such person, entity, or enterprise, whether through the ownership of voting securities, by contract,

or otherwise.

10. "Defendant" means each Person named as a Defendant in a Complaint.

11. "Employee" means any of Your current or former officers, directors, executives, managers, and Persons employed or whose services are contracted for by You so as to create an employment relationship within the scope of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, including both exempt and non-exempt individuals.

12. "ID Variable" means a variable that identifies each Patient in a dataset with a distinct value.

13. "Investors" means any individual or entity that committed capital to any Defendant with the expectation of receiving financial returns.

14. "Litigation" means this multidistrict litigation and all constituent cases centralized in this multidistrict litigation.

15. "Loss Adjustment Expenses" means the expenses incurred by a Payor in handling, adjudicating, paying, and negotiating a Claim.

16. "Meeting" means a coming together of two or more individuals in any form including, but not limited to, in-Person discussions, phone calls, video or other virtual communications, and meals. This definition includes, but is not limited to, all Client Advisory Board meetings, project priority meetings, governance meetings, Trade Association meetings, and industry conferences.

17. "MS-DRG" means Medicare Severity Diagnosis Related Groups, as that term is used by the Centers for Medicare & Medicaid Services ("CMS") to categorize and reimburse hospitals for inpatient services.

18. "MultiPlan" means MultiPlan, Inc., now known as Claritev Corp., and all of its

partners, corporate parents, successors, predecessors, subsidiaries, Affiliates, Employees, and Representatives, including, but not limited to, Claritev Corp.; Claritev, Inc.; MultiPlan Corp.; Viant, Inc.; National Care Network, LP; National Care Network, LLC; Private Healthcare Systems, Inc.; Viant Payment Systems, Inc.; HSTechnology Solutions, Inc.; Benefits Science LLC; Beech Street Corporation; Texas True Choice, Inc.; Medical Audit & Review Solutions, Inc.; Integrated Health Plan, Inc.; Savant Management Concepts, Inc.; i/mx Technologies, Inc.; HMA, Inc.; Medical Management Services, Inc.; Rural Arizona Network, Inc.; Health Management Network, Inc.; and Associates for Health Care, Inc.

19. "OON Pricing" means any element of pricing or price setting for Out-of-Network Services.

20. "Performance Reports" means reports from MultiPlan containing, for each month, information about the pricing of OON Services for various networks, including, but not limited to, data concerning the number of claims submitted, the amount of charges, the amount of savings, savings percentages, closed claims, negotiations attempted, success, savings, and turnaround (in number of business days). The definition of this term includes client savings reports, performance activity snapshots, performance activity reports, network performance reports, negotiation services performance reports, performance reports for any of MultiPlan's OON Repricing Services, appeals activity reports for any of MultiPlan's OON Repricing Services, appeals by specialty reports for any of MultiPlan's OON Repricing Services, and any glossaries attached to or included in such reports. In addition, this definition includes any spreadsheet, summary, table, or Structured Data showing the disposition of completed claims addressed by MultiPlan's OON Repricing Services, MultiPlan's PPO Networks, MultiPlan's negotiation services, and instances where no solution was able to be used for a particular claim, including, if available, columns for client name, client code,

admission date, discharge date, service, claim source, claim tax id, provider name, provider state, claim number, submitter claim number, claim count, charges, savings, and savings percentage.

21.     "Plaintiff" means the entities named as plaintiffs in any litigation centralized in this Litigation, including any subsidiaries, successors, predecessors, Employees, Representatives, and Affiliates of a Plaintiff.

22.     "Relating to," "relate to," "referring to," "refer to," "reflecting," "regarding," or "concerning" mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually linked to, or connecting with the matter described in that paragraph of these requests, including Documents attached to or used in the preparation of or concerning the preparation of Documents.

23.     "Representative" means any and all agents, Employees, independent contractors, consultants, officers, directors, associates, or other persons acting or purporting to act on Your behalf.

24.     "Shared Savings Program" means any plan or program, regardless of its formal or specific name or title, implemented by a Payor in which a Subscriber or Sponsor pays a fee to the Payor based upon the purported "savings" generated by paying less money to a Provider for OON Services relative to the Provider's billed charges for that OON Service. "Shared Savings Programs" include but are not limited to, programs referred to as a Shared Savings Program and/or a Cost Containment Program.

25.     "Specialty Reports" means Performance Reports or other Structured Data reports from MultiPlan that contain Structured Data relating to Claims for OON Services broken down by provider specialty either on an aggregated or Claim-by-Claim basis.

26. "Trade Association" means any group, committee, subcommittee, or association, formal or informal, related to OON Repricing Services, commercial healthcare insurance, or payments paid to Providers for Healthcare Goods and Services, including, but not limited to, America's Health Insurance Plans (AHIP), National Association of Health Underwriters (NAHU), National Organization of Life and Health Insurance Guaranty Associations (NOLHGA), and American Medical Billing Association (AMBA), and including any formal or informal committee or sub-unit of such a group, committee, subcommittee, or association.

27. "Underpayment" means, for any claim for Out-of-Network Services, the difference between the amount billed by the Provider and the payment for that claim, including any savings generated or claimed to be generated by utilizing MultiPlan's OON Repricing Services.

28. "Utilization Reports" or "Governance Reports" means reports from MultiPlan relating to the use of MultiPlan's services, appeals, and utilization of Healthcare Goods and Services. Utilization Reports would include, for example, charges, savings, the total dollar amount of claims sent to MultiPlan by the payors, and the total charges billed through MultiPlan. For avoidance of doubt, use of the term "Utilization Reports" also refers to "Governance Reports."

29. "You" and "Your" mean the responding Defendant, including its subsidiaries, Affiliates, divisions, predecessors, successors, Representatives, parents, any organization or entity that such Defendant manages or Controls, as well as any current or former officers, directors, or Employees.

## **INSTRUCTIONS**

1. The Instructions in DAP and Class Plaintiffs' First Set of Requests for Production to All Defendants are hereby incorporated and shall apply to Plaintiffs' Third Set of Requests for Production to All Defendants.

2.      Pursuant to Federal Rule of Civil Procedure 26(e), these Requests for Production are continuing in nature so that, if You subsequently discover or obtain possession, custody, or control of any Document previously requested or required to be produced, you shall promptly produce any such Document pursuant to the Court's ESI and Protective Orders.

3.      The Relevant Time Period for these Requests is January 1, 2012 through the date of these Requests, unless otherwise stated. You shall produce all Documents and ESI responsive to these Requests, pursuant to the relevant ESI Order and Protective Order, that was created, modified, sent, attached, received, or that was in effect or covers the Relevant Time Period.

4.      Subject to the ESI Protocol, all Documents must be produced in their original form as they were created and kept in the regular course of business. All speakers notes, marginal notes, formulas, comments, redlines, links, and attachments shall be produced with a Document or ESI responsive to these requests. For the avoidance of doubt, if a portion of a board of directors presentations, materials, or board book is responsive to these requests, you shall produce the entirety of the board of directors presentations, materials, or board books including all attachments to such materials. Likewise, if a request calls for the production of any Agreement, you shall produce the Agreement with all attachments, exhibits, statements of work, side letters, preference forms, and any ancillary papers referred to therein. If one portion of a chat or text message exchange is responsive to these requests, you shall produce the entirety of the text message exchange between the same sender(s) and recipient(s) for 24 hours before and after the responsive message(s). If one portion of a hard copy day planner, journal, or calendar is responsive to these requests, you shall produce the entire day planner, journal, or calendar.

5.      Subject to the ESI Protocol, hard copy Documents shall be produced in the order that they were maintained in the regular course of business. You may not shuffle or rearrange any

hard copy Documents that you produce in response to these requests. You shall not separate hard copy Documents that were kept together, bound together, stapled together, paperclipped together, or otherwise fastened together. You shall not remove any Post-it notes attached to paper Documents that are responsive to these Requests. Instead, you shall scan the page responsive to these requests with and without the Post-it note in sequential order and produce both pages in connection with your production of a responsive Document.

6.     Subject to the ESI Protocol, you shall review Documents or ESI that do not contain sufficient readable text to be reliably searched for responsiveness to these Requests (e.g., photographs, image files, video files, and audio files) without applying search terms to such Documents or ESI.

7.     The below Requests are divided into three categories, which correspond to the intended recipient of each Request: (I) Requests Addressed to All Defendants; (II) Requests Addressed to All Non-MultiPlan Defendants; and (III) Requests Only Addressed to Defendant MultiPlan.

8.     The following rules of construction apply to these requests:

    a.   The singular form of a word includes the plural, and vice versa;

    b.   The present tense shall be construed to include the past tense and vice versa;

    c.   "And" and "or" shall be construed either disjunctively or conjunctively, whichever is appropriate to have the broadest meaning;

    d.   "Any" means one or more;

    e.   "Each" means each and every;

    f.   "All" means any and all;

    g.   "Including" means including but not limited to;

h.  The masculine, feminine, or neuter pronoun(s) shall not exclude the other genders; and

i.  The use of a defined term is intended regardless of whether a defined word or phrase is capitalized in a Request.

## REQUESTS FOR PRODUCTION

**I.  REQUESTS ADDRESSED TO ALL DEFENDANTS**

**A.  MATERIALS PREVIOUSLY REQUESTED ON A GO-GET BASIS THAT ARE NOW REQUESTED ON THE BASIS OF A CUSTODIAL AND NON-CUSTODIAL SEARCH**

**REQUEST NO 8.**  All Documents and Communications related to MultiPlan's Client Advisory Board or meetings of MultiPlan's Client Advisory Board, including, without limitation, invitations, responses to invitations, agendas, minutes, recordings, transcripts, notes, videos, photographs, summaries, presentations, slides, handouts, mobile application or web-based materials, attendee lists, invitee lists, travel documents, hotel receipts, and credit or debit card receipts.

**REQUEST NO 9.**  All Documents and Communications related to any Payor's utilization of MultiPlan's OON Repricing Services, including, but not limited to, Utilization Reports, Governance Reports, bills or invoices for MultiPlan's Repricing Services, Performance Reports, including network performance reports, negotiation services performance reports, Data iSight performance reports, Viant performance reports, Pro Pricer performance reports, MARS performance reports, HST performance reports, appeals reports, appeals by specialty reports, completed claims reports, and glossaries to such reports, including versions of such reports for claims with UCR or Fair Health flags.

**REQUEST NO 10.**  All Documents and Communications related to MultiPlan's project prioritization and/or project priority meetings, including meeting invitations and responses,

agendas, minutes, recordings, transcripts, notes, videos, summaries, presentations, slides, handouts, attendee lists, follow-up emails, and task lists.

**REQUEST NO 11.** All Documents and Communications concerning MultiPlan's OON Repricing Services, or OON pricing generally, that You have provided to any governmental entity, including materials submitted in response to formal or informal investigative requests by any committee, subcommittee, or member of the United States House of Representatives, United States Senate, or any state legislative body, committee or legislator; any federal or state regulatory or investigative entity (such as the United States Department of Labor, Federal Trade Commission, or U.S. Department of Justice), a civil investigative demand, or a grand jury subpoena. This request includes any proffer materials and presentations, and any white papers submitted to any governmental entity concerning MultiPlan's Repricing Services, or OON Pricing generally.

### B. STRUCTURED CLAIMS DATA & CLAIMS PROCESSING

**REQUEST NO 12.** All Structured Data showing Payor Data Fields and MultiPlan Payor Data Utilization Fields for each Claim for OON Services and In-Network Services, as applicable, with dates of service from January 1, 2010 to the present, at the most granular level that such Structured Data is kept.

Please provide field(s) which can be used to classify Claims as paid/denied and/or adjustments/reversals at the claim line level, if any, as well as any claims sequencing information. Indicate whether data for these fields are housed in different tables and whether some fields are available only at the Claim level.

For outpatient Claims, provide information at the claim service line level wherever possible. In particular, provide CPT, CPT modifier(s), billed amount, allowed amount, paid/denied, and adjustments/reversals at the claim line level.

For inpatient Claims, provide information at the claim line level wherever possible. Also

provide MS-DRG, billed amount, and allowed amount aggregated at the Claim level. In the alternative, provide information at the claim line level and accompanying data with instructions for how to aggregate dollar value fields to the Claim level.

Please provide the data requested in one or multiple electronic files and in one of the following machine-readable formats: parquet, CSV, delimited flat text, or Microsoft Excel.

**REQUEST NO 13.**   Documentation sufficient to understand all produced Structured Data, including but not limited to (a) code/lookup tables for any fields provided that may contain coded (character) data; (b) column/field descriptions for each field provided; (c) identification of the field or set of fields which uniquely identifies a claim; (d) links or references between documents; and (e) data dictionaries. If data fields are provided in different tables, provide ID Variables in each table to merge tables together. Data information and formatting should be consistent, including where data warehouses and standards have changed over time. If formatting or data field names have changed over the Relevant Time Period, responses should include information detailing how to map field names across data files.

**REQUEST NO 14.**   All Documents and Communications regarding insurance Claim files, such as 837 files or EDIs, and Electronic Remittance Advice (ERA) forms, such as 835 files, for OON Claims priced using MultiPlan's OON Repricing Services or other OON Repricing Services.

### C.    FINANCIAL DOCUMENTS

**REQUEST NO 15.**   For the time period January 1, 2010 to the present, Your audited and unaudited financial statements, forecasts, profit and loss statements, earnings, costs, and loss associated expenses for each year, whether in draft or final form.

**REQUEST NO 16.**   For the time period January 1, 2010 to the present, Your filings, in draft and final form, with the U.S. Securities Exchange Commission, presentations and

communications with investors and Creditors, earnings call transcripts, and presentations and discussions at healthcare, technology, investor, creditor, or health insurance conferences concerning OON Repricing Services, OON Services, the Pricing of OON Services, or competition among Payors.

### D. COMMUNICATIONS AND MEETINGS BETWEEN AND AMONG DEFENDANTS

**REQUEST NO 17.** All Documents and Communications related to MultiPlan's OON Repricing Services or OON pricing generally between or among any two or more Defendants or their agents or Representatives.

**REQUEST NO 18.** All Documents and Communications relating to, reflecting, constituting, or concerning any Meetings involving two or more Payors and/or MultiPlan— including, but not limited to, MultiPlan "road show" Meetings; Meetings between Payors concerning Pricing for OON Services, MultiPlan's OON Repricing Services, FAIR Health, Naviguard, or other OON Repricing Services; and Trade Association Meetings.

**REQUEST NO 19.** All Documents and Communications related to any offer, proposal, draft, pitch, discussion, or negotiation of any Agreement, including any amendments, statements of work, exhibits, or side letters to such Agreements, regardless of whether any Agreement or amendment to an Agreement resulted from the offer, proposal, draft, pitch, discussion, or negotiation, or whether You were involved with the offer, proposal, draft, pitch, discussion, or negotiation, among: (1) MultiPlan and any Payor(s); (2) two or more Payors concerning MultiPlan; or (3) any services offered by MultiPlan.

**REQUEST NO 20.** All Documents and Communications related to any form of user groups or user advisory groups for any of MultiPlan's OON Repricing Services or PlanOptix, including, but not limited to, any meeting invitations, agendas, minutes, transcripts (however

generated), presentations, or recordings from such user groups or user advisory groups.

### E.   MARKET AND COMPETITIVE CONDITIONS

**REQUEST NO 21.**   All Documents and Communications identifying or concerning the entities that You consider to be Your competitors, including, but not limited to, Documents and Communications characterizing the degree of competition between You and an identified competitor, or discussing the regions or service lines in which You compete against the identified competitor.

**REQUEST NO 22.**   All Documents and Communications concerning Competitive Conditions for OON Services, including (a) the companies or entities that actually or potentially compete with You, either directly or indirectly; (b) elasticities of demand or supply between OON Services and other services; (c) market shares, enrollment shares, shares of covered lives, or shares of revenues for OON Services; (d) barriers to entry or growth with respect to operating PPO Networks, acting as a third-party administrator, or covering healthcare claims; (e) the geographic market(s) in which you pay for OON Services; and (f) whether Your PPO Networks compete against Tricare, Medicare, Medicaid, or any other form of government-sponsored or government-administrated healthcare coverage and the extent to which Your PPO Networks do so.

**REQUEST NO 23.**   For the time period from January 1, 2010 to the present, all Documents and Communications concerning any acquisition, development, use, or deployment of OON Repricing Services (or any entity related thereto) including any merger, acquisition, or joint venture agreements; licensing agreements; patents; and patent applications.

**REQUEST NO 24.**   For the time period January 1, 2007 to the present, all Documents and Communications concerning any comparison, modeling, analyses, resemblance, or contrast of the means, methods, or results of Pricing of OON Services, including, but not limited to, commonalities or differences in designs, goals, pricing, appeals, methodology, technology,

business model, results, legality, or actual or potential effects on competition, between using any of the following services, methods, or benchmarks: (a) MultiPlan's OON Repricing Services, (b) usual, customary, and/or reasonable prices for Healthcare Goods and Services, (c) FAIR Health benchmark billed charges, allowed amounts, or percentages of FAIR Health benchmark billed charges or allowed amounts for Healthcare Goods and Services, (d) prices for Healthcare Goods and Services that would be paid by Medicare or Medicaid, (e) prices generated by the Ingenix or OptumInsight database, (f) the prices for Healthcare Goods and Services that prevailed prior to the use of MultiPlan's OON Repricing Services, (g) Providers' billed charges, (h) allowed amounts, (i) prices generated by Naviguard, or (j) any other benchmarks, tools, or services relevant to the Pricing of OON Services.

**REQUEST NO 25.**   All Documents and Communications constituting or concerning any aspect of Your Pricing for OON Services, including but not limited to: policies, procedures, and guidelines; factors or information considered in setting, negotiating, reviewing, or approving Prices; training materials; benchmarks or performance metrics; budgeting and spending related to Claims processing; Loss Adjustment Expenses; and the development, evaluation, testing, or approval of any models, formulas, or algorithms used or proposed for use in Pricing OON Services.

**REQUEST NO 26.**   All Documents and Communications related to Providers' Balance Billing with respect to OON Services, including, but not limited to: the actual or projected ability of Providers to Balance Bill Patients; estimates, projections, or analyses regarding the frequency of such billing and the rate at which Patients pay Balance Billed amounts; any practical, legal, or contractual limitations or prohibitions on Balance Billing; and any efforts by You or MultiPlan to prevent Balance Billing in connection with OON Claims repriced by MultiPlan.

**REQUEST NO 27.**   All Documents and Communications concerning any actual,

potential, forecasted, anticipated, or threatened Provider or member Abrasion, including the reasons for such Abrasion, the extent of such Abrasion, and any responses that You planned or implemented to address such Abrasion.

**REQUEST NO 28.**   All Documents and Communications related to MultiPlan's OON Repricing Services reducing, preventing, lowering, curtailing, inhibiting, stopping, decreasing, minimizing, lessening, addressing, or dealing with Abrasion, including, but not limited to, claims that MultiPlan's OON Repricing Services do not cause Abrasion, cause minimal Abrasion, or that any Abrasion caused by MultiPlan's OON Repricing Services is outweighed by the alleged savings associated with utilizing MultiPlan's OON Repricing Services.

**REQUEST NO 29.**   All Documents and Communications related to any healthcare Provider no longer agreeing to treat Patients on an out-of-network basis or accept their out-of-network insurance benefits (or the threat or possibility thereof), including: (a) the Provider's stated, inferred, likely, or assumed reasons for no longer agreeing to treat Patients on an out-of-network basis or accept their OON insurance benefits; (b) the actual or anticipated impact on Patient access to care, network adequacy, or member satisfaction; and (c) any internal assessment, analysis, or response by You regarding such Provider conduct or its consequences.

**REQUEST NO 30.**   All Documents and Communications that You received from any Subscriber or Sponsor concerning complaints, concerns, or inquiries regarding: (a) the pricing or payment of Out-of-Network Services; (b) the use or effects of OON Repricing Services, including Data iSight or similar tools; (c) balance billing; (d) access to out-of-network Providers; or (e) the adequacy, fairness, or transparency of pricing determinations.

**REQUEST NO 31.**   Documents and Communications concerning how You calculate "allowed amounts" and Usual and Customary amounts, including the data sources used for such

calculation.

## F. OON REPRICING SERVICE USE AND METHODOLOGY

**REQUEST NO 32.** All Documents and Communications concerning the means, methods, or types of data used by MultiPlan to adjudicate, set, or determine Prices for OON Services for any Payor.

**REQUEST NO 33.** All Documents and Communications relating to the use of (a) dataset percentiles, (b) benchmarks or caps, and/or (c) appeal or negotiation parameters, set by MultiPlan or any Payor, in pricing OON Services.

**REQUEST NO 34.** All Documents and Communications relating to monthly, quarterly, and annual reports issued by MultiPlan to any Payor, including, but not limited to, Documents labeled or referred to as "Quarterly Updates" and/or "Year in Review" reports from January 1, 2010, through present.

**REQUEST NO 35.** All Documents and Communications concerning any of MultiPlan's OON Repricing Services, including but not limited to: their methodologies, capabilities, functions, effectiveness, or claimed benefits; the data used in pricing or negotiating OON Services and its sources; MultiPlan's access to, use, sharing, or storage of Payors' OON Pricing or Claims information (including in aggregate, anonymized, or comingled forms); the implementation, cost, or setup of MultiPlan's services (such as electronic data interfaces or pricing rules); any updates or improvements made to such services; and any comparisons to other repricing or negotiation services, including Ingenix or FAIR Health.

**REQUEST NO 36.** Documents sufficient to show the nature and scope of MultiPlan's relationships with Payors concerning OON Repricing Services, including the identity of each Payor that used such services during the Relevant Time Period; the specific MultiPlan service(s) used (e.g., Data iSight, Viant, Pro Pricer, MARS, HST); the start and, if applicable, end dates of

each Payor's use of those services; the total billed charges for OON Services routed through MultiPlan's services and the total allowed amounts calculated for those claims on a Payor-by-Payor basis; the method of calculating fees owed by each Payor to MultiPlan; and the total amounts paid by each Payor for MultiPlan's OON Repricing Services.

**REQUEST NO 37.** All Documents and Communications related to Pricing determinations generated by OON Repricing Services and Your offers of payment to Providers for In-Network and OON Services based on those determinations (including such offers transmitted by MultiPlan), including acceptance rates, rejection rates, appeals, Patient advocacy letters, single case agreements, and complaints.

**REQUEST NO 38.** All Documents and Communications relating to (a) the frequency or extent to which any Payor adhered to or accepted the prices for OON Services generated by any service or product provided by MultiPlan and (b) to the extent a Payor did not adhere to or accept such a price, the difference between the price generated by MultiPlan and the price actually paid by the Payor.

**REQUEST NO 39.** All Documents and Communications related to MultiPlan's fee negotiation services for OON Services, including but not limited to: their actual and claimed capabilities; marketing materials; meetings with or among Payors discussing such services; their efficacy and any resulting underpayments; agreements governing their use; the identities of responsible MultiPlan personnel; recordings or transcripts of negotiations with Providers; internal or external policies, guidance, procedures, or training materials on fee negotiations; any Payor-provided instructions regarding negotiation practices; complaints or concerns raised by Providers or MultiPlan personnel; and any bonuses, incentives, or performance metrics tied to the negotiation of OON pricing.

**REQUEST NO 40.** All Documents provided by MultiPlan to, and all Communications with, any Payor purporting to describe the delegation of responsibilities for Pricing of OON Services between MultiPlan and any Payor.

**REQUEST NO 41.** For the time period from January 1, 2010 to the present, for each of Your, MultiPlan's, or any other OON Repricing Services, all Documents and Communications related to the actual or considered development, modification, implementation, or acquisition of that Repricing Service.

**REQUEST NO 42.** For the time period from January 1, 2010 to the present, all versions of Your source code (including programmer notes or comments) for any and all versions of any of Your Repricing Services, including all source code that was deployed to a production environment or testing environment.

**REQUEST NO 43.** All Documents and Communications concerning any aspect of MultiPlan's or any Payor's Shared Savings Program, including but not limited to: rules, implementation, policies, procedures, and agreements related to such programs; changes to fees or fee structures; notices or disclosures to Sponsors or Subscribers; revenue generated by any Payor from the program on both an aggregate and Subscriber/Sponsor-specific basis (quarterly and annually); any consideration, analysis, or discussion regarding the implementation, modification, or termination of a Shared Savings Program; Communications between MultiPlan and any Payor regarding the benefits or promotion of such programs; and Communications among two or more Payors concerning their respective Shared Savings Programs or the implementation of such programs.

## G.     REGULATION, LITIGATION, AND INVESTIGATION

**REQUEST NO 44.** All non-privileged Documents and Communications regarding any complaints, concerns, questions, or analysis of the legality or propriety of: (1) MultiPlan's

relationship with any Payor; and (2) Your relationship with any Payor, including, but not limited to:

    (a)    whether using MultiPlan to perform any services concerning Pricing for OON Services might violate any laws;

    (b)    whether providing or receiving any information or data to or from MultiPlan or any Payor might violate any laws; and

    (c)    whether any Communications involving You and MultiPlan or any Payor might violate any laws.

**REQUEST NO 45.** All non-privileged Documents and Communications related to internal or external inquiry or investigation requested by You (regardless of characterization such as non-adjudicative, cooperating, preliminary, informal, formal, complete, incomplete, open, closed, or final) where such inquiry or investigation concerns: (a) any actual, potential, or suspected violation of federal or state antitrust laws with respect to OON Pricing, (b) any actual, potential, or suspected violation of the policies, guidelines, procedures, or training materials concerning compliance with federal or state antitrust laws with respect to OON Pricing, (c) this Litigation, (d) the relationship between MultiPlan and Payors, or (e) the use OON Repricing Services by You or any Payor.

**REQUEST NO 46.** All Documents and Communications concerning any media inquiries, coverages, and responses from MultiPlan or a Payor regarding executive compensation, litigation concerning OON Pricing, a Payor's use of MultiPlan's OON Repricing Services, or MultiPlan's effect on Provider payments.

**REQUEST NO 47.** All Documents and Communications You receive from nonparties related to discovery in this Litigation, regardless of whether obtained through formal process or

informally.

**REQUEST NO 48.**   Documents sufficient to show Your policies and practices with respect to the retention and destruction of Documents that were in effect at any time during the Relevant Time Period, including Your policies and practices with respect to the retention and destruction of data on Your employees' mobile devices.

**REQUEST NO 49.**   All Documents and Communications constituting or concerning Your policies, guidelines, procedures, or training materials relating to compliance with federal or state antitrust laws; communications and interactions with competitors; attendance at Trade Association, industry, competitor, or MultiPlan Client Advisory Board and user group meetings; identification and handling of competitively sensitive, material non-public, confidential, or proprietary information; sharing of business information with competitors; and collaboration with competitors.

**REQUEST NO 50.**   All non-privileged Documents and Communications concerning any actual or potential litigation with respect to MultiPlan's OON Repricing Services or Agreement(s) between MultiPlan and Payors, including, without limitation, Your reaction to this Litigation.

### H.   EMPLOYEES

**REQUEST NO 51.**   All Documents and Communications relating to Employee reviews, evaluations, promotion materials, bonuses, performance incentives, and compensation rates, whether in draft or final form, concerning individuals with responsibilities related to the conduct described in the Complaints.

**REQUEST NO 52.**   All Documents and Communications related to the reasons for the termination, resignation, reassignment, or demotion of any individual with responsibilities related to the conduct described in the Complaints.

**REQUEST NO 53.**  Documents sufficient to show the past job titles and employers of each individual with responsibilities related to the conduct described in the Complaints, including, for example, resumes, curricula vitae, or LinkedIn profiles.

## I.  DOCUMENTS RELATED TO PLAINTIFFS

**REQUEST NO 54.**  All Documents and Communications concerning any Plaintiff, including the actual or potential termination of any Plaintiff's participation in any health insurance network that You offer or administer, including any notices of termination and the reasons for the termination; and the pricing or repricing Claims submitted by any Plaintiff seeking payment with respect to OON Services.

## J.  ANY OTHER STRUCTURED DATA

**REQUEST NO 55.**  For the time period January 1, 2010 to the present, any other Structured Data concerning OON Repricing Services. For the avoidance of doubt, this includes any data that is organized in clearly defined structures with fields (columns) and records (rows), including financial and accounting data, relational databases, and data maintained in data warehouses including by third-party vendors or on cloud-based environments.

## II.  REQUESTS ADDRESSED TO ALL NON-MULTIPLAN DEFENDANTS

### A.  CLAIMS PROCESSING

**REQUEST NO 56.**  All Documents and Communications related to transaction information transmitted via the x12 transaction network for repriced claims for OON Services, including, without limitation, why a claim or service line was paid differently by a Payor from how a Provider billed it.

### B.  FINANCIAL DOCUMENTS

**REQUEST NO 57.**  Documents sufficient to show Your charges and spending on costs related to the use of each of MultiPlan's OON Repricing Services, including but not limited to:

a.  the amount of money that You charged to each of Your Subscribers on a monthly, quarterly, and annual basis or any other form of fee charged to a Subscriber in exchange for setting, adjudicating, or negotiating prices for OON Services that are lower than billed charges for those OON Services;

b.  the amount of money that You paid MultiPlan on a monthly, quarterly, and annual basis for MultiPlan's OON Repricing Services separated by service;

c.  the amount of money that You paid MultiPlan on a monthly, quarterly, and annual basis for the use of PlanOptix;

d.  the amount of money that You paid MultiPlan on a monthly, quarterly, and annual basis for the use of any of MultiPlan's PPO networks;

e.  the amount of money that You paid MultiPlan on a monthly, quarterly, and annual basis for the use of MultiPlan's MultiPlan Payments service; and

f.  any efforts by You or any other Payor to reduce or alter the amounts owned to MultiPlan, and the basis thereof.

**REQUEST NO 58.**   All Documents and Communications, including, without limitation, minutes, notes, summaries, agendas, exhibits, charts, graphs, presentations, letters, memos, lists, tables, distributed documents, audio recordings, videos, or pre-read materials, relating to any meeting of Your board of directors (including any committee or sub-committee of Your board of directors) or executive leadership and concerning OON Pricing, OON Repricing Services, Your Agreement(s) with MultiPlan, or this Litigation.

## C.   OFFERS, NEGOTIATIONS, AND AGREEMENTS AMONG DEFENDANTS

**REQUEST NO 59.**   All Documents or Communications, including retention proposals, threats, offers, pitches, or discussions related to the actual or threatened termination or withdrawal

from or suspension of any Agreement between: (a) MultiPlan and You; (b) MultiPlan and any other Payor; (c) You and any other Payor concerning MultiPlan or any services offered by MultiPlan; or (d) two or more Payors concerning MultiPlan or any services offered by MultiPlan.

### D. MARKET AND COMPETITIVE CONDITIONS

**REQUEST NO 60.** All Documents and Communications constituting or concerning the consideration of using or working with any third-party other than Ingenix, FAIR Health, or MultiPlan with respect to Pricing for OON Services, including cost comparisons.

**REQUEST NO 61.** All Documents and Communications concerning any analysis of any Payors' Pricing for OON Services (including, without limitation, Yours) or pricing in the OON Services market generally, including, but not limited to:

     a. actual, estimated, or projected changes in prices for OON Services over any period of time;

     b. the relationship (if any) between prices for OON Services and prices for In-Network Services;

     c. the relationship (if any) between prices for OON Services and prices for Healthcare Goods and Services paid by Medicare, Medicaid, or Tricare;

     d. Providers' actual or anticipated reactions to particular Prices for OON Services or changes in prices for OON Services;

     e. the ability, possibility, or past experience of Providers switching to providing other types of, or fewer, Healthcare Goods or Services in response to a change in prices for OON Services; and

     f. analyses of price elasticity or cross-price elasticity between prices for OON Services and prices for other types of Healthcare Goods and Services.

**REQUEST NO 62.** All Documents and Communications related to how Sponsors or

Subscribers consider or analyze coverage for OON Services when selecting, changing, or designing PPO plans, including, but not limited to:

a. Negotiations between You and any Sponsor or Subscriber concerning the benefits, coverage, or other terms related to OON Services;

b. Changes in the cost of Health Plans based on changes in benefits, coverage or other terms related to OON Services;

c. Whether (and if so, how) Your market coverage or benefits for OON Services differs from market coverage or benefits for In-Network Services; and

d. Whether (and if so, how) You negotiate terms of Health Plans related to OON Services separately from terms related to In-Network Services.

### E.     OON REPRICING SERVICE USE AND METHODOLOGY

**REQUEST NO 63.**   All Documents and Communications related to any Payor's use, consideration, or analysis of MultiPlan's OON Repricing Services, including:

a. any Payor's consideration, discussion, or analysis of the benefits, strengths, weaknesses, detriments, or concerns associated with using any of MultiPlan's OON Repricing Services or entering into an Agreement with MultiPlan to use any of MultiPlan's OON Repricing Services;

b. any pricing rules or procedures used by any Payor that utilizes any of MultiPlan's OON Repricing Services, including preference forms, any pricing or operational overrides, caps, benchmarks, elected percentiles, rules for the treatment of claims where MultiPlan's OON Repricing Services cannot achieve a specified target price for an OON Service, or rules for how claims price, or rules regarding when a claim is considered to be "priced fair" and what occurs when a Claim is "priced fair";

c. the Underpayments or alleged savings generated by any Payor utilizing MultiPlan's

OON Repricing Services, including any explanation of how those Underpayments or alleged savings are calculated;

d. proposed or actual changes that MultiPlan suggested or advocated to any Payor concerning how that Payor implemented or used any of MultiPlan's OON Repricing Services, including, but not limited to, caps, benchmarks, elected percentiles, and/or negotiation parameters;

e. any Payors' consideration, analysis, rejection, approval, or adoption of any change to how they implement or utilize any of MultiPlan's OON Repricing Services and the reasons for such a change;

f. any Payor's consideration or analysis of actually or potentially discontinuing, pausing, curtailing, or terminating the use of any of MultiPlan's OON Repricing Services;

g. any deviations or divergences from the prices that any of MultiPlan's OON Repricing Services set for an OON Service and the amount that a Payor paid to a Provider for the OON Service, including the frequency of such deviations or divergences and the reasons for such deviations or divergences;

h. any user group Meeting or Meeting of two or more Payors to discuss their implementation of any of MultiPlan's OON Repricing Services or potential changes to any of MultiPlan's OON Repricing Services;

i. any consideration, analysis, study or discussion of any other Payor's use of Multiplan's OON Repricing Services; and

j. internal discussions and communications regarding reports, market intelligence, and information about other Payors, including competitors, provided by Multiplan

and including any efforts by Multiplan or You to de-anonymize this information.

## F.   INFORMATION SHARING

**REQUEST NO 64.**   All Documents and Communication regarding the types of information Your or other Payors provide or are required to provide MultiPlan in connection with Your or other Payors' use of MultiPlan's OON Repricing Services.

**REQUEST NO 65.**   All Documents and Communications concerning, reflecting, or containing information about any Payor (whether identified or anonymized) received from MultiPlan concerning OON Pricing or MultiPlan's OON Repricing Services, including:

> a. information regarding another Payor's use or implementation (whether current, planned, or possible) of any of MultiPlan's OON Repricing Services;
>
> b. information regarding how a Payor's prices for OON Services did or could relate to any other Payor's prices for OON Services; and
>
> c. information regarding any settings, benchmarks, targets, goals, processes, or procedures related to any other Payor's use of MultiPlan's OON Repricing Services.

**REQUEST NO 66.**   All Documents and Communications constituting or concerning any actual or proposed effort by You or any Payor to de-anonymize any information received from or through MultiPlan concerning Pricing of OON Services, whether such efforts were successful or not.

**REQUEST NO 67.**   All Documents and Communications concerning Your awareness, understanding, belief, or estimate of any of the means, methods, or policies for setting the amounts for Pricing of OON Services by or for any Payor other than You, including any effort by You to determine such matters.

**REQUEST NO 68.**   All Documents and Communications concerning MultiPlan's

sharing or providing any Payor with information concerning another Payor's Pricing, strategy, use of OON Repricing Services, caps, benchmarks, percentiles, negotiation parameters, payments for OON Services, or preference forms.

**REQUEST NO 69.**   All Documents and Communications concerning your awareness, understanding, belief, or estimate of whether MultiPlan provided any services or information to Payors other than You concerning Pricing of OON Services (as well as any details about the services or information MultiPlan provided), including concerning any effort by You to determine such matters.

### G.   PLANOPTIX

**REQUEST NO 70.**   All Documents and Communications related to the following aspects of PlanOptix:

a.   the data sources utilized by PlanOptix, including whether that data is anonymized, whether that data is publicly available, the most granular level at which PlanOptix displays data to users, and recency of the data that PlanOptix displays to users;

b.   the actual and claimed capabilities of PlanOptix;

c.   marketing materials for PlanOptix;

d.   Meetings between MultiPlan and any Payor concerning the use or potential use of PlanOptix, including, but not limited to, any presentations, summaries, notes, and discussions concerning those Meetings;

e.   implementation guidance for PlanOptix; and

f.   Agreements concerning the use of PlanOptix.

### H.   CUSTOMER DISCLOSURES AND REPRESENTATIONS

**REQUEST NO 71.**   All of Your Agreements with Subscribers that purchase Your health insurance coverage or administrative services either on a fully-insured basis or administrative

services only basis that: (a) permit you to work with MultiPlan to set, recommend, adjudicate, or negotiate prices for OON Services or (b) permit you to charge a Subscriber or Patient a fee of any sort in exchange for setting prices, adjudicating, or negotiating prices for Out-of-Network Services that are lower than billed charges for those Out-of-Network Services, including fees associated with a Shared Savings Program.

**REQUEST NO 72.** All Documents and Communications Related to representations made by any Payor to plan Sponsors, Subscribers, or health plan brokers regarding the out-of-network coverage they offer, how out-of-network Claims are priced, and any comparisons between the cost or pricing of OON Services between different Payors.

**REQUEST NO 73.** All disclosures, Health Plan information, and summary plan descriptions for Your health insurance coverage or administrative services, whether offered on a fully-insured basis or administrative services only basis, relating to: (a) Your use of any product or service provided by MultiPlan to price OON Services or (b) any fees charged by You to a Subscriber or Patient in exchange for setting, adjudicating, negotiating, or paying prices for OON Services that are lower than billed charges for those OON Services.

## I.  REGULATION, LITIGATION, AND INVESTIGATION

**REQUEST NO 74.** All Documents and Communications by You or on Your behalf to any Sponsor, Subscriber, Patient, government official, or the public describing: (a) Your relationship with MultiPlan, (b) the means or methods by which You price OON Services (with or without MultiPlan's involvement), (c) the fact and nature of the data You provide to MultiPlan, or (d) the fact and nature of Your Communications with any Defendant or Payor concerning Pricing of OON Services.

### III.   REQUESTS ONLY ADDRESSED TO DEFENDANT MULTIPLAN

#### A.   COMMUNICATIONS AND MEETINGS BETWEEN AND AMONG DEFENDANTS

**REQUEST NO. MP 56.**  All Documents and Communications, including, without limitation, minutes, notes, summaries, agendas, exhibits, charts, graphs, presentations, letters, memos, lists, tables, distributed documents, audio recordings, videos, or pre-read materials relating to any meeting of Your board of directors (including any committee or sub-committee of Your board of directors) or executive leadership and concerning OON Pricing, OON Repricing Services, Your Agreement(s) with Payors, or this Litigation.

**REQUEST NO. MP 57.**  For the time period January 1, 2010 to the present, all Documents and Communications relating to internal MultiPlan meetings, including, but not limited to, meetings referred to or labeled as project priority meetings, governance meetings, or any meeting of MultiPlan Employees or staff responsible for OON Pricing, non-par/OON cost containment, or OON bill negotiation services.

#### B.   OFFERS, NEGOTIATIONS, AND AGREEMENTS AMONG DEFENDANTS

**REQUEST NO. MP 58.**  All Documents or Communications, including retention proposals, threats, offers, pitches, or discussions related to the actual or threatened termination or withdrawal from or suspension of any Agreement between: (1) MultiPlan and any Payor; or (2) two or more Payors concerning MultiPlan, or any services offered by MultiPlan.

#### C.   OON REPRICING SERVICE USE AND METHODOLOGY

**REQUEST NO. MP 59.**  All Documents and Communications concerning payments that MultiPlan received from any Payor in exchange for OON Repricing Services, including how payments were calculated, documentation supporting the request for payment and calculation of the payment amount, invoices for payment, and records of payments made to MultiPlan.

**REQUEST NO. MP 60.** For each of MultiPlan's OON Repricing Services, all Documents and Communications related to summaries, white papers, patents (including, but not limited to, U.S. Patent No. 8,103,522), patent applications, software design documents, user manuals, user guides, or presentations discussing how MultiPlan's OON Repricing Services operate, recommendations or advice on how to use MultiPlan's OON Repricing Services.

### D. INFORMATION SHARING

**REQUEST NO. MP 61.** All Documents and Communications concerning two or more Payors' payment levels, pricing, or pricing strategies, regardless of how such information was presented or conveyed.

**REQUEST NO. MP 62.** All Documents and Communications in which MultiPlan or any employee, executive, director or representative of MultiPlan provided any information concerning one Payor's payment levels, Pricing, or pricing strategies to another Payor, regardless of how such information was presented or conveyed, and regardless of the level of detail.

**REQUEST NO. MP 63.** All Documents and Communications concerning, reflecting, or containing information about the type, quality, quantity, or frequency by which information is shared with MultiPlan by its clients, customers, or any other Payor.

**REQUEST NO. MP 64.** All Documents and Communications related to PlanOptix, including, but not limited to, the reasons for its development; associated use cases, user stories, and requirements; software design documents, updates, change or modification records; user acceptance criteria; user manuals, updates, and bulletins; source code for all versions, including programmer comments and notes; data sources used, including details on anonymization, availability, data granularity, and recency; the actual and claimed capabilities; marketing materials; meetings between MultiPlan and any Payor regarding the use or potential use of PlanOptix (including presentations, slide decks, notes, recordings, and related materials); implementation

guidance; and agreements concerning its use.

Dated: June 24, 2025

_/s/ Christopher A. Seeger_
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
Fax: (973) 679-8656
cseeger@seegerweiss.com

_Plaintiffs' Coordinating Counsel_

_/s/ Shawn J. Rabin_
Shawn J. Rabin (*pro hac vice*)
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001-8602 Tel.:
(212) 336-8330
srabin@susmangodfrey.com

_Interim Class Liaison Counsel_

## CERTIFICATE OF SERVICE

I hereby certify that, on June 24, 2025, a true and correct copy of the foregoing All Plaintiffs' Third Set of Requests for Production to All Defendants was served via electronic mail on all counsel of record.

/s/ *Stephen M. Medlock*
Stephen M. Medlock