**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-6795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**MULTIPLAN INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**
**MULTIPLAN'S PRODUCTION OF DOCUMENTS**
**<u>CONCERNING MEDICAL AUDIT AND REVIEW SOLUTIONS ("MARS")</u>**

## INTRODUCTION

The gravamen of Plaintiffs' Motion to Compel Production of Documents Concerning Medical Audit and Review Solutions ("MARS"), ECF No. 576 ("Mot."), is that any MultiPlan service is fair game for discovery so long as it is mentioned in one of their complaints. That is not what Rule 26(b)(1) allows, and Plaintiffs are not entitled to discovery of every corner of MultiPlan's business, regardless how attenuated from Plaintiffs' claims.

MARS is a service that audits mostly in-network claims for waste, abuse and miscoding. For example, if a provider performs two left knee replacements on a single patient, MARS is designed to catch that kind of error and alert the provider so that they can correct the claim and properly bill their services. MARS similarly seeks to catch instances of healthcare and billing fraud. MARS, however, does not set benchmarks or seek to identify reasonable reimbursement rates for providers' OON services. There is no actual dispute in this case about what MARS is and does.

For that reason, it's no surprise that MARS is mentioned only in passing in the DAP Complaint and motion to dismiss briefing, and was never substantively addressed in the Class Complaint. Plaintiffs' Motion does not even try to explain how MARS's anti-fraud and miscoding services could conceivably be part of the alleged Section 1 conspiracy to suppress out-of-network ("OON") claims reimbursements through the use of MultiPlan's OON pricing recommendation services like Data iSight. MARS is not relevant to Plaintiffs' claims, so discovery of MARS-related materials is inappropriate.

Discovery is only just beginning and its scope is already vast. MultiPlan has produced hundreds of thousands of pages in go-get documents. And MultiPlan is reviewing millions of custodial documents regarding the services that are actually at issue and fairly considered within

1

the scope of Plaintiffs' claims. Expanding the breadth of discovery to encompass wholly irrelevant business lines will slow this case to a crawl without any marginal benefit.

MultiPlan respectfully requests that the Court deny Plaintiffs' Motion.

## BACKGROUND

**A. MARS Addresses Clinical Billing and Coding Issues to Address Provider Fraud and Abuse**

MultiPlan is a healthcare technology, data, and insights company focused on improving affordability, transparency, and quality in healthcare. Among its many services, MultiPlan provides payment and revenue integrity solutions through its wholly owned subsidiary, MARS. *See* Ex. A at -538 (2018 Client Advisory Board Meeting Presentation); Mot., Ex. 1 at 2 (2015 Client Advisory Board Meeting Presentation).[1] MARS does not recommending prices for OON claims. Instead, MARS addresses clinical billing and coding issues that might present on certain claims that are submitted to MultiPlan's clients for potential payment. Mot., Ex. 1 at 2, 6; *see also* Ex. A at -537-38, -554. MARS does this by analyzing claims to identify and recommend correction of coding and billing errors, such as the incorrect use of overlapping procedures, contradictory procedure combinations, and/or procedures dependent on certain diagnoses—all of which can lead to waste and abuse in the payment of claims by MultiPlan's clients. *See* Mot., Ex. 1 at 2, 6-9; Ex. A at -537, -540-47.

MARS also engages clinicians—such as board-certified physicians and licensed nurses—as well as certified medical coders, to perform individual expert review when providers have questions about the recommended edits or appeal the original recommended edit. *See* Mot., Ex. 1 at 6. Additionally, MARS offers clinical negotiation services to potentially resolve clinical billing

---

[1] Plaintiffs' Motion was provisionally filed under seal because it contained a presentation that MultiPlan had previously designated as confidential. MultiPlan has not filed a motion to seal that filing, and does not object to the unsealing of Plaintiffs Motion and the accompanying materials.

and coding issues identified by MARS and to protect members from balance billing.  Ex. A at -538.  But unlike MultiPlan's other negotiation service offerings, the negotiations performed by MARS are focused solely on the *coding errors* identified by MARS—not financial issues.

**B. Plaintiffs' Claims Involve MultiPlan's Repricing Services Products that Provide Benchmarks for Reasonable OON Reimbursements**

In contrast, Plaintiffs' claims are predicated on the theory that around 2015 payors "shifted over to MultiPlan's rate calculation and negotiation services" from the prior, prevalent benchmarking service, FAIR Health.  *In re MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614, 624 (N.D. Ill. 2025).  Plaintiffs allege this "systematic[] switching from UCR or FAIR Health benchmarks to MultiPlan's pricing methodology" was part of a conspiracy to use certain MultiPlan products to fix the price of OON payments.  *See* Direct Action Plaintiffs' Consolidated Master Complaint ¶ 490, ECF No. 182 ("DAPC").  According to Plaintiffs, MultiPlan's analytic tools like Data iSight, Viant, and its negotiation services—namely, the "data-driven negotiation and/or reference-based pricing methodologies" referenced in the complaints, constituted the core of MultiPlan's pricing methodology that allegedly generated anticompetitive reimbursements to providers.  Consolidated Class Action Complaint ¶ 270, ECF No. 172 ("CACC"); DAPC ¶¶ 161, 688.  Indeed, Data iSight is mentioned 80 times in the Class Complaint and 90 times in the DAP Complaint.

As Plaintiffs know, MARS does something else altogether, and it has nothing to do with the practices that Plaintiffs challenge.  Indeed, Class Plaintiffs mention MARS just *once* in their complaint, noting merely that "In December 2014 … MultiPlan acquired yet another company called [MARS]."  CCAC ¶ 136.  DAPs mention it in just 3 of the 847 paragraphs of their complaint, recognizing that MARS provides "necessity auditing and case review services," but then asserting without any supporting factual allegations that "MARS is yet another tool for MultiPlan to identify

claims where it can underpay providers." DAPC ¶ 135. After making these minor references to MARS in their complaints, Class Plaintiffs completely omitted any reference to MARS in their Opposition to Defendants' Motion to Dismiss, ECF No. 352, while DAP Plaintiffs mentioned it in one passing assertion that "Data iSight is one component of the cartel, but the cartel also includes MultiPlan's Viant MARS, HST, and Pro Pricer pricing formulas." DAP MTD Opp. at 5, ECF No. 351. The Court similarly did not mention MARS in its order denying Defendants' motions to dismiss and allowing the litigation to proceed. *See generally In re MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614 (N.D. Ill. 2025).

## LEGAL STANDARD

Rule 26(b)(1) limits discovery to only material "that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts have long recognized that "discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. March 9, 1994). Nor are Plaintiffs entitled to discovery sufficient simply to explore each allegation no matter how untethered to a viable theory of liability. *Bartlett v. Deere & Co.*, 2010 WL 3789540, at *2 (D. Neb. Sept. 21, 2010) ("The fact that a plaintiff's complaint alleges an expansive theory of liability does not necessarily justify expansive discovery."); *Sobolik v. Briggs & Stratton Corp.*, 2010 WL 11640193, at *3 (D. Minn. Mar. 16, 2010). Accordingly, discovery requests must be "carefully tailored to viable theories of relevance." *In re Interest Rate Swaps Antitrust Litig.,* 2018 WL 2332069, at *5 (S.D.N.Y. May 23, 2018) (citations omitted). Courts are "unanimous in prohibiting discovery from being used as a 'fishing expedition'" untethered to the specific claims in the case. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018).

4

On a motion to compel, the party seeking discovery has the initial burden to demonstrate that the discovery is relevant to the claims and defenses in the litigation and proportional to the needs of the case. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). A "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as the party understands them." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015 Amendment). Plaintiffs have utterly failed this test.

**ARGUMENT**

Plaintiffs' Motion should be denied because the MARS documents they request are not relevant to Plaintiffs' claims. MARS is an auditing tool that identifies and resolves coding and billing errors. It does not set benchmarks or seek to identify reasonable reimbursement rates for out of network services. In fact, MARS is largely applied to *in-network* claims. *See* Ex. A at -542, -543. It is, therefore, *not* a methodology for repricing OON claims.

Plaintiffs do not dispute this. Indeed, they have attached as Exhibit 1 to their Motion a presentation that MultiPlan provided at its 2015 Client Advisory Board ("CAB") meeting that illustrates what MARS does.[2] Mot., Ex. 1 at 6 (explaining how MARS performs a case-by-case clinical evaluation of the propriety of the coding of particular claims in order to "accurately target[] cases at the highest risk for clinical waste or abuse" and in doing so relies upon the direct review of "specially-trained, licensed, board-certified and specialty-appropriate physicians"). As the presentation shows, among other things, MARS roots out error and abuse related to "upcoding"

---

[2] This presentation that was produced by MultiPlan along with all other available presentations from CAB meetings going back to 2015. Like other presentations from CAB meetings, this document explains how one of MultiPlan's products (in this case MARS) works, and its value to MultiPlan's clients.

by reviewing the record in scenarios where a provider uses what is known to be "a high-error code." *Id.* at 7-8.

A similar presentation from the 2018 CAB meeting provides an example of MARS in action. *See* Ex. A. There, MARS identified an instance in which a patient was billed operating room time over the "majority of days" during a 36-day hospital stay—to the tune of $2.8 million— even though no surgery was performed after the first few days. *Id.*at -546. The question in this circumstance is *not* "How much is this service worth?" but rather "Was the billed service performed *at all*?"

That difference goes to the heart of the problem with Plaintiffs' Motion. Plaintiffs' claims are predicated on an alleged agreement among payors to use "MultiPlan's out-of-network claims repricing services" instead of other benchmarks like UCR and FAIR Health as a way to identify reasonable rates for OON payments. CCAC ¶¶ 14, 40, 198; *see also* DAPC ¶ 8 (referring to "an agreed-upon pricing formula to those bills to set prices for [] out-of-network goods and services"); *In re MultiPlan Health Ins. Provider Litig.*, 789F. Supp. 3d at 624 ("MultiPlan offers an alternative method for calculating a third-party payor's out-of-network rate through its Data iSight algorithm").

Certain MultiPlan services like Data iSight address a problem specific to the reimbursement of healthcare services rendered on an OON basis. Because providers bill exorbitant prices in the absence of a network agreement, and because payors have no contractual obligation with providers to pay these amounts, payors must figure out what a *reasonable and competitive* reimbursement rate is. Plaintiffs' alleged conspiracy is about a switch in the benchmarking methodology used to determine those rates, which impacts how claims are reimbursed. *Id.* at 637 ("plaintiffs allege that the defendants all switched from using traditional UCR benchmarks when

6

calculating out-of-network service rates to MultiPlan's rate calculation and negotiation services"). MARS has no role in the determination of competitive reimbursements or in benchmarking whatsoever.

Plaintiffs' scant arguments for MARS's relevance fail. Plaintiffs say *nothing* in their motion about what the MARS service actually entails. Instead, they rely on the bare conclusory assertion that their "complaints here allege that MARS is an analytics-based repricing service used by MultiPlan." Mot. at 3. This is insufficient for three reasons.

*First*, Plaintiffs are simply wrong about what the complaints allege. The Class Complaint, for example, says *nothing* substantive about MARS or any other MultiPlan payment integrity service. It contains a single paragraph noting that MultiPlan acquired MARS, but makes no representations about what MARS is, let alone allege that it is part of any alleged conspiracy. CCAC ¶ 136. And, at most, there are only 3 paragraphs in the 847-paragraph DAP Complaint that in any way refer to MARS. DAPC ¶¶ 135-37. Plaintiffs' argument is, essentially, that any subject mentioned in a complaint is fair game for discovery. That is not what Rule 26(b)(1) allows, and Plaintiffs should not be permitted to engage in yet more unduly burdensome discovery on basis of (at best) a passing reference in a complaint.

*Second*, Plaintiffs are wrong that the mere existence of *allegations* regarding MARS entitles them to discovery on that subject. Plaintiffs are entitled to test their *claims* through discovery, not each and every allegation in their complaints, no matter how passing and conclusory. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d. 711, 722 (N.D. Ill. Jan. 6, 2014) ("It must not be forgotten that relevance for discovery purposes does not exist in the air. It is a function of the claims and defenses in the case. Relevance is not inherent in any item of evidence, but exists only as a relation between an item of evidence and the matter properly

provable in the case.") (citations omitted); *In re Surescripts Antitrust Litig.*, 2024 WL 1195571, at *4, *10-*12 (E.D. Ill. Mar. 20, 2024) (emphasizing that "Rule 26(b)(1) restricts the scope of discovery to 'matter that is relevant to any party's claim or defense'" in denying party's motion to compel in part); *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1193 (10th Cir. 2009) ("We agree that the mere fact that a plaintiff entertains a 'broad theory of the case' does not justify more expansive discovery, unless the discovery is relevant to the plaintiff's actual claims or defenses, or the plaintiff makes a showing of good cause").

*Third*, Plaintiffs improperly rely on labels rather than substance. Plaintiffs rely on the allegation in the DAP Complaint that asserts that "MARS is an analytics-based repricing service used by MultiPlan." Mot. at 3.[3] But the Court need not and should not credit their "labels and conclusions" at this stage of the litigation, any more than it would in evaluating the pleadings for purposes of a motion to dismiss. *See Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). As described above, DAPs (let alone Class Plaintiffs) have not alleged facts suggesting that MARS "reprices" claims, nor made any effort to demonstrate how MARS's (largely in-network) auditing function could conceivably relate to Plaintiffs' claims of an alleged conspiracy to suppress OON reimbursements.

## CONCLUSION

MultiPlan respectfully requests that this Court deny Plaintiffs' Motion to Compel.

---

[3] Plaintiffs assert that "Multiplan's sole objection to this discovery is its characterization of MARS as a 'payment integrity' service, rather than a 'repricing service.'" Mot. at 3 (citing Kasha Decl ¶ 5). That is not true. During the parties' November 3 meet and confer on this issue, Plaintiffs' counsel stated that Plaintiffs did not view MARS's characterization as a "payment integrity" product as pertinent for discovery purposes. Haviland Decl. ¶ 3. MultiPlan's counsel expressly stated that MultiPlan was not relying on that characterization: "I don't think it's ever been our position that a label is dispositive or even relevant. Our issue is that this is a service that's looking for coding errors, billing mistakes, and that is fundamentally different from the repricing of claims, Data iSight, and negotiations." *Id.*

Dated: November 21, 2025

Respectfully submitted,

/s/ *Sadik Huseny*

Craig Lewis Caesar (IL Bar. No 3121593)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
Telephone: (504) 584-9272
craig.caesar@phelps.com

Errol J. King (*pro hac vice*)
Katherine Mannino (*pro hac vice*)
PHELPS DUNBAR LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 376-0279
errol.king@phelps.com
katie.manino@phelps.com

Sadik Huseny (*pro hac vice*)
LATHAM & WATKINS LLP
300 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: 737-910-7300
sadik.huseny@lw.com

Gary Feinerman (IL Bar No. 6206906)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: 312-876-7700
gary.feinerman@lw.com

Lawrence E. Buterman (*pro hac vice*)
Katherine A. Rocco (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
lawrence.buterman@lw.com
katherine.rocco@lw.com

Anna M. Rathbun (*pro hac vice*)
Graham B. Haviland (*pro hac vice)*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
anna.rathbun@lw.com
graham.haviland@lw.com

*Attorneys for Defendant MultiPlan, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 5.9, I hereby certify that on this 21st day of November 2025, the

foregoing was electronically filed using the Court's CM/ECF system.

/s/ Sadik Huseny
Sadik Huseny (*pro hac vice*)