# EXHIBIT 2

**PUBLIC VERSION OF ECF DOC NO. 576
NO REDACTIONS**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION<br><br>*This Document Relates To:*<br>ALL ACTIONS | Case No. 1:24-cv-06795<br><br>MDL No. 3121<br><br>Hon. Matthew F. Kennelly |

## PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION TO ALL DEFENDANTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Illinois (the "Local Rules"), Direct Action Plaintiffs and Class Plaintiffs (collectively, "Plaintiffs") request that Defendants produce the documents, electronically stored information, and things requested herein.

## DEFINITIONS

1. The Definitions set forth in DAP and Class Plaintiffs' First Set of Requests for Production to All Defendants are hereby incorporated and shall apply to Plaintiffs' Third Set of Requests for Production to All Defendants.

2. "Abrasion" means any actual, threatened, anticipated, expected, perceived, potential, or forecasted friction, frustration, dissatisfaction, objections, complaints, resistance, disruption, or deterioration in relationships involving Providers, Patients, Subscribers, Members, or Sponsors arising from, relating to, or in response to a Payor's practices, policies, algorithms, or methodologies for adjudicating, repricing, or paying claims for Healthcare Goods and Services. This term includes, without limitation: (a) objections, complaints, or pushback by Providers concerning payment amounts or the use of MultiPlan OON Repricing Services (e.g., Data iSight,

Viant, Pro Pricer, MARS, HST), including associated features such as overrides, caps, benchmarks, elected percentiles, or target pricing; (b) any Provider's refusal to render, or threat to cease rendering, Out-of-Network Services, or to Balance Bill patients for such services; (c) any adverse reaction or concern expressed by Patients, Subscribers, or Sponsors regarding pricing, Balance Billing, diminished provider access, or reductions in provider-coverage; (d) any instance or threat of Subscriber, Sponsor, or Patient withdrawal, attrition, non-renewal, or other adverse market impact attributed to the use of MultiPlan or other OON Repricing Services; and (e) any internal or external acknowledgment, assessment, or strategy concerning the reputational, contractual, clinical, or economic effects of such resistance or dissatisfaction, including the actual or anticipated loss of Subscribers due to a loss in provider-coverage.

3. "Affiliates" means, with respect to any person, entity, or enterprise, any other person, entity, or enterprise that, directly or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with such person, entity, or enterprise. By way of example, Affiliates of Defendant United HealthGroup, Inc. include United Healthcare Insurance Company and its Affiliates; United Healthcare Services, Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

4. "Balance Bill" or "Balance Billing" means any process by which a Provider seeks additional compensation from a Patient for any portion of its total billed charges above the allowed amount paid by Payors.

5. "Client Advisory Board" means Meetings or gatherings involving MultiPlan (or its Representatives, Employees, or Affiliates) and two or more Payors (or their Representatives,

2

h. The masculine, feminine, or neuter pronoun(s) shall not exclude the other genders; and

i. The use of a defined term is intended regardless of whether a defined word or phrase is capitalized in a Request.

<b><u>REQUESTS FOR PRODUCTION</u></b>

I. **REQUESTS ADDRESSED TO ALL DEFENDANTS**

    A. **MATERIALS PREVIOUSLY REQUESTED ON A GO-GET BASIS THAT ARE NOW REQUESTED ON THE BASIS OF A CUSTODIAL AND NON-CUSTODIAL SEARCH**

**REQUEST NO 8.** All Documents and Communications related to MultiPlan's Client Advisory Board or meetings of MultiPlan's Client Advisory Board, including, without limitation, invitations, responses to invitations, agendas, minutes, recordings, transcripts, notes, videos, photographs, summaries, presentations, slides, handouts, mobile application or web-based materials, attendee lists, invitee lists, travel documents, hotel receipts, and credit or debit card receipts.

**REQUEST NO 9.** All Documents and Communications related to any Payor's utilization of MultiPlan's OON Repricing Services, including, but not limited to, Utilization Reports, Governance Reports, bills or invoices for MultiPlan's Repricing Services, Performance Reports, including network performance reports, negotiation services performance reports, Data iSight performance reports, Viant performance reports, Pro Pricer performance reports, MARS performance reports, HST performance reports, appeals reports, appeals by specialty reports, completed claims reports, and glossaries to such reports, including versions of such reports for claims with UCR or Fair Health flags.

**REQUEST NO 10.** All Documents and Communications related to MultiPlan's project prioritization and/or project priority meetings, including meeting invitations and responses,

agendas, minutes, recordings, transcripts, notes, videos, summaries, presentations, slides, handouts, attendee lists, follow-up emails, and task lists.

**REQUEST NO 11.** All Documents and Communications concerning MultiPlan's OON Repricing Services, or OON pricing generally, that You have provided to any governmental entity, including materials submitted in response to formal or informal investigative requests by any committee, subcommittee, or member of the United States House of Representatives, United States Senate, or any state legislative body, committee or legislator; any federal or state regulatory or investigative entity (such as the United States Department of Labor, Federal Trade Commission, or U.S. Department of Justice), a civil investigative demand, or a grand jury subpoena. This request includes any proffer materials and presentations, and any white papers submitted to any governmental entity concerning MultiPlan's Repricing Services, or OON Pricing generally.

**B.     STRUCTURED CLAIMS DATA & CLAIMS PROCESSING**

**REQUEST NO 12.** All Structured Data showing Payor Data Fields and MultiPlan Payor Data Utilization Fields for each Claim for OON Services and In-Network Services, as applicable, with dates of service from January 1, 2010 to the present, at the most granular level that such Structured Data is kept.

Please provide field(s) which can be used to classify Claims as paid/denied and/or adjustments/reversals at the claim line level, if any, as well as any claims sequencing information. Indicate whether data for these fields are housed in different tables and whether some fields are available only at the Claim level.

For outpatient Claims, provide information at the claim service line level wherever possible. In particular, provide CPT, CPT modifier(s), billed amount, allowed amount, paid/denied, and adjustments/reversals at the claim line level.

For inpatient Claims, provide information at the claim line level wherever possible. Also

communications with investors and Creditors, earnings call transcripts, and presentations and discussions at healthcare, technology, investor, creditor, or health insurance conferences concerning OON Repricing Services, OON Services, the Pricing of OON Services, or competition among Payors.

### D. COMMUNICATIONS AND MEETINGS BETWEEN AND AMONG DEFENDANTS

**REQUEST NO 17.** All Documents and Communications related to MultiPlan's OON Repricing Services or OON pricing generally between or among any two or more Defendants or their agents or Representatives.

**REQUEST NO 18.** All Documents and Communications relating to, reflecting, constituting, or concerning any Meetings involving two or more Payors and/or MultiPlan—including, but not limited to, MultiPlan "road show" Meetings; Meetings between Payors concerning Pricing for OON Services, MultiPlan's OON Repricing Services, FAIR Health, Naviguard, or other OON Repricing Services; and Trade Association Meetings.

**REQUEST NO 19.** All Documents and Communications related to any offer, proposal, draft, pitch, discussion, or negotiation of any Agreement, including any amendments, statements of work, exhibits, or side letters to such Agreements, regardless of whether any Agreement or amendment to an Agreement resulted from the offer, proposal, draft, pitch, discussion, or negotiation, or whether You were involved with the offer, proposal, draft, pitch, discussion, or negotiation, among: (1) MultiPlan and any Payor(s); (2) two or more Payors concerning MultiPlan; or (3) any services offered by MultiPlan.

**REQUEST NO 20.** All Documents and Communications related to any form of user groups or user advisory groups for any of MultiPlan's OON Repricing Services or PlanOptix, including, but not limited to, any meeting invitations, agendas, minutes, transcripts (however

13

generated), presentations, or recordings from such user groups or user advisory groups.

### E. MARKET AND COMPETITIVE CONDITIONS

**REQUEST NO 21.** All Documents and Communications identifying or concerning the entities that You consider to be Your competitors, including, but not limited to, Documents and Communications characterizing the degree of competition between You and an identified competitor, or discussing the regions or service lines in which You compete against the identified competitor.

**REQUEST NO 22.** All Documents and Communications concerning Competitive Conditions for OON Services, including (a) the companies or entities that actually or potentially compete with You, either directly or indirectly; (b) elasticities of demand or supply between OON Services and other services; (c) market shares, enrollment shares, shares of covered lives, or shares of revenues for OON Services; (d) barriers to entry or growth with respect to operating PPO Networks, acting as a third-party administrator, or covering healthcare claims; (e) the geographic market(s) in which you pay for OON Services; and (f) whether Your PPO Networks compete against Tricare, Medicare, Medicaid, or any other form of government-sponsored or government-administered healthcare coverage and the extent to which Your PPO Networks do so.

**REQUEST NO 23.** For the time period from January 1, 2010 to the present, all Documents and Communications concerning any acquisition, development, use, or deployment of OON Repricing Services (or any entity related thereto) including any merger, acquisition, or joint venture agreements; licensing agreements; patents; and patent applications.

**REQUEST NO 24.** For the time period January 1, 2007 to the present, all Documents and Communications concerning any comparison, modeling, analyses, resemblance, or contrast of the means, methods, or results of Pricing of OON Services, including, but not limited to, commonalities or differences in designs, goals, pricing, appeals, methodology, technology,

14

business model, results, legality, or actual or potential effects on competition, between using any of the following services, methods, or benchmarks: (a) MultiPlan's OON Repricing Services, (b) usual, customary, and/or reasonable prices for Healthcare Goods and Services, (c) FAIR Health benchmark billed charges, allowed amounts, or percentages of FAIR Health benchmark billed charges or allowed amounts for Healthcare Goods and Services, (d) prices for Healthcare Goods and Services that would be paid by Medicare or Medicaid, (e) prices generated by the Ingenix or OptumInsight database, (f) the prices for Healthcare Goods and Services that prevailed prior to the use of MultiPlan's OON Repricing Services, (g) Providers' billed charges, (h) allowed amounts, (i) prices generated by Naviguard, or (j) any other benchmarks, tools, or services relevant to the Pricing of OON Services.

**REQUEST NO 25.** All Documents and Communications constituting or concerning any aspect of Your Pricing for OON Services, including but not limited to: policies, procedures, and guidelines; factors or information considered in setting, negotiating, reviewing, or approving Prices; training materials; benchmarks or performance metrics; budgeting and spending related to Claims processing; Loss Adjustment Expenses; and the development, evaluation, testing, or approval of any models, formulas, or algorithms used or proposed for use in Pricing OON Services.

**REQUEST NO 26.** All Documents and Communications related to Providers' Balance Billing with respect to OON Services, including, but not limited to: the actual or projected ability of Providers to Balance Bill Patients; estimates, projections, or analyses regarding the frequency of such billing and the rate at which Patients pay Balance Billed amounts; any practical, legal, or contractual limitations or prohibitions on Balance Billing; and any efforts by You or MultiPlan to prevent Balance Billing in connection with OON Claims repriced by MultiPlan.

**REQUEST NO 27.** All Documents and Communications concerning any actual,

15

potential, forecasted, anticipated, or threatened Provider or member Abrasion, including the reasons for such Abrasion, the extent of such Abrasion, and any responses that You planned or implemented to address such Abrasion.

**REQUEST NO 28.** All Documents and Communications related to MultiPlan's OON Repricing Services reducing, preventing, lowering, curtailing, inhibiting, stopping, decreasing, minimizing, lessening, addressing, or dealing with Abrasion, including, but not limited to, claims that MultiPlan's OON Repricing Services do not cause Abrasion, cause minimal Abrasion, or that any Abrasion caused by MultiPlan's OON Repricing Services is outweighed by the alleged savings associated with utilizing MultiPlan's OON Repricing Services.

**REQUEST NO 29.** All Documents and Communications related to any healthcare Provider no longer agreeing to treat Patients on an out-of-network basis or accept their out-of-network insurance benefits (or the threat or possibility thereof), including: (a) the Provider's stated, inferred, likely, or assumed reasons for no longer agreeing to treat Patients on an out-of-network basis or accept their OON insurance benefits; (b) the actual or anticipated impact on Patient access to care, network adequacy, or member satisfaction; and (c) any internal assessment, analysis, or response by You regarding such Provider conduct or its consequences.

**REQUEST NO 30.** All Documents and Communications that You received from any Subscriber or Sponsor concerning complaints, concerns, or inquiries regarding: (a) the pricing or payment of Out-of-Network Services; (b) the use or effects of OON Repricing Services, including Data iSight or similar tools; (c) balance billing; (d) access to out-of-network Providers; or (e) the adequacy, fairness, or transparency of pricing determinations.

**REQUEST NO 31.** Documents and Communications concerning how You calculate "allowed amounts" and Usual and Customary amounts, including the data sources used for such

16

calculation.

### F. OON REPRICING SERVICE USE AND METHODOLOGY

**REQUEST NO 32.** All Documents and Communications concerning the means, methods, or types of data used by MultiPlan to adjudicate, set, or determine Prices for OON Services for any Payor.

**REQUEST NO 33.** All Documents and Communications relating to the use of (a) dataset percentiles, (b) benchmarks or caps, and/or (c) appeal or negotiation parameters, set by MultiPlan or any Payor, in pricing OON Services.

**REQUEST NO 34.** All Documents and Communications relating to monthly, quarterly, and annual reports issued by MultiPlan to any Payor, including, but not limited to, Documents labeled or referred to as "Quarterly Updates" and/or "Year in Review" reports from January 1, 2010, through present.

**REQUEST NO 35.** All Documents and Communications concerning any of MultiPlan's OON Repricing Services, including but not limited to: their methodologies, capabilities, functions, effectiveness, or claimed benefits; the data used in pricing or negotiating OON Services and its sources; MultiPlan's access to, use, sharing, or storage of Payors' OON Pricing or Claims information (including in aggregate, anonymized, or comingled forms); the implementation, cost, or setup of MultiPlan's services (such as electronic data interfaces or pricing rules); any updates or improvements made to such services; and any comparisons to other repricing or negotiation services, including Ingenix or FAIR Health.

**REQUEST NO 36.** Documents sufficient to show the nature and scope of MultiPlan's relationships with Payors concerning OON Repricing Services, including the identity of each Payor that used such services during the Relevant Time Period; the specific MultiPlan service(s) used (e.g., Data iSight, Viant, Pro Pricer, MARS, HST); the start and, if applicable, end dates of

17

each Payor's use of those services; the total billed charges for OON Services routed through MultiPlan's services and the total allowed amounts calculated for those claims on a Payor-by-Payor basis; the method of calculating fees owed by each Payor to MultiPlan; and the total amounts paid by each Payor for MultiPlan's OON Repricing Services.

**REQUEST NO 37.** All Documents and Communications related to Pricing determinations generated by OON Repricing Services and Your offers of payment to Providers for In-Network and OON Services based on those determinations (including such offers transmitted by MultiPlan), including acceptance rates, rejection rates, appeals, Patient advocacy letters, single case agreements, and complaints.

**REQUEST NO 38.** All Documents and Communications relating to (a) the frequency or extent to which any Payor adhered to or accepted the prices for OON Services generated by any service or product provided by MultiPlan and (b) to the extent a Payor did not adhere to or accept such a price, the difference between the price generated by MultiPlan and the price actually paid by the Payor.

**REQUEST NO 39.** All Documents and Communications related to MultiPlan's fee negotiation services for OON Services, including but not limited to: their actual and claimed capabilities; marketing materials; meetings with or among Payors discussing such services; their efficacy and any resulting underpayments; agreements governing their use; the identities of responsible MultiPlan personnel; recordings or transcripts of negotiations with Providers; internal or external policies, guidance, procedures, or training materials on fee negotiations; any Payor-provided instructions regarding negotiation practices; complaints or concerns raised by Providers or MultiPlan personnel; and any bonuses, incentives, or performance metrics tied to the negotiation of OON pricing.

**REQUEST NO 40.** All Documents provided by MultiPlan to, and all Communications with, any Payor purporting to describe the delegation of responsibilities for Pricing of OON Services between MultiPlan and any Payor.

**REQUEST NO 41.** For the time period from January 1, 2010 to the present, for each of Your, MultiPlan's, or any other OON Repricing Services, all Documents and Communications related to the actual or considered development, modification, implementation, or acquisition of that Repricing Service.

**REQUEST NO 42.** For the time period from January 1, 2010 to the present, all versions of Your source code (including programmer notes or comments) for any and all versions of any of Your Repricing Services, including all source code that was deployed to a production environment or testing environment.

**REQUEST NO 43.** All Documents and Communications concerning any aspect of MultiPlan's or any Payor's Shared Savings Program, including but not limited to: rules, implementation, policies, procedures, and agreements related to such programs; changes to fees or fee structures; notices or disclosures to Sponsors or Subscribers; revenue generated by any Payor from the program on both an aggregate and Subscriber/Sponsor-specific basis (quarterly and annually); any consideration, analysis, or discussion regarding the implementation, modification, or termination of a Shared Savings Program; Communications between MultiPlan and any Payor regarding the benefits or promotion of such programs; and Communications among two or more Payors concerning their respective Shared Savings Programs or the implementation of such programs.

G. **REGULATION, LITIGATION, AND INVESTIGATION**

**REQUEST NO 44.** All non-privileged Documents and Communications regarding any complaints, concerns, questions, or analysis of the legality or propriety of: (1) MultiPlan's

19