UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795<br>MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**JOINT STATUS REPORT**

The Parties submit the following joint status report pursuant to the Court's Minute Order dated December 12, 2025. ECF No. 628.

## I.  Pending Motion Before the Court

### A. Plaintiffs' Motion to Compel MultiPlan's Production of Documents Concerning Medical Audit and Review Solutions ("MARS").

Motion filed at ECF No. 576. MultiPlan's opposition was filed on November 21. ECF No. 598. The motion was scheduled to be heard at the December 12, 2025 conference but, as expressed to the Court, Plaintiffs requested that it be tabled until the January status conference "because, based on their review of Defendants' document productions to date, Plaintiffs would like to meet and confer further and believe that we might be able to narrow or avoid the dispute." MultiPlan did not oppose, and the parties agreed that should the motion not be withdrawn, but presented for discussion at the January conference, there would be no further briefing. The parties have met and conferred and Plaintiffs have not withdrawn the motion. Plaintiffs' motion is ripe for the Court's consideration.

1

**B. DAPs' Motion for Common Benefit Order.**

The parties' submissions are at ECF Nos. 408, 425, and 426. The Court held argument and took the matter under submission. ECF No. 507.

## II. Update on Matters Before E-Discovery Special Master Grossman

On November 21, as re-entered on December 12, 2025, the Court appointed Dr. Maura R. Grossman to serve as E-Discovery Special Master. ECF Nos. 595, 628.  The below matters are currently assigned to Dr. Grossman, but have yet to be resolved:

**A. Dispute Concerning Technology Assisted Review ("TAR") Protocol.**

On October 20, pursuant to the Court's October 14 Minute Order, ECF No. 564, the Parties emailed to the Court their respective positions on the TAR protocol and a proposed order reflecting the disputed provisions. The Parties' submissions are at ECF Nos. 509 and 510.  The parties have attended two working sessions with Dr. Grossman (December 29, 2025 and January 5, 2026) on this issue and have reached agreement on several of the relevant disputes.  The parties are working to finalize the remaining items and will provide an update to the Court at the January 21 status conference.

**B. Plaintiffs' Motion to Compel MultiPlan to Produce Documents Using Plaintiffs' Proposed Time Periods and From Additional Custodians.**

Motion filed at ECF No. 573. MultiPlan's consolidated opposition to both this motion and the below motion to compel was filed on November 10. ECF No. 579. Plaintiffs' consolidated reply was filed on November 12. ECF No. 583.  At the January 5, 2026 working session, Dr. Grossman notified the parties that she was reviewing the materials and would schedule a working session on this dispute now that the TAR protocol disputes are largely resolved.

### C. Plaintiffs' Motion to Compel MultiPlan to Apply Plaintiffs' Search Terms.

Motion filed at ECF No. 574. MultiPlan's consolidated opposition to both this motion and the above motion to compel) was filed on November 10. ECF No. 579. Plaintiffs' consolidated reply was filed on November 12. ECF No. 583. At the January 5, 2026 working session, Dr. Grossman notified the parties that she was reviewing the materials and would schedule a working session on this dispute now that the TAR protocol disputes are largely resolved. If there are any further developments, the parties will provide an update to the Court at the January 21 status conference.

### III. Additional Joint Topics

### A. Status of Document Productions.

All Defendants began rolling productions of custodial documents in December notwithstanding the current pendency of the TAR and MultiPlan disputes referred to Special Master Grossman. The two Proposed Class Representatives began rolling productions of custodial documents in December. Several DAP Discovery Bellwether Plaintiffs began rolling productions in December notwithstanding ongoing negotiations concerning the scope of discovery and search methods and the remaining DAP Discovery Bellwether Plaintiffs expect to start such productions by the end of January (other than the two DAPs only recently identified by Defendants as substitute Bellwether selections).[1]

### B. MultiPlan Structured Data 30(b)(6) Deposition.

On December 16, 2025, both Class and DAP Plaintiffs served a 30(b)(6) deposition notice on MultiPlan related to structured data and systems. *See* ECF No. 528 (allowing Plaintiffs to "take

---

[1] Counsel for the newly added Discovery Bellwether DAPs are conferring with the clients and will advise Defendants of proposed custodians and timing for production.

a 'structured data' Rule 30(b)(6) deposition"). On December 31, 2025, MultiPlan served its responses and objections. On January 12, 2026, the parties held a meet-and-confer on the four topics Plaintiffs noticed for the deposition and on potential deposition dates. At present, the parties expect the deposition to occur around mid-February. The parties will be prepared to provide an update to the Court at the January 21 status conference.

### C. Status of DAP Discovery Bellwether Selections.

Pursuant to Case Management Order 20, ECF No. 567, and as discussed at the last status hearing, Defendants have selected Wayne Lee MD Plastic Surgery (Case No. 1:24-cv-10945) and Douglas M. Monasebian/dba Park Avenue Plastic Surgery (Case No. 1:24-cv-10945) as the two remaining replacement DAP Discovery bellwethers. The parties notified the Court of the selection via proposed CMO 26, ECF No. 635-2, filed on January 14, 2026.

DAP counsel do not expect any of the 36 selected Discovery Bellwether DAPs to dismiss their actions, and the parties believe that the list of Discovery Bellwether DAPs is now final. The parties are meeting and conferring regarding the appropriate expedited schedule for the replacement DAPs related to various preliminary discovery obligations (structured data, organizational charts, custodian and source lists, search term proposals and/or use of TAR, and related items) and, if they cannot reach agreement, will be prepared to discuss the same at the status hearing.

### D. Deposition Protocol and Limits.

At the September 22, 2025 status hearing, the Court addressed the Parties' deposition protocol submissions and approved an overall limit of 170 fact depositions of all Defendants, including depositions of Defendants' former employees, and ruled that every 7 hours of 30(b)(6) time would count as 1 deposition towards the limit. However, the Court directed the parties to

confer further about the maximum number of depositions for each Defendant, as well as the overall number and allocation of depositions of Plaintiffs' witnesses, once DAP Discovery Bellwethers had been selected. ECF Nos. 511, 511-1, 538. The parties have done so, but have been unable to reach agreement, and submit the following remaining issues for the Court's determination.

1. **Maximum Fact Depositions Per Defendant**

|  | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| MultiPlan | 30 | 15 |
| United | 18 | 12 |
| Aetna | 14 | 12 |
| Cigna | 14 | 12 |
| Elevance Health | 12 | 12 |
| Other Defendants | 7 | 7 |

***Plaintiffs' Position***: Plaintiffs' revised proposed per-Defendant limits are direct and proportionate to the needs of the case, taking into account each party's relative access to relevant information, as Rule 26 requires. Plaintiffs' approach allocates the most depositions to MultiPlan, fewer to the largest payor Defendants, and still fewer to the remaining Defendants. As Plaintiffs explained in the September 2025 status report—and early discovery has since confirmed—MultiPlan is the alleged conspiracy's hub, whose entire business is dedicated to "repricing" (i.e., setting prices for) out-of-network claims. Although the precise number of MultiPlan custodians remains in dispute before Special Master Grossman, MultiPlan has dozens of key witnesses—who gave pricing advice, designed pricing algorithms, coordinated among competitors, and performed other functions at the center of the alleged scheme. Plaintiffs will need depositions regarding MultiPlan's early acquisitions and planning for the cartel, its relations with each cartel member, and its army of "negotiators."

Defendants United, Aetna, Cigna, and Elevance are the nation's largest insurance companies; they have large teams dedicated to out-of-network claims, were some of the first targets

of MultiPlan's marketing, and had more personnel in communication with MultiPlan than the other payors. United stands apart even within this group: By virtue of its scale and out-of-network claims volume—and its own history of having been at the heart of the prior Ingenix cartel—United had a particularly extensive and complex relationship with MultiPlan. United therefore has a larger universe of 21 agreed relevant custodians, decision-makers, and witnesses than any other payor. Aetna and Cigna are not far behind at 17 and 19, respectively. The remaining payor Defendants have materially smaller out-of-network pricing operations and correspondingly fewer witnesses with relevant knowledge.

Defendants' proposal ignores these distinctions by sharply limiting the amount of depositions Plaintiffs may take from those entities with the greatest access to information about the cartel—especially MultiPlan and United—without any principled justification. That approach is inconsistent with Rule 26, which requires discovery to be proportionate to the parties' relative access to relevant information. Defendants' reliance on a supposed "10-deposition norm" is likewise unavailing; it ignores the many MDLs and antitrust cases Plaintiffs previously cited at ECF 511 in which courts approved larger, defendant-specific deposition limits where, as here, certain Defendants were more central actors than others.[2]

**Defendants' Position**: Defendants' proposal for the maximum fact depositions of MultiPlan, United, Cigna, and Aetna is realistic and consistent with other complex antitrust matters in this district. For any one of the individual cases brought against those Defendants, the default

---

[2] For example, although this Court took a different approach in *Henry v. Brown University*, permitting 10 depositions of each defendant, Plaintiffs respectfully submit that the context here differs significantly. In *Henry*, the organization at the center of the conspiracy was a membership group of the defendants, without employees of its own, and the plaintiffs did not name the group as a defendant. Here, by contrast, MultiPlan is a large private company alleged to exist almost exclusively to facilitate price-fixing and sits at the core of the conspiracy.

limit under the Federal Rules would be at most 10 fact depositions. *See* Fed R. Civ. P. 30(a)(2)(A)(i). Similarly, other antitrust MDLs in this Court have allowed 10 fact depositions per Defendant.[3] In the interest of compromise, Defendants offered significantly more than 10 depositions here: 12 for United, Cigna, and Aetna; and 15 for MultiPlan. That is more than enough. Plaintiffs have not and cannot justify **three times** the 10-deposition standard for MultiPlan and **nearly double** that limit for United. The Court should adopt Defendants' proposed limits as the presumptive defaults absent a showing of good cause.

2. <u>**Overall Limit on Plaintiff Depositions**</u>

|  | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Overall Maximum Fact Depositions (2 Proposed Class Representatives and 36 DAP discovery bellwethers) | 120 | 170 |

***Plaintiffs' Position***: Defendants' proposal that they be allowed to take 170 depositions of Plaintiffs' witnesses demands numerical parity where there is no informational parity. In this case, as in most antitrust conspiracy cases, defendants possess nearly all relevant liability and damages evidence. Plaintiffs' proposed cap of 120 depositions is more than sufficient for the 2 Class Representatives and 36 Bellwether Direct Action Plaintiffs, most of which are small provider practices with only one or two knowledgeable non-medical employees.[4] Defendants, by contrast,

---

[3] *See, e.g.*, *Carbone*, No. 1:22-cv-0125, Dkt. 273 at 1 (10 fact depositions per individual defendant); *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318, Dkt. 496 at 2 (10 depositions per defendant family); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637, Dkt. 1155 at 2 (N.D. Ill. Aug. 28, 2018) (10 depositions of each defendant family).

[4] Defendants wrongly characterize the 120-deposition cap as "illusory." While it is Plaintiffs' position that far fewer depositions of plaintiffs are needed than of Defendants, we have proposed a cap in the (unlikely) event that further substitutions of Discovery Bellwethers are needed (i.e., Defendants substitute a large DAP for a very small one) or additional Plaintiffs are added. More

are national payors and MultiPlan with thousands of employees and dedicated teams that designed, implemented, and monitored the challenged conduct.

***Defendants' Position***: Plaintiffs should be subject to the same total depositions as the Court previously indicated for Defendants: 170 total depositions, including former employees and with every 7 hours of 30(b)(6) testimony counting as 1 deposition. This parity is appropriate given the number of Plaintiffs currently in discovery—38 Plaintiffs, compared to 28 Defendant groups—as well as the breadth and complexity of Plaintiffs' allegations. Fact depositions in this case, like discovery generally, should be a two-way street. *See* Tr. of Mar. 14, 2025 Hearing at 23.

Plaintiffs' proposed limit of 120 fact depositions, by contrast, is unbalanced and unreasonable. It would allow only 3 depositions per Plaintiff, on average. And even that proposed maximum is illusory. The per-Plaintiff limits that Plaintiffs propose below, when applied to the actual bellwether DAPs and putative class Plaintiffs, add up to only **101** total depositions. That is about 20 fewer depositions than Plaintiffs' purported overall limit for Plaintiff depositions, 70 fewer than the limit for Defendant depositions, and results in an average of between 2 and 3 depositions per Plaintiff.

That is not enough. Plaintiffs are sophisticated corporate entities from which Defendants will need relevant and proportional deposition testimony on a wide range of topics, spanning at least a 10-year time period. Plaintiffs include six of the largest hospital systems in the country:

- Plaintiff Ascension, for example, runs over 90 hospitals and 25 other facilities across the country,[5] has over 135,000 non-medical staff, and disclosed **9** witnesses with relevant knowledge in their initial disclosures alone.

_____

importantly, the per-Plaintiff limits should be based on what is reasonable and proportionate, not to solve a math problem to total up to 120 (let alone 170).

[5] *See* https://about.ascension.org/about-us (noting 91 wholly owned hospitals, 29 additional hospitals through partnerships, and 26 senior living facilities and other care sites).

- Plaintiff Community Health Systems runs approximately 70 hospitals,[6] with 39,000 non-medical staff, and has so far agreed to **14** custodians.

The non-hospital Plaintiffs also run complex operations, including large-scale physician groups and treatment centers:

- Plaintiff Center for Orthopaedics & Spine, for example, has over 120 non-medical staff and identified **6** individuals with relevant knowledge as part of custodian negotiations (which Defendants expect will increase).

Even the smallest Plaintiffs will require multiple depositions, particularly as employees have come and gone over the 10+ year relevant time period in this case:

- Plaintiff Heritage Surgical Group LLC, for example, represented that it has 9 non-medical employees and disclosed **7** individuals with relevant knowledge in its initial disclosures.

- Plaintiff Tarzana Recovery Center represented that it has 18 non-medical employees and disclosed an initial list of **4** custodians; Defendants believe there are up to 10 more for a total of **14** custodians.

That Plaintiffs' own disclosures, early in the discovery process, reflect numerous witnesses with relevant knowledge is no surprise, given the breadth of the claims that Plaintiffs have asserted. Defendants anticipate seeking Plaintiff deposition testimony regarding, among other topics, the relevant geographic market in which each Plaintiff facility operates; the relevant product market, including Plaintiffs' experiences showing that in-network services are reasonably interchangeable with out-of-network services; Plaintiffs' billing and collection practices; Plaintiffs' experience negotiating with MultiPlan; Plaintiffs' view of benchmarks that they plan to use to show damages; and Plaintiffs' structured data.

This testimony is essential in defending against Plaintiffs' false allegations of a Section 1 "cartel" and will, among other things, help demonstrate why MultiPlan's competitive options

---

[6] *See* https://www.chs.net/ (CHS operates 69 affiliated hospitals).

regarding out-of-network pricing exist, have grown, are independently attractive to employer groups, health plans, and managed care organizations, and are critical to consumers—individual patients across the nation—otherwise being gouged by providers charging exorbitant out-of-network amounts for identical healthcare services. Plaintiffs' attempts to limit or prevent Defendants from obtaining key discovery and thereby presenting a fulsome defense to Plaintiffs' unfounded claims should be rejected.

### 3. <u>Maximum Fact Depositions Per Plaintiff</u>

|  | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Plaintiff with 1-19 non-medical employees[7] | 2 | 6 |
| Plaintiff with 20-99 non-medical employees[8] | 3 | 6 |
| Plaintiff with 100-4,999 non-medical employees[9] | 4 | 7 |

---

[7] Plaintiffs Advanced Orthopedic; Advanced Spinal Care & Associates LLC; American Surgical Arts, P.C.; Avenue Recovery Center of Bucks LLC; Bergen Surgical Specialists, PA; Elite Surgical Specialists PC; Heritage Surgical Group LLC; LNA Realty Inc. d/b/a Luxe Recovery; New Hampshire Detox and Rehab LLC d/b/a Avenues Recovery Center at Dublin; Panoramic Medicine; Park Avenue Plastic Surgery; Sadeghi Center for Plastic Surgery; Tarzana Recovery Center; Tennessee Interventional and Imaging Associates PLLC; Wayne Lee MD Plastic Surgery; and Wellness Medical Services of Manhattan.

[8] Plaintiffs AMS Pro Group LLC d/b/a Wish Recovery; Kentuckiana Detox & Rehab Center LLC; and The Meadowglade, LLC.

[9] Plaintiff Center for Orthopaedics & Spine, LLC.

| Plaintiff with 5,000+ non-medical employees[10]; Team Health Plaintiffs (collectively)[11]; Sound Physicians Plaintiffs (collectively)[12] | 7 | 10 |
| --- | --- | --- |

*Plaintiffs' Position*: Under Plaintiffs' revised proposal, Defendants may take between two and seven depositions per Plaintiff (including Rule 30(b)(6) depositions), depending on the entity's size. Defendants' proposal, by contrast, would require six to ten depositions of every Plaintiff, including the smallest provider practices with fewer than 19 non-medical employees. Plaintiffs' proposal reflects where relevant information actually resides.

Proportionality under Rules 26 and 30 requires aligning discovery with where information resides, with the parties' access to that information, and with the parties' resources. In this case, core factual questions are about the existence of an agreement in restraint of trade and the harm caused by that agreement. The information about those issues is concentrated on Defendants' side of the ledger. To the extent that Plaintiffs have relevant information, it is about how much they were paid for OON services and how that underpayment affected them. That information can be obtained through relatively few depositions of each Plaintiff. Nor is it proportional for Defendants to depose all of the employees involved in the management of a medical practice. In reality, the

[10] Plaintiffs Adventist Health System Sunbelt Healthcare Corporation; Adventist Healthcare, Inc; Ascension Health; Community Health Systems, Inc.; Texas Health Resources; The Methodist Hospital d/b/a Houston Methodist.

[11] Plaintiffs Emergency Services of New York, P.C.; Emergency Services of Oklahoma, P.C.; Southeastern Emergency Physicians, LLC; Texas Medicine Resources, LLP.

[12] Plaintiffs Cogent Healthcare of North Carolina, P.S.; Cogent Healthcare of Texas, P.A.; Hospitalist Medicine Physicians of New Mexico – Clovis, LLC; Hospitalist Medicine Physicians of Texas – Houston, PLLC; Sandusky Anesthesia LLC; Sound Physicians Emergency Medicine of South Carolina, LLC; Sound Physicians of Illinois LLC; and South Sound Inpatient Physicians, PLLC.

decisions about billing and reimbursement are made by a narrow group of employees even at the largest health systems.

Because proportionality is not one-size-fits-all, Plaintiffs propose a structure in which Defendants generally get to take more depositions where a Plaintiff has more employees dedicated to the billing and reimbursement functions at issue in this litigation.

Most Plaintiffs are small medical practices where billing, claims submission, and payor interactions are handled by one or two people, and, even in larger systems, by a narrow revenue-cycle team rather than by clinicians. For small practices, in many cases, a single witness can testify both as a Rule 30(b)(6) designee and in their individual capacity to address the relevant issues. Indeed, many Plaintiffs do not even have two or three—let alone six—people with relevant knowledge. Defendants' proposed floor of six depositions would therefore produce duplicative, low-yield testimony and unnecessarily divert medical professionals with no role in the revenue cycle/claims issues from patient care.

**Defendants' Position**: Plaintiffs with 1-19 or 20-99 non-medical employees: Plaintiffs propose highly restrictive per-Plaintiff deposition limits at this early stage of discovery, in stark contrast to the per-Defendant limits that Defendants have agreed on as a compromise, including up to 7 depositions for even the smallest Defendants named in only a handful of DAP cases. Under Plaintiffs' proposal for Plaintiffs with up to 19 non-medical employees, for example, Defendants could take only two depositions for Plaintiff Heritage Surgical Group, which disclosed 7 witnesses with knowledge in its initial disclosures; two depositions for Plaintiff Advanced Spinal Care & Associates, which disclosed 5 witnesses with knowledge in its initial disclosures; and two depositions for Plaintiff Panoramic Medicine (purporting to represent a putative nationwide class), which identified at least four custodians for discovery. Defendants may not need to depose every

single person with knowledge or every custodian, but the number of those individuals already disclosed, at this early stage of discovery, nonetheless illustrates that two depositions will not be enough.

Moreover, under Plaintiffs' proposal, after taking a 30(b)(6) deposition of a corporate representative nominated by Plaintiffs, Defendants would be limited to only one 30(b)(1) deposition to question witnesses of their choosing, including former employees over at least a ten-year time period. There is no basis for such restrictive limits in a case of this magnitude.

For three Plaintiffs with 20-99 non-medical employees, Plaintiffs propose 1 additional deposition for a total of 3. Defendants do not agree that yet another line should be drawn at 20 non-medical employees, creating arbitrary distinctions among similar Plaintiffs. Plaintiffs' proposal would mean, for example, that Defendants get 3 depositions of Plaintiff Kentuckiana Detox & Rehab Center LLC (22 non-medical employees, 3 Plaintiff-proposed custodians, 10 additional custodians under consideration) but only 1 deposition of Plaintiff Tarzana Recover Center (18 non-medical employees, 4 Plaintiff-proposed custodians, 10 additional custodians under consideration). Regardless, three depositions is still too restrictive as a maximum limit.

Defendants' position—up to 6 depositions for Plaintiffs with 0-99 non-medical employees—is reasonable. That is fewer depositions than Defendants would get if these actions were proceeding separately. It is fewer than the 7 depositions that Plaintiffs can take of even the smallest Defendants in this case that are named in only a handful of DAP cases. And it is consistent with the range of relevant Plaintiff witnesses disclosed to date, the broad set of topics on which Defendants need discovery, the ten-year time period in the case (and associated employee turnover), and the magnitude of Plaintiffs' allegations against Defendants. Moreover, if the Court sets an overall limit of 170 depositions, Defendants could not take 6 depositions of every defendant

13

in this cohort—just as Plaintiffs could not take the maximum 7 depositions proposed below for each of the "other Defendants," given the overall limit of 170 Defendant depositions.  Defendants would have the flexibility take up to 6, as needed, but would have to choose their depositions judiciously.

Plaintiffs with 100-4,999 non-medical employees: There appears to be only one Plaintiff that falls within this category:  Plaintiff Center for Orthopaedics & Spine, LLC.  This Plaintiff has over 120 non-medical employees and has already disclosed six potential custodians.  Defendants contend that more custodians are needed and are meeting and conferring about that issue.  For a Plaintiff of this size and complexity, Defendants' proposed limit of 7 depositions is appropriate. Plaintiffs' proposed 4 will not be enough, is far below the limit that would apply if this action was proceeding separately, and is disproportionate to the maximum limits—7 depositions—applicable to even the smallest Defendants in this case.

Plaintiffs with 5,000+ non-medical employees: For the six hospital Plaintiffs (each of whom fall into the 5,000+ bracket), Defendants propose maintaining the 10-deposition default limit.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i).  As noted above, these Plaintiffs are some of the largest hospital systems in the country, and they have already disclosed up to 9 (Ascension) or 14 (Community Health Systems) witnesses with knowledge.  Defendants expect that discovery will reveal other individuals who may need to be deposed, including former employees.  The Court should allow the default of 10 depositions, rather than Plaintiffs' proposed 7, to ensure that Defendants can develop the evidence they need to combat allegations from these large hospital systems.

Team Health and Sound Physicians: For the four Team Health and eight Sound Physician entities, Defendants likewise propose the default 10-deposition limit.  In other words, Defendants

would have ten depositions to use against the four Team Health entities, collectively, and ten depositions to use against the eight Sound Physician entities, collectively. Team Health is one of the largest physician outsourcing companies in the country and has already disclosed 8 custodians and witnesses knowledge in their initial disclosures. Sound Physicians, one of the nation's largest hospitalist practices, has already disclosed 7 custodians. Defendants contend that both groups should have more than 10 custodians. At this stage, the default 10-deposition limit is an appropriate target.

4. **Procedure for Scheduling Former Employee Depositions (Deposition Protocol, ECF 511-1, Section 4.b.)**

The parties disagree about the procedure for scheduling depositions of former employees of a party, as reflected in Section 4.b. of the parties proposed deposition protocol, ECF No. 511, Ex. A at 14:

> b. Witnesses who are former employees of a Party may be requested to appear at depositions by notice of deposition served on counsel for their former employer [Plaintiffs' Position] and no deposition subpoena shall be required // [Defendants' Position] and shall not initially be served with a deposition subpoena. The Parties will use their best efforts to make available their respective former employees whose depositions have been noticed without requiring a subpoena. A former employee retains the right to request issuance of a deposition subpoena for any reason within twenty-one (21) calendar days service of the notice on counsel for the witness's former employee. If a Party is unable to produce a former employee without a subpoena, it shall notify the Party requesting the deposition within twenty-one (21) calendar days of receiving the deposition notice and shall provide the requesting Party the last known contact information for the former employee or former employee's counsel (if known). In the event a former employee requests issuance of a subpoena, or the former employer of the witness is unable to timely produce a former employee without a subpoena, the Party requesting the deposition of the former employee may issue a subpoena.

***Plaintiffs' Position***: Plaintiffs' proposed language reserves the option for Plaintiffs to directly subpoena former employees, rather than requiring Plaintiffs to proceed through Defendants' counsel. That option may be particularly important where a former employee is not

aligned with Defendants' positions in this case and wishes to cooperate with Plaintiffs. Because Defendants are adverse parties with their own interests, they cannot be permitted to act as gatekeepers over Plaintiffs' access to unrepresented former employees. Plaintiffs' counsel respectfully submit that they should be permitted to exercise their professional judgment in determining when to use each option, consistent with all applicable ethical obligations.

*Defendants' Position*: Section 4.b. of the parties' proposed deposition protocol sets out an efficient process for scheduling depositions of former employees. It calls for the noticing party to first contact counsel for the witness's former employer before serving a formal subpoena on the witness. That makes sense and is a common practice in these cases. Former employers often have already been in touch with relevant former employees and may be authorized to accept service on their behalf. Regardless, they are often better positioned to locate and notify the former employee about the deposition without sending a process server to their home or current employer. If a former employer is not positioned to do so, they can say so. And if the witness does not want to coordinate through their former employer, or wants to testify only pursuant to a subpoena, they can request one, as Section 4.b. contemplates.

Plaintiffs, however, argue that this process should be optional, allowing them to serve formal subpoenas rather than coordinating through counsel at their discretion. But that defeats the efficiency benefits of the Section 4.b. process. And it is not necessary. If, as Plaintiffs suggest, there are former employees who do not want to coordinate through their former employers, they can exercise their option to request a formal subpoena. Similarly, if former employees want a subpoena, but to be represented by their former employer's counsel, it may be possible to avoid the burden and harassment of serving a subpoena on the employee directly. Further, nothing in the proposed process precludes Plaintiffs from contacting former employees—consistent with their

16

ethical obligations—before scheduling a deposition.  It only prevents them from serving formal subpoenas out of the blue that may be completely unnecessary and confusing to the witness.

### E.  Plaintiffs' Expected Motions to Dismiss Affirmative Defenses: Schedule Update.

Under CMO 19, Plaintiffs' deadline to file any motions to strike Defendants' affirmative defenses is January 19, 2026. ECF No. 546 (setting deadline of 60 days following the selection of DAP discovery bellwethers). The CMO also set a deadline for the Parties to meet and confer to discuss Plaintiffs' potential objections to the affirmative defenses, which the Parties did on December 19 (the day of the deadline). Defendants requested an opportunity to amend their affirmative defenses to address Plaintiffs' objections, and Plaintiffs agreed.

Accordingly, the Parties have agreed to the following extended schedule for amendment and briefing, subject to Court approval:

- January 23, 2026: Last day Defendants can amend their affirmative defenses on the Parties' consent

- February 27, 2026 (5 weeks): Plaintiffs to file any Motions to Strike Affirmative Defenses

- April 3, 2026 (5 weeks): Defendants to file Oppositions to any Motions

- April 24, 2026 (3 weeks): Plaintiffs to file any Replies in support of any Motion

Defendants reserve their rights to argue that any objections not raised at the Court-ordered meet-and-confer are untimely and waived.  Plaintiffs reserve the right to move to strike any insufficiently pled affirmative defense.

### F.  Defendants' Expected Motions to Compel Regarding Plaintiffs' Document Productions: Process and Scheduling.

***Defendants' Position***:  The parties have engaged in numerous meet and confers regarding Plaintiffs' responses and objections to Defendants' document requests and anticipate reaching impasse on numerous global issues.  While the parties will continue to meet and confer regarding

17

such matters and will be in position to update the Court on any developments at the status conference, Defendants expect to file motions to compel related to Plaintiffs' objections to producing materials as to at least the following topics:

- *DAPs*: motion to compel production of documents related to (1) the relevant time period for DAPs' production of documents; (2) documents related to balance billing/patient billing, (3) documents related to health plan entities aside from the particular Defendants each DAP elected to name in their respective complaints, (4) documents related to in-network services, (5) documents related to charge masters/billed charges; and (6) documents related to DAPs' financial performance/conditions.

- *Class*: motion to compel regarding production of documents related to Class Plaintiffs' financial performance/condition and documents regarding a billing agent for one of the putative class representatives.[13]

On the above common issues, Defendants intend to file a single motion to compel as to the Class and a single motion to compel as to the DAPs; the latter involves numerous plaintiffs but the objections to producing these categories of information are largely uniform across all DAPs. To allow for the efficiency of a single filing as to each of the Class and DAP cases, and timely resolution, Defendants ask that the Court:

---

[13] For the Court's awareness, Putative Class Representative Plaintiff Advanced Orthopedic Center has taken the position that certain responsive documents in the possession of its agent for billing functions are outside Advanced Orthopedic Center's possession, custody, or control. Defendants served a non-party subpoena on that agent on December 19, 2025 with a return date of January 2, 2026. The agent has not complied with the subpoena.

1. Permit a 30-page limit as to the DAP motion, given the breadth of DAPs' objections and to account for the possibility that some DAPs may elect to take differing positions prior to filing, which will need to be addressed; and

2. Ask that the Court set a schedule for the filing of the motions to compel (along with oppositions and any replies) that would allow the motions to be heard for oral argument at the status conference in February.

***Plaintiffs' Position***: Plaintiffs do not object to Defendants filing whatever discovery motions they believe are warranted. Plaintiffs do not, however, believe it is necessary or efficient to preview unfiled motions in a joint status report, particularly while the parties are still meeting and conferring. Plaintiffs likewise anticipate filing motions to compel on several unresolved issues concerning Defendants' productions and discovery responses, but have not previewed those here to avoid burdening the Court with half-baked disputes. Nor do Plaintiffs believe it is appropriate to set a briefing schedule in advance of any motion being filed. Plaintiffs therefore defer to the Court on whether and when to set a schedule for any contemplated discovery motions. If the Court elects to do so before the meet-and-confer process is complete, Plaintiffs request parity in page limits for any oppositions and at least ten days to respond.

### G. Case Scheduling.

The Parties have met and conferred and agree that the deadline for substantial completion of document productions in response to the Parties' third sets of RFPs should be extended from January 23, 2026 to June 4, 2026.  Because the subsequent deadlines in the case rely on the substantial completion deadline, the Parties propose a schedule below that moves out other deadlines similarly by about four-and-a-half months, with minor adjustments to account for

holidays. The Parties have also agreed that a one-month extension for the structured data production deadline is warranted in light of the broader schedule changes.

Good cause exists for these modifications. Despite all Parties' diligence in discovery to date, there are several open issues that make it impossible for the Parties to meet the current January 23, 2026 deadline for substantial completion, most notably the TAR protocol and MultiPlan search methodology disputes currently before Special Master Grossman, the Parties' ongoing discussions regarding the scope of their document productions, and catch-up discovery for the replacement Discovery Bellwether DAPs.

The Parties request that the Court amend the remaining deadlines in the case schedule (CMO 17), ECF No. 450 and the structured data deadline (CMO 18), ECF No. 530, as follows:

| DEADLINE | ORIGINAL DATE | NEW DATE |
|---|---|---|
| Deadline to complete production of structured data | April 30, 2026 | Friday, May 30, 2026 |
| Deadline for substantial completion of document productions to third sets of RFPs | January 23, 2026 | Thursday, June 4, 2026 |
| Deadline for any motions to amend the pleadings | March 6, 2026 | Thursday, July 16, 2026 |
| Last day on which parties may serve requests for production | June 29, 2026 | Tuesday, November 10, 2026 |
| Last day on which parties may serve interrogatories | July 29, 2026 | Tuesday, December 8, 2026 |
| Close of Fact Discovery | September 10, 2026 | Friday, January 29, 2027 |
| Plaintiffs' Merits and Class Certification Expert Reports | October 16, 2026 | Tuesday, March 2, 2027 |
| Defendants' Merits and Class Certification Expert Reports | December 23, 2026 | Thursday, May 6, 2027 |
| Plaintiffs' Rebuttal Merits and Class Certification Expert Reports | March 2, 2027 | Wednesday, July 14, 2027 |

| DEADLINE | ORIGINAL DATE | NEW DATE |
|---|---|---|
| Close of Expert Discovery | March 31, 2027 | Thursday, August 12, 2027 |
| Class Certification Motion | April 7, 2027 | Thursday, August 19, 2027 |
| Class Certification Opposition Brief | May 18, 2027 | Wednesday, September 29, 2027 |
| Class Certification Reply Brief | June 30, 2027 | Friday, November 12, 2027 |
| Class Certification Hearing | (to be determined) | (to be determined) |
| Summary Judgment Motions | July 1, 2027 | Monday, November 15, 2027 |
| Summary Judgment Opposition Briefs | August 13, 2027 | Friday, January 14, 2028 |
| Summary Judgment Replies | September 14, 2027 | Monday, February 28, 2028 |
| Joint status report or stipulation concerning remand, motions in limine, etc. | (to be determined) | (to be determined) |
| Pre-Trial Conference | (to be determined) | (to be determined) |
| First Trial Begins | December 6, 2027 | Monday, May 1, 2028 |

### H. Appointment of Optional Mediator

The Parties agree to the Court appointing a mediator who would be available to any parties to use, as they may or may not see fit, while still allowing parties to instead choose to privately mediate with another neutral or on their own as they may determine. If the Parties do not agree jointly to an individual for this role, the Parties suggest that they each submit a proposed mediator for this role (with a curriculum vitae, but no argument) in the next joint status report.

Dated: January 14, 2026

/s/ Sadik Huseny
Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Tel.: (737) 910-7300
sadik.huseny@lw.com

*Defendants' Coordinating Counsel*

/s/ Shawn Rabin
Shawn J. Rabin (*pro hac vice*)
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel.: (212) 336-8330
srabin@susmangodfrey.com

*Interim Class Liaison Counsel*

/s/ Christopher Seeger
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*