UNITEDHEALTH STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | ) ) | Civil Action No. 1:24-cv-06795 |
| | ) | (Hon. Matthew F. Kennelly) |
| This Document Relates To: | ) | |
| | ) | |
| ALL ACTIONS | ) | **WM. MICHAEL STEMLER INC.** |
| | ) | **D/B/A DELTA HEALTH SYSTEMS** |
| | ) | **MOTION TO QUASH SUBPOENA TO** |
| | ) | **PRODUCE DOCUMENTS,** |
| | ) | **INFORMATION, OR OBJECTS OR** |
| | ) | **TO PERMIT INSPECTION OF** |
| | ) | **PREMISES IN A CIVIL ACTION** |
| | ) | |
| | ) | |

Pursuant to Fed. R. Civ. P. 45(d)(3), Wm. Michael Stemler Inc. d/b/a Delta Health Systems

("Delta Health"), by and through undersigned counsel, respectfully submits this Motion to Quash

the Subpoena to Produce Documents issued on April 6, 2026 (the "Subpoena"), by Defendant

UnitedHealth Group Incorporated ("UnitedHealth") in the above-captioned multidistrict litigation.

Respectfully submitted,

/s/ Christine M. Cooper
Christine M. Cooper (OH #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East
Suite 2500
Cleveland, OH 44114
(Tel.)   (216) 539.9370
(Fax)   (216) 916.4360

Email: ccooper@koehler.law

*Attorney for Wm. Michael Stemler Inc. d/b/a
Delta Health Health Systems*

1

UNITEDHEALTH STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | ) | Civil Action No. 1:24-cv-06795 |
| | ) | |
| This Document Relates To: | ) | (Hon. Matthew F. Kennelly) |
| | ) | |
| ALL ACTIONS | ) | **WM. MICHAEL STEMLER INC.** |
| | ) | **D/B/A DELTA HEALTH SYSTEMS** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO QUASH SUBPOENA TO** |
| | ) | **PRODUCE DOCUMENTS,** |
| | ) | **INFORMATION, OR OBJECTS OR** |
| | ) | **TO PERMIT INSPECTION OF** |
| | ) | **PREMISES IN A CIVIL ACTION** |
| | ) | |

## I. INTRODUCTION AND BACKGROUND

Wm. Michael Stempler Inc. d/b/a Delta Health Systems ("Delta Health") is a privately owned third-party administrator that administers self-funded, ERISA and non-ERISA governed health plans. Delta Health (who is not named by its legal name in the Subpoena) is a non-party to this litigation. Despite this, on April 6, 2026, UnitedHealth Group Incorporated ("UnitedHealth") served Delta Health with a sweeping Subpoena demanding six broad categories of documents spanning more than a decade across its entire business and demanding compliance within fourteen days of service.[1] The Subpoena is so deficient on its face—lacking a reasonable temporal limitation, riddled with undefined and undefinable terms, and failing to allow a reasonable time for compliance—that Delta Health cannot determine what UnitedHealth is actually seeking, let

_____

[1] The letter enclosing the Subpoena is dated April 6, 2026. The Subpoena is dated April 1, 2026 (five days after the service letter). Delta Health received the Subpoena on April 8, 2026. Accordingly, and for purposes of this Motion, Delta Health assumes that the Subpoena was served on April 6, 2026. A copy of the Letter and Subpoena are attached as "Exhibit 1."

alone comply within the time demanded. The Subpoena imposes an undue burden on Delta Health, demands irrelevant proprietary and confidential business information, and fails to describe with any modicum of particularity the materials sought.

Delta Health respectfully requests that this Court quash the Subpoena in its entirety. Alternatively, and only if the Court finds the Subpoena not to be wholly deficient, Delta Health requests that the Court order UnitedHealth to provide a written statement identifying, with specificity, the particular information it seeks from Delta Health, meet and confer with Delta Health regarding the legitimate scope of any discovery sought before any compliance obligation attaches, and extend the compliance deadline accordingly.

## II. LEGAL STANDARD

Fed.R.Civ.P. 45(d)(3)(A) provides that a court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iii) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Additionally, Rule 45(d)(3)(B) provides that a court may quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B).

A subpoena must describe with "reasonable particularity" the documents sought. Fed.R.Civ.P. 34(b)(1)(A), (c). "The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not.'" *Bruggeman v. Blagojevich,* 219 F.R.D. 430, 436 (N.D. Ill. 2004). "Thus, the party requesting the production of documents must provide 'sufficient information to enable [the party to whom the request is directed] to identify responsive documents.'" *Id.* (citing *Parsons v. Jefferson-Pilot Corp.,* 141 F.R.D. 408, 412 (M.D.N.C. 1992)). This requirement is not a formality. A subpoena that fails to describe the

3

documents sought with sufficient specificity that the recipient can identify what is being demanded is fundamentally defective and cannot form the basis of a valid compliance obligation.

The scope of discovery permissible through a subpoena is also governed by the proportionality requirements of Fed. R. Civ. P. 26(b)(1), which requires that discovery be proportional to the needs of the case, considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, and whether the burden or expense of the proposed discovery outweighs its likely benefit. The party issuing the subpoena has the obligation to take reasonable steps to avoid imposing undue burden or expense on persons subject to a subpoena. Fed. R. Civ. P. 45(d)(1).

### III. ARGUMENT

**A. The Subpoena Is Facially Deficient: Its Definitions and Document Requests Are Riddled with Undefined and Ambiguous Terms.**

The reasonable particularity requirement of Fed. R. Civ.P. 34(b)(1)(A), incorporated into Fed. R. Civ.P. 45, demands that a subpoena be drafted with sufficient clarity that the recipient can identify what is being sought without guesswork. *See Bruggeman,,* 219 F.R.D. at 436. The Subpoena issued by UnitedHealth falls far short of that standard. Its definitional framework is defective on its face, and each of the document requests sought in the Subpoena (the "Document Requests") compounds those deficiencies with additional undefined terms.[2]

---

[2] Request 8, which is the only reasonably particularized request, seeks "all materials produced in response to any subpoena issued to" Delta Health in this case. Delta Health notes that it has responded to a subpoena issued by "Plaintiffs" in February 2026 and is producing the previously produced materials concurrently with the filing of this motion. To that limited extent, Request 8 is not contested.

### *1. The Definitions Are Fundamentally Defective.*

Attachment A purports to supply eight definitions to govern the Document Requests. Several of those definitions are themselves deficient in ways that render the Document Requests that depend on them incapable of compliance, or even comprehension.

Definition 5 provides that "'OON' means out of network." This is not a definition—it is an explanation of an abbreviation. The term "out-of-network" is itself a term of art in the healthcare industry with no single, settled meaning (although usually applying to a health care provider or facility). The phrase appears across federal and state statutes, regulations, insurance contracts, and industry usage with varying and sometimes inconsistent meanings—and virtually all authoritative sources hyphenate it differently than UnitedHealth does here. For example, Under the Affordable Care Act, an "out-of-network provider" is defined by reference to the absence of a direct or indirect contractual arrangement between the provider and the plan—a purely contract-based test. Under a different but equally common understanding, the term describes something functional rather than contractual: a provider with whom the plan has no negotiated rate, regardless of whether any formal contract exists or has been sought. These two definitions are not the same — a provider could satisfy one and not the other — and UnitedHealth's subpoena does nothing to indicate which it intends. By using "OON" as though its meaning were self-evident and then defining it only by reference to an equally ambiguous phrase, UnitedHealth has defined nothing. Every Document Request that uses the term "OON"—which is to say, every request in this Subpoena—is therefore built on a definitional foundation that provides no meaningful guidance.

Definition 7 defines "Reimbursement Rate" as "the rates (or the allowed amounts) approved or allowed by any Health Plan Entity for Healthcare Goods or Services." This definition employs two capitalized terms, "Health Plan Entity" and "Healthcare Goods or Services," that are

treated as defined terms but are nowhere defined in Attachment A. The use of capitalization signals that these terms have an assigned meaning, and the absence renders them meaningless. A definition that relies on undefined defined terms is no definition at all. Because "Reimbursement Rate" is used throughout the Document Requests, this deficiency cascades through the entire Subpoena.

### 2. Each Document Request Is Independently Deficient.

The Document Requests suffer from their own layers of ambiguity, in addition to the foundational problems in the Definitions.

Request 1 seeks all documents and communications concerning any changes Delta Health made to "the adjudication of OON claims, Reimbursement Rates, OON pricing, provider payments, allowed amounts, discounts, or network strategy" over a ten-year period, including the reasons for any such changes. This Document Request is unlimited in scope: it is not limited to any particular line of business, product, client relationship, geographic market, or subject matter. It would encompass every operational decision Delta Health made touching on any OON-adjacent topic for more than a decade. Further, the phrase "network strategy" is undefined, is not term-of-art, and has no ascertainable meaning in this context. Delta Health cannot determine what documents UnitedHealth expects will reflect "network strategy," nor can it identify any limiting principle that would allow it to exclude documents UnitedHealth would not consider responsive.

Request 2 seeks documents sufficient to show Delta Health's clients' "configurations, benchmarks, preferences, overrides, or elections" related to OON Reimbursement Rates, including "communications, change logs, and documents reflecting approval workflows." The term "configurations" is undefined and in the context of the request refers to nothing. Configuration is a technical term whose meaning varies entirely depending on the system or context to which it refers. Likewise, "approval workflows" is undefined and is not term-of-art. Delta Health cannot

determine what type of workflow UnitedHealth has in mind, which systems or processes are implicated, or how to identify a document that "reflects" one. This request is so vague that Delta Health cannot meaningfully assess what it is being asked to produce.

Request 3 seeks documents sufficient to show how "OON cost containment tools and/or selection of OON Reimbursement Rates" affected Delta Health's clients' "total cost of coverage." The phrase "OON cost containment tools" is undefined and has no ascertainable meaning. It is unclear whether UnitedHealth means a specific category of software, a repricing methodology, a contractual arrangement, or something else entirely. More fundamentally, this Document Request assumes that it was Delta Health's function to calculate or track how such tools affected its clients' total cost of coverage—an assumption with no factual basis.

Request 4 seeks all benchmarking reports, surveys, or analyses related to "reimbursement rates for OON Healthcare Goods or Services." As noted above, "Healthcare Goods or Services" is a capitalized term that Attachment A treats as defined but never actually defines it. Delta Health cannot determine the scope of this term or assess which of its documents fall within it.

Request 5 seeks all reports, presentations, analyses, or surveys assessing "key factors" Delta Health's clients or potential clients "consider when designing or selecting health plan characteristics" and the "priority" those clients place on each factor. This request is written entirely from the perspective of Delta Health's clients and prospective clients, not Delta Health. Delta Health is not its clients. Delta Health cannot produce documents reflecting what its clients considered, prioritized, or weighed in their internal decision-making, because those are not Delta Health's documents to produce. To the extent UnitedHealth is asking Delta Health to speculate about or reconstruct client thinking, that is not a permissible subject of a document subpoena. Additionally, the phrase "health plan characteristics" is undefined and has no ascertainable

meaning, making it impossible to identify which documents, if any, are responsive. Request 5 illustrates in stark terms the fundamental confusion that pervades this entire subpoena.

Request 6 seeks all reports, presentations, analyses, or communications with Delta Health's clients regarding "potential or actual client dissatisfaction, loss of clients, member abrasion, market share impacts, or competitive disadvantages" related to OON Reimbursement Rates, "OON Repricing Services," provider network status, or "provider network breadth." This request is riddled with undefined and undefinable terms. "Potential or actual client dissatisfaction" is entirely subjective—Delta Health cannot identify which of its communications UnitedHealth would characterize as reflecting "potential" dissatisfaction, a term with no objective threshold. "Member abrasion" is an industry colloquialism with no standard definition; UnitedHealth has not defined it, and Delta Health cannot be expected to guess at its meaning. "OON Repricing Services" is capitalized—signaling a defined term—but is not defined anywhere in Attachment A. And "provider network breadth" is a phrase of indeterminate meaning that could encompass virtually any document touching on provider relationships. Delta Health cannot identify a principled basis for determining which documents are responsive to this request.

Request 7 seeks "all materials requested in any subpoena issued to" Delta Health in this case. If Delta Health has objected to or declined to produce certain materials in response to a prior subpoena, those objections and that withholding were presumably grounded in valid legal bases. UnitedHealth cannot circumvent those objections simply by issuing a new subpoena that incorporates the prior demands by reference. This Document Request adds nothing to the Subpoena and is an improper attempt to relitigate prior production disputes.

8

**B. The Subpoena Subjects Delta Health, a Non-Party, to Undue Burden.**

Independent of the particularity deficiencies addressed above, the Subpoena imposes an undue burden on Delta Health that is vastly disproportionate to any legitimate discovery need.

### 1. Delta Health Is a Non-Party Entitled to Heightened Protection.

As a non-party, Delta Health is entitled to heightened protection from overbroad discovery demands. Courts have consistently recognized that the interests of non-parties are entitled to substantial weight in the Rule 45 analysis, and that subpoenas directed at non-parties should be held to a higher standard of relevance and proportionality than discovery directed at the parties themselves. *See Little v. JB Pritzker for Governor*, No. 18C6954, 2020 U.S. Dist. LEXIS 70668, *4-5 (N.D. Ill. Apr. 22, 2020). Compelling Delta Health to undertake an extensive, costly document review and production on the basis of requests whose scope and purpose UnitedHealth has not adequately explained imposes precisely the type of burden that Rule 45 is designed to prevent.

### 2. The Volume and Scope of the Requests Is Excessive and Disproportionate.

Even setting aside the definitional deficiencies, the requests as written sweep in virtually every document Delta Health has generated touching on any "OON"-adjacent topic over more than a decade, across all lines of business, all clients, all geographies, and all subject matters. The breadth is compounded by the Subpoena's own definitions, which define "document" and relational terms like "relate" in the broadest possible terms, capturing any tangential connection to the topics addressed.

Compliance with even one of these requests in the form demanded would require Delta Health to undertake a comprehensive ESI collection, processing, and review effort across multiple business units, custodians, systems, and storage media—at substantial cost and disruption to Delta

Health's ongoing operations. Additionally, it would require the hiring of an outside vendor to collect the documentation and hundreds of hours of attorney review. The financial burden on Delta Health would be enormous.

### 3. The Compliance Deadline Is Unreasonably Short.

The subpoena demands production by April 20, 2026—approximately fourteen days after service on April 6, 2026. This timeframe is plainly unreasonable given the volume and complexity of the materials sought. Even if Delta Health immediately commenced collection efforts, fourteen days would be wholly insufficient to identify responsive custodians, collect and process potentially millions of pages of documents, conduct privilege review, prepare a privilege log, and produce materials in the format required by Case Management Order No. 11 (which imposes detailed ESI production requirements including TIFF imaging, load files, metadata fields, Bates stamping, and confidentiality designations). This deadline alone provides mandatory grounds to quash under Fed. R. Civ. P. 45(d)(3)(A)(i).

### C. The Subpoena Seeks Confidential, Proprietary, and Trade Secret Information.

Many of the categories of documents sought by the subpoena, including client configuration data, benchmark analyses, repricing strategies, client satisfaction assessments, and competitive positioning materials across its entire business, constitute proprietary and confidential commercial information and trade secrets belonging to Delta Health. Fed. R. Civ. P. 45(d)(3)(B)(i) authorizes a court to quash or modify a subpoena requiring disclosure of a trade secret or other confidential research, development, or commercial information. This information is maintained in strict confidence and its disclosure, even subject to a protective order, creates meaningful risk of competitive harm. Delta Health is a third-party administrator operating in a highly competitive

10

market, and exposure of this information could cause substantial and potentially irreparable business harm.

**D. Should the Court Decline to Quash Outright, It Should Order UnitedHealth to Articulate the Specific Information Sought and Its Relevance Before Any Compliance Obligation Attaches.**

In the event the Court declines to quash the Subpoena outright, Delta Health respectfully requests that the Court enter an order requiring the following before any compliance obligation attaches:

(a) Order UnitedHealth to meet and confer with Delta Health and, prior to the meeting, provide a written statement identifying, with specificity, the particular information it seeks from Delta Health, the relevance of that information to the claims and defenses in this litigation, and why that information cannot be obtained from the parties to this litigation or other less burdensome sources;

(b) Require that any revised subpoena issued following such conferral comply with the particularity requirement of Fed. R. Civ. P. 34 and the proportionality requirements of Fed. R. Civ. P. 26(b)(1), including by providing actual definitions for all terms used therein;

(c) Extend the compliance deadline to at least sixty (60) days following resolution of this motion and completion of the meet-and-confer process; and

(d) Require UnitedHealth to bear all reasonable costs of Delta Health's compliance, including attorney fees, vendor costs, and administrative expenses, pursuant to Fed. R. Civ. P. 45(d)(2)(B)(ii).

## IV. CONCLUSION

For the foregoing reasons, Wm. Michael Stemler Inc. d/b/a Delta Health Systems respectfully requests that this Court grant its Motion to Quash the Subpoena issued by

UnitedHealth Group Incorporated on April 6, 2026. Alternatively, enter an order as outlined in Section IV(D) above.

Respectfully submitted,


/s/ Christine M. Cooper
Christine M. Cooper (OH #0079160)
Koehler Fitzgerald LLC
1111 Superior Avenue East
Suite 2500
Cleveland, OH 44114
(Tel.)   (216) 539.9370
(Fax)   (216) 916.4360

Email: ccooper@koehler.law

*Attorney for Wm. Michael Stemler Inc. d/b/a
Delta Health Health Systems*

12

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing document was served via electronic mail this 19th day of April, 2026 upon:

Scott Fisher
Neal, Gerber & Eisenberg
225 West Randolph Street
Suite 2800
Chicago, IL 60606
sfisher@nge.com


/s/ Christine M. Cooper
Christine M. Cooper

**Exhibit 1**

 **NEAL GERBER EISENBERG**

April 6, 2026

Scott J. Fisher
Attorney at Law

Tel 312.269.8035
Fax 312.750.6520
sfisher@nge.com

Delta Health Systems
3244 Brookside Rd
Stockton, CA 95219

**RECEIVED**

APR
MAR 0 8 2026

**DELTA HEALTH SYSTEMS**

Re:     *In re MultiPlan Health Insurance Provider Litigation,*
        No. 1:24-cv-06795, MDL No. 3121 (N.D. Ill.)

Dear Delta Health Systems:

Enclosed please find a subpoena for the production of documents that is being served upon Delta Health Systems ("You") by UnitedHealth Group Incorporated ("United"), in the above-captioned multidistrict litigation. This subpoena is being served upon You because You are likely to have documents and information relevant to Plaintiffs' allegations and/or Defendants' defenses in the above-captioned litigation.

A HIPAA-Qualified Protective Order has been entered by the Court to govern confidential materials in this case. No. 1:24-cv-06795, MDL No. 3121 (N.D. Ill. Jan. 5, 2025), ECF No. 242. A copy of this protective order, along with the Court's Order Regarding Production of Electronically Stored Information and Paper Documents, ECF No. 241, are enclosed.

Please Bates-stamp each document You produce with a production number and any applicable confidentiality designation before producing it. In lieu of producing at the location specified in the subpoena, we encourage You to send the requested documents to any of the below locations:

If electronically, by FTP to the following recipients:

fstachulski@nge.com; sfisher@nge.com

If physically, to the following address:

HaystackID
Ref: TJDG_0019336
200 W. Jackson Blvd., Suite 250
Chicago, IL 60606

 **NEAL GERBER EISENBERG**

April 6, 2026
Page 2

These requests for production are made without prejudice to any additional discovery requests that United or any other Defendant may serve You in this or other litigation.

Sincerely,

/s/ *Scott J. Fisher*

Scott Fisher
of NEAL, GERBER & EISENBERG LLP

Enclosure

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Illinois

In re MultiPlan Health Insurance Provider Litigation )
)
_____ )
*Plaintiff* )
v. ) Civil Action No. 1:24-cv-06795
)
THIS DOCUMENT RELATES TO ALL ACTIONS )
)
_____ )
*Defendant* )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Delta Health Systems - 3244 Brookside Rd, Stockton, CA 95219

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: First Legal Records<br>1939 Harrison Street Suite 818<br>Oakland, CA 94612 | Date and Time:<br><br>April 20, 2026 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/01/2026

*CLERK OF COURT*

OR

/s/ Scott J. Fisher
_____     _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendant UnitedHealth Group Incorporated
_____ , who issues or requests this subpoena, are:

Scott Fisher, Neal, Gerber & Eisenberg, 225 West Randolph Street, Suite 2800, Chicago, IL 60606  sfisher@nge.com 312-269-8035

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:24-cv-06795

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                        .

❒ I served the subpoena by delivering a copy to the named person as follows:

_____   on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

### (c) Place of Compliance.

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (g) Contempt.

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

## DEFINITIONS

1. "Communication" means the transmittal of information, including but not limited to any conversation, meeting, discussion, letter, memorandum, email message, website posting, note, or other transmittal of information, and includes any document which refers to, reflects, transcribes, memorializes, or records any such Communication.

2. "Document" is coextensive with the meanings of the terms "document" and "electronically stored information" ("ESI") in Rule 34 of the Federal Rules of Civil Procedure, and case law interpreting Rule 34.

3. "Electronically Stored Information" or "ESI" means all Documents that are stored in any electronic medium from which information can be obtained.

4. "Including" or "includes" means including without limitation.

5. "OON" means out of network.

6. "You" and "Your" means Delta Health Systems and its officers, directors, employees, partners, corporate parents, subsidiaries, or affiliates.

7. "Reimbursement Rate" means the rates (or the allowed amounts) approved or allowed by any Health Plan Entity for Healthcare Goods or Services.

8. The terms "Relate," "Refer," "Reflect," "Concern," and "Pertain" mean discussing, evidencing, mentioning, memorializing, describing, constituting, containing, analyzing, studying, reporting on, commenting on, recommending, concerning, reflecting, summarizing, referring to, pertaining to, supporting, refuting, and/or purporting to evidence, mention, memorialize, describe, constitute, contain, concern, reflect, summarize, refer to, support, refute, and/or in any way be relevant, in whole or in part.

US-DOCS\169186054.3

9.      Solely for purposes of these requests, the term "Relevant Time Period" refers to the time period January 1, 2015 to present.

## INSTRUCTIONS

1.      This Subpoena and any documents you produce pursuant to this Subpoena will be subject to the Protective Order entered by the federal court presiding over this Litigation, a copy of which is attached to this Subpoena.

2.      If, in responding to these Requests, You claim that any Request, Definition or Instruction is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language You claim is ambiguous and the interpretation of the language that You have used to respond to the Request.

3.      If any Request cannot be responded to completely, respond to it to the extent possible, specify the portion(s) that cannot be responded to, and explain why any such portion(s) cannot be responded to.

4.      If You object to any Request made herein as unduly broad, identify the categories of Documents within the scope of the Request that you believe are properly discoverable, produce all such Documents, and state, with particularity, your reason for asserting that the remainder of the Request seeks Documents that are beyond the scope of permissible discovery.

5.      If, in responding to these Requests, You object to any part of a Request, each part of said Request shall be treated separately. If an objection is made to one subpart, the remaining subpart(s) shall be responded to. If an objection is made on the basis that the Request or subpart thereof calls for information which is beyond the scope of discovery, the Request or subpart thereof shall be responded to, to the extent that it is not objectionable.

6. These Requests require You to produce responsive Documents that are within your possession, custody, or control, including Documents in the possession of Your agents or affiliates, including counsel.

7. In responding to these Requests, You are to produce the responsive Documents requested herein in the form in which they are or were maintained and used in the usual course of business, pursuant to Federal Rule of Civil Procedure 34(b)(2)(E).

8. Documents attached to each other shall not be separated.

9. For the purpose of reading, interpreting, or construing the scope of the Requests, the terms should be given their most expansive and inclusive interpretation.

10. Each Request shall be construed according to its own terms in accordance with these Definitions and Instructions. Although there may be some overlap, no Request should be understood to limit any other Request.

11. The Definitions provided herein shall apply to the terms defined regardless of capitalization.

12. All Documents produced must bear Bates labels.

13. Electronically Stored Information ("ESI") must be produced in conformance with the Court's order on Electronically Stored Information, which we have attached. If You cannot meet these requirements, or it would be burdensome to do so, then Defendants can meet and confer on format.

14. If Documents are withheld (in whole or in part) under any claim of privilege or other protection from discovery, including attorney-client privilege and/or work product doctrine, You are required to log privilege and identify each such Document and state the specific basis for the claim of privilege for each Document withheld, as well as providing the following information:

US-DOCS\169186054.3

(1) the date appearing on the Document, or, if no date appears thereon, the date or approximate date on which the Document was prepared; (2) a description of the general nature of the Document (e.g., whether it is a letter, memorandum, e-mail, etc.); (3) the author of the Document; and (4) the identity of each person to whom the Document was sent (including copy recipients and blind copy recipients).

15.     These Requests are continuing in nature. If further information, evidence, or documentation comes into your possession, custody, or control, or is brought to the attention of you, your attorney, or your agents at any time subsequent to the service of any responses or production of any Documents, prompt and complete supplementation of the responses to these Requests and the corresponding production is required pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure.

16.     The present tense includes the past and future tenses. The singular includes the plural and the plural includes the singular. The terms "any," "all, " "each, " "every," "and," "or," and "and/or" as used herein shall be construed either disjunctively or conjunctively, as necessary by context, to bring within the scope of these Requests all information and Documents that might otherwise be interpreted to be beyond their scope by any other construction.

17.     Unless otherwise stated in a specific request, these Requests seek responsive information and Documents authored, generated, disseminated, drafted, produced, reproduced, received, obtained, or otherwise created, distributed, or possessed, concerning, or in effect during the period January 1, 2015 to the present.

US-DOCS\169186054.3

## DOCUMENTS REQUIRED TO BE PRODUCED

1. Documents and Communications concerning any changes You made to the adjudication of OON claims, Reimbursement Rates, OON pricing, provider payments, allowed amounts, discounts, or network strategy, including the reasons for such changes.

2. Documents sufficient to show Your clients' configurations, benchmarks, preferences, overrides, or elections related to OON Reimbursement Rates, including communications, change logs, and documents reflecting approval workflows.

3. Documents sufficient to show how OON cost containment tools and/or selection of OON Reimbursement Rates affected Your clients' total cost of coverage, including comparisons of different cost containment tools' effects on total cost of coverage.

4. All Documents regarding benchmarking reports, surveys, or analyses related to reimbursement rates for OON Healthcare Goods or Services.

5. All reports, presentations, analyses, or surveys assessing key factors Your clients or potential clients consider when designing or selecting health plan characteristics and the priority Your clients or potential clients place on each factor.

6. All reports, presentations, analyses, or communications with Your clients regarding potential or actual client dissatisfaction, loss of clients, member abrasion, market share impacts, or competitive disadvantages related to OON Reimbursement Rates, use of OON Repricing Services, provider network status, or provider network breadth.

7. All materials requested in any subpoena issued to You in the above captioned case.

8. All materials produced in response to any subpoena issued to You in the above captioned case.

US-DOCS\169186054.3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**CASE MANAGEMENT ORDER NO. 11 -
ORDER REGARDING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

This Order Regarding Production of Electronically Stored Information and Paper

Documents ("ESI Protocol Order") is entered into pursuant to the parties' joint letter brief (ECF

210) and the Court's ruling regarding same (ECF 238).

This ESI Protocol Order shall govern the Parties and the Non-Parties in the above-

captioned case whether they currently are involved or become so in the future, and any related

actions that may later be consolidated with this multi-district litigation (collectively, the

"Litigation").

Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable

information. Pursuant to the terms of this ESI Protocol, information regarding search processes

and electronically stored information ("ESI") practices may be disclosed, but compliance with

this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of

particular ESI as irrelevant, undiscoverable, inadmissible, unduly burdensome or not reasonably

accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party.

For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to

require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

## I.   GENERAL PROVISIONS

**A.**   **Applicability:** This ESI Protocol Order will govern the review and production of ESI and paper documents.

**B.**   **Federal Rules:** Except as may be set forth herein, this ESI Protocol does not alter or affect the applicability of the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Illinois (the "Local Rules" or, when referencing a particular rule, a "Local Rule").

**C.**   **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

**D.**   **ESI Liaisons:**

1.   **Designation:** Class Plaintiffs, the Direct Action Plaintiffs Executive Committee ("DAP Plaintiffs"), and each Defendant agrees to designate ESI Liaisons within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2.   **Duties of ESI Liaison:** Each ESI Liaison will be prepared to promptly participate in meet and confer processes in a good faith effort to resolve any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions. The Parties will rely

2

on the liaisons, as needed, to confer about ESI and to try to resolve technical disputes without Court intervention.

**E.    Definitions:**

1.    Class Plaintiffs, DAP Plaintiffs, and Defendants are referred to as the "Parties" solely for the purposes of this ESI Protocol Order.

2.    "Plaintiffs" as used herein shall mean the individual plaintiffs named in the operative complaints filed by Class and DAP Plaintiffs, and such Plaintiffs' counsel.

3.    "Defendants" as used herein shall mean the Defendants named in the operative complaints filed by Class and DAP Plaintiffs, and such Defendants' counsel.

4.    "Non-Parties" as used herein shall mean other individuals or entities who may produce electronically stored information and paper documents in this Litigation, who will be subject to the terms of this ESI Protocol Order to the same extent as the Parties.

**F.    Confidential Information and Preservation:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential under any order entered by the Court in the Litigation or confidentiality stipulation entered into by the Parties.

**II.    GENERAL PRODUCTION FORMAT PROTOCOLS**

**A.**    The Parties agree to produce documents in the formats described below. A producing or requesting party may seek to use a different format for a targeted set

3

of documents if the agreed format is not reasonably technically feasible to produce or review, in which case the parties shall promptly meet and confer with respect to such request and shall submit the issue for resolution by the Court only if they are unable to resolve the dispute through the meet and confer process. To the extent practicable, any alternative formats proposed should not materially degrade the searchability and useability of ESI or other materials.

B. **TIFFs:** Except for structured data and specified file types addressed in "Production of Native Items" below, production images will be provided as black and white (except as provided below), single-page Group IV TIFFs of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Each image shall be branded according to the Bates number and any confidentiality designation. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, (1) to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file, and (2) if such imaging is not reasonably practicable, be produced in native format. Documents that are difficult to render in TIFF may be produced in their native format with a placeholder TIFF image stating the Bates number of the file and the wording "Document Produced Natively" (along with any appropriate confidentiality designation), unless such documents contain redactions, in which case the documents will be produced in

4

TIFF format. Documents that are difficult to render in TIFF that require redaction may be produced with redactions applied in the native file, so long as the redactions are applied using an appropriate native redaction tool, such as "Blackout" or "BlackBar." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party or Parties, which may include native format or a combination of native and TIFF formats.

C. **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named with the Bates number of the first page of the corresponding production item. Text files shall contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item to the extent technically feasible.

1. OCR: A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents if it chooses. Where OCR is used, the Parties will take all reasonable steps to generate accurate OCR. The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or in the event that a producing Party does not choose to use OCR at all, the producing Party will either (a) make the paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34, or (b) identify in the load file that the file is not OCR.

5

2. ESI: Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

**D.** **Production of Native Items:** The Parties agree that ESI shall generally be produced as TIFFs with an accompanying load file, which will contain the ESI data points listed in Appendix 1 hereto. The exceptions to this rule shall be: (a) documents for which the metadata or other information readily identifiable for the producing party indicates the document contains hidden content, embedded comments, or tracked changes (e.g., a Microsoft Word document with "bubble" comments and/or different color tracked changes), (b) spreadsheet-application files (e.g., Microsoft Excel), (c) presentations (e.g., Microsoft PowerPoint), (d) source code, (e) multimedia audio/visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and (f) any other native file types that cannot be rendered as readable image files. These categories of ESI shall be produced in native format.

1. In addition to producing the above file types in native format, the producing Party shall produce a single-page, Bates-numbered TIFF slip sheet indicating that a native item was produced with the wording "Document Produced Natively," along with extracted text where available and with the applicable data points listed in Appendix 1. The corresponding load file shall include NativeFileLink information for each native file that is produced.

2. The Parties agree to meet and confer prior to producing native file types other than a-e above, in which case the producing Party shall disclose the

6

file type to and meet and confer with the requesting Party on a reasonably useable production format.

3.      The Parties agree to meet and confer to the extent that there is potentially relevant structured data that resides in a fixed field within a record or file, or stored in a structured format, such as databases/data application files (such as Oracle, SQL, Access, SAP) or data sets, to determine the best reasonable form of production of usable data.

4.      Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

E.      **Requests for Other Native Files:** Other than as specifically set forth above or in this paragraph, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain by identifying by Bates number(s) the specific document(s) at issue and explaining the reason for its request that the document(s) be produced in its native format, as to which request the parties shall meet and confer in good faith and shall submit to the Court for resolution only if the parties have been unable to resolve any dispute through the meet and confer process, with the Party seeking production in native format bearing the burden to demonstrate why it needs the native format. Any native files that are produced pursuant to this paragraph should be produced with a link in the

7

NativeFile field, along with all extracted text and applicable metadata fields set forth in Appendix 1..

**F.** **Instant Messages/Text Messages and Mobile Data:** To the extent the Parties' reach agreement concerning the relevance, proportionality, collection, and production of instant messages/text messages (e.g., Microsoft Teams, Slack) and/or data contained on mobile devices such as smartphones and tablet computers, or such materials are compelled to be produced in this Litigation, the Parties shall meet and confer prior to such production to determine the best production format for such ESI.

**G.** **Bates Numbering:**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production, (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production, (3) contain no special characters or embedded spaces, except hyphens or underscores, (4) be sequential within a given document, and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3. To the greatest extent practicable, the producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the

8

underlying images. If Bates number branding obliterates or obscures any part of an underlying image, upon request of the requesting Party, the producing Party shall re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

**H.**    **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The family of documents should also be identified using a family ID number or other unique identifying number, such as the beginning Bates number of the parent document.

**I.**    **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon file), as well as a metadata (.dat) file with the metadata fields identified in Appendix 1 on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Load files shall not vary in format or structure within a production, or from one production to another.

**J.**    **Color:** Any document produced as a native file shall be produced as it was regularly

9

utilized and, to the extent applicable, in color. Other documents or ESI containing color generally need not be produced in color in the first instance. However, if the original color is necessary to understand the meaning or content of the document, a producing Party may opt to produce the documents in color in the first instance or the requesting party may request in writing that the producing Party produce that document or ESI item (identified by Bates number) in its original color. If the producing party does not promptly agree to produce the requested document or item in color, the parties shall promptly meet and confer in good faith before submitting any dispute to the Court. The production of any documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF or native format apply to any productions of documents and/or ESI in color made in such an alternative format.

K.   **Confidentiality Designations:** If a particular document or ESI item qualifies for confidential treatment pursuant to the terms of any protective order entered by the Court in the Litigation or confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that, where applicable, does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol Order shall not waive any protection or confidential treatment. If confidentiality designation branding obliterates or obscures any part of an underlying image, upon request of the receiving Party, the producing Party shall re-produce the

10

affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

**L.** **Production Media & Protocol:** A producing Party may produce document images, load files and metadata on USB drives, external hard drives, or other mutually agreeable media ("Production Media"). Production sets may also be transferred via secure FTP or encrypted web-hosted transfer. Any requesting Party that is reasonably unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media, as described below.

1. All Production Media will be encrypted, and the producing Party will provide a decryption key to the requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three external hard drives, the producing Party may label each hard drive in the following manner: "[PARTY] Production March 1, 2025-001," "[PARTY] Production March 1, 2025-002," and "[PARTY] Production March 1, 2025-003." Where the Production Media used is an external hard drive (with standard PC compatible interface) or USB drive, such

11

production media must be sent no slower than overnight delivery via FedEx, UPS, USPS, or private courier.

2. Each item of Production Media (or, in the case of productions made via FTP link or other secure online transfer, each production transmittal letter) shall include (1) the producing Party's name; (2) text referencing that it was produced in this Litigation, (3) the production date, and (4) the Bates number range of the materials contained on such production media item.

3. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. Each Party shall designate the appropriate physical address for productions that are produced on Production Media. However produced, a producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

**M.** **Materials Collected for or Produced in Other Litigation or Investigations:** To the extent that a producing Party intends to satisfy a request for production by producing materials collected or produced in a case consolidated into this Litigation (e.g., *Adventist Health System Sunbelt Healthcare Corporation v. MultiPlan, Inc.*, 1:23-cv-07031 (S.D.N.Y.)) or in a different litigation or investigation, at the time the producing Party discloses its search methodology it shall disclose in writing (a) the fact that the producing Party intends to use such materials to satisfy certain request(s) for production, (b) the case caption or information necessary to identify the entity conducting the investigation, and (c)

12

information sufficient to show how materials were collected and culled for actual or potential production in the prior matter (e.g., requests for production, custodial and non-custodial sources searched, search terms or methods used, and time periods applied to collection or culling), as well as any logs or discovery responses describing materials withheld or redacted on any basis, including privilege. A requesting Party retains the right to challenge the sufficiency of any production not subject to the ESI, search, and privilege methodology agreed to under this Protocol. If a requesting party raises such a challenge, the requesting and producing Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they are not able to reach resolution through the meet and confer process.

**III.**     <u>**PAPER DOCUMENT PRODUCTION PROTOCOL**</u>

     **A.**     **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) AttachRange, (f) Page Count, (g) Custodian, (h) Confidentiality, (i) Redacted, and (j) Text Path. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

     **B.**     **Unitization of Paper Documents:** The Parties shall use reasonable best efforts to ensure that paper documents, including those in files and binders, are logically unitized for production. When scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records to the greatest extent possible. The Parties will utilize

best efforts to ensure that paper documents are produced in consecutive Bates stamp order.

## IV.    ESI METADATA FORMAT AND PROCESSING ISSUES

**A.    Excluded Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types and forms of data that may be excluded are described in IV.F, and additional file types may be added to the list of excluded files by further written agreement of the Parties.

**B.    Metadata Fields and Processing:**

1.    **Date and Time/Time Zone:** No Party shall modify the date or time as contained in any original ESI, except, to the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., CST), and the time zone used shall be disclosed to the requesting Party.

2.    **Auto Date/Time Stamps or Other Automatically Updating Fields:** To the extent reasonably practicable, ESI items shall be processed so to preserve the date/time shown in the document as it was last saved, rather than the date of collection or processing.

3.    If a producing Party believes the above provision(s) are not reasonably practicable for some portion of its production, it shall inform the requesting party/parties and promptly meet and confer in a good faith effort to resolve any dispute. The parties may submit any such dispute to

14

the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

4. Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) all Custodians of the document, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeFile fields, which should be populated, when applicable, regardless of whether the fields can be populated pursuant to an automated process.

## C. Redaction:

1. The Parties agree that, for any ESI items for which this ESI Protocol otherwise permits production in TIFF format, redactions may be made in TIFF format, with each redaction clearly indicated. Any metadata fields reasonably available and which can be disclosed without disclosing privileged information shall be provided. The producing party may, alternatively, produce the item as a redacted native file in accordance with the following paragraph.

2. If the items redacted and partially withheld from production would otherwise be required to be produced as native files under this ESI

15

Protocol, then they should be produced as native files with redactions to the extent possible using a native redaction tool, such as "Blackout" or "BlackBar,"

3.   If an item otherwise required to be produced as a native file under this ESI Protocol must be withheld, then, to the extent reasonably practicable, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that may not print when opened as last saved by the custodian or end user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images due to redaction are formatted so as to be legible. For example, column widths should be formatted so that the values in the column will display rather than "##########."

4.   If audio/visual or other media files require "redaction," the parties shall promptly meet and confer concerning the format of production and privilege assertions. If the parties are unable to reach agreement through meet and confer discussions, they may seek resolution from the Court.

**D.   Email Collection and Processing:**

1.   **Email Threading:** The Parties may use email threading to avoid review and production of duplicative information contained within an existing

16

email thread in another document being reviewed and produced, but under no circumstances will email thread suppression (a) eliminate the ability of a requesting Party to identify every custodian who had a copy of a produced document or sent or received an email, or (b) remove from a production any unique branches and/or attachments contained within an email thread. Parties may request unthreaded copies of particular documents in advance of depositions, which will not be denied absent good cause.

2. **Email Domains:** A producing Party may exclude from their ESI search process uniquely identifiable categories of documents (i.e., emails from domains typically associated with junk email, such as non-industry retailer advertising, non-industry newsletters, or alerts from non-industry sources) provided that it discloses domain names excluded under this section prior to conducting review and production and promptly meets and confers in good faith with respect to any proposal to exclude one or more domain names. The Parties may submit any dispute over the exclusion of a domain name to the Court for resolution only if the Parties have been unable to reach resolution through the meet and confer process.

E. **Rolling Productions:** The Parties agree to produce documents in phases on a rolling basis consistent with the Court's orders relating to scheduling.

F. **De-duplication:** A producing Party may de-duplicate files in a method that does not result in the responsive documents with unique content being withheld from production. Removal of near-duplicate documents shall not occur without first

17

conferring in good faith with the requesting party and reaching an agreement as to scope and methodology. Unless otherwise agreed by the Parties, the following requirements apply to all document de-duplication by a producing Party:

1.     All BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated CustodianOther information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

2.     Duplicate electronic documents shall be identified by MD5 or SHA-1 hash values for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

3.     Duplicate messaging files shall be identified by MD5 or SHA-1 hash values for the email family, which includes the parent and email attachments.

4.     If a producing party intends to use a de-duplication that does not comply with the above provisions, it shall so inform the requesting party(ies) of the fact and nature of the intended alternative method, after which the parties shall promptly meet and confer in a good faith effort to resolve any disputes about such proposal. The parties may submit any dispute on this issue to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

G.     **Zero-byte Files, Duplicative, and Otherwise Extraneous Data:** The Parties may filter out the following files and data:

1.     Zero-byte files—stand-alone files identified as zero-bytes in size—that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production. If a producing Party proposes to apply filters to identify zero-byte files and limit documents and ESI that is collected for processing and review, the producing Party shall advise the requesting Party and the Parties shall meet and confer regarding such filters prior to review and production;

2.     Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes,

19

disks, SAN, and other forms of media, provided, however, that nothing in this provision shall preclude a requesting party from seeking (through meet and confer and application to the Court) to require a producing party to review and produce materials from such backup data files to the extent the requesting party contends such review and production is appropriate and proportional to the case given the anticipated contents of the backup data files and the content of other files the producing party is collecting and reviewing;

3. On-line access data such as temporary internet files, history files, cache files, and cookies;

4. operating system files and executable files, except for any source code used as part of a pricing methodology for out-of-network goods and services; and

5. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.).

**H.** **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date,"

20

"Auto File Name," or "Auto File Path" formula used or similar words that describe the "auto" feature, to the extent reasonably practicable.

**I.** **Hidden Text:** To the extent reasonably practicable, ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. The Parties shall use reasonable efforts to ensure that, at the time of production, all hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments are visible on the face of the TIFF image(s), unless redacted in accordance with this ESI Protocol.

**J.** **Embedded Objects, Spreadsheets and Hyperlinked Files:** Objects embedded in documents (e.g. in Word or Excel documents) shall, when reasonably practical and able to be extracted on a systematic basis utilizing the company's existing software capabilities, be extracted and produced as separate documents and treated like attachments to the document. The Parties agree that other nonrelevant embedded objects including, but not limited to, logos, icons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (i.e. such embedded objects will be produced within the document itself, rather than as separate attachments). Hyperlinked files (other than hyperlinks to external websites not within the possession, custody, or control of the producing party) shall be produced as child documents to the parent containing the hyperlink, when reasonably practical utilizing the company's or vendor's existing software capabilities. The Parties will meet and confer in a good faith effort to identify a reasonable and proportional process of addressing

21

hyperlink files stored in a collaborative work environment (e.g., MS SharePoint or Google Drive) that are linked to any email or other document.

**K.**     **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**L.**     **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted, the producing Party will take reasonable steps to disable the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will, to the extent identified, be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. The parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible. Where the producing Party no longer possesses the software required to read or decipher files otherwise subject to production, it is under no obligation to obtain such software and provide it to the requesting Party, provided, however, that, if the requesting Party attempts to obtain such software, the producing Party shall cooperate with the requesting Party to the extent

22

reasonably necessary to identify the software, its licensor, and any technical information or permissions needed for the requesting Party to read or decipher the files.

**M.** **Corrupted or Technical Issue Documents:** If a document being produced (i.e., it is otherwise in a responsive family) cannot be processed (e.g., it is corrupt or protected by an unavailable password), a single-page, Bates-stamped image slip sheet stating "File Could Not Be Processed" or similar wording will be provided and a meta-data field for "Technical Issue" shall be populated..

## V. <u>PARAMETERS FOR COLLECTING DOCUMENTS</u>

**A.** **Document Custodians and Custodial Data Sources:** Within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, the producing Party must disclose in writing an initial list of its own proposed document custodians ("Document Custodians") and custodial sources (e.g., personal computers, laptop computers, email, calendars, mobile devices, shared network storage or folders, structured data systems, etc.). If a requesting Party contends that additional Custodians or custodial sources should be added, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the requesting Party may seek relief from the Court.

**B.** **Non-Custodial Sources:** The Parties agree to meet and confer, within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, regarding any "Non-Custodial" document sources that the producing Party believes, based on its investigation to date, may reasonably be

23

likely to contain unique responsive information. For the avoidance of doubt, "Non-Custodial" document sources include departmental files, shared drives, multi-user messaging platforms (or "chat" platforms), such as Slack or Microsoft Teams; cloud storage accounts; online repositories, social media accounts of the Party, intranets, and databases. The Parties shall meet and the parties shall meet and confer regarding how the producing Party's objections and proposed limitations to the scope of discovery would change the Non-Custodial document sources from which the producing Party will collect and produce Documents. If a requesting Party contends that additional Non-Custodial document source(s) should be added, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the requesting Party may seek relief from the Court.

C.  As a general matter, the means of and parameters for culling ESI set forth in this section apply to Non-Custodial ESI as well as to Custodial ESI. If a producing Party seeks to utilize other culling technologies for Non-Custodial ESI, it must so inform the requesting Party(ies) before implementing such technology, after which the Parties shall promptly meet and confer in a good faith effort to resolve any disputes on such issue. The Parties may seek resolution of any such dispute by the Court only if they have been unable to reach resolution through the meet and confer process.

D.  **Mobile Device ESI:** For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any responsive and non-duplicative ESI items in the possession, custody,

24

or control of the Party are located on any mobile devices, including cellphones and tablets, used by any of those Custodians. If non-duplicative responsive ESI items are located on such a mobile device by any of those Custodians, then the producing Party shall collect those ESI items in a manner that preserves the content and metadata associated with those items. To the extent reasonably possible, materials collected pursuant to this subparagraph shall be produced as image files with related searchable text, metadata and bibliographic information. If necessary to determine the identities of email, text message, app-based message, or IM senders or recipients, the producing Party will provide a table of names or contact lists from custodians. Nothing in this subparagraph shall be construed as a determination on the appropriateness of mobile device discovery or any objections to mobile device discovery.

**E.     Search Methods:**

    **1.     Search Methodology Disclosure:**

        a.     The Parties agree to meet and confer, within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, regarding (i) potential use and identification of search terms, tools, or techniques, (ii) use of technology assisted review or artificial intelligence ("TAR/AI") in whole or part to cull any corpus of materials, and (iii) all parameters for scoping the review and production efforts (e.g., application of date ranges, custodians, non-custodial sources, etc.).

25

2. **Technology Assisted Review Negotiation Process:**

a. The Parties will meet and confer regarding the use of TAR/AI to cull any corpus of materials, alone or in combination with some other methodology. By no later than 45 days after service of responses and objections to the initial sets of requests for production, the Parties will: (a) submit a TAR/AI Protocol to the Court or (b) submit one letter briefs of no more than 5 pages total for Plaintiffs and one letter brief of no more than 5 pages total for Defendants concerning any disputes as to the TAR/AI Protocol.

3. **Search Term Negotiation Process:**

a. Before a producing Party uses search terms, the producing Party shall describe in writing to the requesting Party or Parties the search protocol the producing Party intends to use and shall include: (a) the search methodology criteria to be used to identify the universe of documents to which search terms will be applied (e.g., custodians, non-custodial sources, and date ranges), (b) proposed search terms to be applied, subject to revision based on, for example, meet and confer of the Parties, and (c) any use of TAR/AI. At the time the producing Party discloses its proposed search terms, it shall disclose in writing the requests for production (if any) for which the producing Party will not use search terms to identify materials responsive to that request.

26

c.    At the time the producing Party discloses its proposed search terms, it shall also disclose in writing the document review software and version number that is being used to run those search terms (e.g., Relativity 10.4), the stop/noise words for that search software, and the search language syntax used by that software.

d.    At the time that the producing Party discloses its search terms, the producing Party shall explain in writing how it will identify and review materials that do not have a sufficient amount of searchable text or are otherwise not suited to identification using text-based searches, including, for example, video files, audio files, and structured data.

e.    Within 30 days of receiving the producing Party's proposed search terms, the requesting Parties will provide any proposed revisions and additions to the producing Party's search terms. For purposes of this paragraph, the DAP EC and Class Counsel shall cooperate to provide a single set of proposed revisions and additions to a Defendant producing Party and the Defendants shall cooperate to provide a single set of proposed revisions and additions to a Plaintiff producing Party, with the understanding that there may be a set of global search terms and sets of individualized search terms.

f.    Within 30 days of receipt of the receiving Parties' proposed revisions and additions to the producing Party's search terms, the producing Party shall provide: (a) any objections to the receiving

27

Parties' proposed revisions including information sufficient to support its objections to the proposed revisions and additions, and (b) a hit report for each objected to revision or addition to the search terms showing the number of hits, hits with families, unique hits for that search relative to the total number of hits, and unique hits for all search terms under discussion between the producing Party and the liaison for the receiving Parties.

g. After exchanging proposed search terms, proposed revisions/additions, and any objections to proposed revisions/objections, the Parties shall promptly meet and confer in good faith to try to resolve any disputes as to the search terms to be applied to the producing Party's materials. Any unresolved differences shall promptly be brought to the Court's attention.

h. The Parties agree that the requesting Parties may propose additional search terms to be used by a producing Party at any time prior to the close of fact discovery. For purposes of this paragraph, the DAP EC and Class Counsel shall cooperate to provide a single set of proposed revisions and additions to a Defendant producing Party and the Defendants shall cooperate to provide a single set of proposed revisions and additions to a Plaintiff producing Party. Any unresolved differences concerning later proposed search terms shall promptly be brought to the Court's attention.

4. **Otherwise Known Responsive Information:** A producing Party's use of a search methodology does not relieve it of the duty to produce information that it becomes aware of that is responsive to the agreed-upon or Court-ordered scope of a request for production, even if that information was not captured in the producing Party's document collection, review, or production.

5. **Reservation of Rights:** By agreeing to the use of a particular search methodology, the requesting Party does not waive objections that the search methodology was not implemented in a proper, effective, or good faith manner.

VI. **CLAIMS OF PRIVILEGE AND REDACTIONS**

A. **Production of Privilege Logs:** If a Party withholds a document (fully or in redacted form) otherwise discoverable by claiming that it is privileged, that Party shall produce a privilege log consistent with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure and any applicable local rule or procedure, except as otherwise described below. The privilege log must be detailed enough to enable other Parties to assess the applicability of the privilege asserted and should include for each withheld document (1) the sender, recipient, and each individual copied or blind copied on the document, including names and email addresses, (2) the date the document was created and last modified, (3) the file name or email subject, as applicable, (4) the document extension (e.g., .msg, .pptx, etc.), (5) the Bates number or Control Number of the document, and (6) the reason that the privilege or protection is being asserted for the particular document. Unless the

29

person's email address is logged, the privilege log should identify all persons that are authors, senders, and/or recipients of any documents being withheld (fully or in redacted form) under any claim of privilege or protection, and denote (through a marking such as an asterisk or on a separate list) which individuals identified on the log are attorneys and what Party each such attorney represents. The privilege log shall be produced in XLS or XLSX format. To the extent possible, available file metadata may be used to complete the fields in the privilege log.

B.     **Logging of Threads.** Parties shall log all emails in a thread that are under a claim of privilege; provided, however, that a party is not required to log lesser-included (i.e., earlier-in-time) emails in that thread so long as the topmost (i.e., latest-in-time) email is logged, and any un-logged lesser-included email (1) is subject to an independent claim of privilege, (2) involves the same participants as the topmost logged email (meaning that the lesser-contained email does not reflect senders or recipients that are not also reflected on the topmost email in the thread), and (3) concerns the same subject matter as the topmost logged email (such that the description of the topmost logged email is sufficient to demonstrate the privilege applicable to the lesser-included, unlogged email).

1.     **Email Chains:** If there is more than one unique branch of an email thread, each branch will be individually logged if independently responsive and claimed to be privileged or otherwise protected from discovery.

2.     For the avoidance of doubt, if any lesser-included email in a thread (or any attachment thereto) is not independently privileged, the topmost email thread must be redacted rather than withheld.

30

3.      Nothing in this Order precludes a Party from separately logging all lesser-included emails in a thread, or from requesting that the producing Party separately log lesser-included emails in particular threads.

4.      In the event of a dispute over a Party's assertion of privilege over unlogged emails, the parties shall promptly meet and confer in good faith before submitting any dispute to the Court.

C.      **Exclusions from Logging Potentially Privileged Documents:** The following categories of Documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

1.      Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

2.      Communications after the filing of the initial complaint in this Litigation, exclusively between a producing Party and its corporate in-house and/or outside counsel regarding this Litigation.

E.      **Documents Redacted for Privilege:** The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information and redacted documents will be noted as such in the Privilege Log. Redacted documents need not be logged in the first instance, so long as (a) for emails, the names of the sender and all recipients of the email are not redacted,

31

(b) for non-email documents, the redaction is noted on the face of the document and in a redaction metadata field, (c) the producing Party includes a metadata field (PrivRedacted) indicating that the document was redacted on the basis of privilege, so that the receiving Party can readily identify the universe of documents containing privilege redactions, if the basis for the privilege is apparent from the unredacted portion of the document. For the avoidance of doubt, no party shall be permitted to make wholesale redaction to documents, such as email bodies, to avoid the requirements imposed by this Order that privileged materials be adequately logged.

E. **Personally Identifiable Information ("PII") Redactions:** A producing Party may redact personally identifiable information (e.g., patient names or Social Security Numbers related to medical bills, procedures, or claims) provided that it is (a) irrelevant and (b) the producing Party notifies and meets and confers with the requesting Party prior to applying such redactions. If a producing Party wishes to redact highly sensitive, irrelevant information, it shall notify the requesting Party. The producing and requesting Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they are not able to reach resolution through the meet and confer process.

F. **Redaction and Withholding for Relevance Not Permitted:** Except pursuant to the Parties' agreement or, if agreement cannot be reached, through Court resolution, a producing Party may not redact information on the ground that it is irrelevant, nor may a producing Party withhold a member of a document family on such grounds.

## VII.   NON-PARTY DOCUMENT REQUESTS

**A.**    **Non-Party Document Subpoenas:** All non-Party document subpoenas shall be served on all counsel of record in compliance with Federal Rule of Civil Procedure 45. Service via email on a designated service list shall constitute compliance with Federal Rule of Civil Procedure 45.

**B.**    **Non-Party Document Productions:** The recipient of a non-Party document production shall serve a copy of that document production on all counsel of record within seven (7) days of receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

**C.**    **Informing Non-Parties of This Order:** The Parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

## VIII.   MISCELLANEOUS PROVISIONS

**A.**    **Service of Discovery Requests and Disclosures:** All discovery requests and discovery-related disclosures may be served via email on a Party's ESI Liaison with copies to coordinating counsel and leadership counsel for all Plaintiffs and Defendants.

**B.**    **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall promptly meet and confer in good faith to try to resolve such issues. The Parties

33

may submit such issues to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

C.  **Deleted, Destroyed, or Overwritten Materials:** If a producing Party has reason to believe that ESI, paper documents, or other materials that are reasonably likely to contain information responsive to the agreed-upon or court-ordered scope of a receiving Party's requests for production have been destroyed, deleted, or overwritten either intentionally or unintentionally, the producing Party shall disclose all pertinent facts concerning the deleted, destroyed, or overwritten ESI or hard-copy documents, including the type of data at issue, the information it may have contained, the identification of the person responsible for deleting, destroying, or overwriting it, and when that information was deleted, destroyed, or overwritten.

D.  **Limitations.** Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol Order shall be interpreted to require information protected by the attorney-client privilege, work product doctrine, or any other reasonably applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

D.  **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification

34

is appropriate or necessary to facilitate the timely and economical production of documents or ESI, including with respect to any applicable deadlines, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will promptly meet and confer in good faith to address any issues in a reasonable and timely manner prior to seeking Court intervention.

E. **Best Efforts Compliance and Disputes.** The parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol Order. If a producing Party cannot comply in a particular circumstance with this ESI Protocol Order, such party shall promptly inform the requesting Party in writing why compliance with the ESI Protocol Order is not reasonable or feasible. No party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol Order until it has met and conferred with the other party in a good faith effort to resolve or narrow the area of disagreement.

SO ORDERED.

Dated: 1/5/2025

Hon. Matthew F. Kennelly

35

## Appendix 1: ESI Metadata and Coding Fields

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number as stamped on the production image. |
| EndBates | All | Ending Bates number as stamped on the production image. |
| BegAttach | All | First production Bates number of the first document of the family. |
| EndAttach | All | Last production Bates number of the last document of the family. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_ Conversation_ Index", that permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent. |

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For (Email, Edoc, Calendar, Contact, Cellphone, or All) | Field Description |
|---|---|---|
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| TimeCreated | Edoc | Time the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocType | Email, Edoc | Single choice field that indicates the file is an email, edoc, attachment or hard copy. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "Yes" indicator that the document is redacted. Otherwise, leave blank. |
| PrivRedacted | All | "Yes" indicator that the document is redacted on the basis of privilege. Otherwise, leave blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates any designation under a protective order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties. |

37

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**CASE MANAGEMENT ORDER NO. 12 -
HIPAA-QUALIFIED PROTECTIVE ORDER**

This HIPAA-Qualified Protective Order is entered into pursuant to the parties' joint letter brief (ECF 209) and the Court's ruling regarding same (ECF 238).

1.    **APPLICABILITY OF THE PROTECTIVE ORDER.** This HIPAA-Qualified Protective Order (hereinafter "Order") shall govern the handling of all materials produced in the course of discovery, including documents, data, depositions, deposition exhibits, and written discovery (this information hereinafter referred to as "Discovery Material"). This Order shall apply to any named Party to this action, any third party that receives a subpoena for testimony or documents, and any person or entity that obtains access to Confidential Material subject to this Order. All references to "Party," "Receiving Party," "Producing Party" or "Designating Party" throughout this Order are intended to include non-parties. This Order is subject to the Local Rules of this District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2.    **OTHER DEFINITIONS**

    a.    **Action**: the above-captioned action (this Action) includes all cases that are transferred, reassigned, or direct-filed into MDL No. 3121.

1

b.  **Confidential Material:** Any information designated as "Confidential" or "Highly Confidential – Outside Counsel Only" pursuant to this Order.

c.  **Party**: any party to this Action.

d.  **Non-Party**: any individual, corporation, association, or other natural person or entity that is not a Party to this Action.

e.  **Receiving Party**: a Party or Non-Party that receives Discovery Material from a Producing Party.

f.  **Producing Party**: a Party or Non-Party that produces Discovery Material in this Action.

g.  **Designating Party**: a Party or Non-Party that designates information or items that it or another Party or Non-Party produces in disclosures or in responses to discovery or provides in the form of deposition testimony as Confidential Material. The Designating Party bears the burden of establishing good cause for the protection of all such information or items.

h.  **Challenging Party**: a Party that elects to initiate a challenge to a Designating Party's confidentiality designation.

3.  **DESIGNATION OF DISCOVERY MATERIAL AS "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY".** Any Producing Party may designate Discovery Material as "Confidential" or "Highly Confidential – Outside Counsel Only" under the terms of this Order if the Producing Party in good faith reasonably believes that such Discovery Material meets the criteria set forth below. For the avoidance of doubt, a Party may designate information that it produces, as well as information produced by other Parties or Non-Parties that contain that Party's confidential information, as "Confidential" or "Highly

2

Confidential – Outside Counsel Only."

     a.     **Discovery Material Which May be Designated "Confidential."** Any party or non-party may designate documents as CONFIDENTIAL if they contain:

     (i)     Information required to be kept confidential by law or by agreement with a third party;

     (ii)     Trade Secrets, research, design, technical/manufacturing, financial/planning, and/or marketing/commercial information: Documents and/or information which consists of trade secrets or other proprietary business information that are not generally known or readily ascertainable by the public (including competitors), are competitively sensitive, and public availability of these documents could affect business operations and/or market share;

     (iii)     Records relating to individuals' medical treatment/Protected Health Information/personally identifiable information. Nothing herein shall be construed to suggest that the names of witnesses, potential witnesses, deponents, subpoenaed parties or persons with potentially relevant information can be designated "CONFIDENTIAL"; however, personally identifiable information, including Social Security numbers, home addresses, and home phone numbers may be so designated.

Confidential Material shall not include any information that is or was at any time in the public domain as a result of publication not in violation of this

3

Order.

b.    A Producing Party may designate as "Highly Confidential – Outside Counsel Only" any information described in subparagraph (a) that it reasonably and in good faith believes contains highly sensitive current trade secrets or other current highly sensitive confidential information, and that disclosure to another party or third party, even if limited to the universe of individuals authorized to receive information marked "Confidential" under this Order, would result in specific demonstrable competitive harm to, or cause material harm to the legitimate business interests of, the Producing Party.

4.    **PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL MATERIAL.**

a.    Information designated as "Confidential" may be disclosed only to the following "Qualified Persons":

(i)    **The Court and its personnel**, including attorneys, employees, judges, magistrates, secretaries, special masters, stenographic reporters, staff, transcribers and all other personnel necessary to assist the Court in its function, the jury, and any appellate court or other court (and their respective personnel) before which the Parties appear in this Action;

(ii)    **Mediators or other third party neutrals** engaged or consulted in settlement of all or part of this Action, and staff assisting them with such efforts only after such persons or entities have completed the certification contained in Attachment A;

4

(iii) **Court reporters and recorders**, including stenographers, and videographers retained to record testimony taken in this Action;

(iv) **Outside counsel for the Parties**, and such counsel's employees who have responsibility for the preparation and trial of the Action;

(v) **In-house counsel for the Parties**, and such in-house counsel's employees who have responsibility for the preparation and trial of the Action;

(vi) **Parties and employees of a Party** to this Order but only to the extent that counsel determines in good faith that the specifically named individual Party's or employee's assistance or testimony is necessary to the conduct of the litigation, and only after such persons or entities have completed the certification contained in Attachment A;

(vii) **Litigation support services**, including outside copying services, court reporters, videographers, stenographers or companies engaged in the business of supporting computerized or electronic litigation discovery or trial preparation, retained by a Party or its counsel, and only after such persons or entities have completed the certification contained in Attachment A;

(viii) **Any individual expert, consultant, or expert consulting firm** retained by counsel of record in connection with this Action to the extent necessary for the individual expert, consultant, investigator, or expert consulting firm to prepare a written opinion, to prepare to

5

testify, or to assist counsel of record in the prosecution or defense of this Action, provided, however, that: (i) the disclosure shall be made only to an individual expert, or to members, partners, employees or agents of an expert consulting firm as the expert consulting firm shall designate as the persons who will undertake the engagement on behalf of the expert consulting firm (the "Designated Expert Personnel"); (ii) the individual expert or Designated Expert Personnel use the information solely in connection with this Action; (iii) the individual and/or a representative of each expert consulting firm sign the written acknowledgment and agreement to be bound attached as Exhibit A on behalf of any Designated Expert Personnel associated with that firm; and (iv) absent notice and consent of the opposing Party(ies) or on application to and order of the Court, the individual expert is not a current employee, consultant, independent contractor, or any other type of affiliate of the Defendants;

(ix) **Authors or recipients,** any person who (A) created, authored, sent, received or reviewed such Confidential Material; or (B) is or was a custodian of the Confidential Material;

(x) **Witnesses at depositions** or who are noticed for depositions to whom disclosure is in good faith reasonably necessary to conduct the Action, with the limitations that witnesses shall not retain a copy of documents containing Confidential Material. Witnesses noticed for depositions who are shown Confidential Material in advance of

6

their deposition must agree to be bound by the provisions of the Order by signing a copy of Exhibit A prior to being shown Confidential Material. Witnesses at depositions must either sign a copy of Exhibit A or, if they refuse, receive an admonition that he or she will be subject to sanction, including contempt, for violating the terms of the Protective Order. Regardless of whether any deponent signs the attached Exhibit A, this Order will apply to any deponent who is shown or examined about Confidential Discovery Material, and the deponent cannot take any exhibits with them or reveal any information the learned from the confidential materials shown to them;

(xi) **Mock jurors or focus group participants** who have agreed to be bound by the provisions of the Order by signing a copy of Exhibit A;

(xii) **Auditors and insurers of the Parties** only after such persons or entities have completed the certification contained in Attachment A; and

(xiii) **Any other person by consent** as may be designated by written agreement by the Producing Party or by order of this Court.

b. Information designated as "Highly Confidential – Outside Counsel Only" may be disclosed only to the categories of "Qualified Persons" in paragraph 4(a)(i)-(iv) and (vii)-(xiii).

5. **MARKING OF CONFIDENTIAL MATERIAL.** The designation of a document

7

as "Confidential" or "Highly Confidential – Outside Counsel Only" shall occur only if the designating party makes a good faith determination, individually as to each designated document, that the document contains Confidential Material and otherwise meets the criteria for such designation as defined in this Order.

      a.      **Marking of Documents.** A party or non-party may designate a document as Confidential or Highly Confidential – Outside Counsel Only for protection under this Order by placing or affixing those words on the document and on all copies in a manner that will not interfere with the legibility of the document. To the extent a document is produced in a form in which affixing the words "Confidential" or "Highly Confidential – Outside Counsel Only" on the document is not practicable, including documents produced in native format, the producing party or third-party may designate the document as such by including the confidentiality designation in the file name and on a slip sheet placeholder. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Material. The markings "Confidential" or "Highly Confidential – Outside Counsel Only" shall be applied prior to or at the time that the documents are produced or disclosed. Applying these markings to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.

      b.      **Depositions.** Deposition testimony is protected by this Order if designated as "Confidential" or "Highly Confidential – Outside Counsel Only" by

denominating by page and line those portions of the deposition which are to be considered "Confidential" or "Highly Confidential – Outside Counsel Only" within 30 days of receiving the final transcript and exhibits and so informing all parties in writing of the designation. Until the 30-day period has passed, the deposition transcript in its entirety must be treated as if it were designated "Highly Confidential – Outside Counsel Only" under the terms of this Order. This 30-day period may be extended by agreement of the Parties.

c.    **Non-Written Materials.** Any non-text Confidential Material (e.g., videotape, audio tape, etc.) may be designated as such by labeling the outside of such material as "Confidential" or "Highly Confidential – Outside Attorneys Only."

d.    In the event a Receiving Party generates any "hard copy" transcription or printout from any such designated non-written materials, the person who generates such "hard copy" transcription or printout shall take reasonable steps to maintain the confidentiality of such materials and properly identify and stamp each page of such material as "Confidential" or "Highly Confidential – Outside Attorneys Only" consistent with the original designation by the Producing Party.

6.    **DISCLOSURE OF CONFIDENTIAL MATERIAL.** A failure to designate Discovery Material as Confidential Material does not, standing alone, waive the right to so designate the Discovery Material. The Producing Party must provide prompt written notice upon discovery of the disclosure, and contemporaneous or subsequent production of replacement

9

documents with the appropriate designation, with the effect that such Confidential Material will be subject to the protections of this Order. The Receiving Party shall exercise good faith efforts to ensure that copies made of Confidential Material produced to it, and copies made by others who obtained such Confidential Material directly or indirectly from the Receiving Party, include the appropriate confidentiality legend, to the same extent as if that the Confidential Material has been marked with the appropriate confidentiality legend by the Producing Party. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Material.

7. **PRODUCTION OF PRIVILEGED MATERIAL.**

a. Pursuant to Federal Rule of Civil Procedure 26, and Federal Rule of Evidence 502(d) and (e), the parties agree that the production or disclosure, whether inadvertent or otherwise, of any information in connection with the pending litigation that is covered by the attorney-client privilege or work-product protection (including common interest and joint defense), or any other privilege, shall not constitute a waiver of such privilege or protection in this litigation or in any other federal or state proceeding. Instead, the Producing Party shall be entitled to assert such privilege or protection, request the return of any produced material or information on the grounds of privilege or work product protection by identifying it and stating the basis for withholding such material or information from production, and the information and its subject matter shall be treated as if there has been no such disclosure.

b. Nothing in this paragraph is intended to or shall serve to limit a Party's

10

right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, subject to subsection (c) below.

c.   **Assertion of a Clawback:**  In the event that a Producing Party or non-party discovers that it produced documents that it believes to be protected, it shall promptly provide written notice of the claim of privilege or protection to the Receiving Party, or to both Plaintiffs and Defendants if the Producing Party is a non-party, sufficiently identifying the protected documents (a "Clawback Notice").  The Clawback Notice must be as specific as possible in identifying the basis for the privilege claimed, and must include at least the information required by Fed. R. Civ. P. 26(b)(5)(A)(ii).  Any document that is the subject of a Clawback Notice shall be included on a privilege log as required by the procedures agreed to in Case Management Order # regarding Production of Electronically Stored Information and Paper Documents.  The Parties shall make reasonable efforts to provide any Clawback Notice no later than 7 days before the deposition of a witness who received, drafted, or sent a protected documents.  If a document is clawed back during a deposition, the Parties will meet and confer regarding whether the deposition needs to be continued after the resolution of any privilege challenge concerning the clawed-back document.  The parties also agree to meet and confer in advance of trial to ensure that any disputes concerning clawbacks are resolved sufficiently in advance of trial.

11

d.      **Reproduction:** As soon as practicable or within a reasonable time after providing the Clawback Notice, the Producing Party or non-party shall provide: (i) if only a portion of the document contains privileged or protected material, a new copy of the document utilizing the same Bates number(s) as the original, that has been redacted to protect the privileged or protected materials; or (ii) if the entire document is privileged or protected, a slip sheet identifying the same Bates number(s) as the original, noting that the document has been withheld.

e.      **Clawback Process:** Upon notification from the Producing Party that information is, in good faith, covered by the attorney-client privilege or work product protection, the Receiving Party will, within 14 days of notification: (a) return the information and all copies of the information in its possession; (b) delete any electronic versions from any data source or any database it maintains; (c) retrieve all electronic and paper copies provided to any non-parties, including experts; and (d) sequester any notes that reveal the substance of the protected information. The Receiving Party will promptly confirm in writing to the Producing Party that these steps will be taken. In the event that the Receiving Party disagrees that the information requested back is privileged, the Receiving Party may retain a single copy of the disputed information for the sole purpose of resolving the dispute. The Receiving Party and the Producing Party shall attempt in good faith to resolve the dispute informally. If the Receiving Party and the Producing Party cannot resolve the dispute informally, either Party may

seek appropriate relief from the Court. The party disputing the assertion of privilege may not file or submit the disputed document for *in camera* review absent agreement of the Producing Party or express authorization from the Court. The Producing Party must preserve the information pending resolution of the privilege challenge and, in the event the Court concludes that the information is not protected from disclosure, promptly provide the Receiving Party with a replacement production.

8.  **PROTECTED HEALTH INFORMATION**

(a)  Definitions

(i)  "HIPAA" is defined herein as the Health Insurance Portability and Accountability Act of 1996, codified primarily at Sections 18, 26, and 42 of the United States Code,

(ii)  "Privacy Standards" is defined herein as the Standards for Privacy of Individually Identifiable Health Information, codified at 45 C.F.R. §§ 160 and 164.

(iii)  For the purposes of this Order, "Protected Health Information" shall have the same scope and definition as set forth in 45 C.F.R. §§ 160.103 and 164.501.

(iv)  For purposes of this Order, "Covered Entity" or "Covered Entities" shall have the same scope and definition as set forth in 45 C.F.R. § 160.103.

(v)  "Business Associate" or "Business Associates" shall have the same scope and definition as set forth in 45 C.F.R. § 160.103.

13

(b)    This Court authorizes all Covered Entities and Business Associates (whether Parties or Non-Parties) who are served with a subpoena or discovery request in this Action to disclose Protected Health Information in response to such request or subpoena. This Order is intended to authorize such disclosures pursuant to 45 C.F.R. § 164.512(e) of the Privacy Regulations issued pursuant to HIPAA.

(c)    Pursuant to 45 C.F.R. § 164.512(e)(1)(v), the Parties agree and the Court orders that this Order is a Qualified Protective Order and all Parties and their attorneys are:

(1)    Prohibited from using or disclosing Protected Health Information for any purpose other than this Action for which the Protected Health Information was requested, including any appeal thereof; and

(2)    Required to return to the Covered Entity/Business Associate or to destroy the Protected Health Information (including all copies made) at the end of the litigation (*see supra* ¶ 20).

(d)    The Parties and their attorneys of record are hereby authorized to receive, subpoena, and transmit Protected Health Information pertaining to this Action to the extent and subject to the conditions outlined herein.

(e)    All Covered Entities and Business Associates are hereby authorized to disclose Protected Health Information pertaining to the litigation to attorneys representing the Parties in this Action.

(f)    The Parties and their attorneys shall be permitted to use or disclose Protected Health Information for purposes of prosecuting or defending this

14

Action including any appeals. This includes, but is not necessarily limited to, disclosure to their attorneys, experts, consultants, witnesses, the Court, court personnel, court reporters, copy services, trial consultants, and other entities or persons involved in the litigation process (including without limitation, data governance, technology, forensics and discovery vendors). However, the Parties shall not file Protected Health Information with the Court, unless: (a) the Protected Health Information has been redacted to remove any individually identifiable information, or (b) the Court has permitted the Protected Health Information to be filed under seal.

(g)     Prior to disclosing Protected Health Information to persons involved in this Action, counsel shall provide each such person with a copy of this Order and inform each such person that such disclosed Protected Health Information may not be used or disclosed for any purpose other than this Action and must be returned or destroyed at the conclusion of this Action. Counsel shall take all other reasonable steps to ensure that persons receiving such Protected Health Information do not use or disclose such information for any purpose other than this Action.

(h)     Within 60 days after the conclusion of the Action including appeals, the parties, their attorneys, and any person or entity in possession of any Protected Health Information received from counsel shall destroy any and all copies of the Protected Health Information, except that counsel are not required to secure the return or destruction of any Protected Health Information filed under seal with the Court.

(i) This Order does not control or limit the use of Protected Health Information that comes into the possession of the Parties or their attorneys other than through formal discovery requests, subpoenas, depositions, court orders or other lawful process pursuant to this Action.

(j) Nothing in this Order is intended to indicate or suggest that Protected Health Information is in fact relevant to this Action. Further, this Order does not limit any Party's ability to challenge a request for Protected Health Information on the basis of relevance, burden, breadth, applicable law, or any other reasonable objection.

9. **MATERIALS PREPARED BASED UPON CONFIDENTIAL MATERIAL.** Any notes, lists, memoranda, indices, compilations, or other materials prepared or based on an examination of Confidential Material, that quote from or paraphrase Confidential Material with such specificity that the Confidential Material can be identified shall be accorded the same status of confidentiality as the underlying Confidential Material from which they are made, and to the extent those materials are disclosed to other Parties or non-parties, or produced or filed in this matter, shall be designated with the appropriate confidentiality legend, and shall be subject to all of the terms of this Protective Order.

10. **NOTICE TO NON-PARTIES.** Whenever a Party seeks discovery by subpoena or any other means from a non-party to this action, a copy of this Order shall accompany the subpoena or other means to allow the non-party to designate material as Confidential Material and obtain the protections provided in this Order.

11. **GOOD-FAITH BELIEF.** For purposes of this Order, the Designating Party bears the burden of establishing the appropriate designation of Confidential Material. The designation

16

of any Discovery Material as "Confidential" or "Highly Confidential – Outside Counsel Only" pursuant to this Order shall constitute the verification by the Designating Party and its counsel that the material constitutes "Confidential" or "Highly Confidential – Outside Counsel Only" material as defined above.

12. **EXECUTING THE NON-DISCLOSURE AGREEMENT.** Where the Qualified Person is a firm or an individual employed by or otherwise associated with a firm retained by one or more parties for the purposes of acting as an expert witness, consulting expert, litigation support services provider, mediation services provider, or provider of other professional services related to the Action, execution of Exhibit A by a single designated representative of such firm, expressly made on behalf of such firm, shall suffice to comply with this paragraph. Copies of the executed Exhibit A shall be retained by counsel disclosing Confidential Material to such person. Copies of executed Exhibit As shall not be available to any other Party except by agreement or on a court order.

13. **CHALLENGING CONFIDENTIALITY DESIGNATIONS.** The designation of any material or document as Confidential Material is subject to challenge by any Party. The burden to demonstrate that a document has been properly designated as Confidential or Highly Confidential – Outside Counsel Only shall at all times remain on the Party or non-party that has designated the document. The following procedure shall apply to any such challenge.

   a. **Meet and Confer.** A party challenging the designation of Confidential Material must do so in good faith by identifying to the Designating Party or non-party the documents at issue by Bates number, and explaining the basis for its belief that the confidentiality designation was not proper. The Designating Party or non-party shall respond to any request under this

paragraph within 10 days and, if no change in designation is offered, to explain the basis for the designation, provided, however, that, with respect to any documents produced 30 days or less before a deposition at which some of those documents may reasonably be used, the ten day period may be shortened at the request of a Challenging Party to a reasonable period of time not longer than 3 days. The Parties shall meet and confer in good faith to attempt to resolve the dispute without resort to Court intervention.

b.    If the Challenging Party and the Designating Party cannot resolve their dispute through meet and confer discussions, the Challenging Party may move the Court for an order modifying or removing such designation. The Designating Party bears the burden of establishing that the Discovery Material is entitled to protection. Any material so designated shall remain protected, and shall be subject to all restrictions on its disclosure and use set forth in this Order until one of the following occurs: (1) the Designating Party withdraws such designation in writing; or (2) the Court rules that the challenged material should be re-designated. In either event, the Designating Party shall reproduce copies of the re-designated material with the appropriate confidentiality designations within 14 days.

14.    **SUBPOENA FOR CONFIDENTIAL MATERIAL.** If any Party has obtained Confidential Material under the terms of this Order and receives a request to produce such Confidential Material by subpoena or other compulsory process commanding the production of such Confidential Material, such Party shall notify the Designating Party in writing, no later than 7 days after receiving the subpoena or order, and shall include in such notice the date set for the

18

production of such subpoenaed information and a copy of the subpoena or court order. The Designating Party shall respond to the Party receiving the subpoena within 21 calendar days of receiving written notice of any intent to seek a protective order. During this time period, the Party or person receiving the subpoena shall inform the person seeking the protected discovery material that such information is subject to this Order. If the Designating Party informs the Party served with the subpoena that it has filed a motion seeking a protective order from the court where the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "Confidential" or "Highly Confidential – Outside Counsel Only" until (i) a determination by that court is made, or (ii) the Party has obtained the Designating Party's permission. No production or other disclosure of protected information pursuant to the subpoena or other process shall occur until one of the above two actions has occurred. The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party or non-party in this case an opportunity to try to protect its Confidential Material. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material—and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

15.     **USE OF DISCOVERY MATERIAL.** Confidential Material shall be used solely for purposes of prosecuting, defending or attempting to resolve this Action, whether for proceedings in the MDL Court or in any other court following remand or other transfer of any individual case from the MDL Court, including any appeal. For the avoidance of doubt, nothing in this Order shall prevent or restrict a Producing Party from disclosing or using its own Discovery Material for any purpose.

Case 2:24-cv-06795 Document #: 242 Filed: 04/05/25 Page 20 of 28 PageID #:2754

16. **EXCLUSION OF INDIVIDUALS FROM DEPOSITIONS.** Counsel shall have the right to exclude any person who is not authorized by this Order to receive documents or information designated as Confidential Material from any deposition where testimony regarding Confidential Materials or the use of Confidential Material that the person is not authorized to receive is likely to arise.

17. **SECURITY OF CONFIDENTIAL MATERIAL.** Any person in possession of another Party's Confidential Material shall exercise the same care with regard to the storage, custody, or use of Confidential Material as they would apply to their own material of the same or comparable sensitivity. Receiving Parties must take reasonable precautions to protect Confidential Material from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but not limited to:

   a. Confidential Material in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data security, including but not limited to application of access control rights to those persons entitled to access Confidential Material under this Order;

   b. To whatever extent the software tracks user access, an audit trail of use and access to litigation support site(s), to the extent the litigation support software tracks user access, shall be maintained while this Action, including any appeals, is pending;

   c. Any Confidential Material downloaded from the litigation support site(s) in electronic format shall be stored only on device(s) (e.g. laptop, tablet,

Case: 24-cv-06705 Document #: 242 Filed: 04/03/25 Page 21 of 28 PageID #:2755

smartphone, thumb drive, portable hard drive) that are password protected and/or encrypted with access limited to persons entitled to access Confidential Material under this Order. If the user is unable to password protect and/or encrypt the device, then the Confidential Material shall be password protected and/or encrypted at the file level;

d.      Receiving Parties must take reasonable steps to prevent Confidential Material in paper format from being disclosed to persons not entitled to access Confidential Material under this Order;

e.      Summaries of Confidential Material, including any lists, memoranda, indices or compilations prepared or based on an examination of Confidential Material, that quote from or paraphrase Confidential Material in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Confidential Material; and

f.      If the Receiving Party learns at any time that the Confidential Material has been retrieved or viewed by unauthorized parties, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed materials. The parties will then promptly meet and confer to discuss what additional steps, if any, need to be taken including for example investigation of the effects of the breach; actions to remediate the effects of the breach, and further assurances to prevent future breaches. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

g.      For purposes of clarity, nothing in this Order shall prevent a Party from transmitting paper documents containing Confidential Material via U.S. Mail or a delivery service for the purpose of a deposition, deposition preparation, trial/hearing preparation, witness interviews, mediation, or mock jury/jury research exercises provided that the Party takes reasonable steps to maintain the confidentiality of the Confidential Material. Similarly, nothing in this Order shall prevent a Party's outside counsel from carrying a binder or binders of documents containing Confidential Material or information derived from Confidential Material when traveling provided that such outside counsel takes reasonable steps to maintain the confidentiality of the Confidential Material.

18.     **LARGE LANGUAGE MODELS / GENERATIVE AI TOOLS.** Absent notice to and permission from the Producing Party, any Qualified Person authorized to have access to Confidential Material under the terms of this Order shall not use or employ any application, service, or analytical software that will transfer, transmit, send, or allow any external access to that Confidential Material (in whole or in part) unless such application, service, or analytical software is fully containerized (i.e., does not transmit any information to any public system or network for the purpose of analysis, use, or the generation of text outputs in response to queries, has the ability to track all information in the system (including access), and does not otherwise allow access to Confidential Material by persons other than Qualified Persons as authorized by Paragraph 4 above). For the avoidance of doubt, this restriction expressly applies to the use of non-containerized advanced large language models, "generative" AI tools, and other advanced AI systems, including, but not limited to, OpenAI GPT, ChatGPT3/4 et seq., Google

22

Gemini, Meta LLAMA, MidJourney, DALL-E, and Stable Diffusion, but this provision does not limit the use of services leveraging the technology underlying these generative AI tools in a fully containerized environment, including, but not limited to, Harvey, Relativity aiR, DISCO Cecelia, Everlaw AI Assistant, Lexis+ AI, Epiq AIDA, Lighthouse AI, and Westlaw Co-Counsel. For purposes of clarity, "fully containerized," as used in this Order, means an AI tool that does not share the substance of a prompt or documents reviewed for training of Large Language Models or use the substance of a prompt or documents reviewed in any other matter or inquiry other than this Action.

19. **FILING CONFIDENTIAL MATERIAL.** This Order does not, by itself, authorize the filing of any document under seal. Given the complexity of these cases coupled with the scope of the anticipated production(s), the requirements set forth in Local Rule 26.2, along with the Court's Standing Order governing the filing of Confidential Documents, are waived. When a party wishes to file Confidential Material with the Court, the following procedures shall be observed

    a.    The filing Party shall provisionally file the entire filing under seal and cause an unredacted copy of the filling to be served upon all parties (and any relevant non-party or party that has settled if the Confidential Information was produced by a non-party or settled-party) and shall specifically notify the individual party, non-party, or settled-party that the filing contains its Confidential Information (including, to the extent not readily apparent, information sufficient to identify the location of such Confidential Information within the filing).

    b.    Within 10 days of the initial filing, the Producing Party(ies) may file a

23

Case: 1:24-cv-06795 Document #: 242 Filed: 01/05/25 Page 24 of 28 PageID #:2758

motion to seal, including a proposed redacted version of the filing as an exhibit thereto. Opposition(s) to a motion to seal may be filed 5 business days after the filing of the motion to seal. If no motion to seal is filed within 10 days, or if the Court denies the motion(s) to seal, the filing Party shall file an unredacted version of the initial filing. If the motion to seal is granted, the filing Party shall publicly file a redacted version of the initial filing.

c.      The Producing Party may request more than 10 days to file a motion to seal for particularly voluminous filings such as summary judgment or class certification filings or for other good cause

d.      If the filing Party is also the Designating Party, then the motion to seal shall be filed contemporaneously with the filing.

20.      **IMPROPER DISCLOSURE OF CONFIDENTIAL MATERIAL.** Disclosure of Confidential Material other than in accordance with the terms of this Order may subject a Party to such sanctions and remedies as the Court may deem appropriate.

21.      **FINAL TERMINATION.**

a.      **Order Continues in Force**. Unless otherwise agreed or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

b.      Within 60 days after termination of the Action, including, for example, a voluntary dismissal or an exhaustion of any and all appeals, all Confidential Material, including any copies, excerpts and summaries thereof, and provide written confirmation of destruction, shall be returned to the

24

Producing Party or destroyed with certification of destruction provided to the Producing Party to the extent practicable[1] unless: (1) the document has been offered into evidence or filed with the Court, without restriction as to disclosure, unless the document contains Personal Information, in which case the document shall be returned to the Producing Party or destroyed pursuant to this paragraph; or (2) the Confidential Material is included in an e-mail or an attachment to an e-mail or contained in deposition transcripts or drafts or final expert reports, unless the Confidential Material includes Personal Information, in which case the document containing the Confidential Material shall be returned to the producing party or destroyed. Any Confidential Material that is retained pursuant to (1) or (2) shall not be accessed or used for any purpose other than this litigation.

c. **Retention of Work Product and one set of Filed Documents**. Notwithstanding the above requirements to return or destroy documents, counsel may retain (1) attorney work product, including an index that refers or relates to designated Confidential Material, and (2) all documents filed with the Court including those filed under seal. Any retained Confidential Material shall continue to be protected under this Order and shall not be accessed or used for any purpose other than this litigation. Attorneys may use their work product in subsequent litigation, provided they do not

---

[1] If the Receiving Party chooses to destroy documents containing Confidential Material, the Receiving Party shall confirm the fact of destruction. The Receiving Party shall not be required to locate, isolate, and return emails (including attachments to emails) that may include Confidential Material, or Confidential Material contained in deposition transcripts or drafts or final expert reports.

25

disclose or use Confidential Material.

22. **PROTECTIVE ORDER REMAINS IN FORCE.** This Order shall remain in force and effect until modified, superseded, or terminated by consent of the Parties or by order of the Court made upon reasonable written notice. Unless otherwise ordered or agreed upon by the Parties, this Order shall survive the termination of this Action. The Court retains jurisdiction even after termination of this Action to enforce this Order and to make such amendments, modifications, deletions and additions to this Order as the Court may from time to time deem appropriate.

23. **MODIFYING THIS ORDER.** Nothing in this Order shall be construed to prohibit the Parties from seeking to modify any provision of this Order or seeking other relief from the Court. Nor shall anything in this Order or any Party's compliance herewith be construed as a waiver of any Party's rights under applicable law.

24. **NO GREATER PROTECTION OF SPECIFIC DOCUMENTS.** Except on privilege grounds not addressed by this Order, no Party or non-party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the Party or non-party moves for an order providing such special protection.

25. **USE OF CONFIDENTIAL MATERIAL AT TRIAL OR HEARING.** Nothing in this Order shall be construed to affect the use of any document, material, or information at any trial or hearing provided that the parties avoid the unnecessary disclosure of Confidential Material. A Party that intends to present Confidential Material at a hearing or trial shall first bring that issue to the Producing Party's or non-party's attention so that they may meet and confer regarding the same. If the parties are unable to reach agreement regarding the proposed disclosure at a trial or hearing, the party proposing the use may raise the issue with the Court. The Court may thereafter

26

make such orders as are necessary to govern the use of such documents or information at a hearing or trial.

26.     **NO PRIOR JUDICIAL DETERMINATION.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Material by counsel or the parties is admissible as evidence for any purpose in this litigation or any other proceeding, or is entitled to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

27.     **PERSONS BOUND.** This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms or by execution of Attachment A.


**SO ORDERED**

Dated:  1/5/2025

_____

Hon. Matthew F. Kennelly
U.S. District Court for the Northern District of Illinois.


27

**EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I, _____ [print or type full name], of _____ [print or type full address], have read and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of Illinois (the "MDL Court") on [insert date] in the case of In re: Multiplan Health Insurance Provider Litigation (MDL 3121). I, personally, and _____ [company name], on whose behalf I am authorized to execute this acknowledgement [if applicable] agree to comply with and to be bound by all the terms of this Stipulated HIPAA-Qualified Protective Order. In compliance with this Order, I will not disclose in any manner any information or item that is subject to this Stipulated HIPAA-Qualified Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the MDL Court for the purpose of enforcing the terms of this Stipulated HIPAA-Qualified Protective Order, even if such enforcement proceedings occur after termination of this action.

I declare under penalty of perjury that the foregoing is true and correct. Signed this ___ day of _____, 202__, at _____ [insert city and state where sworn and signed].

Signature: _____