**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 |
| | MDL No. 3121 |
| *This Document Relates To:* ALL ACTIONS | Hon. Matthew F. Kennelly |

**OPPOSITION OF CENTENE CORPORATION AND HEALTH NET OF CALIFORNIA, INC. TO CLASS PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**INTRODUCTION**

Seventeen months after filing the operative complaint in November 2024, Class Plaintiffs seek leave to amend the complaint to add two affiliated Defendants—Centene Corporation ("Centene") and its wholly-owned subsidiary Health Net of California, Inc. ("Health Net")—that have had no substantive involvement in any active case in this multi-district litigation ("MDL") since its inception. By belatedly trying to drag Centene and Health Net into this case, Class Plaintiffs seek to force them to "catch up" with a litigation that has been ongoing for nearly a year and a half. Class Plaintiffs do not offer any plausible basis to justify adding Centene and Health Net and instead make the conclusory and categorically false claim that they were misled by Centene's and Health Net's counsel before filing their consolidated complaint. But the real reason for Class Plaintiffs' delay is their strategic choice to exclude Centene and Health Net at the outset of this litigation, coupled with their own lack of diligence. Class Plaintiffs' purportedly "new" allegations about Centene and Health Net are simply repackaged assertions that were in their complaint from the beginning, and their only support for this repackaging consists of documents that they possessed for *eight-and-a-half months* before raising the possibility of amending.

Despite this eleventh-hour amendment request, Class Plaintiffs implausibly maintain that no global extension of the case schedule is required. But if Centene and Health Net were added to the complaint (they should not be), Centene and Health Net would be entitled to a full and fair opportunity to defend themselves. That right is not eliminated simply because Class Plaintiffs are now second-guessing their prior strategic decisions and lacked diligence in prosecuting their case. Adding Centene and Health Net as defendants at this late hour would require substantial extensions of the case schedule to permit them to develop their defense, including preparing

answers to the complaint, responding to expansive discovery requests, and engaging in likely protracted negotiations with Class Plaintiffs—a process that has taken the parties over a year.  A significant extension would upend the litigation schedule just to accommodate Class Plaintiffs' change of heart, seventeen months after filing their consolidated complaint.  Moreover, Class Plaintiffs' amendments are partly futile due to a binding arbitration agreement between a named Plaintiff and Health Net—a fact that Class Plaintiffs ignore even though Centene and Health Net provided notice of the agreement and their intent to compel arbitration before Class Plaintiffs filed the pending motion.  Because Class Plaintiffs' motion is belated, prejudicial, and (in part) futile, this Court should deny their request to add Centene and Health Net as Defendants.

## **BACKGROUND**

### A.      **Discovery Has Proceeded Without Centene's and Health Net's Participation**

The JPML created this MDL on August 1, 2024 (ECF No. 1).  On November 18, 2024, Class Plaintiffs filed their Consolidated Class Action Complaint ("Consolidated Complaint" or "Consol. Compl.").  (ECF No. 172).  The Consolidated Complaint did not name Centene or Health Net as Defendants; it only named Centene as a non-defendant "co-conspirator[]."  Consol. Compl. ¶¶ 22–38, 41–42.  Currently, four of the 89 total cases brought by Direct Action Plaintiffs ("DAPs") name Centene and/or Health Net as a Defendant.

Since the Consolidated Complaint was filed, this case has advanced deep into discovery.  The named Defendants moved to dismiss (ECF No. 282); filed answers (*e.g.*, ECF No. 458); served (and have been served with) initial disclosures (*see* ECF No. 161); served (and have been served with) extensive requests for production ("RFPs") and responses and objections (*e.g.*, ECF No. 457-1); served (and have been served with) interrogatories (*see* ECF No. 652); produced reams of documents, including over one million pages by MultiPlan alone, and structured data, expected to total *over 20 billion lines* by the current interim substantial completion deadline of

June 1, 2026 (Joint Status Report ("JSR") at 4–5 (May 8, 2026), ECF No. 709); served privilege logs (*see* ECF No. 662); filed (and responded to) motions to compel (*e.g.*, ECF No. 648); and participated in numerous meet-and-confers with Class Plaintiffs and conferences with the Special Master and this Court (*e.g.*, ECF No. 628). The named Defendants and Class Plaintiffs (the "Parties") negotiated search terms and custodians over approximately nine months.[1] Centene and Health Net are parties to neither the class action nor any DAP bellwether case and thus have not participated in *any* of these proceedings.

Moreover, Defendants and DAPs have proposed a modest extension of the interim substantial completion deadlines to July 30, 2026—over 13 months after the third set of RFPs were served. (JSR at 7 (May 8, 2026)). Fact discovery is scheduled to close eight-and-a-half months from now on January 29, 2027, at which point the Parties will turn to expert discovery for both merits and class certification, with Plaintiffs' expert reports due on March 2, 2027. (*Id.* at 8; Case Management Order ("CMO") No. 26 at 1 (Feb. 23, 2026), ECF No. 652).

As the Court knows, the Parties and this Court have expended significant resources navigating these proceedings. Indeed, during bellwether selection more than *seven months ago* in September 2025, this Court cautioned DAPs that, if a DAP case included new defendants who "just got added" and whose "lawyers [we]re just getting up to speed," the Court would need to "account" for those facts "in deciding whether [the case was] an appropriate bellwether." Status Conf. Tr. 69:4–21 (Sept. 22, 2025). The DAPs thus agreed to a case management order stating: "Any DAP that, as [of] September 30, 2025, has claims pending against any Defendant that was not a Defendant in one or more cases pending in the MDL as of *July 30, 2025* shall not be

---

[1] (*See* CMO No. 17 at 1 (July 30, 2025), ECF No. 450 (third set of RFPs served on June 24, 2025); JSR at 2 (Apr. 2, 2026), ECF No. 683 (noting resolution of ongoing discovery disputes regarding custodians and search terms)).

eligible for selection as a Discovery Bellwether DAP." (CMO No. 20, ¶ 7 (Oct. 23, 2025), ECF

No. 567) (emphasis added). In other words, DAPs could not even qualify as bellwether

candidates if they named Defendants after July 30, 2025, nine-and-a-half months ago. Some

DAPs opted to dismiss their claims against newly added Defendants to qualify as bellwethers.

*See, e.g.*, Notice of Voluntary Dismissal Under F.R.C.P. 41(a)(1)(A)(i), *Ascension Health v.*

*MultiPlan, Inc. et al.*, No. 1:25-cv-09421 (N.D. Ill. Sept. 24, 2025), ECF No. 23.

> **B.      Class Plaintiffs Reverse Course and Attempt to Name Centene and Health Net as Defendants Despite the Existence of a Binding Arbitration Clause**

On April 10, 2026, Class Plaintiffs informed Centene and Health Net that they had "come

across information" regarding "Centene and its subsidiaries[']" use of MultiPlan. Adams James

Decl. ¶ 6. Class Plaintiffs asserted that this information contradicted Centene's "previous[]

represent[ations]" that it ████████████████████████████████████████████. *Id.*

Class Plaintiffs subsequently stated that this information involved MultiPlan Data iSight

Performance Reports ("Performance Reports") purporting to ██████████████████████

███████████████████████████████████ *Id.* ¶ 8. Eventually, Class Plaintiffs

disclosed that they were considering adding Centene as a Defendant, and, on April 19, 2026,

Class Plaintiffs finally identified the Bates numbers of the relevant reports. *Id.* ¶ 12. In

particular, Class Plaintiffs identified 42 Performance Reports for Health Net, 41 of which

MultiPlan had produced to Class Plaintiffs on July 24, 2025—*eight-and-a-half months* before

Class Plaintiffs contacted Centene and Health Net about a possible amendment and two months

before the Court's discussion with DAPs about new Defendants. *Id.* After obtaining and

reviewing the reports, Centene and Health Net informed Class Plaintiffs in writing on April 22,

2026, that the Performance Reports did not reflect Health Net's actual usage of Data iSight and

specifically validated that counsel for Centene and Health Net's representations to Class Counsel

in 2024 regarding Health Net's usage of Data iSight remained accurate.  *Id.* ¶ 14.  ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Nonetheless, Class Plaintiffs reiterated their intent to seek Centene's inclusion as a Defendant—despite conceding during an April 29, 2026 meet-and-confer that Centene and Health Net could not meet the June 1, 2026 and June 4, 2026 deadlines for interim substantial completion of structured data and document productions, respectively.  *Id.* ¶ 16.

On May 1, 2026, Centene and Health Net provided notice that one of the putative class representatives, Curtis F. Robinson, MD, Inc. ("Robinson"), had entered into a still-operative agreement with Health Net in 2011 that contained a mandatory arbitration provision.  *Id.* ¶ 17, Ex. A.  Centene and Health Net informed Class Plaintiffs that they intended to move to compel arbitration of Robinson's claims against them.  *Id.*  Class Plaintiffs subsequently filed their Motion for Leave to File First Amended Consolidated Class Action Complaint ("Motion" or "Mot.") without acknowledging the motion practice that would follow if Centene and Health Net were added as Defendants or the implications for the case schedule.

## **ARGUMENT**

The Court should deny the Motion's request to add Centene and Health Net as Defendants.  Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  While "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), "[t]he terms of the rule[] . . . do not mandate that leave be granted in every case."  *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (citation omitted).  Reasons for denying leave include "undue

5

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see MAOMSO Recovery II v. State Farm Mutual Auto. Ins. Co.*, 935 F.3d 573, 582 (7th Cir. 2019). Denial is appropriate here because Class Plaintiffs' request to add Centene and Health Net is substantially prejudicial, comes too late, and is partially futile.

### A. Class Plaintiffs' Request Would Prejudice Centene and Health Net and Would Undermine this Court's Schedule

"Undue prejudice to the opposing party 'is the most important factor in determining whether to allow an amendment to a complaint.'" *Parker v. EMC Mortgage Corp.*, 2014 WL 7205474, at *4 (N.D. Ill. Dec. 18, 2014) (citation omitted). "Undue prejudice occurs where the amendment . . . 'adds new parties'" and "may also arise . . . where the proposed amendment does not afford defendant adequate time for discovery." *Hinton v. Advocate Health & Hosp. Corp.*, 2023 WL 2726015, at *3 (N.D. Ill. Mar. 30, 2023) (citations omitted). "[A] party seeking an amendment carries the burden of proof in showing that no prejudice will result to the non-moving party." *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994) (motion to amend answer).

Class Plaintiffs do not come close to satisfying this burden.

First, Class Plaintiffs' amendment would "add[] new parties," *Hinton*, 2023 WL 2726015, at *3 (citation omitted)—neither Centene nor Health Net is a named Defendant in the Consolidated Complaint.[2] While Class Plaintiffs gloss over this by claiming vaguely that Centene and Health Net are not "stranger[s] to this litigation" (Mot. 1, 5), neither Centene nor Health Net has been substantively involved *at all* in the class case or any DAP bellwether case

---

[2] Class Plaintiffs also seek to add three other Defendants, as addressed in the separately filed Defendants' Opposition to Plaintiffs' Motion for Leave to File First Amended Consolidated Class Action Complaint.

since the MDL's inception. Adding them as Defendants at this advanced stage would be highly prejudicial. *See A. Cherney Disposal Co. v. Chi. & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 386 (N.D. Ill. 1975) (denying leave to add new claims and defendants because they, along with current defendants, would suffer "undue prejudice," including "undue delay" from "further discovery").

Moreover, absent a major extension to the case schedule to permit Centene and Health Net a fair opportunity to defend themselves, the current schedule, including the modest extensions contemplated by the JSR (*see* JSR at 7 (May 8, 2026)), would "not afford [them] adequate time for discovery." *Hinton*, 2023 WL 2726015, at *3 (citation omitted). Notably, it has taken the Parties over a year to negotiate custodians and search terms, serve responses and objections to RFPs, collect responsive information, prepare privilege logs, and resolve disputes that arose during these efforts—and current Defendants and DAPs have requested two more months, until July 30, 2026, to substantially complete interim productions before pivoting to depositions. *See supra* pp. 2–3. In addition to their discovery obligations, Centene and Health Net would need to prepare an answer and brief their motion to compel arbitration, adding further complexity to the case schedule.

Recognizing the breadth of discovery, Class Plaintiffs have conceded that Centene and Health Net could not meet the June 1, 2026 and June 4, 2026 interim substantial-completion deadlines. Adams James Decl. ¶ 16. The same would be true if the deadlines were modestly extended to July 30, 2026, as proposed by Defendants and DAPs. (*See* JSR at 7 (May 8, 2026)). In addition to having inadequate time to prepare discovery responses, Centene and Health Net would lack time to review other Parties' productions, thereby prejudicing their ability to fully participate in depositions expected to begin in a few short months. Current Defendants estimate

that MultiPlan alone has produced over a million pages to date and that the named Defendants will have produced over 20 billion lines of structured data by June 1, 2026. (*Id.* at 4–5). It is plainly unrealistic for Centene and Health Net to "catch up" in the next eight-and-a-half months as Class Plaintiffs suggest (Mot. 7). As this Court observed, this is not a "slip-and-fall case" where parties can be added late and discovery "extend[ed] . . . by a couple of months, and you get it done. In *[I]n re MultiPlan* . . . not so much." Status Conf. Tr. 13:10–14:3 (Apr. 9, 2026). *See George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 791 (7th Cir. 2011) (not abuse of discretion to deny amendment that "would have 'completely thwart[ed]' the discovery schedule"); *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (defendant "would have to engage in substantial additional discovery and thus be prejudiced" if complaint amended); *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (new defenses and counterclaim would "put [plaintiff] to additional discovery, and thus prejudice[] [it]"); *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (not abuse of discretion to deny amendment 16 months after complaint where "clearly resolution of this case would have been delayed").

Class Plaintiffs' contrary argument underscores the prejudice to Centene and Health Net. They assert that Class Plaintiffs' prior discussions with other Defendants on "search terms, custodians, and myriad other issues[] . . . will help reduce and efficiently resolve any similar issues with Centene." (Mot. 6). Centene and Health Net, however, were not involved at all in those discussions over the past year-plus, and as this case well demonstrates, the scope and burden of discovery are party-specific. *See* CMO No. 18 ¶ 1 (Sept. 19, 2025), ECF No. 530 (parties shall "meet and confer . . . to resolve individualized issues" with structured data productions); CMO No. 21 ¶ 3 (Nov. 12, 2025), ECF No. 582 (same). If added as Defendants, Centene and Health Net would have to *begin* investigating custodians, centralized file systems,

data, and other potentially responsive materials and negotiate with Class Plaintiffs on each of these topics. Consequently, the fact that the amended complaint "introduces no new theories of liability or forms of requested relief" (Mot. 4) is completely irrelevant to whether it prejudices Centene and Health Net. Until now, they have not engaged in discovery with respect to *any* "theories of liability" or "requested relief." *Id.* Nor does it matter that Centene was "previously named [a] co-conspirator" (*id.* at 6): The prejudice stems from "[p]romoting" Centene and Health Net to "named Defendant[s]" (*id.*) and subjecting them to the discovery and defense obligations that this status imposes.

Class Plaintiffs also appear to argue for a blanket rule that amendments "impose no undue prejudice where . . . discovery is not yet complete and no trial date looms" (Mot. 3), but the case law refutes this assertion. The Seventh Circuit has expressly held that a district court did not abuse its discretion by denying an amendment when "discovery had yet to close and no trial date had been set"—but where, as here, "much else had occurred," including extensive discovery. *George*, 641 F.3d at 790–91 (rejecting attempt to add new defendants nineteen months after complaint was filed, but two and a half months before discovery closed). Other cases reached the same conclusion. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (affirming denial of leave to amend where, "[a]lthough the litigation on . . . various . . . counterclaims was still in the pleading stage, the parties had already invested significant resources in the case"); *McCann v. Frank B. Hall & Co.*, 109 F.R.D. 363, 368 (N.D. Ill. 1986) (denying motion to amend even though it "d[id] not come on the eve of trial" and "was filed approximately six weeks prior to the scheduled cut-off date for discovery").

The cases Class Plaintiffs rely on are wholly inapposite. In *Acquaviva v. Village of Glenview*, the court granted plaintiff's motion to amend his complaint during motion-to-dismiss

9

briefing and before initial disclosures had even been served. 2025 WL 3692678, at *1, *3. The scale and progress of *Acquaviva* and thus "wasted work" on the motion to dismiss, *id.* at *2, bear no resemblance to this MDL where the class case has been proceeding with extensive discovery efforts by the Parties for over a year. Similarly, the amendments in *McDaniel v. Loyola Medical Center* necessitated only "narrow" additional discovery that would not "greatly impact the progress of [the] case." 317 F.R.D. 72, 78 (N.D. Ill. 2016). In *Gardner v. Southern Railway Systems*, the court permitted a late amendment that was based on newly discovered information, 675 F.2d 949, 953 (7th Cir. 1982)—the opposite of this case, where, as explained below, Class Plaintiffs purport to base their amendment on information that they had for eight-and-a-half months before they contacted Centene and Health Net about amending. Class Plaintiffs also cite several inapt cases in which courts denied leave to amend close to or after the discovery deadline, but those cases do not even address whether—let alone hold that—parties have carte blanche to amend during discovery after extensive case proceedings have already occurred.[3]

Moreover, Centene and Health Net will move to compel arbitration of putative class representative Robinson's claims due to a mandatory arbitration agreement between Robinson and Health Net.[4] Class Plaintiffs should have anticipated and investigated this agreement because, in 2024, Centene and Health Net informed Class Plaintiffs they would move to compel arbitration as to any named plaintiffs who had agreed to arbitrate. Adams James Decl. ¶ 3. Class Plaintiffs either failed to diligently investigate whether Robinson had an arbitration agreement or

---

[3] *See Johnson v. Cypress Hill*, 641 F.3d 867, 872–73 (7th Cir. 2011) (denying motion to amend filed after summary judgment motion); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774–75 (7th Cir. 1995) (same); *Ferguson v. Roberts*, 11 F.3d 696, 706–07 (7th Cir. 1993) (affirming denial of motion to amend not filed "until one month before the close of discovery"); *Caterpillar Inc. v. Est. of Lacefield-Cole*, 520 F. Supp. 2d 989, 995 (N.D. Ill. 2007) (denying motion to amend filed after summary judgment motion).

[4] The arbitration provision also covers claims against Centene as the parent of Health Net.

shifted course at the eleventh hour—after strategically giving themselves a year-plus head-start in discovery. In either case, if added as Defendants, Centene and Health Net—along with Class Plaintiffs and the Court—would need to spend resources resolving this arbitrability dispute.

### B. Class Plaintiffs Have Engaged in Undue Delay

In evaluating motions for leave to amend, courts also consider "[u]ndue delay," which "may be found where a party delays making amendments after learning the identity of a potential defendant." *Brown v. City of Chicago*, 2017 WL 11515229, at *2 (N.D. Ill. Sept. 14, 2017). Class Plaintiffs not only "learn[ed] the identity," *id.*, of Centene before filing the Consolidated Complaint, but also *actually named Centene as a non-Defendant "co-conspirator" in their complaint*. Consol. Compl. ¶ 42. Seventeen months later, Class Plaintiffs now seek to file an amended complaint moving Centene from the "non-Defendant co-conspirator" to "Defendant co-conspirator" category but otherwise adding no factual allegations as to Centene, and adding Health Net as a new defendant. (*See* Mot. Ex. B at 12–13, 19–20). The substance of Class Plaintiffs' allegations has remained almost entirely unaltered. Where "the facts" have "not change[d]" and were "known to" the movant at the time of "the initial complaint," as was the case here, there is no basis for permitting an amendment nearly a year and a half later. *See Meyer*, 10 F.3d at 1298; *see also Wilson v. Grundfos*, 2017 WL 5001472, at *2 (N.D. Ill. Nov. 2, 2017) (denying leave to amend where plaintiff knew "factual basis" of "claim against [new defendant]" at time of original complaint).

In an attempt to explain away their delay, Class Plaintiffs lodge an inflammatory—and unequivocally false—accusation against counsel for Centene and Health Net. They claim that "MultiPlan produced documents in discovery indicating that . . . Health Net . . . made greater use of MultiPlan's repricing services than had previously been represented." (Mot. 5).

As explained in written correspondence to Class Counsel, counsel for Centene and Health

11

Net can unequivocally state that their representations were and remain accurate and backed up by data.  In 2024, counsel explained to Class Plaintiffs that Health Net ███████████████ ████████████ and showed Class Plaintiffs Health Net's claims data, Data iSight invoices, and contracts with MultiPlan to support that representation.  Adams James Decl. ¶¶ 2, 4.  After Class Plaintiffs recently questioned those representations based on Performance Reports produced by MultiPlan in July 2025, counsel explained that the Performance Reports do not reflect Health Net's actual use of (or savings generated by) Data iSight, but instead ████ ████████████████████████████████████████████ *Id.* ¶ 14. Counsel also reaffirmed the accuracy of its 2024 representations.  *Id.*  Class Plaintiffs' mischaracterization of their exchanges with Centene's and Health Net's counsel demonstrates that they have no valid explanation for delay.

Class Plaintiffs also conveniently omit that they received 41 of the 42 Performance Reports for Health Net on July 24, 2025, *eight-and-a-half months* before raising a possible amendment.  *Id.* ¶ 12.  Class Plaintiffs vaguely offer "the reality of document review" as their explanation for delay.  (Mot. 9).  But they specifically asked for these Performance Reports, and the 41 Health Net Performance Reports were part of a targeted production during early-stage discovery in July 2025—one month after the third set of RFPs were served.  Adams James Decl. ¶ 12.  Critically—and underscoring Class Plaintiffs' lack of diligence—the DAPs were able to timely review these reports, as at least one DAP cited the Performance Reports in a short-form complaint filed on August 8, 2025, including as support for adding new Defendants.[5]  Class

---

[5] *See* Complaint ¶¶ 3, 17, *Ascension Health v. MultiPlan, Inc. et al.*, No. 1:25-cv-09421 (N.D. Ill. Aug. 8, 2025), ECF No. 1 (referring to "performance reports created by MultiPlan" and justifying inclusion of some Defendants (e.g., Allied Benefit) by referencing "records kept by MultiPlan" purportedly "show[ing] that Allied Benefit has underpaid providers . . . using MultiPlan's Data iSight algorithm").

Plaintiffs also cite "deliberative, strategic decision-making" as another explanation for their delay. (Mot. 9). But as this Court has highlighted, there is a distinction between amending based on facts "learned just now" and amending because plaintiffs are "looking strategically at the Defendants." Status Conf. Tr. 11:25–12:2, 14:9–11 (Apr. 9, 2026).

*McDaniel*, on which Class Plaintiffs rely (Mot. 9), does not call for a different conclusion. *McDaniel* unremarkably observed that document review "takes some time" but recognized that denying a motion to amend may be appropriate where the plaintiffs seek "to add allegations that they admittedly knew even prior to filing suit." 317 F.R.D. at 77. Here, Class Plaintiffs have had the Performance Reports for eight-and-a-half months, much longer than the six-month period addressed in *McDaniel*, *id.*, and have done nothing but repackage allegations about Centene from the Consolidated Complaint. And Class Plaintiffs never sought third-party discovery from Centene or Health Net, demonstrating that their inattentiveness extends beyond merely "tak[ing] some time . . . to review and analyze the documents." *Id.*; *see Christensen v. Weiss*, 2023 WL 12098317, at *1–2 (W.D. Wis. June 29, 2023) (denying leave to add new defendants and stating that "plaintiffs should have been more diligent in pursuing discovery" of these defendants), *aff'd*, 145 F.4th 743 (7th Cir. 2025). This Court should not reward Class Plaintiffs' lack of diligence in prosecuting their case by granting their belated amendment request.

**C.      The Proposed Amendments Are Futile to the Extent They Seek to Raise Claims by Robinson against Centene and Health Net**

Multiple courts "have found that where the new or revised claims that a party seeks to add by amendment are subject to a binding arbitration agreement, the proposed amendment is futile." *Detroit Edison Co. v. Burlington N. & Santa Fe Ry. Co.*, 442 F. Supp. 2d 387, 394 (E.D. Mich. 2006) (collecting cases). Yet, while Class Plaintiffs extensively argue that their

13

amendments are not futile (Mot. 11–13), they omit that one of the named class representatives, Robinson, entered into a Provider Participation Agreement (the "Agreement") with Health Net that includes a binding arbitration clause. Adams James Decl. ¶ 17, Ex. A (§ 7.6). Since July 31, 2011, the Agreement has governed Robinson's relationship with Health Net and all Health Net affiliates. *Id.* ¶ 18, Ex. A. While Class Plaintiffs should have known of the clause, Centene and Health Net also alerted them to the Agreement's existence and that Centene and Health Net would seek to compel arbitration of purported claims under this provision. *Id.* ¶ 17.

As Centene and Health Net explained to Class Plaintiffs, the arbitration clause states, in relevant part:

The arbitration clause directly covers Robinson's claims against Centene and Health Net. This case is a ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; *see* Mot. Ex. B at 8–9, 13 (alleging that Robinson had relationships with Defendants that "use[d] MultiPlan's out-of-network claims repricing services"). While Centene and Health Net stand ready to provide detailed argument in

14

connection with a motion to compel arbitration if needed, the most efficient course—in light of the arbitration clause's plain application—is to deny the Motion to the extent Robinson seeks to raise claims against Centene and Health Net. *See Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 445 (11th Cir. 1985) ("amendment was futile" because the new claims "[we]re subject to the parties' agreement to arbitrate disputes"); *Bautista v. PricewaterhouseCoopers LLP*, 2025 WL 936658, at *5 (N.D. Tex. Mar. 27, 2025) (amendment was "futile" because plaintiffs' claims were "subject to binding arbitration"); *Kelly v. MBNA Am. Bank*, 528 F. Supp. 2d 490, 494 (D. Del. 2008) (amendment was "futile" because claims "are subject to arbitration").

## CONCLUSION

This Court should deny leave to amend the complaint to add Centene and Health Net as Defendants.

By: */s/     Sheila R. Adams James*
DAVIS POLK & WARDWELL LLP

Arthur J. Burke
Sheila R. Adams James
Peter M. Bozzo
**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, NY 10017
Telephone: 212-450-4000
arthur.burke@davispolk.com
sheila.adams@davispolk.com
peter.bozzo@davispolk.com

*Attorneys for Defendants Centene Corporation and Health Net of California, Inc.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2026, I caused the foregoing document to be served via electronic mail to counsel for Class Plaintiffs and DAPs as follows:

Jeremy R. Kasha
**SEEGER WEISS LLP**
100 Church Street
New York, New York 10007
Tel.: (973) 639-9100
Fax: (973) 679-8656
jkasha@seegerweiss.com

Jennifer Scullion
**SEEGER WEISS LLP**
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
jscullion@seegerweiss.com

**VINSON & ELKINS LLP**
Stephen M. Medlock
2200 Pennsylvania Ave., N.W., Suite 500 W
Washington, D.C. 20037
Tel: (202) 639-6500
smedlock@velaw.com

**ARNALL GOLDEN GREGORY LLP**
Matthew M. Lavin
2100 Pennsylvania Ave., N.W., Suite 350S
Washington, D.C. 20037
Tel: (202) 677-4030
Matt.Lavin@agg.com

**NS PR Law Services, LLC**
Hunter Shkolnik
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tel: (787) 493-5088
Hunter@NSPRLaw.com

*Attorneys for Direct Action Plaintiffs'*
*Executive Committee*

**SEEGER WEISS LLP**
Christopher Seeger
55 Challenger Road 6th Fl.
Ridgefield Park, NJ 07660
Tel: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

**EDELSON PC**
Natasha J. Fernández-Silber*
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
nfernandezsilber@edelson.com
*Admitted in New York and Michigan only

Sarah R. LaFreniere (*pro hac vice*)
Brandon Baum-Zepeda (*pro hac vice*)*
1255 Union Street NE, Suite 850
Washington, DC 20002
Tel: (202) 270-4777
slafreniere@edelson.com
bbaum-zepeda@edelson.com
*not admitted to practice in DC; practice
authorized by D.C. Rule 49(c)(3).

**SUSMAN GODFREY LLP**
William Christopher Carmody (*pro hac vice*)
Shawn J. Rabin (*pro hac vice*)
Stephanie N. Spies (*pro hac vice*)
Thomas K. Boardman (*pro hac vice*)
William J. Melsheimer (*pro hac vice*)
Amanda E. Fischer (*pro hac vice*)
One Manhattan West, 50th Floor
New York, NY 10001-8602
Tel: (212) 336-8330
bcarmody@susmangodfrey.com
srabin@susmangodfrey.com
sspies@susmangodfrey.com
tboardman@susmangodfrey.com
jmelsheimer@susmangodfrey.com
afischer@susmangodfrey.com

17

Halley W. Josephs (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
hjosephs@susmangodfrey.com

**BERGER MONTAGUE PC**
Eric L. Cramer (*pro hac vice*)
David F. Sorensen (*pro hac vice*)
Zachary D. Caplan (*pro hac vice*)
Patrick F. Madden (*pro hac vice*)
Jordan T. Hollinger (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
ecramer@bergermontague.com
dsorensen@bergermontague.com
zcaplan@bergermontague.com
pmadden@bergermontague.com
thollinger@bergermontague.com

Hope Brinn (*pro hac vice*)
505 Montgomery Street, Suite 325
San Francisco, CA 94111
Tel: (302) 530-6250
hbrinn@bergermontague.com

*Interim Co-Lead Class Counsel*

Notice of this filing will also be sent via operation of the Court's CM/ECF system to all counsel of record.

/s/ Sheila R. Adams James
Sheila R. Adams James

18