# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: ALL ACTIONS | Hon. Matthew F. Kennelly |

**CASE MANAGEMENT ORDER NO. [ • ]**
**[PROPOSED AGREED] FIRST AMENDED ORDER REGARDING PRODUCTION OF**
**ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS**

This First Amended Order Regarding Production of Electronically Stored Information

and Paper Documents ("ESI Protocol Order") is entered into pursuant to the parties' joint letter

brief (ECF 210) and the Court's ruling regarding same (ECF 238).

This ESI Protocol Order shall govern the Parties and the Non-Parties in the above-

captioned case whether they currently are involved or become so in the future, and any related

actions that may later be consolidated with this multi-district litigation (collectively, the

"Litigation").

Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable

information. Pursuant to the terms of this ESI Protocol, information regarding search processes

and electronically stored information ("ESI") practices may be disclosed, but compliance with this

ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of

particular ESI as irrelevant, undiscoverable, inadmissible, unduly burdensome or not reasonably

accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For

the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to

require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

## I.     <u>GENERAL PROVISIONS</u>

A.     **Applicability:** This ESI Protocol Order will govern the review and production of ESI and paper documents.

B.     **Federal Rules:** Except as may be set forth herein, this ESI Protocol does not alter or affect the applicability of the Federal Rules of Civil Procedure or the Local Rules for the Northern District of Illinois (the "Local Rules" or, when referencing a particular rule, a "Local Rule").

C.     **Deadlines:** References to schedules and deadlines in this ESI Protocol Order shall comply with Federal Rule of Civil Procedure 6 with respect to computing deadlines.

D.     **ESI Liaisons:**

1.     **Designation:** Class Plaintiffs, the Direct Action Plaintiffs Executive Committee ("DAP Plaintiffs"), and each Defendant agrees to designate ESI Liaisons within 7 days after entry of this ESI Protocol Order. Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

2.     **Duties of ESI Liaison**: Each ESI Liaison will be prepared to promptly participate in meet and confer processes in a good faith effort to resolve any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible) and have access to personnel knowledgeable about the Party's electronic systems and capabilities in order to, as appropriate, answer pertinent questions. The Parties will rely on

the liaisons, as needed, to confer about ESI and to try to resolve technical disputes without Court intervention.

**E.** **Definitions:**

1. Class Plaintiffs, DAP Plaintiffs, and Defendants are referred to as the "Parties" solely for the purposes of this ESI Protocol Order.

2. "Plaintiffs" as used herein shall mean the individual plaintiffs named in the operative complaints filed by Class and DAP Plaintiffs, and such Plaintiffs' counsel.

3. "Defendants" as used herein shall mean the Defendants named in the operative complaints filed by Class and DAP Plaintiffs, and such Defendants' counsel.

4. "Non-Parties" as used herein shall mean other individuals or entities who may produce electronically stored information and paper documents in this Litigation, who will be subject to the terms of this ESI Protocol Order to the same extent as the Parties.

**F.** **Confidential Information and Preservation:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as Confidential or Highly Confidential under any order entered by the Court in the Litigation or confidentiality stipulation entered into by the Parties.

## II. GENERAL PRODUCTION FORMAT PROTOCOLS

**A.** The Parties agree to produce documents in the formats described below. A producing or requesting party may seek to use a different format for a targeted set of documents if the agreed format is not reasonably technically feasible to produce

or review, in which case the parties shall promptly meet and confer with respect to such request and shall submit the issue for resolution by the Court only if they are unable to resolve the dispute through the meet and confer process. To the extent practicable, any alternative formats proposed should not materially degrade the searchability and useability of ESI or other materials.

B. **TIFFs:** Except for structured data and specified file types addressed in "Production of Native Items" below, production images will be provided as black and white (except as provided below), single-page Group IV TIFFs of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Each image shall be branded according to the Bates number and any confidentiality designation. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, (1) to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file, and (2) if such imaging is not reasonably practicable, be produced in native format. Documents that are difficult to render in TIFF may be produced in their native format with a placeholder TIFF image stating the Bates number of the file and the wording "Document Produced Natively" (along with any appropriate confidentiality designation), unless such documents contain redactions, in which case the documents will be produced in TIFF format. Documents that are difficult to render in TIFF that require redaction

- 4 -

may be produced with redactions applied in the native file, so long as the redactions are applied using an appropriate native redaction tool, such as "Blackout" or "BlackBar." A producing Party retains the option to produce ESI in alternative formats if so agreed by the requesting Party or Parties, which may include native format or a combination of native and TIFF formats.

**C.** **Text Files:** Each ESI item produced under this ESI Protocol Order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named with the Bates number of the first page of the corresponding production item. Text files shall contain any hidden content, tracked changes, edits, comments, notes, and other similar information of the ESI item to the extent technically feasible.

1. OCR: A producing Party may make paper documents available for inspection and copying/scanning in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, scan and OCR paper documents if it chooses. Where OCR is used, the Parties will take all reasonable steps to generate accurate OCR. The Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or in the event that a producing Party does not choose to use OCR at all, the producing Party will either (a) make the paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34, or (b) identify in the load file that the file is not OCR.

2. ESI: Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

D. **Production of Native Items:** The Parties agree that ESI shall generally be produced as TIFFs with an accompanying load file, which will contain the ESI data points listed in Appendix 1 hereto. The exceptions to this rule shall be: (a) documents for which the metadata or other information readily identifiable for the producing party indicates the document contains hidden content, embedded comments, or tracked changes (e.g., a Microsoft Word document with "bubble" comments and/or different color tracked changes), (b) spreadsheet-application files (e.g., Microsoft Excel), (c) presentations (e.g., Microsoft PowerPoint), (d) source code, (e) multimedia audio/visual files, such as voice and video recordings (e.g., .wav, .mpeg, and .avi), and (f) any other native file types that cannot be rendered as readable image files. These categories of ESI shall be produced in native format.

1. In addition to producing the above file types in native format, the producing Party shall produce a single-page, Bates-numbered TIFF slip sheet indicating that a native item was produced with the wording "Document Produced Natively," along with extracted text where available and with the applicable data points listed in Appendix 1. The corresponding load file shall include NativeFileLink information for each native file that is produced.

2. The Parties agree to meet and confer prior to producing native file types other than a-e above, in which case the producing Party shall disclose the

- 6 -

file type to and meet and confer with the requesting Party on a reasonably useable production format.

3. The Parties agree to meet and confer to the extent that there is potentially relevant structured data that resides in a fixed field within a record or file, or stored in a structured format, such as databases/data application files (such as Oracle, SQL, Access, SAP) or data sets, to determine the best reasonable form of production of usable data.

4. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

E. **Requests for Other Native Files:** Other than as specifically set forth above or in this paragraph, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol Order does not require the production of that document in its native format, the Party making such a request shall explain by identifying by Bates number(s) the specific document(s) at issue and explaining the reason for its request that the document(s) be produced in its native format, as to which request the parties shall meet and confer in good faith and shall submit to the Court for resolution only if the parties have been unable to resolve any dispute through the meet and confer process, with the Party seeking production in native format bearing the burden to demonstrate why it needs the native format. Any native files that are produced

pursuant to this paragraph should be produced with a link in the NativeFile field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

F.     **Instant Messages/Text Messages and Mobile Data:** To the extent the Parties' reach agreement concerning the relevance, proportionality, collection, and production of instant messages/text messages (e.g., Microsoft Teams, Slack) and/or data contained on mobile devices such as smartphones and tablet computers, or such materials are compelled to be produced in this Litigation, the Parties shall meet and confer prior to such production to determine the best production format for such ESI.

G.     **Bates Numbering:**

1.     All images must be assigned a Bates number that must always: (1) be unique across the entire document production, (2) maintain a constant prefix and length (e.g., ten-digits and 0-padded) across the entire production, (3) contain no special characters or embedded spaces, except hyphens or underscores, (4) be sequential within a given document, and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2.     If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3.     To the greatest extent practicable, the producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images. If Bates number branding obliterates or obscures any

- 8 -

part of an underlying image, upon request of the requesting Party, the producing Party shall re-produce the affected ESI items with the branding in a different location that does not obliterate or obscure the underlying images.

**H.** **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a Party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable. The family of documents should also be identified using a family ID number or other unique identifying number, such as the beginning Bates number of the parent document.

**I.** **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (e.g., an Opticon file), as well as a metadata (.dat) file with the metadata fields identified in Appendix 1 on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. Load files shall not vary in format or structure within a production, or from one production to another.

**J.** **Color:** Any document produced as a native file shall be produced as it was regularly utilized and, to the extent applicable, in color. Other documents or ESI containing

color generally need not be produced in color in the first instance. However, if the original color is necessary to understand the meaning or content of the document, a producing Party may opt to produce the documents in color in the first instance or the requesting party may request in writing that the producing Party produce that document or ESI item (identified by Bates number) in its original color. If the producing party does not promptly agree to produce the requested document or item in color, the parties shall promptly meet and confer in good faith before submitting any dispute to the Court. The production of any documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF or native format apply to any productions of documents and/or ESI in color made in such an alternative format.

K.   **Confidentiality Designations:** If a particular document or ESI item qualifies for confidential treatment pursuant to the terms of any protective order entered by the Court in the Litigation or confidentiality stipulation entered into by the Parties, the designation shall be branded on the document's image at a location that, where applicable, does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol Order shall not waive any protection or confidential treatment. If confidentiality designation branding obliterates or obscures any part of an underlying image, upon request of the receiving Party, the producing Party shall re-produce the affected ESI items

with the branding in a different location that does not obliterate or obscure the underlying images.

**L.**   **Production Media & Protocol:** A producing Party may produce document images, load files and metadata on USB drives, external hard drives, or other mutually agreeable media ("Production Media"). Production sets may also be transferred via secure FTP or encrypted web-hosted transfer. Any requesting Party that is reasonably unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing Party provide a copy of that production using Production Media, as described below.

1.   All Production Media will be encrypted, and the producing Party will provide a decryption key to the requesting Party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. For example, if the production comprises document images on three external hard drives, the producing Party may label each hard drive in the following manner: "[PARTY] Production March 1, 2025-001," "[PARTY] Production March 1, 2025-002," and "[PARTY] Production March 1, 2025-003." Where the Production Media used is an external hard drive (with standard PC compatible interface) or USB drive, such production media

must be sent no slower than overnight delivery via FedEx, UPS, USPS, or private courier.

2.    Each item of Production Media (or, in the case of productions made via FTP link or other secure online transfer, each production transmittal letter) shall include (1) the producing Party's name; (2) text referencing that it was produced in this Litigation, (3) the production date, and (4) the Bates number range of the materials contained on such production media item.

3.    Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates number range that is being replaced. Each Party shall designate the appropriate physical address for productions that are produced on Production Media. However produced, a producing Party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

M.    Materials Collected for or Produced in Other Litigation or Investigations: To the extent that a producing Party intends to satisfy a request for production by producing materials collected or produced in a case consolidated into this Litigation (e.g., *Adventist Health System Sunbelt Healthcare Corporation v. MultiPlan, Inc.*, 1:23-cv-07031 (S.D.N.Y.)) or in a different litigation or investigation, at the time the producing Party discloses its search methodology it shall disclose in writing (a) the fact that the producing Party intends to use such materials to satisfy certain request(s) for production, (b) the case caption or information necessary to identify the entity conducting the investigation, and (c) information sufficient to show how

materials were collected and culled for actual or potential production in the prior matter (e.g., requests for production, custodial and non-custodial sources searched, search terms or methods used, and time periods applied to collection or culling), as well as any logs or discovery responses describing materials withheld or redacted on any basis, including privilege. A requesting Party retains the right to challenge the sufficiency of any production not subject to the ESI, search, and privilege methodology agreed to under this Protocol. If a requesting party raises such a challenge, the requesting and producing Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they are not able to reach resolution through the meet and confer process.

### III. PAPER DOCUMENT PRODUCTION PROTOCOL

A. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) AttachRange, (f) Page Count, (g) Custodian, (h) Confidentiality, (i) Redacted, and (j) Text Path. Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

B. **Unitization of Paper Documents:** The Parties shall use reasonable best efforts to ensure that paper documents, including those in files and binders, are logically unitized for production. When scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records to the greatest extent possible. The Parties will utilize best efforts to ensure that paper documents are produced in consecutive Bates stamp order.

IV.    **ESI METADATA FORMAT AND PROCESSING ISSUES**

A.    **Excluded Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing. Other file types and forms of data that may be excluded are described in IV.F, and additional file types may be added to the list of excluded files by further written agreement of the Parties.

B.    **Metadata Fields and Processing:**

    1.    **Date and Time/Time Zone:** No Party shall modify the date or time as contained in any original ESI, except, to the extent reasonably practicable, ESI items shall be processed using a consistent time zone (e.g., CST), and the time zone used shall be disclosed to the requesting Party.

    2.    **Auto Date/Time Stamps or Other Automatically Updating Fields:** To the extent reasonably practicable, ESI items shall be processed so to preserve the date/time shown in the document as it was last saved, rather than the date of collection or processing.

    3.    If a producing Party believes the above provision(s) are not reasonably practicable for some portion of its production, it shall inform the requesting party/parties and promptly meet and confer in a good faith effort to resolve any dispute. The parties may submit any such dispute to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

4. Except as otherwise set forth in this ESI Protocol Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

5. The Parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) all Custodians of the document, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeFile fields, which should be populated, when applicable, regardless of whether the fields can be populated pursuant to an automated process.

**C.    Redaction:**

1. The Parties agree that, for any ESI items for which this ESI Protocol otherwise permits production in TIFF format, redactions may be made in TIFF format, with each redaction clearly indicated. Any metadata fields reasonably available and which can be disclosed without disclosing privileged information shall be provided. The producing party may, alternatively, produce the item as a redacted native file in accordance with the following paragraph.

2. If the items redacted and partially withheld from production would otherwise be required to be produced as native files under this ESI Protocol, then they should be produced as native files with redactions to the extent possible using a native redaction tool, such as "Blackout" or "BlackBar,"

- 15 -

3.     If an item otherwise required to be produced as a native file under this ESI Protocol must be withheld, then, to the extent reasonably practicable, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields, and other information that may not print when opened as last saved by the custodian or end user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations, and notes. The producing Party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images due to redaction are formatted so as to be legible. For example, column widths should be formatted so that the values in the column will display rather than "###########."

4.     If audio/visual or other media files require "redaction," the parties shall promptly meet and confer concerning the format of production and privilege assertions. If the parties are unable to reach agreement through meet and confer discussions, they may seek resolution from the Court.

**D.**     **Email Collection and Processing:**

1.     **Email Threading:** The Parties may use email threading to avoid review and production of duplicative information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression (a) eliminate the ability of a requesting Party to identify every custodian who had a copy of a produced document or sent or received an email, or (b) remove from a production any

- 16 -

unique branches and/or attachments contained within an email thread. Parties may request unthreaded copies of particular documents in advance of depositions, which will not be denied absent good cause.

2. **Email Domains:** A producing Party may exclude from their ESI search process uniquely identifiable categories of documents (i.e., emails from domains typically associated with junk email, such as non-industry retailer advertising, non-industry newsletters, or alerts from non-industry sources) provided that it discloses domain names excluded under this section prior to conducting review and production and promptly meets and confers in good faith with respect to any proposal to exclude one or more domain names. The Parties may submit any dispute over the exclusion of a domain name to the Court for resolution only if the Parties have been unable to reach resolution through the meet and confer process.

E. **Rolling Productions:** The Parties agree to produce documents in phases on a rolling basis consistent with the Court's orders relating to scheduling.

F. **De-duplication:** A producing Party may de-duplicate files in a method that does not result in the responsive documents with unique content being withheld from production. Removal of near-duplicate documents shall not occur without first conferring in good faith with the requesting party and reaching an agreement as to scope and methodology. Unless otherwise agreed by the Parties, the following requirements apply to all document de-duplication by a producing Party:

1. All BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because

of de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing Party will, as needed, supplement the load files with updated CustodianOther information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party after the Party has substantially completed its production of ESI.

2. Duplicate electronic documents shall be identified by MD5 or SHA-1 hash values for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party may produce only one document or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents.

3. Duplicate messaging files shall be identified by MD5 or SHA-1 hash values for the email family, which includes the parent and email attachments.

4. If a producing party intends to use a de-duplication that does not comply with the above provisions, it shall so inform the requesting party(ies) of the fact and nature of the intended alternative method, after which the parties shall promptly meet and confer in a good faith effort to resolve any disputes about such proposal. The parties may submit any dispute on this issue to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

G.     **Zero-byte Files, Duplicative, and Otherwise Extraneous Data:** The Parties may filter out the following files and data:

1.     Zero-byte files—stand-alone files identified as zero-bytes in size—that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production. If a producing Party proposes to apply filters to identify zero-byte files and limit documents and ESI that is collected for processing and review, the producing Party shall advise the requesting Party and the Parties shall meet and confer regarding such filters prior to review and production;

2.     Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, provided, however, that nothing in this provision shall preclude a requesting party from seeking (through meet and confer and application to the Court) to require a producing party to review and produce materials from such backup data files to the extent the requesting party contends such review and production is appropriate and proportional to the case given the anticipated contents of the backup data

- 19 -

files and the content of other files the producing party is collecting and reviewing;

3. On-line access data such as temporary internet files, history files, cache files, and cookies;

4. operating system files and executable files, except for any source code used as part of a pricing methodology for out-of-network goods and services; and

5. Structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.).

H. **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing Party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," or "Auto File Path" formula used or similar words that describe the "auto" feature, to the extent reasonably practicable.

I. **Hidden Text:** To the extent reasonably practicable, ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. The Parties shall use reasonable efforts to ensure that, at the time of production, all hidden columns or rows, hidden

text, worksheets, speaker notes, tracked changes, and comments are visible on the face of the TIFF image(s), unless redacted in accordance with this ESI Protocol.

**J.** **Embedded Objects, Spreadsheets and Hyperlinked Files:** Objects embedded in documents (e.g. in Word or Excel documents) shall, when reasonably practical and able to be extracted on a systematic basis utilizing the company's existing software capabilities, be extracted and produced as separate documents and treated like attachments to the document. The Parties agree that other nonrelevant embedded objects including, but not limited to, logos, icons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (i.e. such embedded objects will be produced within the document itself, rather than as separate attachments). Hyperlinked files (other than hyperlinks to external websites not within the possession, custody, or control of the producing party) shall be produced as child documents to the parent containing the hyperlink, when reasonably practical utilizing the company's or vendor's existing software capabilities. The Parties will meet and confer in a good faith effort to identify a reasonable and proportional process of addressing hyperlink files stored in a collaborative work environment (e.g., MS SharePoint or Google Drive) that are linked to any email or other document.

**K.** **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

L.     **Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted, the producing Party will take reasonable steps to disable the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will, to the extent identified, be disclosed to a requesting Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI. The parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible. Where the producing Party no longer possesses the software required to read or decipher files otherwise subject to production, it is under no obligation to obtain such software and provide it to the requesting Party, provided, however, that, if the requesting Party attempts to obtain such software, the producing Party shall cooperate with the requesting Party to the extent reasonably necessary to identify the software, its licensor, and any technical information or permissions needed for the requesting Party to read or decipher the files.

M.     **Corrupted or Technical Issue Documents:** If a document being produced (i.e., it is otherwise in a responsive family) cannot be processed (e.g., it is corrupt or protected by an unavailable password), a single-page, Bates-stamped image slip

sheet stating "File Could Not Be Processed" or similar wording will be provided and a meta-data field for "Technical Issue" shall be populated..

V.    **PARAMETERS FOR COLLECTING DOCUMENTS**

A.    **Document Custodians and Custodial Data Sources:** Within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, the producing Party must disclose in writing an initial list of its own proposed document custodians ("Document Custodians") and custodial sources (e.g., personal computers, laptop computers, email, calendars, mobile devices, shared network storage or folders, structured data systems, etc.). If a requesting Party contends that additional Custodians or custodial sources should be added, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the requesting Party may seek relief from the Court.

B.    **Non-Custodial Sources:** The Parties agree to meet and confer, within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, regarding any "Non-Custodial" document sources that the producing Party believes, based on its investigation to date, may reasonably be likely to contain unique responsive information. For the avoidance of doubt, "Non-Custodial" document sources include departmental files, shared drives, multi-user messaging platforms (or "chat" platforms), such as Slack or Microsoft Teams; cloud storage accounts; online repositories, social media accounts of the Party, intranets, and databases. The Parties shall meet and the parties shall meet and confer regarding how the producing Party's objections and proposed limitations to the scope of discovery would change the Non-Custodial document sources from which

- 23 -

the producing Party will collect and produce Documents. If a requesting Party contends that additional Non-Custodial document source(s) should be added, then the Parties shall meet and confer in good faith and, in the event the parties are unable to reach agreement, the requesting Party may seek relief from the Court.

C. As a general matter, the means of and parameters for culling ESI set forth in this section apply to Non-Custodial ESI as well as to Custodial ESI. If a producing Party seeks to utilize other culling technologies for Non-Custodial ESI, it must so inform the requesting Party(ies) before implementing such technology, after which the Parties shall promptly meet and confer in a good faith effort to resolve any disputes on such issue. The Parties may seek resolution of any such dispute by the Court only if they have been unable to reach resolution through the meet and confer process.

D. **Mobile Device ESI:** For Document Custodians agreed on by the Parties or ordered by the Court, a producing Party will take reasonable steps to identify whether any responsive and non-duplicative ESI items in the possession, custody, or control of the Party are located on any mobile devices, including cellphones and tablets, used by any of those Custodians. If non-duplicative responsive ESI items are located on such a mobile device by any of those Custodians, then the producing Party shall collect those ESI items in a manner that preserves the content and metadata associated with those items. To the extent reasonably possible, materials collected pursuant to this subparagraph shall be produced as image files with related searchable text, metadata and bibliographic information. If necessary to determine the identities of email, text message, app-based message, or IM senders or

- 24 -

recipients, the producing Party will provide a table of names or contact lists from custodians. Nothing in this subparagraph shall be construed as a determination on the appropriateness of mobile device discovery or any objections to mobile device discovery.

**E.      Search Methods:**

1.      **Search Methodology Disclosure:**

a.      The Parties agree to meet and confer, within 30 days of the producing Party's service of its objections and responses in which it agrees to produce documents, regarding (i) potential use and identification of search terms, tools, or techniques, (ii) use of technology assisted review or artificial intelligence ("TAR/AI") in whole or part to cull any corpus of materials, and (iii) all parameters for scoping the review and production efforts (e.g., application of date ranges, custodians, non-custodial sources, etc.).

2.      **Technology Assisted Review Negotiation Process:**

a.      The Parties will meet and confer regarding the use of TAR/AI to cull any corpus of materials, alone or in combination with some other methodology. By no later than 45 days after service of responses and objections to the initial sets of requests for production, the Parties will: (a) submit a TAR/AI Protocol to the Court or (b) submit one letter briefs of no more than 5 pages total for Plaintiffs and one letter brief of no more than 5 pages total for Defendants concerning any disputes as to the TAR/AI Protocol.

3. **Search Term Negotiation Process:**

    a.    Before a producing Party uses search terms, the producing Party shall describe in writing to the requesting Party or Parties the search protocol the producing Party intends to use and shall include: (a) the search methodology criteria to be used to identify the universe of documents to which search terms will be applied (e.g., custodians, non-custodial sources, and date ranges), (b) proposed search terms to be applied, subject to revision based on, for example, meet and confer of the Parties, and (c) any use of TAR/AI. At the time the producing Party discloses its proposed search terms, it shall disclose in writing the requests for production (if any) for which the producing Party will not use search terms to identify materials responsive to that request.

    b.    At the time the producing Party discloses its proposed search terms, it shall also disclose in writing the document review software and version number that is being used to run those search terms (e.g., Relativity 10.4), the stop/noise words for that search software, and the search language syntax used by that software.

    c.    At the time that the producing Party discloses its search terms, the producing Party shall explain in writing how it will identify and review materials that do not have a sufficient amount of searchable text or are otherwise not suited to identification using text-based

searches, including, for example, video files, audio files, and structured data.

d.    Within 30 days of receiving the producing Party's proposed search terms, the requesting Parties will provide any proposed revisions and additions to the producing Party's search terms. For purposes of this paragraph, the DAP EC and Class Counsel shall cooperate to provide a single set of proposed revisions and additions to a Defendant producing Party and the Defendants shall cooperate to provide a single set of proposed revisions and additions to a Plaintiff producing Party, with the understanding that there may be a set of global search terms and sets of individualized search terms.

e.    Within 30 days of receipt of the receiving Parties' proposed revisions and additions to the producing Party's search terms, the producing Party shall provide: (a) any objections to the receiving Parties' proposed revisions including information sufficient to support its objections to the proposed revisions and additions, and (b) a hit report for each objected to revision or addition to the search terms showing the number of hits, hits with families, unique hits for that search relative to the total number of hits, and unique hits for all search terms under discussion between the producing Party and the liaison for the receiving Parties.

f.    After exchanging proposed search terms, proposed revisions/additions, and any objections to proposed

revisions/objections, the Parties shall promptly meet and confer in good faith to try to resolve any disputes as to the search terms to be applied to the producing Party's materials. Any unresolved differences shall promptly be brought to the Court's attention.

g.     The Parties agree that the requesting Parties may propose additional search terms to be used by a producing Party at any time prior to the close of fact discovery. For purposes of this paragraph, the DAP EC and Class Counsel shall cooperate to provide a single set of proposed revisions and additions to a Defendant producing Party and the Defendants shall cooperate to provide a single set of proposed revisions and additions to a Plaintiff producing Party. Any unresolved differences concerning later proposed search terms shall promptly be brought to the Court's attention.

4.     **Otherwise Known Responsive Information:** A producing Party's use of a search methodology does not relieve it of the duty to produce information that it becomes aware of that is responsive to the agreed-upon or Court-ordered scope of a request for production, even if that information was not captured in the producing Party's document collection, review, or production.

5.     **Reservation of Rights:** By agreeing to the use of a particular search methodology, the requesting Party does not waive objections that the search methodology was not implemented in a proper, effective, or good faith manner.

## VI.    CLAIMS OF PRIVILEGE AND REDACTIONS

A.    **Production of Privilege Logs:** If a Party withholds a document (fully or in redacted form) otherwise discoverable by claiming that it is privileged, that Party shall produce a privilege log consistent with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure and any applicable local rule or procedure, except as otherwise described below. The privilege log must be detailed enough to enable other Parties to assess the applicability of the privilege asserted and should include for each withheld document (1) the sender, recipient, and each individual copied or blind copied on the document, including names and email addresses, (2) the date the document was created and last modified, (3) the file name or email subject, as applicable, (4) the document extension (e.g., .msg, .pptx, etc.), (5) the Bates number or Control Number of the document, and (6) the reason that the privilege or protection is being asserted for the particular document. Unless the person's email address is logged, the privilege log should identify all persons that are authors, senders, and/or recipients of any documents being withheld (fully or in redacted form) under any claim of privilege or protection, and denote (through a marking such as an asterisk or on a separate list) which individuals identified on the log are attorneys and what Party each such attorney represents. The privilege log shall be produced in XLS or XLSX format. To the extent possible, available file metadata may be used to complete the fields in the privilege log.

B.    **Logging of Threads.** Parties shall log all emails in a thread that are under a claim of privilege; provided, however, that a Party is not required to separately log lesser-included (i.e., earlier-in-time) emails in that thread so long as the topmost (i.e., latest-in-time) email is logged, and any un-logged lesser-included email (1) is

- 29 -

subject to an independent claim of privilege and (2) concerns the same subject matter as the topmost logged email (such that the description of the topmost logged email is sufficient to demonstrate the privilege applicable to the lesser-included, unlogged email). In such instances, where the participants vary from email to email within a thread, a Party may satisfy its logging obligation with respect to such lesser-included emails by providing a single additional field on the privilege log that lists all participants who participated in the thread. Nothing in this Order precludes a Party from requesting that the producing Party provide additional information about a reasonable number of entries—including whether the individuals in the "all participants" field are senders, recipients, copied, or blind copied on a lesser-included email in the thread.

1. **Email Chains:** If there is more than one unique branch of an email thread, each branch will be individually logged if independently responsive and claimed to be privileged or otherwise protected from discovery.

2. For the avoidance of doubt, if any lesser-included email in a thread (or any attachment thereto) is not independently privileged, the topmost email thread must be redacted rather than withheld.

3. Nothing in this Order precludes a Party from separately logging all lesser-included emails in a thread, or from requesting that the producing Party separately log lesser-included emails in particular threads.

4. In the event of a dispute over a Party's compliance with the provisions set forth in this Section VI.B and its subparts, the parties shall promptly meet and confer in good faith before submitting any dispute to the Court.

C. **Exclusions from Logging Potentially Privileged Documents:** The following categories of Documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree:

1. Any communications exclusively between a producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with this Litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this Litigation.

2. Communications after the filing of the initial complaint in this Litigation, exclusively between a producing Party and its corporate in-house and/or outside counsel regarding this Litigation.

3. Notwithstanding Section VI.A, a producing Party may log on a metadata-only basis (i.e., without an accompanying narrative description of the basis for the assertion of privilege) any document withheld in whole or in part solely on the basis that it is attorney work product that was prepared by or at the direction of outside counsel in anticipation of litigation, provided that the document is not otherwise exempt from logging under Sections VI.C.1 or VI.C.2. Any requesting Party may seek additional information about a document logged using metadata only under the paragraph if the metadata does not provide enough detail to enable other Parties to assess the applicability of the privilege asserted, such as the people involved in the communication or the reason that the privilege is being asserted for that particular document. For the avoidance of doubt, for purposes of this

Section VI.C.3, "litigation" includes arbitrations (including independent dispute resolution proceedings under the No Surprises Act), but does not include government investigations.

4. In the event of a dispute over a Party's compliance with the provisions set forth in this Section VI.C and its subparts, the Parties shall promptly meet and confer in good faith before submitting any dispute to the Court.

D. **Documents Redacted for Privilege:** The producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information and redacted documents will be noted as such in the Privilege Log. Redacted documents need not be logged in the first instance, so long as (a) for emails, the names of the sender and all recipients of the email are not redacted, (b) for non-email documents, the redaction is noted on the face of the document and in a redaction metadata field, (c) the producing Party includes a metadata field (PrivRedacted) indicating that the document was redacted on the basis of privilege, so that the receiving Party can readily identify the universe of documents containing privilege redactions, if the basis for the privilege is apparent from the unredacted portion of the document. For the avoidance of doubt, no party shall be permitted to make wholesale redaction to documents, such as email bodies, to avoid the requirements imposed by this Order that privileged materials be adequately logged.

E. **Personally Identifiable Information ("PII") Redactions:** A producing Party may redact personally identifiable information (e.g., patient names or Social Security Numbers related to medical bills, procedures, or claims) provided that it is (a) irrelevant and (b) the producing Party notifies and meets and confers with the

- 32 -

requesting Party prior to applying such redactions. If a producing Party wishes to redact highly sensitive, irrelevant information, it shall notify the requesting Party. The producing and requesting Parties shall promptly meet and confer in a good faith effort to resolve any dispute and shall submit the matter to the Court for resolution only if they are not able to reach resolution through the meet and confer process.

F.      **Redaction and Withholding for Relevance Not Permitted:** Except pursuant to the Parties' agreement or, if agreement cannot be reached, through Court resolution, a producing Party may not redact information on the ground that it is irrelevant, nor may a producing Party withhold a member of a document family on such grounds.

## VII.    NON-PARTY DOCUMENT REQUESTS

A.      **Non-Party Document Subpoenas:** All non-Party document subpoenas shall be served on all counsel of record in compliance with Federal Rule of Civil Procedure 45. Service via email on a designated service list shall constitute compliance with Federal Rule of Civil Procedure 45.

B.      **Non-Party Document Productions:** The recipient of a non-Party document production shall serve a copy of that document production on all counsel of record within seven (7) days of receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

C.      **Informing Non-Parties of This Order:** The Parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

- 33 -

## VIII.  <u>MISCELLANEOUS PROVISIONS</u>

A.  **Service of Discovery Requests and Disclosures:** All discovery requests and discovery-related disclosures may be served via email on a Party's ESI Liaison with copies to coordinating counsel and leadership counsel for all Plaintiffs and Defendants.

B.  **Inaccessible ESI:** If a producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall promptly meet and confer in good faith to try to resolve such issues. The Parties may submit such issues to the Court for resolution only if they have been unable to reach resolution through the meet and confer process.

C.  **Deleted, Destroyed, or Overwritten Materials:** If a producing Party has reason to believe that ESI, paper documents, or other materials that are reasonably likely to contain information responsive to the agreed-upon or court-ordered scope of a receiving Party's requests for production have been destroyed, deleted, or overwritten either intentionally or unintentionally, the producing Party shall disclose all pertinent facts concerning the deleted, destroyed, or overwritten ESI or hard-copy documents, including the type of data at issue, the information it may have contained, the identification of the person responsible for deleting, destroying, or overwriting it, and when that information was deleted, destroyed, or overwritten.

D.  **Limitations.** Nothing in this ESI Protocol Order establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol Order shall be

interpreted to require information protected by the attorney-client privilege, work product doctrine, or any other reasonably applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

E.    **Variations or Modifications:** Variations from this ESI Protocol Order may be required. Any practice or procedure set forth herein may be varied by agreement of all affected Plaintiffs and all affected Defendants, which will be confirmed in writing. In the event a producing Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, including with respect to any applicable deadlines, the producing Party will notify the requesting Party of the variation or modification. Upon request by the requesting Party, those Parties will promptly meet and confer in good faith to address any issues in a reasonable and timely manner prior to seeking Court intervention.

F.    **Best Efforts Compliance and Disputes.** The parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provisions of this ESI Protocol Order. If a producing Party cannot comply in a particular circumstance with this ESI Protocol Order, such party shall promptly inform the requesting Party in writing why compliance with the ESI Protocol Order is not reasonable or feasible. No party may seek relief from the Court concerning compliance or non-compliance with the ESI Protocol Order until it has met and conferred with the other party in a good faith effort to resolve or narrow the area of disagreement.

SO ORDERED.

Dated: _____, 2026     _____
                                                                  Hon. Matthew F. Kennelly
                                                                  United States District Judge

**Appendix 1: ESI Metadata and Coding Fields**

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| BegBates | All | Beginning Bates number as stamped on the production image. |
| EndBates | All | Ending Bates number as stamped on the production image. |
| BegAttach | All | First production Bates number of the first document of the family. |
| EndAttach | All | Last production Bates number of the last document of the family. |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Email | Message header identifier, distinct from "PR_Conversation_ Index", that permits threading of Email chains in review software. |
| Email Subject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent. |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| Field Name[1] | Populated For *(Email, Edoc, Calendar, Contact, Cellphone, or All)* | Field Description |
|---|---|---|
| TimeZoneUsed | All | Time zone used to process data during document collection and |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| TimeCreated | Edoc | Time the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocType | Email, Edoc | Single choice field that indicates the file is an email, edoc, attachment or hard |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "Yes" indicator that the document is redacted. Otherwise, leave blank. |
| PrivRedacted | All | "Yes" indicator that the document is redacted on the basis of privilege. Otherwise, leave blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this |
| Confidentiality | All | Indicates any designation under a protective order entered by the Court in the Litigation or a confidentiality stipulation entered into by the Parties. |

- 38 -