**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

**JOINT STATUS REPORT REGARDING THE PARTIES' PROPOSED DISCOVERY AND CASE MANAGEMENT ORDERS**

Pursuant to the Court's May 27, 2026 Order, ECF No. 730, the parties have met and conferred and are unable to agree on a proposed case schedule. A comparison of the parties' proposals is attached as Exhibit A; Defendants' proposed scheduling order is attached as Exhibit B; and Plaintiffs' proposed scheduling order is attached as Exhibit C.[1] The parties' respective position statements are below.

**Defendants' Position**

The active cases in the MDL proceeding currently include 40 plaintiffs and 19 defendants in discovery. And the discovery being sought is enormous and complex, involving a number of substantive and procedural issues related to the scale of document discovery, parameters related to e-discovery search terms, custodians, noncustodial sources, an unprecedented volume of structured data over a 15-year period, source code production, and more. This case has become even larger and more complex through recent, numerous and seriatim motions to amend by both the DAP and putative Class Plaintiffs—which both sets of Plaintiffs have admitted were filed late

---

[1] Row numbers set forth below are provided for the Court's ease of reference, and relate to the rows in Exhibit A, comparing the parties' two proposed schedules.

in the proceeding for strategic reasons. All of this, of course, is background for the 290 party depositions that were set by the Court (set prior to the recent amendments, and not including the expected non-party depositions), only 1 of which has been taken to date.

The Court has asked the Parties to provide their views on a realistic extended schedule, given this scope and the recent addition of parties to the litigation through Plaintiffs' amended complaints. Defendants believe that the amended case schedule must provide time commensurate with the needs of this case and a structure that will enable the parties to meet their deadlines. Defendants' schedule is as compressed as possible while still being realistic for the parties to actually accomplish. Defendants' proposal does not "fundamentally rewrite the structure of the existing schedule," as Plaintiffs claim, but instead reflects a plan adequate to progress this MDL given the scale of the litigation and the parties' experiences in discovery to date. Plaintiffs' schedule provides neither the requisite time nor structure that discovery in a case of this scale requires.

Defendants provide below their positions on the parties' four main disputes: (1) the close of fact discovery, (2) related interim deposition notice deadlines necessary to hit Defendants' schedule, (3) the deadline for Defendants' rebuttal expert reports on any affirmative defenses, (4) the deadline for additional requests for production, (5) the deadline for any motions to amend the pleadings; and (6) the deadline for resolving disputes before E-Discovery Special Master Grossman.

### 1. Overall Case Schedule — Close of Fact Discovery and First Trial [Rows 13 through 28]

The parties' principal dispute is over the time needed to complete fact discovery, given Plaintiffs' recent changes to the case and the amount of time in particular it has taken to resolve various discovery-related issues involving document production by the now-selected 36 DAP

Discovery Bellwether Plaintiffs. This dispute implicates all subsequent dates, including the date of the first trial.

Plaintiffs propose that fact discovery will end on May 27, 2027, less than ten months after the substantial completion deadline for the parties' Third Set of RFPs and structured data (for those parties not recently added to Putative Class Plaintiffs' amended complaint). That is simply not enough to complete discovery in a case of this scale, particularly given (1) the (up to) 290 party fact depositions and large number of non-party depositions to be taken[2] and (2) the additional time needed to account for the addition of new Plaintiffs and Defendants in the recently-filed amended complaints. And it reflects the same unrealistic approach that Plaintiffs have repeatedly taken, proposing extremely condensed schedules that they know cannot be met, which has necessitated repeated extensions of the case schedule. *See, e.g.,* ECF Nos. 577, 606, 636; December 12, 2025 Hr'g Tr. 9:1-15:23; August 22, 2025 Hr'g Tr. 26:14-27:21 (discussions on status of document and data productions, bellwether DAP discovery and overall case scheduling).

Defendants' schedule, with a fact discovery close of July 21, 2027, provides a tight (given the demands of the case) but realistic amount of time to accomplish discovery. Most parties are scheduled to substantially complete production of documents and data on July 30, 2026, with privilege logs to follow on September 17. This means that even under Defendants' schedule, there is less than a year from the interim substantial completion deadlines (for most parties, but not those recently added) to complete depositions and all other fact discovery. There are three primary reasons this amount of time is the minimum necessary given the task at hand.

*First*, the schedule must build in enough time to conduct well over 300 depositions. *See* ECF No. 663 at 8 (Plaintiffs and Defendants may each take up to 145 total fact depositions). The

---

[2] As of June 3, 2026, Plaintiffs alone have served 37 subpoenas on non-parties.

parties will start taking depositions as soon as they are able. But the daily (or double-tracked) depositions necessary even under Defendants' schedule will likely not begin until October 1 given the July 30 substantial completion deadline, the overall volume of documents produced (likely to be well into the millions), the need to resolve disputes that may arise after substantial completion, and the need to coordinate depositions (particularly those of 30(b)(6) and 30(b)(1) witnesses).

Under Defendants' schedule, there would be just under 200 business days to complete 300+ depositions, which would require *daily* depositions, with double-tracked depositions on most days. Plaintiffs' schedule includes *just over 160* business days to complete those depositions, requiring double-tracking on virtually every day. That schedule leaves no room to resolve scheduling or other issues that inevitably appear in complex, deposition-heavy cases. It would inevitably require yet another extension in the schedule (and lead to inefficiencies along the way).

*Second*, Plaintiffs' schedule fails to account for the addition of new parties. Putative Class Plaintiffs' amended complaint added (1) two new putative class representatives and (2) five new defendants, including two related entities (Centene and Health Net) that had not been involved in discovery to date. *See* ECF No. 722. Moreover, DAPs have moved to add up to 15 additional defendants to 10 of the discovery bellwethers, which they acknowledge will require some additional document and data discovery. ECF No. 727 at 5-6.

It will take many months for the parties, in particular Centene and Health Net, to catch up—investigating sources of data, negotiating search terms and custodians, and ultimately reviewing and producing documents. Because of the volume of discovery in this case, the upcoming substantial completion deadline for most parties is *a full year* after they received the most substantial requests for production (and the relevant structured data requests). It would be impossible, not to mention unfair, to require Centene and Health Net to complete in several months

4

what took other parties a year. The Court acknowledged as much at the May 15, 2026, status hearing, noting that there was "[a]bsolutely no question" that it would be necessary to "add time onto the schedule to allow Centene and the other defendants to catch up." May 15, 2026, Hr'g Tr. at 13:2-14.[3]

Defendants' proposal does not provide a full year to complete document discovery, given that productions will have to be complete well in advance of the proposed July 21, 2027, close of fact discovery. But it does provide Centene and Health Net roughly 9 months to substantially complete productions (by late February, or so) and then complete depositions and other fact discovery over the subsequent 5 months. Plaintiffs' proposal would require Centene and Health Net to complete fact and document discovery in far less time, which is simply not feasible, as illustrated by the experience of the other Defendants in the litigation.

*Third*, Defendants have serious doubts that Plaintiffs will be able to meet their own proposed schedule. DAPs represented to Defendants in January of this year—when the parties were discussing an earlier short extension to some of the then-current deadlines—that they could substantially complete document productions by February. In reality, a majority of the bellwether DAPs only began reviewing documents approximately a month ago because they refused to begin review until *all* search terms were finalized, and the certain bellwether DAPs only recently produced the organizational charts necessary to finalize custodian negotiations. The idea that DAPs are going to complete their discovery obligations, under the compressed schedule proposed

---

[3] New putative class action defendants Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA"), Aware Integrated, Inc. and BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota (together, "BCBSMN"), and CareFirst, Inc. are expanding their structured claims data collection as a result of the putative class action amendment. As discussed with Plaintiffs and the Court, this expansion will require significant additional work and time beyond July 30, 2026 for substantial completion. The parties are continuing to meet and confer regarding the scope and timing of that production, including the anticipated deadline for that production later in 2026.

by Plaintiffs, is detached from both the history of this proceeding and the current state of Plaintiffs' progress.

### 2. Deposition Notice Deadlines [Rows 8, 9, and 11]

Plaintiffs' resistance to reasonable deadlines for the parties to serve deposition notices exacerbates the broader problems with their schedule. To complete 300+ depositions within the schedule proposed by Defendants (and even more so with respect to the schedule proposed by Plaintiffs), the parties will need to get off to as quick a start as possible, which is why Defendants have proposed that each side serve their 30(b)(6) deposition notices and identify a preliminary list of at least 80 expected deponents by September 22, 2026, and absent good cause serve all deposition notices in April 2027. This should be feasible given the mountain of discovery and information produced in this case to date, but Plaintiffs are only willing to serve their 30(b)(6) notices in January 2027, will only commit to providing a list of 50 expected deponents in September, any will not agree to any deadline to identify other potential deponents, even one that is less than two months before their proposed close of fact discovery.

Plaintiffs' proposed schedule for 30(b)(6) notices—which leaves only four months for them to be completed after the notices are served—is particularly problematic. Once those notices are served, it will likely take months for the parties to prepare their objections, meet and confer about them, and then then have any disputes resolved by the Court. Moreover, the parties will also likely need many months to identify and prepare witnesses to testify on topics that are likely to be far-ranging and extensive. And serving 30(b)(6) notices well into the deposition period will not allow the parties to coordinate 30(b)(6) and 30(b)(1) depositions so that individuals being deposed in both manners will not have to be separately prepped for and sit through depositions multiple times, potentially many months apart. The far better course, and the only course that

gives the parties a realistic chance completing depositions within the timeframes proposed, is for the parties to serve 30(b)(6) notices early in the deposition period.

### 3. Deadline for Additional Requests for Production [Row 10]

Defendants' proposed deadline to serve any additional requests for production—January 11, 2027—provides time for the parties to assess additional information requests developed in the course of reviewing produced documents and taking depositions, while also leaving time for the producing parties to go through the necessary process of responding to the requests, potentially meeting and conferring with the requesting party, investigating with clients, and then actually producing the materials in time for the requesting party to review them ahead of the close of fact discovery.

Plaintiffs' proposed date of March 8, 2027, is simply unnecessary given the discovery that has already taken place in this case. Plaintiffs have already issued up to 92 requests for production to certain Defendants. The parties have already produced many hundreds of thousands of documents. And by January 2027, the parties will have already taken many depositions and had months to sift through the millions of documents that will be produced in this case. There is no need for additional time to serve written discovery.

### 4. Expert Report Deadlines [Rows 14-17]

The longstanding expert report exchange schedule in this matter contemplates a sequence in which (1) Plaintiffs serve their expert reports; (2) Defendants serve their expert reports; and (3) Plaintiffs serve rebuttal reports. *See* ECF Nos. 450, 652. Defendants' proposal maintains this cadence: the only proposed change to this structure (which has been in place for nearly a year) is

7

to add a potential rebuttal report on affirmative defenses.[4]  Plaintiffs' proposal completely changes *all* expert report deadlines, requiring Defendants to serve any reports regarding affirmative defenses at the same time as *Plaintiffs'* opening reports.  There is no basis to alter that core structure that the parties agreed upon and the Court approved.  It does not make sense to require Defendants to serve opening reports on their affirmative defenses at the same time as Plaintiffs' opening reports because the scope of affirmative defenses, and the necessity of expert opinions to support those affirmative defenses, may be affected by Plaintiffs' experts' opinions disclosed in their expert reports.  The better course is for Defendants to disclose expert opinions regarding affirmative defenses at the same time as Defendants' rebuttal reports on class certification and merits issues, and then have a separate rebuttal report deadline to respond to Plaintiffs' experts' opinions regarding affirmative defenses, if any.

### 5.  Amendment Deadline [Rows 1, 2 and 6]

The Court expressly ordered that May 22, 2026—a date which Plaintiffs volunteered— would be the deadline for "[a]ny further motions to amend."  ECF No. 721.  That order does not leave room for additional deadlines for hypothetical additional amendments, nor is there any reason to provide Plaintiffs with a *second* deadline to amend their complaints for purposes other than adding parties.

The parties have already raised and the Court has already recognized the discovery problems that would ripple out from additional amendments late in the process.  *See* May 15, 2026 Hr'g Tr. 29:8-22.  The deadline for motions to amend has passed, and Plaintiffs' proposed additional deadline is unwarranted.

---

[4] Contrary to Plaintiffs' assertion, this would not be "sur-replies."  The substance of any such report would (as the schedule reflects) pertain to the affirmative defense opinions presented in Defendants' opening reports and responded to (for the first time) in Plaintiffs' rebuttal reports.

**6. Deadline for Resolving Disputes Before the E-Discovery Special Master [Row 3]**

At the last status hearing, the Court instructed the parties to propose a date by which disputes before the Special Master would be resolved. May 15, 2026 Hr'g Tr. 53:4-9. Defendants have proposed a date certain for that process. Plaintiffs are attempting to make this deadline illusory by inserting language allowing the parties to directly "revisit" any matter previously referred to the special master without separately filing a motion and/or asking for a referral. Plaintiffs may seek any relief they believe is appropriate, regardless of the content of the scheduling order. But they should not be able to seek *new* relief before the special master without raising them with the Court. Any such disputes will necessarily be (at least somewhat) different in scope than those previously decided by the special master, such that the dispute should have to be raised again. *See* ECF No. 593 ¶ 2 (describing the process for referring disputes to the special master).

## Plaintiffs' Position

After the Court granted the Parties' joint request to extend the "substantial completion" deadlines by two months, the Court directed the parties to negotiate an extension of the case schedule in light of amendments to add Defendants (only two of which were not already in active discovery). *See* May 18, 2026 Tr. at 51:4-20. At the Court's direction, and in the interest of compromise with Defendants, Plaintiffs propose a substantial four-month extension that closely hews to the structure and logic of the existing schedule, which was the subject of extensive negotiations and briefing a year ago.

Defendants, by contrast, propose a six-month extension of the existing schedule, and a rewrite of its structure to add several defense-friendly deadlines. Nothing justifies such an extensive rewrite of the existing schedule. Nonetheless, as explained below, Plaintiffs have

proposed reasonable compromises for certain additional deadlines. Plaintiffs respectfully ask the Court to extend the schedule by four months and reject Defendants' proposals.

### 1. The Overall Extension of the Case Schedule

Plaintiffs propose extending the existing schedule by approximately 120 days. This proposal would move the fact discovery deadline from January 29, 2027 to May 27, 2027—nearly 10 months after the July 30, 2026 substantial completion deadline. That gives more time to take depositions than the preexisting schedule—and more than Defendants initially requested. *See* ECF 652 (setting fact discovery close 7 months after substantial completion); ECF 432 at 8, 31 (Defendants requesting fact discovery close 8 months after substantial completion). Fact depositions can be completed in ten months, especially where, as here, the need to multitrack depositions is expressly contemplated by the Deposition Protocol. ECF 664 at § 4a.

Defendants' request for a longer extension rests on the same arguments that the Court rejected when it allowed multitracked depositions over Defendants' objection. Defendants' arguments are even less compelling now, given that Plaintiffs propose more time to complete depositions. *See* ECF 511 at 7. Defendants also exaggerate the impact of recent amendments. Not a single new theory or claim has been added to the complaints. And all but two of the Defendants named in recent amendments were already in active discovery and were certain to be deposed. And Defendants represent that productions for the other two (Centene and Health Net) will be substantially complete by February, three months before Plaintiffs' proposed close of fact discovery.[5] As to the DAP Bellwethers, Defendants ignore that they prolonged search term

---

[5] The incremental additional discovery to be completed by the other Defendants named in recent amendments is limited and can likely be completed by year-end: the Blues Defendants added by the Class have suggested, based on a preliminary investigation, they can likely complete structured data productions in the fall, and discovery necessitated by DAP Bellwether amendments is limited

negotiations; now that these disputes have been resolved, productions are on track for the agreed July 30 deadline.[6]

None of Defendants' arguments justify delaying trial and, ultimately, awarding relief to the healthcare providers who are subject to the massive and ongoing antitrust violations at issue in this case. Plaintiffs respectfully ask the Court to order their compromise extension of 120 days.

### 2. New Disputes Caused by Defendants' Revision of the Case Schedule

#### a. Interim Deadlines for Deposition Notices

Neither the existing schedule nor the Deposition Protocol impose deadlines for noticing fact depositions, provided depositions are completed by the fact discovery cutoff. Defendants, however, now ask the Court to impose deadlines for: (a) both a preliminary list of 80 fact depositions and service of all 30(b)(6) depositions nine months before the close of fact discovery; and (b) all remaining deposition notices three and a half months before the close of fact discovery (absent good cause). These new deadlines would hamstring Plaintiffs' ability to tailor their deposition strategy to the discovery record as it develops; are likely to generate unnecessary disputes about who may be deposed and who may not; and are unnecessary because Plaintiffs have every incentive to complete depositions promptly.

The Deposition Protocol already addresses how and when the parties will notice 30(b)(6) and fact depositions, as well as a process for scheduling. *Id.* at §§ 3(b) and 4(a). Defendants never explain why the processes they agreed to in March are no longer workable. The experienced

---

to (1) slightly expanded search terms for a limited number of Payors; and (2) additional claims data from five Defendants requiring additional tax ID runs.

[6] Defendants also misleadingly suggest the two "replacement" Bellwether DAPs (Wayne Lee and Douglas M. Monasebian) have delayed producing organizational charts. Counsel for those DAPs have repeatedly told Defendants that these DAPs (small practices) do not maintain "organizational charts" and produced other information to identify potentially relevant personnel in Spring 2025.

lawyers in this case are capable of scheduling depositions without artificial deadlines, as has been done in other cases involving a similarly large number of parties and depositions. For example, in *Henry v. Brown University*, this Court permitted Plaintiffs to take 170 depositions of Defendants on a similar case schedule, with no interim deadlines for serving deposition notices. *See* No. 1:22-cv-00125, ECF Nos. 217 (N.D. Ill. Sept. 17, 2022); 273 (N.D. Ill. Jan. 12, 2023).

Nonetheless, in an effort to compromise, Plaintiffs have agreed to include Defendants' September 22, 2026 deadline for service of a first tranche of deposition notices. But given how much time remains for discovery, Plaintiffs propose that 50 Rule 30(b)(1) deposition notices per side (a little over a third of the 145-per-side allowance) need be served as of that date, rather than the 80 Defendants demand.[7] Similarly, Plaintiffs have compromised to add a deadline for service of Rule 30(b)(6) deposition notices. But Plaintiffs propose a deadline of 4 months prior to the close of fact discovery, rather than the 11 months (September 22, 2026) Defendants demand. Defendants have ample resources to prepare appropriate witnesses within this period. Defendants' preference to coordinate all 30(b)(6) and 30(b)(1) depositions does not warrant forcing Plaintiffs' hand at the outset of depositions.[8]

What Plaintiffs have not agreed to is Defendants' additional demand for a hard deadline to serve all deposition notices months before the end of fact discovery. Plaintiffs recognize that depositions should be noticed with enough time to schedule them. But imposing an artificial and firm deadline in the middle of the deposition period would undermine one principal purpose of

---

[7] Plaintiffs also have suggested filing a joint status report on the progress of depositions approximately halfway between substantial completion and the fact discovery deadline so that the Court can be assured discovery is proceeding apace.

[8] Plaintiffs will, of course, cooperate to coordinate Rule 30(b)(1) and 30(b)(6) depositions of individual witnesses where feasible. But the desire to coordinate dates for the minority of witnesses who will also serve as Rule 30(b)(6) representatives does not justify forcing Plaintiffs to serve their one Rule 30(b)(6) deposition notice per Defendant so early in discovery.

"discovery itself," which is "designed to help define and clarify the issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The evolution of facts during depositions necessitates flexibility to pursue follow-up depositions. Plaintiffs have no incentive to or interest in delaying depositions. But Defendants' proposal hamstrings Plaintiffs' right to conduct follow-up by locking in the full roster of deponents months before the close of fact discovery for no other reason than hypothesized scheduling difficulties.

It is no consolation that Defendants' proposal would permit Plaintiffs to serve additional deposition notices for "good cause." A "good cause" standard is what a party must meet to obtain a protective order; it does not exist under Rule 30(b)(1) and will inevitably burden the Court with disputes, leading to <u>more</u> delay. The Rules provide for the inverse—Defendants can seek a protective order for "good cause" to prevent undue burden or expense. Fed. R. Civ. P. 26(c). And unlike a motion for a protective order, shifting the burden to Plaintiffs to show "good cause" would invade attorney work product by requiring Plaintiffs to lay out why they want to take the deposition and why now, as opposed to earlier. These disclosures would disadvantage Plaintiffs by previewing the specific lines of questioning the witness will answer. Accordingly, the Court should not impose Defendants' proposed artificial deposition deadline.

### b. Defendants' Proposal to Shorten the Deadlines for Written Discovery

Plaintiffs' proposal also preserves the structure of existing deadlines to serve requests for production, 80 days before the close of fact discovery. This deadline reflects the ordinary practice of targeted, follow-up discovery, including based on depositions.

Defendants, by contrast, propose extending the time to serve additional requests for production by only one month—notwithstanding their request for an overall six-month extension. Under Defendants' proposal, any additional Rule 34 requests for production would be due January

11, 2027, less than halfway through the deposition period,[9] and more than six months before the close of fact discovery. Defendants' effort to shorten and restructure the previously-agreed cadence for additional Rule 34 requests is unreasonable on its face and unduly limits Plaintiffs' ability to follow up on what is learned at depositions and through document productions. Plaintiffs respectfully request that the Court reject Defendants' proposals.

### c. Defendants' Proposal to Add a New Expert Report Category

Plaintiffs' proposal also preserves the structure of existing deadlines for expert reports, which includes three deadlines—for opening reports, rebuttal reports, and reply reports. In contrast, Defendants seek to add a new, one-sided fourth category of expert reports (essentially, sur-replies) under the guise of extending the schedule. That request should be denied.

The sequence and number of expert reports was the product of extensive prior negotiation and was entered by the Court months ago. Defendants nonetheless use the current schedule extension as an occasion to insert a new expert report category that appears nowhere in the original sequence: "Defendants' Rebuttal Reports on Affirmative Defenses, if Any." This flips the burdens in a manner that benefits Defendants. Affirmative defenses are defenses on which Defendants have the burden of proof. These reports should not be rebuttal reports. They should be disclosed at the same time as Plaintiffs' expert reports that address matters on which Plaintiffs have the burden of proof. Plaintiffs' proposal reflects this clarification that the initial round of reports applies to any issue on which any party bears the burden of proof. *E.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 4451579, at *1, n.1 (N.D. Cal. July 20, 2025) (noting simultaneous exchange of Plaintiffs' expert reports on the merits and Defendants' expert reports on affirmative defenses);

---

[9] Assuming depositions begin in September or later, following the July 30 substantial completion of initial documents and data production.

*Fish v. Greatbanc Tr. Co.*, 2015 WL 14086489, at *1, n. 1 (N.D. Ill. Sept. 24, 2015) (ordering simultaneous exchange of initial expert testimony concerning affirmative defenses based on burden of proof). Defendants argue that "the scope of affirmative defenses" "may be affected by Plaintiffs' experts' opinions," but Defendants have already pleaded these defenses in response to Plaintiffs' causes of action; they do not need to see Plaintiffs' reports to determine whether they require expert testimony to prove them. Moreover, to the extent that such opinions are "affected" by Plaintiffs' expert reports in opposition, they already have an opportunity to provide a reply.

### d. Defendants' Attempt to Retroactively Cut Off Motions for Leave to Amend

The parties previously negotiated a case schedule in which Plaintiffs were permitted to seek leave to make substantive amendments to their pleadings within 60 days of the close of substantial completion of document discovery. Defendants seek to delete that from the case schedule by moving the deadline to amend pleadings to a date in the past (May 22, 2026), eliminating the possibility of any further amendments. In support of this position, Defendants cite the Court's Minute Order following the May 2026 status conference. ECF 721. However, Plaintiffs understood that the May 22, 2026, deadline applied only to motions seeking leave to amend to add parties to a complaint. *See* May 18, 2026 Tr. at 17:17-19:22; 27:4-29:1 (explaining that the Court was not "worried about" plans by a DAP to add or drop claims, as opposed to parties). Thus, Plaintiffs understood the May 22, 2026 deadline was not intended to prohibit other future amendments, such as to add or drop claims or causes of action. Accordingly, Plaintiffs' proposed revised schedule includes a separate deadline for amendments that do not seek to add parties, which extends the current deadline from July 16, 2026 to September 14, 2026, maintaining the cadence that the parties previously agreed and this Court previously ordered.

15

**e. Defendants' Attempt to Limit the Special Master's Authority to Resolve the Disputes Referred to Her**

The parties have spent the last six months working together and with the Special Master to address disputes referred to her. These disputes are nearing resolution, and the parties agree that the Special Master can decide the open issues by June 30, 2026. But discovery is ongoing, and the record may reveal that the Special Master had incomplete information. For example, Defendants claim that their collection of cell phones from only a small number of custodians is sufficient because it includes phones from every custodian whose phone they believe is likely to contain responsive, non-duplicative data. If documents or deposition testimony calls that assertion into question, Special Master Grossman should retain authority to revisit her decisions. Defendants' proposal, by contrast, would require the parties to burden the Court with issues that it had previously appointed the Special Master to address.

Dated: June 3, 2026

/s/ Sadik Huseny
Sadik Huseny (*pro hac vice*)
**LATHAM & WATKINS LLP**
300 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (737) 910-7300
sadik.huseny@law.com

*Defendants' Coordinating Counsel*

/s/ Christopher A. Seeger
Christopher A. Seeger
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*

/s/ Shawn J. Rabin
Shawn J. Rabin (*pro hac vice*)
**SUSMAN GODFREY LLP**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330

*Interim Class Liaison Counsel*