UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: MULTIPLAN HEALTH INSURANCE PROVIDER LITIGATION | Case No. 1:24-cv-06795 MDL No. 3121 |
| This Document Relates To: | Hon. Matthew F. Kennelly |
| ALL ACTIONS | |

## JOINT STATUS REPORT

The Parties submit the following joint status report pursuant to the Court's Minute Order dated May 15, 2026. ECF No. 721.

### I.      Pending Motions Before the Court

**A. Case Schedule.** Pursuant to the Court's instruction, ECF No. 721, the Parties submitted a joint status report with their respective proposals regarding a revised discovery and pretrial schedule and brief statements in support thereof. The joint submission is at ECF No. 742. Based on the Parties' ongoing negotiations before the Special Master regarding mobile device discovery, the Parties now respectfully propose that the date for resolving all disputes presently before the Special Master be set for July 15, 2026 (rather than June 30, 2026, as previously proposed). The Parties will be prepared to present their respective positions during the June 26, 2026 status hearing.

**B. Certain Direct Action Plaintiffs' Motions for Leave to File Amended Complaints.** Motion filed at ECF No. 727.[1] Blue Cross Blue Shield of Michigan filed a Response at ECF No.

---

[1] This motion was filed on behalf of ten Discovery Bellwether DAPs and 106 additional entities that are not Discovery Bellwether DAPs represented by Gilbert Legal, Napoli Shkolnik, and Seeger Weiss.

1

746 and Consociate and Benefit Plans Administrators jointly filed an Objection at ECF No. 747. Reply filed at ECF No. 750.

**C. Defendants' Motion for Leave to Amend Their Answers to Assert an Unclean Hands Defense.** Motion filed at ECF No. 668. Plaintiffs' opposition filed at ECF No. 675. Defendants' reply filed at ECF No. 684. The Court took the matter under advisement at the February 27, 2026 joint status conference.

**D. DAPs' Motion for Common Benefit Order.** The Parties' submissions are at ECF Nos. 408, 425, and 426. Additional submissions are at ECF Nos. 665 and 666. The Court previously held argument and took the matter under submission. ECF No. 507. The Court indicated at the May 15, 2026 status hearing that this motion would be addressed at the next status hearing and that no further argument is needed.

**II.      Update on Matters Before E-Discovery Special Master Grossman**

**A. Plaintiffs' Motion to Compel Defendants to Conduct a Reasonable Search for Text Messages.** Motion filed at ECF No. 647.[2] Defendants' opposition filed at ECF No. 656. Pursuant to the Court's March 2, 2026 Minute Order, ECF No. 662, the Parties' dispute concerning the production of text messages is pending before Special Master Grossman. Following the Parties' April 13, 2026 disclosure of the custodians whose cell phones they have agreed to collect and search, DAPs' portion of this motion has been resolved. The remaining dispute between Proposed Class Plaintiffs and Class Defendants has been briefed before Special Master Grossman, and a working session with Special Master Grossman was held on June 15, 2026.  The Parties are

---

[2] Plaintiffs' motion also sought to compel the production of centralized travel and expense records. This portion of Plaintiffs' motion was resolved at the February 27, 2026 status conference. ECF No. 662.

continuing to discuss and will be prepared to provide an update to the Court at the June 26, 2026 status hearing.

**B. Text Message Search Protocol.** At the Parties' request, this issue was referred to Special Master Grossman at the May 15, 2026, status conference. ECF No. 721. The issue has been briefed before Special Master Grossman. The Parties had a working session with Special Master Grossman on June 15, 2026. At the conference, Special Master Grossman ordered a further exchange of information between the Parties regarding the proposed scope of the cell phone searches. Special Master Grossman scheduled a follow up session for June 29, 2026. The Parties will be prepared to provide an update to the Court at the June 26, 2026 status hearing, including as to an expected finalization date as to this issue.

## III.     Additional Joint Status Conference Topics

### A. MultiPlan's Source Code Production.

**Plaintiffs' Position:** MultiPlan has yet to commit to a date certain by which it will produce source code related to its out-of-network repricing services. Accordingly, Plaintiffs request that the Court order MultiPlan to provide a date by which it will make its source code available for inspection at Latham & Watkins' Los Angeles and Austin offices for Class Plaintiffs' and DAP's expert, respectively.

Plaintiffs understand the producing source code for inspection may be a time-consuming task. However, MultiPlan agreed to produce its source code for inspection at its outside counsel's offices over 8 months ago. And even after this initial inspection, the Parties may need to have further discussions concerning access to the source code. *See* ECF No. 721 (directing the Parties

to proceed with source code discovery "as proposed by defendant without prejudice to a later request by plaintiffs"). Accordingly, the Court should set a deadline for production.[3]

**MultiPlan's Position.** As has been communicated to Plaintiffs, MultiPlan has been diligently working to identify and pull the source code for its Data iSight and Viant services so that it can promptly produce that code to Plaintiffs in a clean room setting. This process has been occurring simultaneously with MultiPlan's production to Plaintiffs of an enormous amount of structured data (the first such production, which includes nearly 7 billion records, occurred on June 4, 2026) and MultiPlan's production of over 1.8 million pages of documents, to date, in response to Plaintiffs' RFPs, many of which have a substantial completion deadline of July 30, 2026.

As the Court knows, the parties did not agree on the source code production issues "8 months ago," and it is misleading for Plaintiffs to claim such. Plaintiffs not only sat on a draft of the source code protective order for months by refusing to coordinate or resolve drafts between DAPs and the Class, they fundamentally changed or expanded their position on the scope and extent of any source code production multiple times (and have since issued entirely new RFPs related to source code), including by at one point, insisting that a "source code" production would need to be so expansive that it would allow Plaintiffs' experts to create a full scale replica of Data

---

[3] MultiPlan persuaded this Court to require source code review at its outside counsel's offices, rejecting Plaintiffs' proposal to receive the code and establish their own clean rooms at their experts' separate offices, by representing that the outside-counsel clean room approach would "Eliminate—Not Just Manage—Risks to the Producing Part[y]." ECF No. 710 at 24. Having won that approach on the representation that it eliminates risk, MultiPlan cannot now invoke security risk to refuse to make its source code available in both Los Angeles and Austin. Nor can MultiPlan complain about the costs of establishing two clean rooms to mitigate the burden of cross-country travel on Plaintiffs' expert teams: those costs exist only because MultiPlan rejected Plaintiffs' proposal and insisted on on-site review, and a second location is necessary to mitigate the burden on Plaintiffs. MultiPlan cannot have it both ways by both selling its clean room as risk-eliminating to defeat Plaintiffs' proposal, then claiming residual risk and burden to deny Plaintiffs a workable means of conducting the very review MultiPlan demanded. Plaintiffs remain willing to bear the expense of hosting the source code at their outside expert's offices to mitigate MultiPlan's expense.

iSight and "run it" over the massive amounts of produced data in the case. The Court resolved this dispute by granting MultiPlan's request to produce its source code in a clean room setting, but Plaintiffs' requests and the uncertainty surrounding them had material consequences for MultiPlan's ability to fully investigate the scope of any source code production along the way. Despite this, MultiPlan has been working with all haste for months, in light of the current interim deadlines on an enormous amount of other discovery, to gather and produce source code.

The Court does not need to set interim deadlines related to source code production—this is something the parties can and should work through in ordinary course. MultiPlan is particularly mindful of the cost and burden—to both sides—that will accompany the source code inspection process, and is focused on ensuring that the ultimate source code produced to Plaintiffs is fulsome and includes information that Plaintiffs have emphasized is important to their experts' analysis (within the confines of the Court's May 15 Minute Order adopting Defendants' source code protective order (ECF No. 721)). MultiPlan's ongoing investigation will ensure that Plaintiffs' ultimate inspection is efficient, productive, and minimally burdensome for everyone.[4]

This process, however, is time intensive, and it is still underway. As MultiPlan communicated to Plaintiffs, as a practical matter, the relevant code for Data iSight and Viant includes stored procedures and associated logic spanning three functional areas: routing, pricing, and rate builds. The code for these functional areas does not live in a single location and is not

---

[4] As has been communicated to Plaintiffs, MultiPlan will make the source code available for inspection at one site of Plaintiffs' choosing. The reinspection period contemplated in the protective order makes two sites nearly impossible to facilitate, and the cost, burden, and security risks involved in two sites are disproportionate and unnecessary. As the Court has expressed and Plaintiffs' counsel has acknowledged, discovery "needs to be coordinated as much as is humanly possible." *See* June 17, 2025 Hr'g Tr. 30:11-17; Aug. 29, 2024 Hr'g Tr. 24:24-25:2 ("We understand there's got to be substantial coordination between the class and the direct action [plaintiffs].").

maintained in consistent formats. Further complicating collection, Plaintiffs seek source code going back many years, which MultiPlan is also investigating.

Given this backdrop, Plaintiffs' insistence that MultiPlan arbitrarily pick (or the Court impose) right now a future final production date is unreasonable and counterproductive. MultiPlan will commit to providing Plaintiffs with an expected timeline for production—and a date certain for the clean room review—as quickly as practicable following the results of its ongoing investigation, but it simply cannot reasonably do so now. In the meantime, MultiPlan will keep discussing these issues with Plaintiffs, and intends to provide a further update for the Court at the next status conference.

**B. Travel and Expense Records Production Update.** Motion filed at ECF No. 647. Defendants' opposition filed at ECF No. 656. Pursuant to the Court's instruction, the Parties have been meeting and conferring regarding the search methodology to be used to search Defendants' travel and expense records maintained on centralized systems. ECF No. 647; Feb. 27, 2026 Hr'g Tr. 85:28-22. To the extent the Parties are unable to resolve their disputes, the Parties will crystallize their disputes in advance of the next status conference.

**C. Phone Number Protective Order.** The Parties have exchanged multiple drafts of a protective order governing custodian and non-custodian phone numbers and related records produced in response to Rule 45 subpoenas. The Parties are continuing to meet and confer to resolve a handful of outstanding issues. Plaintiffs have served an initial set of subpoenas to cell phone carriers limited to phone numbers associated with custodians identified by Defendants in response to Interrogatory No. 9. The Parties are still negotiating the protective order and will be prepared to provide an update to the Court at the June 26, 2026 status hearing.

**D. DAP Discovery Related to Recent Motions to Amend Adding Additional Defendants.**

Since April, 13 Bellwether DAPs have amended or sought to amend their complaints to add defendants. Those DAPs and Defendants have discussed changes to those DAPs' discovery obligations due to those amendments. The parties are close to an agreement on these issues. If they are unable to reach an agreement, they will inform the Court.

**E. Proposed Class Plaintiffs' Discovery Related to Motion to Amend Adding Additional Defendants.** Since the May 15, 2026 status conference, at which the Court granted leave to add Douglas Psychotherapy Services LCSW PC d/b/a Humantold Psychotherapy PC ("Humantold") and Carnegie Hill Psychiatry PC ("Carnegie Hill") as additional Proposed Class Plaintiffs, Defendants have been meeting and conferring with Class Plaintiffs regarding discovery issues specific to those entities. Those discussions remain ongoing, and disputes may still be brought at a later date.

Dated: June 18, 2026

/s/ Sadik Huseny

Sadik Huseny (*pro hac vice*)

**LATHAM & WATKINS LLP**

300 Colorado Street, Suite 2400

Austin, TX 78701

Tel.: (737) 910-7300

sadik.huseny@lw.com

*Defendants' Coordinating Counsel*

/s/ Shawn J. Rabin

Shawn J. Rabin (*pro hac vice*)

**SUSMAN GODFREY LLP**

One Manhattan West, 50th Floor

New York, NY 10001-8602

Tel.: (212) 336-8330

srabin@susmangodfrey.com

*Interim Class Liaison Counsel*

/s/ Christopher A. Seeger

Christopher A. Seeger

**SEEGER WEISS LLP**

55 Challenger Road 6th Fl.

Ridgefield Park, NJ 07660

Tel.: (973) 639-9100

cseeger@seegerweiss.com

*Plaintiffs' Coordinating Counsel*