**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re MULTIPLAN HEALTH | ) | |
| INSURANCE PROVIDER | ) | **Case No. 24 C 6795** |
| LITIGATION | ) | |

<u>**CASE MANAGEMENT ORDER NO. 37 –**</u>
<u>**Memorandum Opinion and Order on proposed common-benefit order**</u>

MATTHEW F. KENNELLY, District Judge:

To ensure coordinated and manageable pretrial proceedings in multidistrict

litigation (MDL), MDL courts often appoint a subset of lawyers to lead the litigation.

That creates a potential free-rider problem. The lead lawyers invest substantial time,

effort, and money into litigating issues that advance all the MDL cases, not just their

own. But each of these lawyers stands to gain only from the resolution of their own

cases. The lead lawyers thus risk being undercompensated relative to the work they

performed, with the missing compensation going to lawyers who may have been less

involved. To address this problem, MDL courts often enter what are known as

common-benefit orders, which impose holdbacks (*i.e.*, assessments) on individual

recoveries to create a common-benefit fund. The fund can then be used to compensate

lawyers for work that had a common benefit for cases across the MDL.

In this MDL, which the Court presumes familiarity with, there are two sets of

plaintiffs: direct action plaintiffs (DAP) and a putative class. *See generally In re*

*MultiPlan Health Ins. Provider Litig.*, 789 F. Supp. 3d 614 (N.D. Ill. 2025) (providing

background on the MDL). DAP leadership have submitted a proposed common-benefit

order that would apply among themselves but not to interim class counsel, an

arrangement both sets of lawyers agree on.

Defendants dispute four aspects of the proposed order, joined by interim class counsel on the third issue: (1) whether it is proper to order holdbacks from recoveries in cases outside the MDL, if the case involves the same challenged conduct and the plaintiff's lawyer also represents a DAP in the MDL; (2) whether there should be holdbacks for non-monetary relief; (3) whether to specify now that plaintiffs that opt out of the putative class, if and when it is certified, will be subject to the common-benefit order; and (4) whether work-up of bellwether cases is eligible to be treated as common-benefit work. The Court addresses each in turn.

## A. Out-of-MDL holdbacks

The DAPs' proposed order would apply to "all cases now pending, as well as to any case later filed in . . . , transferred to, or removed to this Court and treated as part of the [MDL]." Notice of Lodging of Proposed Case Mgmt. Orders, Ex. A (DAP Proposal), dkt. 408 ¶ 3. The proposed order also would apply to "each attorney who represents a Plaintiff with a case now pending in or later filed in, transferred to, or removed to this Court, including attorneys who sign [a] 'Participation Agreement' . . . and those who do not." *Id.*

The proposed order distinguishes between attorneys who sign a participation agreement (participating counsel) from those who do not. Participating counsel may be assigned to perform common-benefit work. *Id.* ¶ 13. Only participating counsel are eligible for reimbursement for common-benefit work and associated costs. *Id.* ¶¶ 6–7, 22. And importantly, participating counsel gain access to common-benefit work product but are prohibited from sharing that work product with non-participating counsel, subject

2

to certain exceptions. *Id.* ¶ 8; *id.*, Ex. 1 (Participation Agreement) ¶¶ 6–7, 10. In a nutshell, participating counsel agree to pool their efforts and litigate collectively; non-participating counsel do not.[1]

There seem to be no objections to these parts of the proposed order, but they provide important context for the dispute, which arises from the following provisions. The DAPs' proposed order would apply to "all federal and state claims concerning the conduct alleged in the DAP Master Complaint ('Covered Claims') for which each such attorney is counsel, regardless of whether the Covered Claims of the client at issue have been filed in the MDL." DAP Proposal ¶ 4. A later paragraph in the proposed order specifies that this would apply to both participating and non-participating counsel:

> The Assessment shall apply to all of the Covered Claims for clients of the attorneys who are subject to this Order (regardless of whether the attorney is either Participating or Non-Participating Counsel), whether as sole counsel or cocounsel, including Covered Claims asserted in cases pending in the MDL, pending elsewhere, unfiled, or tolled.

*Id.* ¶ 46. These provisions would impose holdbacks from recoveries in every case challenging the same conduct by the defendants—even cases outside the MDL (such as those in state courts)—if the plaintiff's attorney also represented a DAP in the MDL.

Defendants contend that the Court lacks authority to impose holdbacks in cases outside the MDL. As another district court has observed, "[i]dentifying the source of the power" to impose common-benefit orders helps define "how far that power can reach." *In re Roundup Prods. Liability Litig.*, 544 F. Supp. 3d 950, 957 (N.D. Cal. 2021). DAP

---

[1] Non-participating counsel are still subject to fee reapportionment because this siloing is imperfect: non-participating counsel may still benefit from the efforts of participating counsel if, for example, participating counsel secures a favorable legal determination that applies across claims.

leadership relies upon two potential sources of authority:  the common-fund doctrine and courts' inherent powers.[2]  These permit the Court to impose holdbacks from recoveries outside the MDL obtained by participating counsel.  But they do not permit the same regarding non-participating counsel.

### 1.      Common-fund / common-benefit doctrines

Under the common-fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common-fund doctrine is derived from traditional equitable practice and "stands as a well-recognized exception" to the American Rule that each party generally bears its own attorney's fees.  *Id.*

Early Supreme Court cases applied the common-fund doctrine when a plaintiff's lawsuit established the rights of others to assets in a fund brought before a court for administration.  *See Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532–33 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124–25 (1885).  In *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939), the Court suggested that the doctrine had a more expansive reach, applying it on the basis that the plaintiff's lawsuit "necessarily" established the claims of others "through stare decisis," even if it did not formally create a fund.  *Id.* at 166–67.  The Court said:

> Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in [applying the common fund doctrine].  But when such a fund is for all practical

---

[2] DAP leadership do not rely upon the MDL statute, 28 U.S.C. § 1407, which courts have rejected as a separate source of authority to impose common-benefit orders.  *See In re Genetically Modified Rice Litig.*, 764 F.3d 864, 873 (8th Cir. 2014); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992).

> purposes created for the benefit of others, the formalities of the litigation—
> the absence of an avowed class suit or the creation of a fund . . . through
> stare decisis rather than through a decree—hardly touch the power of equity
> in doing justice as between a party and the beneficiaries of his litigation.

*Id.*

In *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), the Court, citing *Sprague*, reiterated that the common-fund doctrine may apply even if the lawsuit does not "actually bring money into the court." *Id.* at 392. But it also seemed to add a limiting principle to *Sprague*'s sweeping stare-decisis rationale, describing *Sprague* as a case in which the plaintiff's success would have a "stare decisis effect entitling others to recover out of *specific* assets of the same defendant." *Id.* at 393 (emphasis added). *Mills* also identified another line of cases that "departed further from the traditional metes and bounds of the doctrine," involving litigation that "conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Id.* at 393–94; *see Hall v. Cole*, 412 U.S. 1, 5–6 (1973). Some courts have distinguished these two ideas as the common-fund doctrine and the common-benefit doctrine, respectively. *See, e.g.*, *Brzonkala v. Morrison*, 272 F.3d 688, 691 & n.* (4th Cir. 2001). That distinction is helpful to keep in mind, so this Court does the same.

The Supreme Court clarified the limitations of these doctrines in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975). There, the Court rejected an argument that a common-fund or common-benefit rationale permitted fee-shifting whenever a litigant acted as a "private attorney general" to vindicate "important statutory rights of all citizens." *Id.* at 241, 245, 264 n.39. Those doctrines, the Court said, "ill

5

suit[] litigation in which the purported benefits accrue to the general public."  *Id.* at 264

n.39.  The Court went on to identify several limiting characteristics from its "common-

fund and common-benefit decisions":  (1) they involved "classes of beneficiaries [that]

were small in number and easily identifiable"; (2) "[t]he benefits could be traced with

some accuracy"; and (3) "there was reason for confidence that the costs could indeed

be shifted with some exactitude to those benefiting."  *Id.*  In *Boeing*, the Court reiterated

those conditions and held that they are satisfied when "each member of a certified class

has an undisputed and mathematically ascertainable claim to part of a lump-sum

judgment recovered on his behalf."  *Boeing*, 444 U.S. at 479–80.

Turning to this case, the common-fund doctrine does not apply because the

proposed order here would reapportion fees regardless of whether the litigation

produces a discrete common fund from the defendants' specific assets, such as a fund

the defendants agree to establish as part of a global settlement.  *See id.*; *see also Mills*,

396 U.S. at 393; *Roundup*, 544 F. Supp. 3d at 959–60 ("[P]reemptively creating a

common benefit fund and requiring holdbacks seems quite different from the historical

practice of awarding fees from a fund secured by a successful plaintiff in the litigation.").

The proposed order therefore relies upon the broader rationale of the common-benefit

doctrine.

That rationale can support imposing holdbacks on participating counsel's out-of-

MDL recoveries, but it cannot do the same for non-participating counsel.  By signing the

participation agreement, participants gain a benefit from the work of others:  common-

benefit work product.  And more broadly, they generally agree to take a common

approach to the litigation.  So, in the language of *Mills*, participants constitute an

"ascertainable class" that receive a "substantial benefit" (from one another and from lead counsel), and the Court's "jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills*, 396 U.S. at 393–94.

In contrast, non-participating counsel generally do not have access to common-benefit work product. And relatedly, they do not necessarily agree to take a common approach to the litigation. It is true that within the MDL, non-participating counsel may nonetheless benefit from the others' work because, by design, some issues are bound to overlap across cases in an MDL. So, for example, if others obtain a favorable resolution on a common question of law, non-participating counsel will benefit too. But even that basis for invoking the common-benefit doctrine cannot justify imposing holdbacks on non-participating counsel's recoveries outside the MDL. Cases outside the MDL may not involve the same issues, and non-participating counsel—who have declined the opportunity to use others' work product—may choose to approach those cases differently. The mere fact that an out-of-MDL case involves the same challenged conduct and an attorney in the MDL is not enough to invoke the common-benefit doctrine.

The *Alyeska* criteria help illustrate the difference between in-MDL cases and out-of-MDL cases, and the difference between participating and non-participating counsel. First, the class of beneficiaries within an MDL is rarely "small in number," but it is arguably "easily identifiable" because the MDL itself provides a clear definition. Expanding the class of beneficiaries beyond the MDL increases the number of

7

beneficiaries and makes the class harder to identify.[3]  That is less of a problem regarding participating counsel.  Under the proposed participation agreement, they agree to provide and maintain a list of their clients and cases.  Participation Agreement ¶ 4.  And because they have agreed to share work-product and pursue common issues with others, they will likely carry benefits from others' work in the MDL into related out-of-MDL cases.  That makes identification relatively easy:  all of participating counsel's related cases likely benefit from common-benefit work.  But for non-participating counsel, it is much harder to tell whether their recoveries in out-of-MDL cases substantially benefited from the MDL work and therefore harder to identify whether those cases should be among the class of beneficiaries that should be subject to a holdback.

Second, within an MDL, the benefits arguably can be traced with some accuracy. Because the litigation within an MDL focuses on common issues of cases *within* the MDL, there is reasonable certainty that all of the cases benefit to an extent from the lead lawyers' work.  That is especially true for cases that are resolved through a global settlement, or cases that are resolved individually but rely upon MDL work product, such as a trial package.  The same cannot be said of out-of-MDL cases, which are resolved separately and might involve different issues and different litigation strategies, even if an MDL lawyer is involved.  With non-participating counsel, that likelihood is substantially higher.

Third, by the same token, there is less "reason for confidence that the costs c[an]

---

[3] In some sense, the beneficiaries are the lawyers.  But because holdbacks apply to individual cases, the unjust enrichment rationale requires thinking in terms of whether an individual case benefited from the litigation in the MDL.

. . . be shifted with some exactitude to those benefiting" for cases outside an MDL, and especially for those involving non-participating counsel.  A flat holdback percentage might be a reasonable way to reapportion fees within an MDL, at least as a starting point, given that the individual cases take a common litigation track.  Out-of-MDL cases, however, might vary significantly in how much they benefit from the litigation in the MDL.  For those brought by non-participating counsel, a flat holdback percentage would likely be too imprecise and potentially an unjust method of reapportionment.

In sum, the common-benefit doctrine provides support for extending the common-benefit order to out-of-MDL recoveries for participating counsel, but not for non-participating counsel.

### 2.      Inherent powers

The second potential source of authority—courts' inherent powers—points to the same result.  "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017).  The Supreme Court has not "precisely delineated the outer boundaries of a district court's inherent powers," but it has "recognized certain limits":  "an inherent power must be a reasonable response to a specific problem and . . . cannot contradict any express rule or statute."  *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016).

The Court addressed the inherent power to shift fees in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), where it recognized an inherent power to assess attorney's fees as a sanction for bad-faith conduct.  *Id.* at 50.  In that case, the Court tied the "narrowly defined circumstances [where] federal courts have inherent power to assess

9

attorney's fees against counsel" to the three circumstances recognized in *Alyeska*: willful disobedience of a court order, bad-faith conduct, or situations where the common-benefit doctrine is appropriate. *Id.* at 45; *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). The first two do not apply here, and the common-benefit doctrine has already been discussed.

Even if courts have some inherent authority to reapportion attorney's fees beyond those three circumstances, it likely does not extend as far as the DAP lawyers would like. The Supreme Court has cautioned against resort to inherent powers, often describing them as those that "are necessary to the exercise of all others." *Chambers*, 501 U.S. at 43 (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)); *Roadway Experience, Inc. v. Piper*, 447 U.S. 752, 764 (1980); *see Degen v. United States*, 517 U.S. 820, 823–24 (1996). And generally, these inherent powers are necessary for the courts to "manage *their own* affairs." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962); *see Roundup*, 544 F. Supp. 3d at 963–64. So, for example, the Court has recognized inherent authority to control bar admissions and to discipline attorneys, to punish for contempt, to vacate a judgment upon proof of fraud upon the court, to bar from the courtroom a criminal defendant who disrupts a trial, to dismiss an action on grounds of *forum non conveniens* or for failure to prosecute, and to recall a jury in a civil case when there is an error in the verdict. *See Chambers*, 501 U.S. at 43–44; *Dietz*, 579 U.S. at 46.

The specific ability to require holdbacks in out-of-MDL cases is not of the same character. It reaches beyond the MDL court's "own affairs" and into cases in state courts. As other courts have suggested, perhaps that is permissible if it is necessary to

10

carry out the MDL, somewhat akin to the way that a court necessarily must be able to reach beyond an individual case to enforce protective orders. *See In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 188 (S.D.N.Y. 2020). Indeed, necessity was the basis for the initial acceptance of common-benefit orders in MDLs. *See In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("Managerial power is not merely desirable. It is a critical necessity.").

The necessity argument for imposing holdbacks on out-of-state cases is much stronger for participating counsel than for non-participating counsel. Participating counsel have access to common-benefit work product that they can use in out-of-MDL cases. That creates a substantial risk of free-riding, which might negatively impact an MDL court's ability to obtain lead counsel. But for non-participating counsel, who do not have access to that work product, the potential for free-riding in out-of-MDL cases is relatively minor.

Imposing holdbacks on out-of-state cases for participating counsel also bears a closer relationship to recognized inherent powers than for non-participating counsel. For example, a court presumably may enter a protective order on litigation materials and impose conditions on the use of those materials, even outside the MDL. The Court sees no reason why an assessment would not be a permissible condition. *See Roundup*, 544 F. Supp. 3d at 966. Counsel also could agree among themselves that assessments should be imposed in out-of-MDL cases. That is to some extent what participating counsel would do here. And at least in some circumstances, the Court could incorporate that agreement into an order and retain ancillary jurisdiction to enforce it. *See In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897, 907–08 (9th Cir. 2023); *In*

11

re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig., 617 F. App'x 136, 141–44, 142 n.3 (3d Cir. 2015) (citing Kokkonen v. Guard. Life Ins. Co. of Am., 511 U.S. 375, 381 (1994)).  But neither argument applies to non-participating counsel, who would not have access to the common-benefit work product and would not have consented to assessments on their out-of-MDL recoveries.

The Court therefore concludes that the common-benefit doctrine and the Court's inherent authority permit holdbacks from out-of-MDL recoveries for participating counsel but not for non-participating counsel.  One last point on this issue is worth clarifying.  As defendants point out, "'[a]ll recoveries belong to the client,' not counsel."  Defs.' Resp. at 3 n.1 (quoting In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig., No. 23 C 818, 2024 WL 3904650, at *4 (N.D. Ill. Aug. 22, 2024)).  Whether rooted in the common-benefit doctrine or federal courts' inherent authority, the power to order holdbacks is not a power to tax the awards of plaintiffs; it is a power to address free-riding from the attorneys in the MDL and prevent their fees from conferring an unjust enrichment.  This is not a mere difference in label.  All holdbacks must come out of the portion of the recovery designated for attorney compensation under the attorney-client agreement, not from the plaintiff's net recovery.  See Roundup, 544 F. Supp. 3d at 971.

With that established, the Court turns to the other disputed issues.

## B.  Non-monetary relief

Defendants next object to provisions in the proposed common-benefit order that would permit holdbacks on non-monetary relief.  The proposed order permits DAP leadership to "seek a valuation" of non-monetary relief obtained in a settlement or judgment covered by the order.  DAP Proposed Order ¶ 43.  That valuation process first

involves "confidential negotiations . . . in good faith" between the plaintiff and DAP leadership to "agree on a reasonably estimated value." *Id.* ¶ 45. If they "are unable to reach agreement on a valuation . . . , the Court will determine a reasonably estimated value through a process to be determined by the Court." *Id.*

Defendants argue that these provisions are "novel" and will "mandat[e] satellite litigation[] and unreasonably chill[] settlement." Defs.' Resp. at 4. In their reply, DAP leadership points out that the ongoing business relationships between the plaintiffs and the defendants in this MDL create an opportunity to settle on agreed business terms rather than monetary relief. As a result, DAP leadership contends, non-monetary relief presents "just as much of a threat of free-riding on common benefit work as monetary recoveries." DAP Reply at 8.

Both sides have a point. Without any possibility of holdbacks on non-monetary relief, such relief would present a loophole for free-riding. Individual plaintiffs and defendants could be incentivized to resolve cases on non-monetary terms to avoid paying a tax to others whose common-benefit work facilitated that resolution. Imposing holdbacks on non-monetary relief might make that avenue of settlement more difficult, but it does so by requiring settling parties to factor in what they should pay others. That is removing a windfall, not unreasonably chilling settlement.

On the other hand, as defendants point out, the valuation process required for non-monetary relief increases transaction costs, which arguably could chill settlement beyond what is necessary to prevent free-riding. Even plaintiffs and defendants who would be willing to pay a fair tax on non-monetary relief might be deterred by the prospect of negotiations or satellite litigation over valuation. DAP leadership dismisses

13

these concerns by pointing out that the Court would retain control over the valuation process, but the fact remains that it could be difficult (for the parties or for the Court) to put a number on non-monetary relief.

Ultimately, the Court finds that the need to close off a free-riding loophole outweighs these potential difficulties. The parties are sophisticated, and the Court trusts that they will be able to handle the valuation process reasonably. Valuations will also likely become streamlined over time, as similar forms of non-monetary relief can be valued similarly. And at the end of the day, settling through monetary relief remains an option.

## C.     Future opt-outs

As discussed above, the proposed order would apply to "all cases now pending, as well as to any case later filed in . . . , transferred to, or removed to this Court and treated as part of the [MDL]." DAP Proposal ¶ 3. All agree that this means the proposed order would apply to current putative class members who later opt out of the class, assuming one is certified, and file a direct action. Interim class counsel (joined by defendants) contend that the Court should instead wait until after the opt-out period, once the opt-outs are identified, before determining the degree to which they should be assessed, and by whom.

In the Court's view, that would be unfair to the potential opt-outs, who are entitled to notice—before deciding whether to opt out—that they will be subject to the common-benefit order. Class counsel advance two main countervailing arguments, but neither changes the Court's conclusion.

First, class counsel argue that applying the proposed order to potential opt-outs

14

at this stage infringes their right to opt out and litigate on their own by assuming that they owe money to DAP leadership, even though DAP leadership may not litigate in their interests. The Court disagrees. It is true that absent class members have a right to litigate on their own—that is why the opt-out option exists. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). But the proposed order would not take away or burden that option. Class members would remain free to opt-out, be "removed from the litigation entirely," and not be bound by anything in the MDL. *See id.* at 810–11. Class members who file claims that are not part of the MDL are unaffected (unless their attorney entered or enters into a participation agreement).[4] The proposed order imposes holdbacks on opt-outs who refile direct actions that end up in this MDL, but as DAP leadership points out, that is no different than what happens to any other direct action filed after the entry of a common-benefit order—a common occurrence in MDLs, which often have rolling new-case filings. The proposed order thus places an opt-out in the same situation as if it had never been part of the class and filed its own lawsuit at the outset.

Additionally, the concern that DAP leadership may not litigate in the opt-outs' interests arguably cuts against class counsel. As discussed, DAPs can choose to pool their efforts and litigate collectively. Late filers, however, face the problem that they are subject to a common-benefit order, even if the DAPs have approached the litigation differently than the late filer might have if it had been part of the litigation from the start. As a result, there is value to clarifying early on that opt-outs will be subject to the

---

[4] This highlights an additional point. As made clear above, the common-benefit order applies to attorneys, not the opt-out plaintiffs themselves.

common-benefit order whether they file a direct action now or wait and opt-out later. That presents potential opt-outs with a more informed choice: if they suspect that they will opt-out in the future, they can file a direct action earlier and participate in shaping the DAPs' litigation strategy.

Class counsel's cited cases are not to the contrary. They cite three cases denying early requests to apply common-benefit orders to potential opt-outs. *First Impressions Salon, Inc. v. Nat'l Milk Prods. Fed'n*, No. 3:13 C 454-NJR-GCS, 2019 WL 13180924 (S.D. Ill. Apr. 5, 2019); *In re Generic Pharm. Pricing Antitrust Litig.*, 16-MD-2724, 2019 WL 6044308 (E.D. Pa. Oct. 7, 2019); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-MD-2670-DMS-MDD, 2021 WL 5326517 (S.D. Cal. Nov. 16, 2021). Critically, the requests in those cases came from class counsel. In other words, a plaintiff that opted out of the class would still have to pay class counsel for their work. That presents a risk—especially when the order is entered early in litigation—of penalizing absent class members based solely on the fact that they were part of the class definition. Here, in contrast, opt-outs will be put in the same position as if there had never been a class at all.

Second, class counsel contend that the Court should wait until after the opt-out period to ensure that opt-outs have an opportunity to retain counsel and contemporaneously oppose the terms of the common-benefit order. In the same vein as the discussion so far, this argument does not unduly burden the right to opt out: late filers also do not have the opportunity to contemporaneously oppose common-benefit orders. Additionally, all the common-benefit order does for now is create a common-benefit fund and define broad categories of potential common-benefit work. The actual

allocation of any common-benefit fee award will happen later, and all involved will have the opportunity to weigh in at that time. Thus if opt-outs end up as a group that should be treated differently from other DAPs, that can be addressed on the back end in determining how to draw reimbursements from the fund. All else equal, it may be better to preserve for as many plaintiffs as possible the opportunity to oppose a common-benefit order before it is entered, rather than on the back end. But that would require waiting until after the opt-out period, which would present the notice problems discussed above.

In sum, the Court's view is that the notice issue outweighs the concerns cited in opposition to the DAPs' proposal.

**D. Bellwether work**

The last issue can be dealt with quickly. At the time of briefing, the Court had not yet selected bellwether cases and scheduled proceedings for those cases. Defendants therefore objected that it was premature (though not otherwise problematic) to say that work-up of bellwethers could be considered for common benefit. The Court has since selected bellwethers and has set a schedule for litigating them. Because bellwether proceedings may have a common benefit across cases, work done on them is eligible for consideration as common-benefit work.

**Conclusion**

For the reasons above, the Court largely approves the DAPs' proposed common-benefit order [dkt. 408] but declines to extend it to out-of-MDL recoveries by non-participating counsel. The parties are directed to submit by July 16, 2026 an updated

17

order, in Word format, consistent with this opinion.

Date:  July 9, 2026

_____
MATTHEW F. KENNELLY
United States District Judge